## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

| | |
|---|---|
| IN RE:<br><br>OLDCO, LLC, SUCCESSOR BY MERGER TO COLTEC INDUSTRIES INC,<br><br>      Debtor. | Case No. 17-BK-30140<br><br>Chapter 11<br><br>[Joint Administration Pending][1] |

### DEBTOR'S MOTION TO APPOINT JOSEPH W. GRIER, III AS FUTURE ASBESTOS CLAIMANTS' REPRESENTATIVE

OldCo, LLC, debtor and debtor-in-possession in the above-captioned case and successor by merger to Coltec Industries Inc ("Coltec" or "Debtor"),[2] moves the Court for entry of an Order appointing Joseph W. Grier, III as legal representative for Future Coltec Asbestos Claimants (as defined below) and defining the scope and terms of Mr. Grier's representation (this "Motion"). In support of this Motion, Coltec respectfully states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these proceedings and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 524(g)(4)(B) of title 11 of the United States Code (the "Bankruptcy Code").

---

[1] Contemporaneously with filing this Motion, Coltec moved to have its chapter 11 case jointly administered with the chapter 11 cases of *In re Garlock Sealing Technologies LLC* (10-BK-31607), *In re Garrison Litigation Management Group, Ltd.* (10-BK-31608) and *In re The Anchor Packing Company* (10-BK-31606), with *In re Garlock Sealing Technologies LLC* serving as the lead case.

[2] For convenience, the term "Coltec" in this Motion refers to OldCo, LLC's predecessor, Coltec Industries Inc, when referring to events prior to the Coltec Restructuring and refers to OldCo, LLC when referring to events subsequent to the Coltec Restructuring.

## BACKGROUND

3.      Certain matters bearing specifically on this Motion are summarized below.  For additional background, Coltec respectfully refers the Court to the Declaration of Joseph Wheatley in Support of OldCo, LLC's Chapter 11 Petition and First Day Motions (the "First Day Declaration").[3]

**A.      Debtors' Bankruptcy Filings, Relevant Corporate Relationships, and Intertwined Asbestos Litigation Histories**

4.      On June 5, 2010, Garlock, Garrison, and Anchor (collectively, the "Garlock Debtors") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Their cases are being jointly administered (collectively, the "Garlock Bankruptcy Case").  Each of the Garlock Debtors is operating its business and managing its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On January 30, 2017, Coltec filed a voluntary petition for relief (the "Coltec Bankruptcy Case") under chapter 11 of the Bankruptcy Code.  Coltec is operating its business and managing its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner or creditors' committee has been appointed in the Coltec Bankruptcy Case.  Coltec has requested that the Coltec Bankruptcy Case be jointly administered with the Garlock Bankruptcy Case. *See* n. 1 above.

6.      Coltec and Garlock are subsidiaries of EnPro Holdings, Inc., a North Carolina corporation that is a wholly owned subsidiary of EnPro Industries, Inc.[4] Coltec is the direct corporate parent of Garrison, which is the direct corporate parent of Anchor.

7.      Pending before this Court is the Modified Joint Plan of Reorganization of Garlock

---

[3]  Unless defined in this Motion, capitalized terms have the meanings ascribed to them in the Joint Plan.

[4]  On November 28, 2016, New Coltec, Inc. changed its name to EnPro Holdings, Inc.

9288926v12

Sealing Technologies LLC *et al.* and OldCo, LLC, Proposed Successor by Merger to Coltec

Industries Inc, dated May 20, 2016 (as subsequently modified, the "Joint Plan").

8.    The Garlock Bankruptcy Case was filed to resolve permanently and in a single

forum all present and future asbestos-related personal injury and wrongful death claims against

Garlock and Garrison (as defined in the Joint Plan, collectively, "GST Asbestos Claims").  The

Coltec Bankruptcy Case has been filed to resolve in the same way all present and future asbestos

personal injury and wrongful death claims against Coltec (as defined in the Joint Plan, "Coltec

Asbestos Claims").

9.    Claimants first began suing Coltec in approximately 1992. The vast majority of

suits asserting Coltec Asbestos Claims also alleged GST Asbestos Claims. The asbestos-

containing components of products for which Coltec is responsible often consisted of gaskets

and packing made by Garlock.  Over the years, Coltec spent approximately $7.9 million in

defense costs resulting from Coltec Asbestos Claims, but made no indemnity payment on such

claims.  Rather, it resolved such claims either by dismissal or in connection with payments by

Garlock to settle GST Asbestos Claims.[5]  When settling asbestos claims by payment, Garlock

sought and often obtained releases for affiliated companies, including Coltec.

**B.    The Garlock Committee and the Garlock FCR**

10.    On June 16, 2010, this Court entered the Order Appointing Official Committee of

Asbestos Personal Injury Claimants in the Garlock Bankruptcy Case (D.E. 101).  That order

constituted a statutory committee of creditors for holders of current GST Asbestos Claims

(collectively, "GST Asbestos Claimants") and named certain GST Asbestos Claimants as

---

[5] *See* Disclosure Statement for Modified Joint Plan of Reorganization, *etc.*, at 26-31 (D.E. 5444) (the
"Disclosure Statement").  Unless otherwise specified, all docket entries referenced in this Motion are on
the docket of *In re Garlock Sealing Technologies LLC,* No. 10-BK-31607.

9288926v12

members of that committee (the "Garlock Committee").

11.    On September 16, 2010, this Court entered the Order Granting Debtors' Motion for Appointment of Joseph W. Grier, III as Future Asbestos Claimants' Representative (D.E. 512).  By this order, Mr. Grier was made the legal representative of individuals who will assert GST Asbestos Claims in the future (the "Garlock FCR").

## C.    The Ad Hoc Coltec Committee and the Ad Hoc Coltec FCR

12.    In January 2016, after almost six years of litigation, the parties entered into intensive negotiations aimed at a consensual reorganization plan that would provide for a global resolution of GST Asbestos Claims and Coltec Asbestos Claims.

13.    In that connection, the parties agreed that Mr. Grier should participate in the negotiations not only in his capacity as Garlock FCR in the Garlock Bankruptcy Case, but also in the capacity of *ad hoc* representative for holders of future Coltec Asbestos Claims (the "Ad Hoc Coltec FCR").  They also agreed that an *ad hoc* committee should be formed to represent in the negotiations the interests of persons holding current Coltec Asbestos Claims (the "Ad Hoc Coltec Committee").[6]

## D.    The Comprehensive Settlement

14.    The negotiations bore fruit.  On March 17, 2016, Coltec, Garlock and Garrison entered into the Term Sheet for Permanent Resolution of All Present and Future GST Asbestos Claims and Coltec Asbestos Claims (the "Comprehensive Settlement") with the Garlock Committee, the Garlock FCR, the Ad Hoc Coltec Committee, and the Ad Hoc Coltec FCR (collectively, the "Asbestos Claimants' Representatives").

---

[6] Contemporaneously with filing this Motion, a joint motion was filed to add certain Coltec Asbestos Claimants (as defined below) to the Garlock Committee and authorize the expanded Garlock Committee to serve in the Coltec Bankruptcy Case.

9288926v12

15.     To implement the Comprehensive Settlement, Coltec, Garlock, Garrison, Anchor and the Asbestos Claimants' Representatives (collectively, the "Plan Proponents") proposed the Joint Plan.  The Joint Plan is conditioned upon, among other things, the entry of an injunction protecting Coltec from Coltec Asbestos Claims and channeling Coltec Asbestos Claims to a trust funded pursuant to section 524(g) of the Bankruptcy Code, and has thus necessitated the filing of the Coltec Bankruptcy Case.

16.     The Joint Plan recognizes that Coltec Asbestos Claims are largely intertwined with GST Asbestos Claims and that the interests of the holders of Coltec Asbestos Claims (collectively, the "Coltec Asbestos Claimants") and GST Asbestos Claimants are substantially aligned.  Prior to the Garlock Bankruptcy Case, Garlock and Coltec resolved Coltec Asbestos Claims filed in the tort system when GST Asbestos Claims were settled. The Claims Resolution Procedures provided by the Joint Plan will enable asbestos claimants who meet applicable criteria to obtain compensation based on exposure to asbestos from products for which either Garlock or Coltec is legally responsible.  The amount of compensation for an eligible asbestos claimant will not vary according to whether the product involved was that of Garlock or instead that of Coltec.  A claimant who was exposed to asbestos from a Coltec product will not receive a higher award if he or she also demonstrates exposure to a Garlock product, and vice versa.[7]

17.     On July 29, 2016, the Court approved in the Garlock Bankruptcy Case the Disclosure Statement and established solicitation and confirmation procedures for the Joint Plan (the "Garlock Confirmation Procedures Order"). The Debtors and the Asbestos Claimants' Representatives in due course solicited acceptances of the Joint Plan from GST Asbestos

---

[7] *See* Joint Plan, Exh. B at (D.E. 5443-3) (Claims Resolution Procedures); *see also* Disclosure Statement at 31 (D.E. 5444).

9288926v12

Claimants and also from Coltec Asbestos Claimants.[8]  As for the role and composition of the Ad Hoc Coltec Committee and the role and identity of the Ad Hoc Coltec FCR, the Disclosure Statement explained:

> In mid-February 2016, the parties reached an understanding that, for purposes of the negotiations, an *ad hoc* committee should be established for Coltec Asbestos Claimants and that an *ad hoc* legal representative for holders of future Coltec Asbestos Claims should also participate. The Ad Hoc Coltec Committee was formed consisting of attorneys from each of the following plaintiffs' law firms: Belluck & Fox; Cooney & Conway; The Jaques Admiralty Law Firm; Simon, Greenstone, Panatier & Bartlett; Thornton & Naumes; and The Lanier Law Firm. Each of these, other than The Lanier Law Firm, already represented and continues to represent an Asbestos Claimant against GST on the Committee. All of the aforementioned law firms, including The Lanier Law Firm, represent Coltec Asbestos Claimants and filed claims on behalf of those individuals before the litigation was stayed in 2010. The Committee and the Ad Hoc Coltec Committee thereafter functioned in unison in the negotiations and continue to do so with respect to the Plan, based on the overlapping claims histories and essential unity of interests as between GST Asbestos Claimants and Coltec Asbestos Claimants.

> Also in mid-February 2016, Joseph W. Grier, III, the current FCR in the Chapter 11 Cases, agreed to serve as the *ad hoc* legal representative for future Coltec Asbestos Claimants.  Mr. Grier thereafter participated in the negotiations in both capacities, and continues to act in both capacities with respect to the Plan, based on the overlapping claims histories and essential unity of interests as between GST Asbestos Claimants and Coltec Asbestos Claimants.[9]

18.    The Disclosure Statement also noted that, after the Coltec Bankruptcy Case was filed, the Plan Proponents would support Mr. Grier's "official appointment as representative for holders of future Coltec Asbestos Claims" in the Coltec Bankruptcy Case.[10]

## E.    Acceptance of the Joint Plan by Super-Majorities of GST Asbestos Claimants and Coltec Asbestos Claimants

19.    The voting deadline on the Joint Plan was December 9, 2016.  In due course, the

---

[8] With respect to Coltec, the Joint Plan served as a "pre-packaged" plan that called for the filing of the Coltec Bankruptcy Case if the requisite acceptances were obtained.

[9] Disclosure Statement at 42-43.

[10] *Id*. at ii.

9288926v12

balloting agent with respect to the Joint Plan (the "Balloting Agent") certified in the Garlock Bankruptcy Case that 134,212 GST Asbestos Claimants and Coltec Asbestos Claimants cast qualifying ballots on the Joint Plan and that 95.85% in number and 95.80% in amount voted to accept.[11]  The Balloting Agent also reported separately regarding qualifying ballots cast by GST Asbestos Claimants versus Coltec Asbestos Claimants. Of 127,088 ballots cast by GST Asbestos Claimants, 96.44% in number and 95.85% in amount voted to accept the Joint Plan. Of 73,716 ballots cast by Coltec Asbestos Claimants, 97.74% in number and 96.98% in amount voted to accept.[12]

20.     Thus, GST Asbestos Claimants and Coltec Asbestos Claimants as a class have overwhelmingly accepted the Joint Plan.

**F.     Anticipated Confirmation Hearings**

21.     In the Garlock Bankruptcy Case, the Court has set May 15, 2017, as the date for commencement of the confirmation hearing for the Joint Plan.

22.     Coltec has moved for the entry of a scheduling order also setting May 15, 2017, as the date for commencing the confirmation hearing in the Coltec Bankruptcy Case.  Placing confirmation proceedings for both cases on the same schedule is appropriate since the Joint Plan is meant to reorganize Coltec as well as Garlock and Garrison.  This Motion is aimed at promoting speed and efficiency in the coordinated confirmation proceedings.

23.     In support of this Motion, Coltec relies on the First Day Declaration.

---

[11] See Declaration of Catherine Nownes-Whitaker of Rust Consulting/Omni Bankruptcy Regarding Certification of Ballots, etc., at 3-4, filed on December 19, 2016 (D.E. 5627).

[12] *Id.* Some Asbestos Claimants cast ballots as both GST Asbestos Claimants and Coltec Asbestos Claimants. Pursuant to the Garlock Confirmation Procedures Order, the Balloting Agent counted each of these ballots as a single vote.

9288926v12

## RELIEF REQUESTED

24.     By this Motion, Coltec seeks an order appointing a legal representative in the Coltec Bankruptcy Case for holders of Coltec Asbestos Claims based on a disease or condition that has not manifested, become evident, or been diagnosed as of the date an order is entered confirming a plan of reorganization in the Coltec Bankruptcy Case (collectively, the "Future Coltec Asbestos Claimants") and requests that Mr. Joseph W. Grier, III be appointed as the Coltec FCR.

25.     Coltec also requests that this Court establish the scope and terms of Mr. Grier's representation as the Coltec FCR that mirror the scope and terms of his retention as the Garlock FCR in the Garlock Bankruptcy Case.

## BASIS FOR RELIEF REQUESTED

### A.     A Legal Representative for Future Coltec Asbestos Claimants Is Necessary in the Coltec Bankruptcy Case.

26.     The appointment of the Coltec FCR pursuant to sections 105(a) and 524(g) of the Bankruptcy Code will protect the interests of the Future Coltec Asbestos Claimants, provide those claimants with due process, and satisfy a statutory prerequisite for issuance of the channeling injunction available under section 524(g) of the Bankruptcy Code.

27.     The need for a Coltec FCR arises because asbestos-related diseases have long latency periods, sometimes up to forty years or longer between first exposure and manifestation of disease.  As a result, there are workers who were exposed to asbestos before this chapter 11 case, but who would not have manifested disease and asserted claims against Coltec, among others, until after plan confirmation.

28.     Coltec has been subject to thousands of asbestos claims for many years.  It is virtually certain that, absent the Court enjoining asbestos claims against Coltec in the Garlock

8

Bankruptcy Case, Coltec would have continued to receive asbestos claims into the indefinite future.

29.    Nearly all of these future claims would have come from individuals whose alleged exposures to asbestos occurred in the past, long before the Coltec Petition Date, but whose asbestos-related diseases, if any, had not yet manifested as of the Coltec Petition Date.    In addition, it is possible Coltec would have received some asbestos-related claims in the distant future from persons alleging first exposure to a Coltec asbestos-containing product *after* the Coltec Petition Date.    These two kinds of claims are commonly known as "future claims."

30.    The Fourth Circuit has adopted an expansive definition of "claim,"[13] holding that future claimants whose exposures occurred pre-petition but whose injuries manifest post-petition hold Bankruptcy Code claims.    *Grady v. A.H. Robins Co. (In re A.H. Robins Co.)*, 839 F.2d 198, 203 (4th Cir. 1988).

31.    Courts agree that future claimants are parties in interest who are entitled to representation.    *See In re Amatex Corp.*, 755 F.2d 1034, 1041 (3d Cir. 1985); *In re Johns-Manville Corp.*, 36 B.R. 743, 749 (Bankr. S.D.N.Y. 1984); *In re UNR Indus. Inc.*, 46 B.R. 671, 675 (Bankr. N.D. Ill. 1985).    Indeed, for an asbestos bankruptcy to succeed, it must deal with future and current claims.    Typically the debtor establishes a post-confirmation trust that assumes the debtor's asbestos-related liabilities and becomes responsible for paying all claims.    Future

---

[13]    "The term 'claim' means—

(A)    right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B)    right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."

Bankruptcy Code § 101(5).

9288926v12

claimants have an acute interest in the amount of funding the trust receives and how the trust divides its assets between current and future claimants.

32.     A bankruptcy court might enter other orders that affect future claims. Future claims might be discharged, channeled to a trust, or subjected to other final judgments in connection with a chapter 11 case. Due process may require a future claimants' representative, under certain circumstances, to ensure that future claimants receive constitutionally adequate notice and hearing before the court alters their rights. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950); *In re Forty-Eight Insulations Inc.*, 58 B.R. 476, 477 (Bankr. N.D. Ill. 1986) (future claimants' representative is only way to provide representation for future claimants).

33.     No other constituency adequately represents the Future Coltec Asbestos Claimants. These claimants are obviously in conflict with Coltec. They also have actual conflicts of interest with the other Coltec Asbestos Claimants, i.e., those Coltec Asbestos Claimants who are not Future Coltec Asbestos Claimants because they have "current" claims. Those current claimants have an interest in quick and generous payment from any trust that may be funded, under terms that may unreasonably deplete the trust before the future claimants' injuries manifest. S*ee Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999) (noting inherent conflict between current and future claimants giving rise to the need for separate representation); s*ee also UNR*, 46 B.R. at 675 (future claimants not adequately represented by current claimants), *Johns-Manville*, 36 B.R. at 749 (same). If future claimants do not receive representation in a bankruptcy case, they can be expected to receive worse treatment than current claimants.

34.     As a result, future claimants are entitled to separate representation in an asbestos bankruptcy case. A bankruptcy court has the authority under section 105(a) to appoint such a

9288926v12

representative, and courts have routinely done so. *See, e.g.*, *Johns-Manville*, 36 B.R. at 757-58; *UNR*, 46 B.R. at 675; *Forty-Eight Insulations*, 58 B.R. at 477; Order Granting Application of Debtors Pursuant to 11 U.S.C. §§ 105, 327 and 524(g)(4)(B)(i) for the Appointment of a Legal Representative for Future Asbestos Claimants, *In re W.R. Grace & Co.*, No. 01-bk-01139 (Bankr. D. Del. May 24, 2004) (D.E. 5645).

35.     In addition, appointment of a future claimants' representative is a statutory prerequisite to entry of the channeling injunction available under section 524(g) of the Bankruptcy Code. A section 524(g) channeling injunction is valid and enforceable against future "demands" only if "as part of the proceedings leading to issuance of such injunction, the court appoints a legal representative for the purpose of protecting the rights of persons that might subsequently assert demands of such kind." Bankruptcy Code § 524(g)(4)(B)(i).

36.     The Bankruptcy Code defines a "demand" as follows:

[T]he term "demand" means a demand for payment, present or future, that—
(A)  was not a claim during the proceedings leading to the confirmation of a plan of reorganization;
(B)  arises out of the same or similar conduct or events that gave rise to the claims addressed by the injunction issued under paragraph (1); and
(C)  pursuant to the plan, is to be paid by a trust described in paragraph (2)(B)(i).

Bankruptcy Code § 524(g)(5).

37.     Accordingly, in the Coltec Bankruptcy Case, the Coltec FCR should be appointed to represent all potential holders of future claims and demands.

**B.    Mr. Joseph W. Grier, III Is Qualified to Serve as the Coltec FCR**

38.     Mr. Grier is one of North Carolina's leading bankruptcy and commercial lawyers and a founding partner of Grier Furr & Crisp, P.A. in Charlotte, where he specializes in bankruptcy law and debtor-creditor rights. Mr. Grier spends most of his time practicing in the

11

United States Bankruptcy Court for the Western District of North Carolina and the United States District Court for the Western District of North Carolina.

39.     Mr. Grier has acquired substantial experience representing constituencies in a fiduciary capacity, as a court-appointed receiver, an operating and liquidating trustee in bankruptcy, an examiner, and as attorney for examiners and non-attorney bankruptcy trustees. Mr. Grier's many years of experience serving in a wide variety of fiduciary capacities and practicing in the bankruptcy courts and in this Court make him ideally suited to represent the Future Coltec Asbestos Claimants.

40.     In addition, Mr. Grier is based in Charlotte, routinely practices in this Court, and has agreed to a reasonable hourly rate, as indicated in the Declaration of Proposed Legal Representative, Joseph W. Grier, III (the "Grier Declaration"), attached hereto as Exhibit A. This will allow him to provide a cost-effective representation of the Future Coltec Asbestos Claimants, inuring to the benefit of all holders of claims and interests in the Coltec Bankruptcy Case.

41.     To the best of Coltec's knowledge, and as shown by the Grier Declaration, Mr. Grier holds no interest adverse to Coltec, its estate, or any other party in interest that would preclude his appointment as the Coltec FCR.  Nor does his firm, except as disclosed in the Grier Declaration, hold any interest adverse to Coltec, its estate, or any other party in interest, which would preclude Mr. Grier from engaging his firm to represent him in this case.

42.     Most significantly, this Court appointed Mr. Grier as the Garlock FCR in the Garlock Bankruptcy Case (D.E. 512).  For over six years, Mr. Grier as the Garlock FCR and the outside counsel he hired have been involved in the Garlock Bankruptcy Case, have become familiar with the issues important to future asbestos claimants and have been intimately involved

9288926v12

in the litigation and negotiations that led to the Comprehensive Settlement and negotiation of the Joint Plan. If appointed as the Coltec FCR, Mr. Grier expects to retain the same outside counsel in this case as he, as the Garlock FCR, retained in the Garlock Bankruptcy Case. Further, Mr. Grier is a party to the Comprehensive Settlement as the Ad Hoc Coltec FCR, and negotiated vigorously in reaching the Comprehensive Settlement. The other parties thereto support his appointment as the Coltec FCR in this case. Accordingly, Mr. Grier is familiar with and well-positioned to represent the interests of the Future Coltec Asbestos Claimants in this case.

43.     Moreover, the interests of the future GST Asbestos Claimants and the Future Coltec Asbestos Claimants are substantially aligned. Historically, asbestos claimants who sued Coltec businesses generally also sued Garlock, Coltec has never paid any money to settle an asbestos personal injury claim, and asbestos claimants have routinely agreed to dismiss asbestos claims against Coltec when they reached settlements with Garlock for their GST Asbestos Claims. Therefore, Coltec does not believe a conflict exists as a result of Mr. Grier's having been and continuing to be the Garlock FCR while simultaneously being the Coltec FCR.

44.     Finally, appointing Mr. Grier as the Coltec FCR will make it possible for confirmation proceedings in the Coltec Bankruptcy Case to advance on the same schedule as those in the Garlock Bankruptcy Case. The relief requested will also avoid what would otherwise be the redundant costs to the estates of having two separate representatives for asbestos tort claimants whose interests are substantially aligned.

45.     For all these reasons, Mr. Grier is well suited to serve as the Coltec FCR in this case.

9288926v12

C.    **The Terms of Retention of the Coltec FCR Should Mirror Those of the Garlock FCR.**

46.    The Coltec FCR should represent the interests of, appear on behalf of, and be a fiduciary to the Future Coltec Asbestos Claimants.

47.    With this scope of representation, Mr. Grier would be appointed in part to protect the rights of all personal injury demand holders, thus ensuring that Coltec can satisfy that prerequisite to issuance of the channeling injunction under section 524(g)(4)(B) of the Bankruptcy Code.

48.    He would also represent the class of persons (if any) who hold "claims" based on injuries that become manifest after the date any plan of reorganization is confirmed.

49.    Finally, Coltec requests that Mr. Grier be appointed as the Coltec FCR under the following additional terms:

    a.    The Coltec FCR shall be a party in interest in this case, with standing under section 1109(b) of the Bankruptcy Code to be heard on any issue in this case relevant to the interests of the Future Coltec Asbestos Claimants, in the Bankruptcy Court, the United States District Court for this district, or any other court.  The Coltec FCR shall have the powers and duties of a committee set forth in section 1103 of the Bankruptcy Code as are appropriate for a future asbestos claimants' representative.  *See In re Johns-Manville Corp.*, 52 B.R. 940, 942 (S.D.N.Y. 1985) (legal representative authorized to exercise powers and perform duties of a committee under section 1103 of the Bankruptcy Code).

    b.    The Coltec FCR may employ attorneys and other professionals consistent with sections 1103(a) and (b) of the Bankruptcy Code, subject to approval

of the Court.  Compensation for professional fees and reimbursement of expenses shall be payable to the Coltec FCR's professionals from Coltec's estate upon the filing and approval of interim and final applications pursuant to the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and applicable rules, orders and procedures of the Court.

c.      The Coltec FCR shall be compensated from Coltec's estate and shall be entitled to allowance of compensation for services rendered and reimbursement of expenses incurred, upon the filing and approval of interim and final applications pursuant to the Bankruptcy Code, the Bankruptcy Rules, and applicable rules, orders and procedures of the Court.

d.      The Coltec FCR shall not be liable for any damages, or have any obligation other than as prescribed by order of the Court; provided, however, that the Coltec FCR may be liable for damages caused by willful misconduct or gross negligence.  The Coltec FCR shall not be liable to any person as a result of any action or omission taken or made in good faith. Subject to the provisions of the Joint Plan, Coltec shall indemnify, defend and hold harmless Mr. Grier, his partners, associates, principals, employees and professionals (individually, an "Indemnified Party") from all claims against any of them, and all losses, claims, damages, or liabilities (or actions in respect thereof) to which any of them may become subject, as a result of or in connection with such party rendering services

15

pursuant to the Order appointing Mr. Grier as the Coltec FCR, unless and until it is finally judicially determined that such losses, claims, damages or liabilities were caused by willful misconduct or gross negligence on the part of such Indemnified Party; provided, however, Coltec's indemnification obligations under this subsection (d) shall not apply to any disallowance of any portion of an Indemnified Party's fee application or fees or expenses such Indemnified Party incurs to defend a fee application.

e.    The Coltec FCR and his counsel shall be entitled to receive all notices and pleadings that are served pursuant to any and all orders entered in this case or the Garlock Bankruptcy Case.

f.    Unless otherwise ordered by this Court, Mr. Grier's appointment as Coltec FCR shall terminate upon the effective date of a plan of reorganization in the Coltec Bankruptcy Case, unless otherwise provided in a further order of the Court or in a plan of reorganization.

50.    For all of the foregoing reasons, Coltec submits that the appointment of Mr. Grier as the Coltec FCR is in the best interest of Coltec, its estate, and all creditors and parties in interest, including any Future Coltec Asbestos Claimants.

## NOTICE

51.    No trustee, examiner, or creditors' committee has been appointed in the Coltec Bankruptcy Case. Coltec has served notice of this Motion on (a) the Ad Hoc Coltec Committee; (b) the Garlock Committee; (c) Mr. Grier, in his capacity as the proposed Coltec FCR and the Garlock FCR; (d) the Office of the United States Bankruptcy Administrator for the Western District of North Carolina (the "Bankruptcy Administrator"); and (e) to the extent not set forth above, the parties listed on the updated Garlock Master Service List in the Garlock Bankruptcy

9288926v12

Case (D.E. 5655) and any party that has filed a request for notices under Bankruptcy Rule 2002 since the filing of the updated Garlock Master Service List, and submits that, given the nature of the relief requested, no other or further notice need be given.  No previous application for the relief requested herein has been made by Coltec to this or any other court.

WHEREFORE, Coltec respectfully requests that the Court enter an Order, substantially in the form attached hereto as Exhibit B, (a) appointing Joseph W. Grier, III as the Coltec FCR and defining the scope and terms of his representation, and (b) granting such other relief as the Court deems just and proper.

[remainder of page left blank intentionally –
signature page of counsel follows]

17

This the 30th day of January, 2017.

/s/ Daniel G. Clodfelter

Daniel G. Clodfelter
N.C Bar No. 7661
danclodfelter@parkerpoe.com
William L. Esser IV
N.C. Bar No. 29201
willesser@parkerpoe.com
Ashley A. Edwards
N.C. Bar No. 40695
ashleyedwards@parkerpoe.com

PARKER POE ADAMS & BERNSTEIN, LLP

Three Wells Fargo Center
401 South Tryon Street, Suite 3000
Charlotte, NC 28202
Telephone:     (704) 372-9000
Facsimile:     (704) 334-4706

*Proposed Counsel to OldCo, LLC, Debtor and Debtor-in-Possession*

/s/ David M. Schilli

David M. Schilli
N.C. Bar No. 17989
dschilli@robinsonbradshaw.com
Andrew W.J. Tarr
N.C. Bar No. 31827
atarr@robinsonbradshaw.com

ROBINSON BRADSHAW & HINSON, P.A.

101 North Tryon Street
Suite 1900
Charlotte, NC 28246
Telephone:     (704) 377-2536
Facsimile:     (704) 378-4000

*Proposed Special Corporate and Litigation Counsel to OldCo, LLC, Debtor and Debtor-in-Possession*

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division**

| | |
|---|---|
| IN RE: | Case No. 17-BK- 30140 |
| OLDCO, LLC, SUCCESSOR BY MERGER TO COLTEC INDUSTRIES INC, | Chapter 11 |
| Debtor. | [Joint Administration Pending][1] |

**DECLARATION OF JOSEPH W. GRIER, III, PROPOSED LEGAL
REPRESENTATIVE FOR FUTURE COLTEC ASBESTOS CLAIMANTS**

I, Joseph W. Grier, III, hereby declare that the following is true and correct:

1.      I am an attorney at law admitted to practice before this Court and am a member of

the law firm of Grier Furr & Crisp, PA (the "Firm"), with offices at 101 North Tryon Street,

Suite 1240, Charlotte, North Carolina 28246.

2.      I have expressed to Coltec[2] my willingness to serve as the Coltec FCR pursuant to

section 524(g)(4)(B)(i) of the Bankruptcy Code and the terms of any Order that this Court enters

concerning the appointment of the Coltec FCR.

3.      I am licensed to practice law in North Carolina and have been admitted to practice

before this Court and the United States District Court for the Western District of North Carolina.

I am in good standing with this Court and the District Court, as well as all other courts in which I

am admitted.

---

[1]   Contemporaneously with filing this Declaration, Coltec moved to have its chapter 11 case jointly administered with the chapter 11 cases of *In re Garlock Sealing Technologies LLC* (10-BK-31607), *In re Garrison Litigation Management Group, Ltd.* (10-BK-31608) and *In re The Anchor Packing Company* (10-BK-31606), with *In re Garlock Sealing Technologies LLC* serving as the lead case.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed in the Debtor's Motion to Appoint Joseph W. Grier, III as Future Asbestos Claimants' Representative.

9311467v5

4.      I am a founding partner of the Firm and my practice focuses on bankruptcy law and debtor-creditor rights. I spend most of my time practicing in this Court and the United States District Court for the Western District of North Carolina.

5.      I have substantial experience representing constituencies in a fiduciary capacity, as a court-appointed receiver, an operating and liquidating trustee in bankruptcy, an examiner, and as attorney for examiners and non-attorney bankruptcy trustees.

6.      I served as the court-appointed receiver in the case of *State of North Carolina ex rel. Roy Cooper, Attorney General vs. Peerless Real Estate Services, Inc., et al*, 07-CVS-009006, Wake County, North Carolina, Superior Court, which case is now closed.  The firm of Rayburn, Cooper & Durham, P.A. ("RCD") represented me as litigation counsel in that case.  RCD represents the debtors in the Garlock Bankruptcy Case; however, there is no connection between the Garlock Bankruptcy Case or this case and the state-court *Peerless Real Estate* matter.

7.      A. Cotten Wright ("Wright") of the Firm appeared in the Garlock Bankruptcy Case as local counsel for Natalie Ramsey of the firm of Montgomery, McCracken, Walker & Rhoads, LLP ("Montgomery McCracken") in representing two law firms whose personal injury clients were subsequently appointed to the Garlock Committee, namely Kazan McClain Lyons Greenwood & Harley and Belluck & Fox LLP.  This brief representation was limited to appearing at two hearings: the June 8, 2010 hearing on first day motions and the June 15, 2010 hearing regarding appointment of the Garlock Committee.  The Firm issued and was paid on an invoice to Montgomery McCracken for fees and expenses totaling $3,778.08 for providing assistance as local counsel.  The Firm has reviewed its files and concluded that this representation does not constitute a conflict that would prevent my serving as the Coltec FCR in this case.

8.      After the Court entered its June 17, 2010 Order appointing the Garlock Committee, Wright introduced the Garlock Committee's proposed counsel, Trevor W. Swett, III of Caplin & Drysdale, at a hearing on June 21, 2010.  The Firm did not bill for this courtesy, and the Firm has concluded that it does not give rise to a conflict that would prevent my serving as the Coltec FCR in this case.

9.      The Court appointed me as the Garlock FCR in the Garlock Bankruptcy Case on September 16, 2010.  For over six years, I, as the Garlock FCR, have become familiar with the issues important to future asbestos claimants and have been intimately involved in the litigation and negotiations that led to the Comprehensive Settlement and negotiation of the Joint Plan.  Further, I am a party to the Comprehensive Settlement as *ad hoc* representative for the Future Coltec Asbestos Claimants.  Because the interests of the future GST Asbestos Claimants and the Future Coltec Asbestos Claimants are substantially aligned, I do not believe my prior and ongoing role as the Garlock FCR gives rise to a conflict that would prevent me from simultaneously serving as the Coltec FCR in this case.

10.      Accordingly, insofar as I have been able to ascertain, except as otherwise disclosed herein, neither I, the Firm, nor any member or associate thereof, has any connection with Coltec, its estate, or any other party in interest, its respective attorneys and accountants, the Bankruptcy Administrator, or any person employed in the office of the Bankruptcy Administrator.  Further, neither I, the Firm, nor any member or associate thereof, insofar as I have been able to ascertain, represents any interest adverse to that of Coltec, its estate, or any other party in interest in this case.

11.      My current hourly billing rate for the Garlock Bankruptcy Case is $550.  If appointed as the Coltec FCR, I will seek reimbursement of my fees at this same hourly rate

9311467v5

(subject to any increases based on my billing judgment) and expenses, as allowed pursuant to the Bankruptcy Code, the Bankruptcy Rules and the rules and orders of this Court.

12.     In addition, if appointed by the Court, I anticipate that, with Court approval, I will engage the Firm as one of my professionals.  The billing rates for the Firm range from $360 to $550 per hour for members, $250 to $340 for associates, and $160 for paraprofessionals.  The current hourly rates in the Garlock Bankruptcy Case of the attorneys likely to work on this matter are as follows:

| Name | Title | Billing Rate |
|------|-------|--------------|
| Joseph W. Grier, III | Member | $550 per hour |
| A. Cotten Wright | Member | $360 per hour |
| Anna S. Gorman | Staff Attorney | $340 per hour |
| Michael L. Martinez | Associate | $250 per hour |

The Firm may assign other attorneys or paraprofessionals to work on this matter, if necessary, at their current, regular billing rates.  If the Firm is approved by the Court to represent me as the Coltec FCR, it will seek reimbursement of fees, based on the current rates used in the Garlock Bankruptcy Case (subject to any increases based on the Firm's billing judgment), and expenses, as allowed pursuant to the Bankruptcy Code, the Bankruptcy Rules and the rules and orders of this Court.

13.     It is the Firm's policy to charge for all expenses incurred during the course of a representation.  These expenses include, among other things, telephone and telecopier charges, mail and express mail charges, special or hand-delivery charges, document processing, photocopying charges, charges for mailing supplies provided by me to outside copying services, travel expenses, online research expenses, transcription costs, as well as ordinary overhead expenses such as secretarial and other overtime.  If the Firm's engagement is approved, it will

4

charge the Coltec FCR for these expenses in a manner and at rates consistent with charges made generally to the Firm's other clients. The Firm will seek reimbursement of its fees and expenses as allowed pursuant to the Bankruptcy Code, the Bankruptcy Rules and the rules and orders of this Court.

14.     If appointed, it is my intention to engage other professionals to assist me in performing my duties as the Coltec FCR. In particular, I would seek Court approval to engage Orrick, Herrington & Sutcliffe LLP, the law firm that represents me as the Garlock FCR in the Garlock Bankruptcy Case. I also may seek approval to hire other professionals who have experience with asbestos bankruptcy cases. Any such engagements shall be made through application to this Court, and any fees or expenses associated with such engagements shall be subject to this Court's review and approval, after notice and opportunity for hearing.

15.     Based on the information available to me, and except as otherwise described herein, I hold no interest adverse to Coltec and its estate, or to any other party in interest in Coltec's case, that would preclude my appointment as the Coltec FCR. Likewise, based on the information available to me, and except as otherwise described herein, the Firm holds no interest adverse to Coltec and its estate, or to any other party in interest in Coltec's case, that would preclude me from engaging the Firm as among my legal counsel should I be appointed as the Coltec FCR.

[remainder of page left blank intentionally –
signature page of declarant follows]

5

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

This the 30th day of January, 2017.

*/s/ Joseph W. Grier, III*
Joseph W. Grier, III (N.C. Bar No. 7764)
Grier Furr & Crisp, PA
101 North Tryon Street, Suite 1240
Charlotte, North Carolina 28246
704.375.3720
jgrier@grierlaw.com

9311467v5

# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division**

| | |
|---|---|
| IN RE: | Case No. 17-BK- 30140 |
| OLDCO, LLC, SUCCESSOR BY MERGER TO COLTEC INDUSTRIES INC, | Chapter 11 |
| Debtor. | |

**ORDER GRANTING DEBTORS' MOTION TO APPOINT
JOSEPH W. GRIER, III AS FUTURE ASBESTOS CLAIMANTS' REPRESENTATIVE**

Upon the Debtor's Motion To Appoint Joseph W. Grier, III as Future Asbestos Claimants' Representative (the "Motion"); and it appearing that the relief requested in the Motion is in the best interests of Coltec,[1] its estate, its creditors and other parties in interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. §157; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and upon consideration of the First Day Declaration and the Grier Declaration; and after due deliberation thereon; and good and sufficient cause appearing therefor;

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed in the Motion.

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      Pursuant to sections 105(a) and 524(g)(4)(B) of the Bankruptcy Code and the terms and conditions set forth in the Motion and the Grier Declaration, Joseph W. Grier, III, is hereby appointed as the Coltec FCR, effective as of February ___, 2017, to protect the rights of the Future Coltec Asbestos Claimants.  The Coltec FCR shall represent the interests of, appear on behalf of, and be a fiduciary to the Future Coltec Asbestos Claimants.

3.      The Coltec FCR shall be compensated from Coltec's estate and shall be entitled to allowance of compensation for services rendered and reimbursement of expenses incurred, upon the filing and approval of interim and final applications pursuant to the Bankruptcy Code, the Bankruptcy Rules, and applicable rules, orders and procedures of the Court.

4.      The Coltec FCR may employ attorneys and other professionals consistent with sections 1103(a) and (b) of the Bankruptcy Code, subject to approval of the Court. Compensation for professional fees and reimbursement of expenses shall be payable to the Coltec FCR's professionals from Coltec's estate upon the filing and approval of interim and final applications pursuant to the Bankruptcy Code, the Bankruptcy Rules, and applicable rules, orders and procedures of the Court.

5.      The Coltec FCR shall not be liable for any damages, or have any obligation other than as prescribed by order of the Court; provided, however, that the Coltec FCR may be liable for damages caused by willful misconduct or gross negligence.  The Coltec FCR shall not be liable to any person as a result of any action or omission taken or made in good faith.  Subject to the provisions of the Joint Plan, Coltec shall indemnify, defend and hold harmless Mr. Grier, his partners, associates, principals, employees and professionals (individually, an "Indemnified

2

Party") from all claims against any of them, and all losses, claims, damages, or liabilities (or actions in respect thereof) to which any of them may become subject, as a result of or in connection with such party rendering services pursuant to this Order or to the Coltec FCR, unless and until it is finally judicially determined that such losses, claims, damages or liabilities were caused by willful misconduct or gross negligence on the part of such Indemnified Party; provided, however, Coltec's indemnification obligations hereunder shall not apply to any disallowance of any portion of an Indemnified Party's fee application or fees or expenses such Indemnified Party incurs to defend a fee application.  If before the earlier of (i) the entry of an order confirming a plan of reorganization in this case, and such order having become final and no longer subject to appeal, and (ii) the entry of an order closing this chapter 11 case, an Indemnified Party believes that he, she or it is entitled to payment of any amount by Coltec on account of Coltec's obligations to indemnify, defend, and hold harmless as set forth herein, including, without limitation, the advancement of defense costs, the Indemnified Party must file an application for such amounts with the Court, and Coltec may not pay any such amounts to the Indemnified Party before the entry of an order by the Court authorizing such payments.  The preceding sentence is intended to specify the period of time during which the Court has jurisdiction over Coltec's obligations to indemnify, defend and hold harmless as set forth herein, and is not a limitation on the duration of Coltec's obligation to indemnify any Indemnified Party. In the event that a cause of action is asserted against any Indemnified Party arising out of or relating to the performance of his, her or its duties pursuant to this Order or to the Coltec FCR, the Indemnified Party shall have the right to choose his, her or its own counsel.

6.     The Coltec FCR is a party in interest in this case, and shall have standing under section 1109(b) of the Bankruptcy Code to be heard on any issue in this case in the Bankruptcy

9298743v6 25081.00011

Court, the United States District Court for this district, or any other court.  The Coltec FCR shall have the powers and duties of a committee set forth in section 1103 of the Bankruptcy Code as are appropriate for a future asbestos claimants' representative.

7.      The Coltec FCR and his counsel shall be entitled to receive all notices and pleadings that are served pursuant to any and all orders entered in this case and the Garlock Bankruptcy Case.

8.      Any party may request that the Court reconsider entry of this Order by filing a motion for reconsideration within fourteen (14) days of service of this Order.

9.      This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

This Order has been signed electronically.  The judge's                United States Bankruptcy Court
signature and court's seal appear at the top of the Order.

9298743v6 25081.00011