**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division**

| | |
|---|---|
| IN RE:<br><br>OLDCO, LLC, SUCCESSOR BY MERGER<br>TO COLTEC INDUSTRIES INC,<br><br>     Debtor. | Case No. 17-BK-30140<br><br>Chapter 11<br><br>[Joint Administration Pending][1] |

**DEBTOR'S APPLICATION FOR ORDER AUTHORIZING RETENTION AND
EMPLOYMENT OF BATES WHITE, LLC AS ASBESTOS CLAIMS CONSULTANT**

OldCo, LLC, debtor and debtor-in-possession in the above-captioned case and successor by merger to Coltec Industries Inc ("Coltec" or "Debtor"),[2] hereby moves and applies for the Court to enter an Order authorizing the retention and employment of Bates White, LLC ("Bates White") as of the Coltec Petition Date (as defined below) as asbestos claims consultant to Coltec (this "Application").

In making this Application, Coltec relies upon, and incorporates by reference, the Declaration of Dr. Charles Bates, attached hereto as <u>Exhibit A</u> (the "Declaration"), submitted on behalf of Bates White. In further support of this Application, Coltec respectfully states as follows:

**<u>JURISDICTION AND VENUE</u>**

1.      This Court has jurisdiction over this Application under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue of

---

[1] Contemporaneously with filing this Application, Coltec moved to have its chapter 11 case jointly administered with the chapter 11 cases of *In re Garlock Sealing Technologies LLC* (10-BK-31607), *In re Garrison Litigation Management Group, Ltd.* (10-BK-31608) and *In re The Anchor Packing Company* (10-BK-31606), with *In re Garlock Sealing Technologies LLC* serving as the lead case.

[2] For convenience, the term "Coltec" in this Application refers to OldCo, LLC's predecessor, Coltec Industries Inc, when referring to events prior to the Coltec Restructuring and refers to OldCo, LLC when referring to events subsequent to the Coltec Restructuring.

these proceedings and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The statutory bases for the relief requested herein are sections 327(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2014-1 and 2016-1 of the Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Western District of North Carolina (the "Local Rules").

## BACKGROUND

3.     On January 30, 2017 (the "Coltec Petition Date"), Coltec filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Coltec Bankruptcy Case").  Coltec is operating its business and managing its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or creditors' committee has been appointed in the Coltec Bankruptcy Case.

4.     For additional background information regarding Coltec's history and corporate structure and events leading to the Coltec Petition Date, Coltec refers the Court and parties in interest to the Debtors' Motion for Order Directing Joint Administration of Related Chapter 11 Cases filed herein (the "Joint Administration Motion") and the Declaration of Joseph Wheatley in Support of OldCo, LLC's Chapter 11 Petition and First Day Motions filed herein (the "First Day Declaration").[3]

## PROPOSED RETENTION

5.     In this Application, Coltec proposes the employment of Bates White as consultant to advise and consult with Coltec about asbestos personal injury claims. Section 327(a) of the

---

[3]  Unless defined in this Application, capitalized terms have the meanings ascribed to them in the Joint Plan and the Joint Administration Motion.

Bankruptcy Code permits Coltec to retain experts and consultants, with Court approval, to assist in carrying out its duties as a debtor-in-possession under the Bankruptcy Code. Coltec intends to compensate Bates White on an hourly basis, plus pay properly reimbursable expenses and out-of-pocket costs as an expense of administration, or in accordance with any order of this Court.

## BATES WHITE'S QUALIFICATIONS

6.    Bates White is a consulting firm that provides, among other things, economic analytical services regarding mass tort claims.  Bates White is well-qualified to serve as Coltec's asbestos claims consultant in that, among other things, its members have assisted and advised numerous companies in estimating the cost of resolution of claims in other mass tort-related reorganizations. Bates White has provided these services to parties in numerous chapter 11 cases, as described in more detail in the Declaration.  Significantly, Bates White has been employed by the debtors in the Garlock Bankruptcy Case (D.E. 265), which are affiliates of Coltec, to advise and consult on the same subjects proposed in this Application and has been instrumental in advising those debtors, and Coltec, regarding the formulation, structure, and negotiation of the Joint Plan. Retaining and continuing to use the services of Bates White will result in considerable efficiencies in connection with proceedings for consideration and confirmation of the Joint Plan.

## SERVICES TO BE PROVIDED BY BATES WHITE

7.    Coltec anticipates that Bates White will render consulting services as needed throughout the Coltec Bankruptcy Case, including:

(a)    Estimating the number and resolution cost of present and future asbestos personal injury claims;

(b)    Rendering expert testimony as required by Coltec and as necessary in the Coltec Bankruptcy Case;

9395453v6

(c)    Assisting Coltec in preparing expert testimony or reports, and in evaluating reports and testimony by other claims experts and consultants; and

(d)    Such other advisory services as Coltec may request.

8.    Because of Bates White's qualifications, its experience in the Garlock Bankruptcy Case and with Coltec, and Coltec's need for the aforementioned services, Coltec submits that its retention and employment of Bates White is in the best interests of Coltec and its estate.

## BATES WHITE'S COMPENSATION

9.    Bates White has agreed to accept as compensation for its services in the Coltec Bankruptcy Case such sums as may be allowed by this Court and in accordance with law, based on the services rendered, the difficulties encountered, the complexities involved, and other appropriate factors.

10.    Bates White has agreed to be compensated for its services on an hourly basis, in accordance with its normal billing practices, subject to allowance by this Court and in accordance with applicable law.  Dr. Charles Bates' negotiated rate will be $900.00 per hour for this matter.  Bates White's staff hourly rates range from $175.00 to $1,250.00.

11.    In addition, Bates White shall submit for reimbursement all reasonable out-of-pocket expenses incurred in connection with its employment, subject to allowance by this Court and in accordance with applicable law.

## APPROVAL OF THE TERMS OF BATES WHITE'S ENGAGEMENT
## PURSUANT TO SECTION 328(a) OF THE BANKRUPTCY CODE

12.    Coltec requests approval of the terms of Bates White's engagement, subject to the standard of review provided in section 328(a) of the Bankruptcy Code, which provides in relevant part that a debtor-in-possession, "with the court's approval, may employ or authorize the employment of a professional under section 327 . . . on any reasonable terms and conditions of

4

employment, including a retainer, on an hourly basis, or on a contingent fee basis."

13.    Coltec believes Bates White's proposed fee structure is reasonable and should be approved under section 328(a) of the Bankruptcy Code.  The fee structure, which is typically utilized by Bates White and other leading consultants, appropriately reflects the nature of the services Bates White will provide, and it is reasonable, given (a) industry practice, (b) market rates charged for comparable services both in and out of the chapter 11 context, (c) Bates White's substantial experience with respect to identifying and estimating the amount of asbestos personal injury claims, and (d) the nature and scope of work to be performed by Bates White in the Coltec Bankruptcy Case.

14.    Subject to the foregoing, including the standards imposed by section 328(a) of the Bankruptcy Code, Bates White will seek awards of compensation and expenses pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules and orders of this Court.

### DISCLOSURE CONCERNING CONFLICTS AND PREPETITION PAYMENTS

15.    Bates White has informed Coltec that, except as described in the Declaration, Bates White (a) does not have or represent any interest materially adverse to the interests of Coltec or its estate, creditors, or interest holders, and (b) is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

16.    In the twelve months before the Coltec Petition Date, Bates White received from Coltec or its affiliates a total of $150,000.00 in payments for services rendered (excluding payments for work in the Garlock Bankruptcy Case), including the payment on January 27, 2017 of a $150,000.00 retainer fee from Coltec to secure the payment of fees and expenses.

17.    As set forth in the Declaration, Bates White has neither shared nor agreed to share

9395453v6

any of its compensation with any other person, other than a managing director, professional, or employee of Bates White, as permitted by section 504 of the Bankruptcy Code.

18.     Accordingly, Coltec submits that the employment of Bates White would be in the best interests of Coltec and its estate.

## NOTICE

19.     No trustee, examiner, or creditors' committee has been appointed in the Coltec Bankruptcy Case.  Coltec has served notice of this Application on (a) the Ad Hoc Committee; (b) the Garlock Committee; (c) Mr. Grier, in his capacity as the proposed legal representative for future Coltec Asbestos Claimants and the Future Asbestos Claimants' Representative in the Garlock Bankruptcy Case; (d) the Office of the United States Bankruptcy Administrator for the Western District of North Carolina; and (e) to the extent not set forth above, the parties listed on the updated Master Service List in the Garlock Bankruptcy Case (D.E. 5655) and any party that has filed a request for notices under Bankruptcy Rule 2002 since the filing of the updated Master Service List, and submits that, given the nature of the relief requested, no other or further notice need be given. No previous application for the relief requested herein has been made by Coltec to this or any other court.

WHEREFORE, Coltec respectfully requests that the Court enter an Order, substantially in the form attached hereto as <u>Exhibit B</u>, (a) authorizing Coltec to retain and employ Bates White as asbestos claims consultant, effective as of the Coltec Petition Date, to advise and consult with Coltec as set forth in this Application and (b) granting such other relief as the Court deems just and proper.

[remainder of page left blank intentionally –
signature page of Coltec follows]

This the 30th day of January, 2017.

OLDCO, LLC

By:     Joseph Wheatley
Its:     President and Treasurer

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division**

| | |
|---|---|
| IN RE:<br><br>OLDCO, LLC, SUCCESSOR BY MERGER TO COLTEC INDUSTRIES INC,<br><br>       Debtor. | Case No. 17-BK- 30140<br><br>Chapter 11<br><br>[Joint Administration Pending][1] |

**DECLARATION OF DR. CHARLES E. BATES IN SUPPORT OF DEBTOR'S APPLICATION FOR ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF BATES WHITE, LLC AS ASBESTOS CLAIMS CONSULTANT**

I, Charles E. Bates, hereby declare that the following is true and correct:

1.      I am Chairman of the firm of Bates White, LLC ("Bates White"), which maintains an office at 1300 Eye Street, NW, Suite 600 Washington, DC 20005.  A copy of my curriculum vitae is attached hereto as Exhibit A.

2.      This Declaration is being submitted in support of the Debtor's Application for Order Authorizing the Retention and Employment of Bates White, LLC as Asbestos Claims Consultant (the "Application").

3.      Bates White is a consulting firm that provides, among other things, economic analytical services regarding mass tort claims.  Bates White is well-qualified to serve as Coltec's[2] asbestos claims consultant because (among other things) it has significant experience advising parties on the estimation of tort claims in mass tort-related reorganizations of companies under

---

[1]  Contemporaneously with filing this Declaration, OldCo, LLC moved to have its chapter 11 case jointly administered with the chapter 11 cases of *In re Garlock Sealing Technologies LLC* (10-BK-31607), *In re Garrison Litigation Management Group, Ltd.* (10-BK-31608) and *In re The Anchor Packing Company* (10-BK-31606), with *In re Garlock Sealing Technologies LLC* serving as the lead case.

[2]  For convenience, the term "Coltec" in this Declaration refers to OldCo, LLC's predecessor, Coltec Industries Inc, when referring to events prior to the Coltec Restructuring and refers to OldCo, LLC when referring to events subsequent to the Coltec Restructuring.

chapter 11 of the Bankruptcy Code.  Those companies include:  Bondex International, Motors Liquidation Company, Asarco, Kaiser Aluminum & Chemical Corporation, Plibrico Company, Owens Corning, Federal Mogul Corporation, Babcock & Wilcox Company, Armstrong World Industries, and Sealed Air Corporation.

4.      Significantly, Bates White has served as consultant and expert witness for the debtors in the Garlock Bankruptcy Case (D.E. 265),[3] which are affiliates of Coltec.  Bates White has assisted the debtors in the Garlock Bankruptcy Case with respect to the same tasks and the same subjects as are now proposed for its retention by Coltec. Specifically, Bates White has assisted the debtors in the Garlock Bankruptcy Case and Coltec in the negotiation, formulation, and structuring of the Joint Plan of which Coltec is a co-proponent.

### Terms of Bates White's Retention

5.      Coltec anticipates that Bates White will render consulting services as needed throughout the Coltec Bankruptcy Case, including:

(a)      Estimating the number and resolution cost of present and future asbestos personal injury claims;

(b)      Rendering expert testimony as required by Coltec and as necessary in the Coltec Bankruptcy Case;

(c)      Assisting Coltec in preparing expert testimony or reports, and in evaluating reports and testimony by other claims experts and consultants; and

(d)      Such other advisory services as Coltec may request.

### Bates White's Compensation

6.      Bates White has agreed to accept as compensation for its services in the Coltec

---

[3] Any capitalized terms not defined herein shall have the meaning attributed to them in the Application.

Bankruptcy Case such sums as may be allowed by this Court and in accordance with law, based on the services rendered, the difficulties encountered, the complexities involved, and other appropriate factors.

7.      Bates White has agreed to be compensated for its services on an hourly basis, in accordance with its normal billing practices, subject to allowance by this Court and in accordance with applicable law.  I will charge Coltec a negotiated rate of $900.00 per hour for my work in the Coltec Bankruptcy Case.  Bates White also will employ other staff to provide the services described herein to Coltec when and as needed.   Bates White's staff hourly rates range from $175.00 to $1,250.00.

8.      In addition, Bates White shall submit for reimbursement all reasonable out-of-pocket expenses incurred in connection with its employment, subject to allowance by this Court and in accordance with applicable law.

9.      No promises have been received by Bates White as to compensation in connection with the Coltec Bankruptcy Case other than as outlined in this Declaration and the Application in accordance with the provisions of the Bankruptcy Code.  Bates White has no agreement with any other entity to share any compensation received.

10.     The terms of Bates White's employment and compensation as described in this Declaration and the Application are consistent with employment and compensation arrangements typically entered into by Bates White when providing such advisory services, and are competitive with those arrangements entered into by other advisory firms when rendering comparable services.

11.     In the twelve months before the Coltec Petition Date, Bates White received from Coltec or its affiliates a total of $150,000.00 in payments for services rendered (excluding payments in connection with the Garlock Bankruptcy Case), including the payment on January 27,

2017 of a $150,000.00 retainer fee from Coltec to secure the payment of fees and expenses.

### Disclosure Concerning Conflicts

12.     To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after due inquiry, in the Coltec Bankruptcy Case, except for pre-Petition work for Coltec and its affiliates, work in the Garlock Bankruptcy Case and earlier related work for Garlock and its affiliates, the members and professionals of Bates White do not have any connections with and do not have or work on behalf of any interest materially adverse to the interests of Coltec, its creditors, any other parties in interest, Coltec's respective attorneys or accountants, the Office of the United States Bankruptcy Administrator for the Western District of North Carolina (the "Bankruptcy Administrator"), or any person employed by the Bankruptcy Administrator, in matters that are substantively related to the Coltec Bankruptcy Case.

13.     However, given the issues involved and the possible number of parties in interest in the Coltec Bankruptcy Case, there may be parties in interest that have been served by Bates White.  While Bates White may have provided, or may in the future provide, services to parties in interest in the Coltec Bankruptcy Case, except as set forth above, none of those relationships or matters has been or will be substantively related to the Coltec Bankruptcy Case.  A list of parties in interest for which Bates White previously has provided, or currently is providing, consulting services that are substantively unrelated to the Coltec Bankruptcy Case is attached hereto as Exhibit B.[4]  Bates White will file supplementary declarations regarding its retention if additional relevant information is obtained.

14.     Bates White is not and was never a creditor, an equity security holder, or an insider of Coltec.

---

[4] For completeness of work for parties in interest, we have included EnPro Industries, Inc., Garlock Sealing Technologies LLC and affiliates, Old Co., LLC, and Coltec Industries Inc. on Exhibit B.

15.     Bates White is not and was not, within two years before the Coltec Petition Date, a director, officer, or employee of Coltec.

16.     Accordingly, to the best of my knowledge, information, and belief, Bates White is a "disinterested person" as such term is defined by section 101(14) of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

This the 30th day of January, 2017.

_____
Dr. Charles E. Bates

# Exhibit A

**Curriculum Vitae of Dr. Charles E. Bates**

**BATES WHITE**
ECONOMIC CONSULTING

1300 Eye Street NW, Suite 600, Washington, DC 20005   **main** 202.408.6110   **fax** 202.408.7838



# CHARLES E. BATES, PHD
Chairman

**AREAS OF EXPERTISE**

- Asbestos liability estimation
- Economic analysis
- Econometrics
- Statistical analysis
- Microsimulation modeling
- Database design/applications

## SUMMARY OF EXPERIENCE

Charles E. Bates has extensive experience in statistics, econometric modeling, and economic analysis. He specializes in the application of statistics and computer modeling to economic and financial issues. Dr. Bates has more than 20 years of experience and provides clients with a wide range of litigation and commercial consulting services, including expert testimony and guidance on economic and statistical issues.

Dr. Bates is a recognized expert in asbestos-related matters. He speaks in national and international forums on the asbestos litigation environment and estimation issues. Dr. Bates is frequently retained to serve as an expert on such matters in large litigations and has testified before the United States Senate Judiciary Committee and Federal Bankruptcy Court.

## SELECTED ASBESTOS AND PRODUCT LIABILITY EXPERIENCE

- Served as an asbestos liability valuation expert on behalf of Garlock Sealing Technologies in its bankruptcy proceedings. Testified before the US Bankruptcy Court for the Western District of North Carolina both in preliminary case hearings and at trial.

- Served as an asbestos liability valuation expert on behalf of Specialty Products Holding Corp./Bondex International in its bankruptcy proceedings.

- Retained as an asbestos liability valuation expert on behalf of the Official Committee of Unsecured Creditors of Motors Liquidation Company (f/k/a General Motors Corporation) in its bankruptcy proceedings.

- Authored expert report and provided deposition testimony regarding the value of diacetyl claims on behalf of the Official Committee of Equity Security Holders in the Chemtura Corporation bankruptcy proceedings.

- Testified in deposition on behalf of the ASARCO Unsecured Creditors Committee in the ASARCO bankruptcy proceedings regarding the valuation of past and future asbestos-related personal injury claims.

- Authored expert report and provided deposition testimony on behalf of the policyholder in the matter of *Imo Industries, Inc. v. Transamerica Corp.*

- Currently retained as an expert by Fortune 500 companies to produce asbestos expenditure estimates for annual and quarterly financial statements. Estimations aid clients with Sarbanes-Oxley compliance.

- Currently retained as an expert in asbestos estimation and insurance valuation, for numerous asbestos litigation matters, on behalf of insurance companies, corporations, and financial creditors' committees of federal bankruptcy proceedings.

- Testified before the Senate Judiciary Committee on the economic viability of the Trust Fund proposed under S.852, the Fairness in Asbestos Injury Resolution (FAIR) Act of 2005. Testimony clarified Bates White's independent analysis on the estimate of potential entitlements created by the administrative no-fault trust fund that uses medical criteria for claims-filing eligibility.

- Testified in deposition on behalf of Liberty Mutual Insurance Company in the Plibrico bankruptcy proceedings regarding the valuation of past and future asbestos personal injury claims and exposure criteria in plan proponents proposed trust distribution procedures.

- Testified at deposition on behalf of the joint insurers defense committee to address the fraction of expenditures associated with the company's asbestos installation operations in *Owens Corning v. Birmingham Fire Insurance Company of Pennsylvania*.

- Testified in the Babcock & Wilcox bankruptcy confirmation hearing on behalf of the Insurers Joint Defense Group to address asbestos liability. Developed claims criteria evaluation framework to assess asbestos liability forecasts and trust distribution procedures.

- Testified at deposition on behalf of Sealed Air in the fraudulent conveyance matter regarding the 1998 acquisition of Cryovac from W.R. Grace. Directed estimation of foreseeable asbestos liability for fraudulent conveyance matter to advise the debtor in the bankruptcy of a defendant with over $200 million in annual asbestos payments. Developed asbestos liability forecasting model and software. Directed industry research and interviewed industry experts.

- Testified at deposition on behalf of Hartford Financial Services Group to address the asbestos liability of MacArthur Company and Western MacArthur Company. Estimated asbestos liability in the context of bankruptcy proceedings.

- Testified at deposition on behalf of the Center for Claims Resolution in arbitration proceedings of *GAF v. Center for Claims Resolution*.

- Served as testifying expert on behalf of CSX Transportation on the suitability of asbestos claim settlements for arbitration proceedings of *CSX Transportation, Inc. v. Lloyd's, London*.

- Developed an econometric model of property damage lawsuits for estimating the future liability of a former asbestos manufacturer arising from the presence of its asbestos products in buildings.

## SELECTED LITIGATION AND CONSULTING EXPERIENCE

- Testified in United States Tax Court on behalf of the taxpayers on the statistical basis and accuracy of shrinkage accruals in *Kroger v. Commissioner.*

- Served as consulting expert and performed statistical and quantitative analyses to assess the merits of a class action alleging payment of fees to mortgage brokers for referral of federally related mortgage loans.

- Testified in United States Tax Court on behalf of the taxpayer analyzing the statistical prediction of bond ratings using company financial data in *Nestlé Holdings Inc. v. Commissioner.*

- Submitted written expert testimony on the statistical and financial analysis of option transactions and an analysis of alternative stock option hedges in *McMahon, Brafman, and Morgan v. Commissioner.*

- Testified in United States Tax Court on behalf of the taxpayers of IRS experts on the statistical basis and accuracy of shrinkage accruals in *Wal-Mart v. Commissioner.*

- Served as consulting expert and analyzed the racial composition for a large manufacturing corporation using EEO data and employed sophisticated statistical analysis and modeling to determine the validity and strength of an employment discrimination claim.

- Testified on behalf of VNC in the arbitration hearing of *VNC v. MedPartners.*

- Provided expert testimony in California Superior Court on the validity of economic comparability adjustments for pipeline easement rents in *Southern Pacific Transportation Corp. v. Santa Fe Pacific Corp.*

- Served as statistical expert and developed detailed statistical analysis of customs trade data for use in criminal transfer-pricing litigation.

- Submitted written testimony in United States Tax Court on the beneficial life of company credit card in a tax matter for a large retailer drawing on the company's point-of-sale data, credit card data, and customer demographic information.

- Developed state-of-the-art models to account for default correlation for underwriting credit insurance; models became the standard tools for the country's largest credit insurance firm.

- Led a team of economists that provided litigation-consulting services in one of the largest US price-fixing cases. Case involved the development of state-of-the-art economic models, damages' analyses, client presentations, pretrial discovery, industry research, preparation of evidence and testimony, depositions, and a critique of opposing expert analyses and reports.

- For a start-up global telecommunications enterprise, provided consulting services and developed a comprehensive computer model to evaluate the firm's financial plan. Model incorporated marketing, pricing, and communications traffic in a single modeling framework to facilitate sensitivity analysis by creditors and to evaluate the risk associated with the strategic business plan.

- Served as senior economic advisor on issues of analytical methodology for numerous pharmacoeconometric and health outcomes research projects. Provided expertise in the development of decision tools and the creative use of modeling applications for pharmacoeconomics and outcomes research.

## PROFESSIONAL EXPERIENCE

Prior to founding Bates White, Dr. Bates served as a Vice President of A.T. Kearney. Previously, he was the Partner in Charge of the Economic Analysis group at KPMG. Dr. Bates began his career on the faculty of Johns Hopkins University's Department of Economics, where he taught courses in advanced statistical economic analysis and trade theory.

## EDUCATION

- Harvard School of Public Health, Advanced Seminar in Pharmacoeconomics
- PhD, Economics, University of Rochester
- MA, Economics, University of Rochester
- BA, Economics and Mathematics (High Honors), University of California, San Diego

## PUBLICATIONS

- Bates, Charles E., Charles H. Mullin, and Marc C. Scarcella. "The Claiming Game." *Mealey's Litigation Report: Asbestos* 25, no. 1 (February 3, 2010).

- Bates, Charles E., Charles H. Mullin, and A. Rachel Marquardt. "The Naming Game." *Mealey's Litigation Report: Asbestos* 24, no. 15 (September 2, 2009).

- Bates, Charles E., and Charles H. Mullin. "State Of The Asbestos Litigation Environment — October 2008." Mealey's Litigation Report: Asbestos 23, no. 19 (November 3, 2008).

- Bates, Charles E., and Charles H. Mullin. "Show Me The Money." *Mealey's Litigation Report: Asbestos* 22, no. 21 (December 3, 2007).

- Bates, Charles E., and Charles H. Mullin. "The Bankruptcy Wave Of 2000—Companies Sunk By An Ocean Of Recruited Asbestos Claims." *Mealey's Litigation Report: Asbestos* 21, no. 24 (January 24, 2007).

- Bates, Charles E., and Charles H. Mullin. "Having Your Tort and Eating It Too?" *Mealey's Asbestos Bankruptcy Report* 6, no. 4 (November 2006).

- Bates, Charles E., and Halbert White. "Determination of Estimator with Minimum Asymptotic Covariance Matrices." *Econometric Theory* 9 (1993).

- Bates, Charles E., and Halbert White. "Efficient Instrumental Variables Estimation of Systems of Implicit Heterogeneous Nonlinear Dynamic Models with Nonspherical Errors." In *International Symposia in Economic Theory and Econometrics,* vol. 3, edited by W.A. Barnett, E.R. Berndt and H. White. New York: Cambridge University Press, 1988.

- Bates, Charles E. "Instrumental Variables." In *The New Palgrave: A Dictionary of Economics,* edited by John Eatwell, Murray Milgate, and Peter Newman. London: Macmillan, 1987.

- Bates, Charles E., and Halbert White. "An Asymptotic Theory of Consistent Estimation for Parametric Models." *Econometric Theory* 1 (1985).

## SELECTED SPEAKING ENGAGEMENTS

- "The Top Emerging Trends in 2015 Asbestos Litigation." Perrin Conferences Cutting-Edge Issues in Asbestos Litigation Conference, March 15–17, 2015.

- "Asbestos Bankruptcy: A Discussion of the Top Trends in Today's Chapter 11 Cases." Perrin Conferences Asbestos Litigation Conference: A National Overview & Outlook, Sept. 8–10, 2014.

- "An asbestos defendant's legal liability—the experience in Garlock's bankruptcy asbestos estimation trial." Bates White webinar, July 29, 2014.

- "Concussion Suits Against the NFL, NCAA, and Uniform Equipment Manufacturers." Perrin Conferences' Legal Webinar Series, May 24, 2012.

- "An Update on US Mass Tort Claims." Perrin Conferences' Emerging Risks on Dual Frontiers: Perspectives on Potential Liabilities in the New Decade, April 12–13, 2012, London, United Kingdom.

- "The Next Chapter of Asbestos Bankruptcy: New Filings, Confirmations, & Estimations." Perrin Conferences' Asbestos Litigation Conference: A National Overview & Outlook, September 13–15, 2010, San Francisco, CA.

- "Trust Online: The Impact of Asbestos Bankruptcies on the Tort System." Perrin Conferences' Asbestos Bankruptcy Conference: Featuring a Judicial Roundtable on Asbestos Compensation, June 21, 2010, Chicago, IL.

- "Current Litigation Trends that are Impacting Asbestos Plaintiffs, Defendants, & Insurers." Perrin Conferences' Asbestos Litigation Mega Conference, September 14–16, 2009, San Francisco, CA.

- "Verdicts, Settlements, and the Future of Values: Where Are We Heading? A Roundtable Discussion." HB Litigation Conferences' Emerging Trends in Asbestos Litigation, March 9–11, 2009, Los Angeles, CA.

- "Role of Bankruptcy Trusts in Civil Asbestos." Mealey's Emerging Trends in Asbestos Litigation Conference, March 3–5, 2008, Los Angeles, CA.

- "The Intersection between Traditional Litigation & the New Bankruptcy Trusts." Mealey's Asbestos Bankruptcy Conference, June 7–8, 2007, Chicago, IL.

- ABA's Insurance Coverage Litigation Committee Conference, March 1–4, 2007, Tucson, AZ.

- Mealey's Asbestos Conference: The New Face of Asbestos Litigation, February 8–9, 2007, Washington, DC.

- Mealey's Asbestos Bankruptcy Conference, December 4–5, 2006, Philadelphia, PA.

- "Seeking Solutions to European Asbestos Claiming: Will it be FAIR?" Keynote address, Mealey's International Asbestos Conference, November 1–2, 2006, London, United Kingdom.

- Mealey's Asbestos Bankruptcy Conference, June 9, 2006, Chicago, IL.

- Harris Martin Publishing Asbestos Litigation Conference, March 2, 2006, Washington, DC.

- Mealey's Wall Street Forum: Asbestos Conference, February 8, 2006, New York, NY.

- Mealey's Asbestos Legislation Teleconference, February 7, 2006.

## PROFESSIONAL ASSOCIATIONS

- National Association of Business Economists

- American Economic Association

- Econometric Society

# Exhibit B

# Parties in Interest for whom Bates White has previously or currently is providing consulting services

EnPro Industries, Inc.

Garlock Sealing Technologies LLC and affiliates

Old Co., LLC

Coltec Industries Inc.

AIU Insurance Company

ACE

Arrowood Indemnity Co. f/k/a Royal Indemnity Co.

Centennial Insurance

Century Indemnity Company

Brittany Insurance Company Ltd.

California Union Insurance Company

Duke Energy

Employers Insurance Co. of Wausau

Entergy Nuclear Operations

Fireman's Fund

Certain Underwriters at Lloyds London

Virginia Electric and Power Company d/b/a Dominion Virginia Power

Prudential Reinsurance n/k/a Allstate Insurance Co.

Exelon

Gibraltar Casualty Company

Insurance Company of the State of Pennsylvania

Travelers Insurance

Securities and Exchange Commission

SPX Corporation

Hartford Accident & Indemnity Company

American Home Assurance Company

National Union Fire Insurance Company of Pittsburgh, PA

New England Reinsurance Company

North Star Reinsurance n/k/a General Reinsurance Corp.

Everest Reinsurance Company

Prudential Reinsurance Company

Puritan Insurance Company

Republic Insurance Company n/k/a Starr Indemnity

North River Insurance Company

Continental Insurance Company

Constellation Energy Group

The Aetna Casualty and Surety Company

Allstate Insurance Company (successor to Northbrook)

Insurance Company of North America

Transport Indemnity

Pentair

TIG Insurance Company (as successor to International Insurance)

Granite State Insurance Company

Lexington Insurance Company

Highlands Insurance Company

AIG

Transit Casualty Insurance Company

Employers' Mutual Casualty Company

American Excess Insurance Company

Westport Insurance Corporation

Zurich Insurance

# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division**

IN RE:

OLDCO, LLC, SUCCESSOR BY MERGER
TO COLTEC INDUSTRIES INC,

      Debtor.

Case No. 17-BK-30140

Chapter 11

**ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF
BATES WHITE, LLC AS ASBESTOS CLAIMS CONSULTANT**

Upon the Debtor's Application for Order Authorizing Retention and Employment of Bates White, LLC as Asbestos Claims Consultant (the "Application") as of the Coltec Petition Date;[1] and the Court being satisfied, based upon the representations made in the Application and the Declaration, that Bates White represents or holds no interest adverse to Coltec or its estate as to the matters upon which Bates White is to be engaged, and that Bates White is disinterested under the meaning of section 101(14) of the Bankruptcy Code, and that engagement of Bates White is necessary and would be in the best interests of Coltec and its estate; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157; and it appearing that proper

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed in the Application.

and adequate notice of the Application has been given and that no other or further notice is

necessary; and good and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Application is GRANTED;

2.      In accordance with sections 327(a) and 328(a) of the Bankruptcy Code and

Bankruptcy Rules 2014(a) and 2016, Coltec is authorized to retain and employ,

effective as of the Coltec Petition Date, Bates White as its consultant for the

purpose of providing claims consulting, valuation, and other related claims-

related services in connection with the Coltec Bankruptcy Case, and in

accordance with the terms specified in the Application; and

3.      Due to the joint administration of the Garlock Bankruptcy Case and the Coltec

Bankruptcy Case, the compensation to be paid to Bates White for professional

services rendered and reimbursement for expenses incurred by it shall be as

determined by this Court upon proper application pursuant to sections 328, 330

and 331 of the Bankruptcy Code and such other procedures as may be fixed by

order of this Court.

This Order has been signed electronically.  The judge's                United States Bankruptcy Court
signature and court's seal appear at the top of the Order.

9395456v4