**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division**

| | |
|---|---|
| IN RE:<br><br>OLDCO, LLC, SUCCESSOR BY MERGER TO COLTEC INDUSTRIES INC,<br><br>      Debtor. | Case No. 17-BK- 30140<br><br>Chapter 11<br><br>[Joint Administration Pending][1] |

## DEBTOR'S APPLICATION FOR ORDER APPOINTING RUST CONSULTING/OMNI BANKRUPTCY AS CLAIMS, BALLOT, AND NOTICE AGENT

OldCo, LLC, debtor and debtor-in-possession in the above-captioned case and successor by merger to Coltec Industries Inc ("Coltec" or "Debtor"),[2] hereby moves and applies for the Court to enter an Order authorizing the retention and employment of Rust Consulting / Omni Bankruptcy ("Rust") as claims, balloting, and noticing agent for the Coltec Bankruptcy Case (this "Application").

In making this Application, Coltec relies upon, and incorporates by reference, the Declaration of Paul Deutch, attached hereto as Exhibit A (the "Declaration"), submitted on behalf of Rust. In further support of this Application, Coltec respectfully states as follows:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction over this Application under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue of these proceedings and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408

---

[1]   Contemporaneously with filing this Application, Coltec moved to have its chapter 11 case jointly administered with the chapter 11 cases of *In re Garlock Sealing Technologies LLC* (10-BK-31607), *In re Garrison Litigation Management Group, Ltd.* (10-BK-31608) and *In re The Anchor Packing Company* (10-BK-31606), with *In re Garlock Sealing Technologies LLC* serving as the lead case.

[2]   For convenience, the term "Coltec" in this Motion refers to OldCo, LLC's predecessor, Coltec Industries Inc, when referring to events prior to the Coltec Restructuring (described in the Joint Administration Motion) and refers to OldCo, LLC when referring to events subsequent to the Coltec Restructuring.

and 1409.

2.      The statutory bases for the relief requested herein are section 156(c) of title 28 of the United States Code, section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1(f) and 2014-1 of the Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Western District of North Carolina (the "Local Rules").

## BACKGROUND

3.      On January 30, 2017 (the "Coltec Petition Date"), Coltec filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Coltec Bankruptcy Case"). Coltec is operating its business and managing its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or creditors' committee has been appointed in the Coltec Bankruptcy Case.

4.      For additional background information regarding Coltec's history and corporate structure and events leading to the Coltec Petition Date, Coltec refers the Court and parties in interest to the Debtors' Motion for Order Directing Joint Administration of Related Chapter 11 Cases filed herein (the "Joint Administration Motion") and the Declaration of Joseph Wheatley in Support of OldCo, LLC's Chapter 11 Petition and First Day Motions filed herein (the "First Day Declaration").[3]

## RELIEF REQUESTED

5.      By this Application, Coltec seeks entry of an order appointing Rust as Coltec's

---

[3] Unless defined in this Application, capitalized terms have the meanings ascribed to them in the Joint Plan and the Joint Administration Motion.

9393029v4

claims, balloting,[4] and noticing agent (the "Agent") for the Coltec Bankruptcy Case and

permitting Rust to assume full responsibility for distributing notices, orders, and other materials

(including plans, disclosure statements, solicitation and confirmation procedures, and ballots);

the receipt, tabulation, and maintenance of ballots submitted in the Coltec Bankruptcy Case, and

the maintenance, processing and docketing of proofs of claim filed in the Coltec Bankruptcy

Case.

6.      This Application pertains only to the work to be performed by Rust under the

delegation of duties by the Clerk of this Court (the "Clerk") permitted by 28 U.S.C. § 156(c),

Bankruptcy Rule 2002 and Local Rule 2002-1(f).  Any work to be performed by Rust outside of

this scope is not covered by this Application or by any order granting approval hereof.

<u>**BASIS FOR THE RELIEF REQUESTED**</u>

7.      This Court already has appointed Rust as claims, ballot, and notice agent in the

Garlock Bankruptcy Case (D.E. 3849), and Rust has administered the claims, ballot, and notice

process in the Garlock Bankruptcy Case.  Because of its role in the Garlock Bankruptcy Case,

Rust already has developed certain institutional knowledge and claimant lists relevant to the

Coltec Bankruptcy Case.  And Rust already has administered and tabulated ballots cast by Coltec

Asbestos Claimants for the Joint Plan, which served as a "prepackaged plan of reorganization"

for Coltec.  Rust has agreed to apply to Coltec its agreement with the debtors in the Garlock

Bankruptcy Case, dated as of June 17, 2014 and attached hereto as <u>Exhibit B</u> (the "<u>Services</u>

<u>Agreement</u>"), if it is appointed as the Agent.  Therefore, the engagement of Rust as Agent in the

Coltec Bankruptcy Case would avoid duplication, eliminate confusion, and materially reduce the

---

[4]  Before the Coltec Petition Date, Coltec and the Asbestos Claimants' Representative solicited acceptance of the
Joint Plan by Coltec Asbestos Claimants as a pre-packaged plan of reorganization.  On December 16, 2016, Rust
tabulated and certified qualifying ballots cast by GST Asbestos Claimants and Coltec Asbestos Claimants.  Both
GST Asbestos Claimants and Coltec Asbestos Claimants overwhelmingly accepted the Joint Plan.

9393029v4

costs of providing notices and administering claims and ballots, particularly if the Court grants

the Joint Administration Motion.

8.      Section 156(c) of title 28 of the United States Code, which governs the staffing

and expenses of a bankruptcy court, authorizes the Court to use "facilities" or "services" other

than the Clerk for administration of bankruptcy cases.  In relevant part it states:

> Any court may utilize facilities or services, either on or off the court's
> premises, which pertain to the provision of notices, dockets, calendars, and
> other administrative information to parties in cases filed under the
> provisions of title 11, United States Code, where the costs of such
> facilities or services are paid for out of the assets of the estate and are not
> charged to the United States.  The utilization of such facilities or services
> shall be subject to such conditions and limitations as the pertinent circuit
> council may prescribe.

28 U.S.C. 156(c).

Accordingly, 28 U.S.C. § 156(c) empowers the Court to utilize outside agents and facilities

for notice and claims purposes, provided Coltec's estate pays the cost of such services, at any

time without notice or a hearing.

9.      Coltec has thousands of potential creditors, predominantly consisting of disputed

tort claimants.  In addition, there are many other parties in interest in this case.  Although the

Clerk ordinarily would serve notices on Coltec's creditors and other parties in interest and

administer claims against Coltec, the Clerk may not have the resources to undertake such tasks.

10.      Accordingly, Coltec proposes to engage Rust as the Agent.  Coltec believes this

retention will provide the most effective and efficient manner of sending notices and other

materials (including materials necessary to permit the Court to consider confirmation of the Joint

Plan) to creditors and parties in interest in the Coltec Bankruptcy Case.

## A.      Rust's Qualifications

11.      Rust is a bankruptcy administrator that specializes in providing comprehensive

9393029v4

chapter 11 administrative services including noticing, claims processing, balloting, and other related services critical to the effective administration of chapter 11 cases.  Indeed, Rust has developed efficient and cost-effective methods to properly handle the voluminous mailings associated with the noticing, claims processing, and balloting portions of chapter 11 cases to ensure the orderly and fair treatment of creditors, equity security holders, and all parties in interest.  Further, Rust will work with the Clerk to ensure that such methodology conforms to the Court's procedures, the Local Rules and the provisions of any applicable orders entered by this Court.

12.     Rust has substantial experience in matters of this size and complexity and has acted as the official claims and noticing agent in many large and mid-sized bankruptcy cases in districts nationwide.  *See, e.g.*, *In re Restora Healthcare Holdings, LLC*, No. 14-10367 (PJW) (Bankr. D. Del. Feb. 26, 2014); *In re Fisker Automotive Holdings, Inc.*, No. 13-13087 (KG) (Bankr. D. Del. Dec. 13, 2013); *In re Allied Sys. Holdings, Inc.*, No. 12-11564 (CSS) (Bankr D. Del. June 6, 2012); *In re Perkins & Marie Callender's Inc.*, No. 11-11795 (KG) (Bankr. D. Del. June 14, 2011); *In re Innkeepers USA Trust*, No. 10-13800 (SCC) (Bankr. S.D.N.Y. July 20, 2010); *In re AGT Crunch Acquisition, LLC*, No. 09-12889 (REG) (Bankr. S.D.N.Y. May 8, 2009); *In re Pac. Energy Res., Ltd.*, No. 09-10785 (KJC) (Bankr. D. Del. Mar. 10, 2009); *In re Estate Fin. Mortg. Fund LLC*, No. 08-11535 (RR) (Bankr. C.D. Cal. Oct. 8, 2008); *In re Mervyn's Holdings, LLC*, No. 08-11586 (KG) (Bankr. D. Del. July 29, 2008); *In re ComUnity Lending, Inc.*, No. 08-50030 (CN) (Bankr. N.D. Cal. Jan. 22, 2008); *In re Refco Commodity Mgmt.*, Inc., No. 06-12436 (RDD) (Bankr. S.D.N.Y. Nov. 15, 2006).

**B.     Services to Be Provided**

13.     As it relates to this Application, Rust will perform the Clerk's delegation of duties

9393029v4

permitted by 28 U.S.C. § 156(c), Bankruptcy Rule 2002 and Local Rule 2002-1(f), which shall

include the following tasks in its role as Agent (collectively, the "Claims, Balloting, and

Noticing Services"), as well as all quality control relating thereto:

a.   Prepare and serve required notices and documents in the Coltec Bankruptcy Case in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by Coltec and/or the Court, including (i) notice of any claims bar date, (ii) notices of transfers of claims, (iii) notices of objections to claims and objections to transfers of claims, (iv) notices of any hearings on a disclosure statement and confirmation of Coltec's plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (v) notice of the effective date of any plan and (vi) other notices, orders, pleadings, publications and other documents as Coltec or the Court may deem necessary or appropriate for an orderly administration of the Coltec Bankruptcy Case;

b.   Maintain (i) a list of all potential creditors, equity holders and other parties in interest; and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rules 2002(i), (j) and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; and update said lists and make said lists available upon request by a party in interest or the Clerk;

c.   Furnish a notice to all applicable creditors of any bar date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by this Court;

d.   Maintain a post office box or address to receive claims and returned mail, and process all mail received;

e.   For all notices, motions, orders or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

f.   Process all proofs of claim received, including those received by the Clerk, and check said processing for accuracy, and maintain the original proofs of claim in a secure area;

g.   Maintain the official registers for claims and ballots for Coltec (respectively, the "Claims Register" and the "Ballots Register") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with a certified,

9393029v4

duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, *etc.*), and (vi) any disposition of the claim;

h.    Implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

i.    Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

j.    Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to Rust's offices, not less than weekly;

k.    Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the Claims Register;

l.    Assist in the dissemination of information to the public and respond to requests for administrative information regarding the Coltec Bankruptcy Case as directed by Coltec or the Court, including through a case website and/or call center;

m.    Distribute ballots to holders of claims and interests, receive and maintain completed ballots returned by holders, and assist in tabulating acceptances and rejections;

n.    Thirty (30) days before the close of the Coltec Bankruptcy Case, to the extent practicable, request that Coltec submit to the Court a proposed Order dismissing Rust and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of the Coltec Bankruptcy Case;

o.    Within seven (7) days of notice to Rust of entry of an order closing the Coltec Bankruptcy Case, provide to the Court the final version of the Claims Register as of the date immediately before the close of the Coltec Bankruptcy Case; and

p.    At the close of the Coltec Bankruptcy Case, box and transport all original documents, in proper format, as provided by the Clerk, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064 or (ii) any other location requested by the Clerk.

14.    The Claims Register and Ballots Registers shall be opened to the public for

examination without charge during regular business hours and on a case-specific website maintained by Rust.

15.    Rust will follow the notice and claim procedures that conform to the guidelines promulgated by the Clerk and the Judicial Conference of the United States and as may be entered by the Court's order.

16.    Based on Rust's considerable experience and expertise, Coltec submits that Rust is well-qualified to perform these services.

## C.    Compensation

17.    Coltec requests that the undisputed fees and expenses Rust incurs in performing the above services be treated as an administrative expense of Coltec's estate pursuant to 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(1)(A) and be paid by Coltec in the ordinary course of business without further application to the Court.  Rust agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on Coltec, the Bankruptcy Administrator, counsel to Coltec, and any party in interest who specifically requests service of the monthly invoices.

18.    If any dispute arises relating to the Services Agreement, which Rust has agreed will apply in the Coltec Bankruptcy Case, or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

## D.    Rust's Disinterestedness

19.    Although Coltec does not propose by this Application to retain Rust under section 327 of the Bankruptcy Code, to the best of Rust's knowledge, and except as set forth in the Declaration, Rust neither holds nor represents an interest materially adverse to Coltec's estate,

nor has a connection to Coltec, its creditors or related parties with respect to any matter for which Rust will be employed.  Rust may have relationships with certain of Coltec's creditors as vendors or in connection with cases in which Rust serves or has served in a neutral capacity as claims and noticing agent for another chapter 11 debtor.

20.     Rust shall not, and has agreed not to, employ any past or present employee of Coltec for work that involves the Coltec Bankruptcy Case.

21.     In connection with its retention as Agent, Rust represents in the Declaration, among other things, that:

a.     It will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Agent in the Coltec Bankruptcy Case;

b.     By accepting employment in the Coltec Bankruptcy Case, Rust waives any right to receive compensation from the United States government in connection with the Coltec Bankruptcy Case;

c.     In its capacity as the Agent in the Coltec Bankruptcy Case, Rust will not be an agent of the United States and will not act on behalf of the United States;

d.     It is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

e.     In its capacity as the Agent in the Coltec Bankruptcy Case, Rust will not intentionally misrepresent any fact to any person;

f.     Rust shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers; and

g.     None of the services provided by Rust as the Agent in the Coltec Bankruptcy Case shall be at the expense of the Clerk.

**E.     Terms of Retention**

22.     If Rust's services are terminated, Rust shall perform its duties until a complete transition with the Clerk or any successor claims and noticing agent occurs; provided, however,

9393029v4

that the provision of such transition services shall be subject to the terms of the Services Agreement, including with respect to payment.

23.     Rust shall perform the duties within the scope of its appointment under 28 U.S.C. § 156(c) regardless of whether Rust has received payment in accordance with the Services Agreement.  To the extent Rust requires redress for non-payment of its fees and expenses, it will seek relief from the Court.

24.     Rust will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for implementing 28 U.S.C. § 156(c).

25.     Therefore, Coltec believes that the retention of Rust as the Agent in the Coltec Bankruptcy Case is in the best interests of Coltec, its estate, and its creditors.  Furthermore, Coltec respectfully submits that the fees and expenses that would be incurred by Rust under the proposed engagement would be administrative in nature and, therefore, should not be subject to standard fee application procedures of professionals.

## NOTICE

26.     No trustee, examiner, or creditors' committee has been appointed in the Coltec Bankruptcy Case.  Coltec has served notice of this Application on (a) the Ad Hoc Committee; (b) the Garlock Committee; (c) Mr. Grier, in his capacity as the proposed legal representative for future Coltec Asbestos Claimants and the Future Asbestos Claimants' Representative in the Garlock Bankruptcy Case; (d) the Office of the United States Bankruptcy Administrator for the Western District of North Carolina; and (e) to the extent not set forth above, the parties listed on the updated Garlock Master Service List in the Garlock Bankruptcy Case (D.E. 5655) and any party that has filed a request for notices under Bankruptcy Rule 2002 since the filing of the updated Garlock Master Service List, and submits that, given the nature of the relief requested, no other or further notice need be given. No previous application for the relief requested herein

10

has been made by Coltec to this or any other court.

WHEREFORE, Coltec respectfully requests that the Court enter an Order, substantially in the form attached hereto as Exhibit C, (a) appointing Rust as the Agent for the Coltec Bankruptcy Case, and (b) granting such other relief as the Court deems just and proper.

[remainder of page left blank intentionally –
signature page of counsel follows]

9393029v4

This the 30th day of January, 2017.

/s/ Daniel G. Clodfelter
Daniel G. Clodfelter
N.C Bar No. 7661
danclodfelter@parkerpoe.com
William L. Esser IV
N.C. Bar No. 29201
willesser@parkerpoe.com
Ashley A. Edwards
N.C. Bar No. 40695
ashleyedwards@parkerpoe.com

PARKER POE ADAMS & BERNSTEIN, LLP
Three Wells Fargo Center
401 South Tryon Street, Suite 3000
Charlotte, NC 28202
Telephone:    (704) 372-9000
Facsimile:    (704) 334-4706

*Proposed Counsel to OldCo, LLC, Debtor and Debtor-in-Possession*

/s/ David M. Schilli
David M. Schilli
N.C. Bar No. 17989
dschilli@robinsonbradshaw.com
Andrew W.J. Tarr
N.C. Bar No. 31827
atarr@robinsonbradshaw.com

ROBINSON BRADSHAW & HINSON, P.A.
101 North Tryon Street
Suite 1900
Charlotte, NC 28246
Telephone:    (704) 377-2536
Facsimile:    (704) 378-4000

*Proposed Special Corporate and Litigation Counsel to OldCo, LLC, Debtor and Debtor-in-Possession*

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division**

| | |
|---|---|
| IN RE: | Case No. 17-BK-30140 |
| OLDCO, LLC, SUCCESSOR BY MERGER TO COLTEC INDUSTRIES INC, | Chapter 11 |
| Debtor. | [Joint Administration Pending][1] |

**DECLARATION OF PAUL DEUTCH IN SUPPORT OF DEBTOR'S
APPLICATION FOR ORDER APPOINTING RUST CONSULTING/OMNI
BANKRUPTCY AS CLAIMS, BALLOT, AND NOTICE AGENT**

I, Paul Deutch, hereby declare that the following is true and correct:

1.      I am the Executive Managing Director of Rust Consulting / Omni Bankruptcy. The matters set forth herein are made of my own personal knowledge and, if called and sworn as a witness, I could and would testify competently thereto.[2]

2.      I am duly authorized to make this declaration (this "Declaration") on behalf of Rust Consulting / Omni Bankruptcy ("Rust").  This Declaration is submitted in support of the Debtor's Application for Order Appointing Rust Consulting/Omni Bankruptcy as Claims, Ballot, and Notice Agent (the "Application").[3]

3.      As agent and custodian of the court records pursuant to 28 U.S.C. § 156(c), Rust will perform at the request of the Clerk the noticing, balloting and claims-related services specified in the Application and the Services Agreement for the Coltec Bankruptcy Case.  In

---

[1]  Contemporaneously with filing this Declaration, Coltec moved to have its chapter 11 case jointly administered with the chapter 11 cases of *In re Garlock Sealing Technologies LLC* (10-BK-31607), *In re Garrison Litigation Management Group, Ltd.* (10-BK-31608) and *In re The Anchor Packing Company* (10-BK-31606), with *In re Garlock Sealing Technologies LLC* serving as the lead case.

[2]  Certain of the disclosures herein relate to matters within the knowledge of other professionals at Rust and are based on information provided by them.

[3]  Capitalized terms not otherwise defined herein, shall have the meanings ascribed to them in the Application.

9393054v4

addition, at Coltec's request, Rust will perform such other claims, balloting and noticing services specified in the Application and the Services Agreement.

4.      Rust has substantial experience in matters of this size and complexity and has acted as the official claims, balloting and noticing agent in many large and mid-sized bankruptcy cases in districts nationwide.  *See, e.g.*, *In re Restora Healthcare Holdings, LLC*, No. 14-10367 (PJW) (Bankr. D. Del. Feb. 26, 2014); *In re Fisker Automotive Holdings, Inc.*, No. 1313087 (KG) (Bankr. D. Del. Dec. 13, 2013); *In re Allied Sys. Holdings, Inc.*, No. 12-11564 (CSS) (Bankr D. Del. June 6, 2012); In *re Perkins & Marie Callender's Inc.*, No. 11-11795 (KG) (Bankr. D. Del. June 14, 2011); *In re Innkeepers USA Trust*, No. 10-13800 (SCC) (Bankr. S.D.N.Y. July 20, 2010); *In re AGT Crunch Acquisition, LLC*, No. 09-12889 (REG) (Bankr. S.D.N.Y. May 8, 2009); *In re Pac. Energy Res., Ltd.*, No. 09-10785 (KJC) (Bankr. D. Del. Mar. 10, 2009); *In re Estate Fin. Mortg. Fund LLC*, No. 08-11535 (RR) (Bankr. C.D. Cal. Oct. 8, 2008); *In re Mervyn's Holdings, LLC*, No. 08-11586 (KG) (Bankr. D. Del. July 29, 2008); *In re ComUnity Lending, Inc.*, No. 08-50030 (CN) (Bankr. N.D. Cal. Jan. 22, 2008); *In re Refco Commodity Mgmt.*, Inc., No. 06-12436 (RDD) (Bankr. S.D.N.Y. Nov. 15, 2006).  Rust also serves as the claims, balloting and noticing agent for the debtors in the Garlock Bankruptcy Case pending in this Court.

5.      Rust specializes in providing claims, balloting and noticing services and has provided identical or substantially similar services to chapter 11 debtors in other cases. Accordingly, I believe Rust is well qualified to act as the Agent in the Coltec Bankruptcy Case.

6.      Rust represents, among other things, the following:

        a.      To the best of my knowledge, information, and belief, and based solely upon information provided to me by Coltec, and except as provided herein, Rust neither holds nor represents any interest materially adverse to

Coltec's estate in connection with any matters for which Rust will be employed;

b. I am not related to or connected to, and, to the best of my knowledge, information, and belief, no other professional of Rust is related to or connected to, any United States Bankruptcy Judge for the Western District of North Carolina, the Bankruptcy Administrator, or any employee in the offices thereof;

c. Rust will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the claims and noticing agent in the Coltec Bankruptcy Case;

d. By accepting employment in the Coltec Bankruptcy Case, Rust waives any rights to receive compensation from the United States government in its capacity as the notice and claims agent in this chapter 11 case;

e. In its capacity as the claims, balloting and noticing agent in the Coltec Bankruptcy Case, Rust will not be an agent of the United States and will not act on behalf of the United States;

f. Rust will not employ any past or present employees of Coltec in connection with its work as the claims and noticing agent in the Coltec Bankruptcy Case;

g. In its capacity as claims, balloting and noticing agent in the Coltec Bankruptcy Case, Rust will not intentionally misrepresent any fact to any person;

h. Rust shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers; and

i. None of the services provided by Rust as claims, balloting and noticing agent in the Coltec Bankruptcy Case shall be at the expense of the Clerk.

7. To the best of my knowledge, and based solely upon information provided to me by Coltec, and except as provided herein, neither Rust nor any employee thereof has any materially adverse connection to Coltec, its creditors, or other relevant parties. Rust may have relationships with certain of Coltec's creditors as vendors or in connection with cases in which Rust serves or has served in a neutral capacity as noticing, claims, and balloting agent for another chapter 11 debtor.

8.      In addition, Rust personnel may have relationships with some of Coltec's creditors or other parties in interest.  However, to the best of my knowledge, such relationships, to the extent they exist, are of a personal nature and completely unrelated to the Coltec Bankruptcy Case.  Rust has represented and will continue to represent clients in matters unrelated to the Coltec Bankruptcy Case.  In addition, Rust has had and will continue to have relationships in the ordinary course of its business with certain vendors, professionals, and other parties in interest that may be involved in the Coltec Bankruptcy Case in matters unrelated to the case.  Rust may also provide professional services to entities or persons that may be creditors or parties in interest in the Coltec Bankruptcy Case.  These services do not directly relate to, or have any direct connection with, this chapter 11 case or Coltec.  To the best of my knowledge, neither Rust nor any employees thereof represent any interest materially adverse to Coltec's estate with respect to any matter upon which Rust is to be engaged.  Based on the foregoing, I believe that Rust is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

9.      Although, pursuant to the Application, Coltec does not propose to retain Rust under section 327 of the Bankruptcy Code, Rust has nonetheless reviewed its electronic database to determine whether it has any relationships with the entities provided by Coltec.  At this time, we are not aware of any relationship that would present a disqualifying conflict of interest. Should Rust discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Rust will use reasonable efforts to file promptly a supplemental declaration.

10.      In performing services as the Agent, Rust will charge Coltec the rates set forth in the Services Agreement, which Rust has agreed to apply to Coltec in its chapter 11 case

11.    Rust will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for implementing 28 U.S.C. § 156(c).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on January 27th, 2017

Paul Deutch

# EXHIBIT B



June 17, 2014

Garland S. Cassada
Robinson Bradshaw & Hinson PA
101 North Tryon Street, Suite 1900
Charlotte NC  28246

Re:    **Rust Consulting/Omni Bankruptcy**
       **-Garlock Sealing Technologies LLC Retention Letter**

Dear Mr. Cassada:

    This letter (the "Agreement") will acknowledge that you have requested Rust Consulting/Omni Bankruptcy ("Rust Omni") to agree to be appointed pursuant to section 156(c) of title 28 of the United States Code as claims, ballot and notice agent in connection with the administratively consolidated chapter 11 cases of In re Garlock Sealing Technologies LLC, *et al.* (the "Debtors"), Case No. 10-31607, currently pending in the United States Bankruptcy Court for the Western District of North Carolina (the "Bankruptcy Court").    If appointed, Rust Omni would provide case administration services, including noticing, plan solicitation, ballot tabulation and distribution, and communications services (including development and maintenance of an informational website and toll-free call center), and any similar services as may be requested.

    Fees earned and expenses advanced by Rust Omni will be treated as administrative expenses of the Debtors' estates pursuant to 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(1)(A) and be paid by the Debtors in the ordinary course of business without further application to the Court. The services to be rendered by Rust Omni will be billed at rates ranging from $22.50 to $157.50 per hour as per the attached rate sheet; this represents a ten (10%) discount off of Rust Omni's standard hourly rates.  Rates are adjusted annually on January 2nd of each year, and are subject to increases not to exceed ten (10%) percent per annum.  Increases greater than ten (10%) percent per annum will be discussed with you, and be subject to your prior approval, before becoming effective.  All charges will be on a portal to portal basis plus out-of-pocket expenses.  Rust Omni shall be compensated on a monthly basis for those services performed by Rust Omni during the preceding calendar month.  Invoices are payable upon submission.

    Each of Rust Omni and the Debtors, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from



Garland S. Cassada
June 17, 2014
Page 2

the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.

The parties understand that the software programs and other materials furnished by Rust Omni pursuant to this Agreement and/or developed during the course of this Agreement by Rust Omni are the sole property of Rust Omni. The term "program" includes, without limitation, data processing programs, specifications, applications, routines, and documentation. The Debtors agree not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement. Debtors further agree that any ideas, concepts, know- how or techniques relating to data processing or Rust Omni's performance of its services developed during the course of its Agreement by Rust Omni shall be the exclusive property of Rust Omni. Upon the Debtors' request at any time or times while this Agreement is in effect, Rust Omni shall immediately deliver to Debtors and/or the Debtors' retained professionals, at Debtors' expense, any or all of the non-proprietary data and records held by Rust Omni pursuant to this Agreement, in the form requested by the Debtor.

This Agreement is terminable at will by the parties hereto upon thirty (30) days written notice. In the event that this Agreement is terminated, regardless of the reason for such termination, Rust Omni shall cooperate with the Debtors to maintain an orderly transfer of all records, data and information and record keeping functions, and shall provide all necessary staff, services and assistance required for an orderly transfer. The Debtors agree to pay for such services in accordance with Rust Omni's then existing prices for such services.

Rust Omni's engagement is subject to approval by the Bankruptcy Court. In the event of any conflict between this retention letter and any order approving Rust Omni's appointment, the terms of such order shall prevail.



Garland S. Cassada
June 17, 2014
Page 2


Please acknowledge the above by signing and returning a copy of this letter.
Should you have any questions regarding the above, please do not hesitate to call me.

Sincerely,

Paul H. Deutch
Executive Managing Director


GARLOCK SEALING TECHNOLOGIES
LLC, *ET AL.*


Date: 0/17/2014          By: _____
                              Garland S. Cassada, Esq.
                              Counsel to the Debtors



# Rate Sheet

**WWW.OMNIMGT.COM**

## ◢ Hourly Rates for Standard and Custom Services

| | RATE/COST |
|---|---|
| Clerical Support | $22.50 -$40.50 per hour |
| Project Specialists | $51.75 - $67.50 per hour |
| Project Supervisors | $67.50 - $85.50 per hour |
| Consultants | $85.50 - $112.50 per hour |
| Technology/Programming | $90.00 - $141.75 per hour |
| Senior Consultants | $126.00 - 157.50 per hour |

## ◢ Printing and Noticing Services

| | |
|---|---|
| Copy | $.08 per image |
| Document folding and insertion | No Charge |
| Labels/Envelope printing | $.035 each |
| E-mail noticing | $50.00 per 1,000 |
| Certified email | Quote upon request |
| Facsimile noticing | $.10/image |
| Postage | At cost *(Advance payment required for postage charges over $10,000)* |
| Envelopes | Varies by size |

## ◢ Newspaper and Legal Notice Publishing

| | |
|---|---|
| Coordinate and publish legal notice | Quote prior to publishing |

## ◢ Claims Management

| | |
|---|---|
| Inputting proofs of claim | Hourly rates (No per claim charges) |
| Scanning | $.10/image |
| Remote Internet access for claims management | |
|    Setup | No charge |
|    Access | $250 per month, unlimited users |

## ◢ Creditor Database

| | |
|---|---|
| Data storage | *Waived for 3 months.* Under 10,000 records - No charge, Over 10,000 records - .05 per record, Over 100,000 records - .04 per record |
| Per image storage | No charge |

## ◢ Informational Website

| | |
|---|---|
| Creation, configuration, and initial setup | No charge |
| Data entry/information updates | $67.50 per hour |
| Programming and customization | $90 - $141.50 per hour |
| Debtor website hosting | No charge |
| Committee website hosting | No charge |
| Shareholder website hosting | No charge |
| Scanning | $.10/image |



# Rate Sheet

**WWW.OMNIMGT.COM**

◢ Virtual Data Rooms                                           Quote upon request

◢ Call Centers / Dedicated Line

| | |
|---|---|
| Creation, configuration and initial setup | No charge |
| Hosting fee | $5.50 per month |
| Usage | $.0825 per minute |
| Service rates (actual talk and log-entry time) | $67.50 per hour |

◢ Case Docket / Claims Register                               No charge

◢ Solicitation and Tabulation

| | |
|---|---|
| Plan and disclosure statement mailings | Quoted prior to printing |
| Ballot tabulation | Standard hourly rates apply |

◢ Public Debt and Equities Securities and/Rights Offerings Services

| | |
|---|---|
| Noticing Services | Standard hourly rates apply |
| Solicitation, Balloting and Tabulation | Standard hourly rates apply |
| Rights Offerings | Standard hourly rates apply |
| Security Position Identification Reports | Standard hourly rates apply |

◢ Schedules / SoFA

| | |
|---|---|
| Preparation and updating of schedules and SoFAs | $51.75 - $157.50 per hour |

◢ Pre-Petition Consulting Services

| | |
|---|---|
| (e.g. , preparation of cash flow, analysis of cash management system, evaluation of insurance coverage, assist with payroll, assist procurement and distribution of cashiers checks) | Standard hourly rates apply |

◢ UST Reporting Compliance

| | |
|---|---|
| (e.g., assist debtors to meet satisfy jurisdicational requirements, preparation of monthly operating and post-confirmation reports) | Standard hourly rates apply |

◢ Liquidating / Disbursing Agent

| | |
|---|---|
| (e.g., comply with Plan requirements, preparation of disbursement reports, payout calculations, check generation, bank reconciliations) | Standard hourly rates apply |

◢ Miscellaneous

| | |
|---|---|
| Telephone charges | At cost |
| Delivery | At cost |
| Archival DVD/CD-Rom | $40.00 per copy |



# Rate Sheet

**WWW.OMNIMGT.COM**

◢ Real-Time Reports

| | |
|---|---|
| Claims dashboard | No charge |
| Claim reports | $25.00 |
| Solicitation dashboard | No charge |
| Tabulation dashboard | No charge |
| Solicitation reports | $25.00 |
| Service list manager | $0.05 per party, per generated list |



# Virtual Data Systems

MULTIPLE USES
- **M&A**
  Central data repository; broadens scope of potential bidders; maximizes value
- **Litigation**
  Facilitates discovery while reducing costs
- **Real estate transactions**
  Streamlines due diligence and increases number of bidders
- **Pharmaceutical**
  Organizes/facilitates trial testing
- **Investor reporting**
  Reduce costs by linking notices to virtual data room
- **Ponzi scheme investigations**
  Combined with creditor database for ease of administration

LAYOUT
- Fully customizable
- Unlimited Cabinets\Drawers
  *e.g.,* in a multi-property real estate sale/auction, set up one drawer per property
- Common sense design

REPORTING
- Detailed real-time usage reports
  Administrative reporting with full audit of all logins, uploads, and viewed documents
- Facilitate compliance
- Searchable based on numerous criteria (i.e., user, date, document, etc.)

USER-FRIENDLY
- Viewing/editing controls based on common Windows tools
- Simple for authorized users to upload and manage documents
- Electronic or manual Bates stamping
- Accessible 24/7

# Virtual Data Systems

*Continued*

CONFIDENTIALITY
- Secure login at multiple levels

  Provides limited and controlled access
  - *e.g.,* read only, read and upload, etc.
  - "Invisibility button"

DATA SECURITY
- Full Security Administration for users to set up security groups and define document access
- Information encrypted from end to end

  128-bit encryption
  - Same as credit card and banking information
- All systems are backed up
- Real time using Windows mirroring capability
- Triple-redundant archiving

  Online and in-house for immediate restoration capability

  Online offsite for disaster recovery capability

  Tape copy for indefinite preservation

RATE SHEET

| Creation/Setup | No charge |
|---|---|
| Technical customization | $100 - $175 per hour |
| Document upload | $0.08 per page |
| Document scanning | $0.20 per page |
| Bates stamping | $0.05 per page |
| Document Hosting | $0.01 per page per month |
| Document handling, *e.g.,* naming/coding documents, slipsheet insertion, file breakdown | $75 per hour |
| Management Services, *e.g.,* text redaction, file compression, complex PDF conversion | $125 per hour |
| Number of users | Unlimited |
| Onsite Scanning | Quoted as required |

# EXHIBIT C

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division**

| | |
|---|---|
| IN RE: | Case No. 17-BK-30140 |
| OLDCO, LLC, SUCCESSOR BY MERGER TO COLTEC INDUSTRIES INC, | Chapter 11 |
| Debtor. | |

**ORDER APPOINTING RUST CONSULTING/OMNI
BANKRUPTCY AS CLAIMS, BALLOT, AND NOTICE AGENT**

Upon Debtor's Application for Order Appointing Rust Consulting/Omni Bankruptcy as

Claims, Ballot, and Notice Agent (the "Application"); and it appearing that the relief requested in

the Application is in the best interests of Coltec,[1] its estate, its creditors and other parties in

interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C.

§§ 157 and 1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157; and

it appearing that proper and adequate notice of the Application has been given and that no other

or further notice is necessary; and upon the record herein; and upon consideration of the

Declaration; and after due deliberation thereon; and good and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Application is GRANTED.

---

[1]  Capitalized terms used but not defined herein shall have the meanings ascribed in the Application.

9393040v3

2.      Notwithstanding the terms of the Services Agreement attached to the Application, the Application is approved solely as set forth in this Order.

3.      Coltec is authorized to employ and retain Rust as Agent under the terms of the Services Agreement, and Rust is authorized and directed to perform the Claims, Balloting, and Noticing Services as set forth in the Application and the Services Agreement.

4.      Rust shall serve as the custodian of court records, is designated as the authorized repository for all proofs of claim and ballots filed in the Coltec Bankruptcy Case, and is authorized and directed to maintain the official Claims Register and Ballots Register for Coltec and to provide the Clerk with certified duplicates thereof upon request.

5.      Rust is authorized to take any such other action to comply with the Claims, Balloting and Noticing Services and related duties set forth in the Application and the Services Agreement.

6.      Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Rust shall be administrative expenses of Coltec's estate, and Coltec is authorized to pay Rust's fees and expenses for Claims, Balloting and Noticing Services, as set forth in the Services Agreement and in the ordinary course of business, without further Court order and without the necessity of Rust filing fee applications with this Court.

7.      Rust shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred and shall serve monthly invoices on Coltec, the Bankruptcy Administrator, counsel for Coltec, and any party in interest who specifically requests service of the monthly invoices.

8.      Parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Services Agreement or monthly invoices, and the parties may seek resolution of the matter from the Court if resolution is not achieved.

9.      Coltec may submit a separate retention application, pursuant to section 327 of the Bankruptcy Code and/or any applicable law, for work that is to be performed by Rust but that is not specifically authorized by this Order.

10.      Rust shall not cease providing claims processing services during the Coltec Bankruptcy Case for any reason without prior order of this Court authorizing Rust to do so; provided, however, that Rust may seek such an order on notice by filing a request with the Court with notice of such request to be served on Coltec, Coltec's counsel of record, the Bankruptcy Administrator and any official committee of creditors appointed in this case by facsimile or overnight delivery; provided further, that except as expressly provided herein, Coltec and Rust may otherwise terminate or suspend other services as provided under the Services Agreement.

11.      Nothing herein obligates a successor chapter 7 trustee or chapter 11 trustee to employ Rust.

12.      Coltec and Rust are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

13.      If any inconsistency arises between the Services Agreement, the Application and this Order, the Order shall govern.

9393040v3

      14.    Notwithstanding any term in the Services Agreement to the contrary, this

Court retains jurisdiction with respect to all matters arising from or related to the implementation

of this Order.

| | |
|---|---|
| This Order has been signed electronically.  The Judge's signature and court's seal appear at the top of the Order. | United States Bankruptcy Court |

9393040v3