**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division**

| | |
|---|---|
| IN RE: | Case No. 17-BK-30140 |
| OLDCO, LLC, SUCCESSOR BY MERGER TO COLTEC INDUSTRIES INC, | Chapter 11 |
| Debtor. | [Joint Administration Pending][1] |

**DECLARATION OF JOSEPH WHEATLEY IN SUPPORT OF
OLDCO, LLC'S CHAPTER 11 PETITION AND FIRST DAY MOTIONS**

I, Joseph Wheatley, hereby declare that the following is true and correct:

1.      I am the President and Treasurer of OldCo, LLC, debtor and debtor-in-possession in the above-captioned case and successor by merger to Coltec Industries Inc ("Coltec").[2]

2.      Before serving as President and Treasurer of Coltec, I was the President of EnPro Learning System, LLC ("ELS"). ELS merged into Coltec on December 31, 2016. Because of my former position at ELS and current position at Coltec, I am generally familiar with Coltec's day-to-day operations, business affairs and books and records.

3.      On January 30, 2017 (the "Coltec Petition Date"), Coltec filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court (the "Coltec Bankruptcy Case"). Coltec is operating its business and managing its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On the Coltec Petition Date, Coltec and the debtors in the Garlock Bankruptcy Case (as defined below) filed certain motions and other pleadings (each, a "First Day Motion"

---

[1]   On the Coltec Petition Date (as defined below), Coltec moved to have its chapter 11 case jointly administered with the chapter 11 cases of *In re Garlock Sealing Technologies LLC* (10-BK-31607), *In re Garrison Litigation Management Group, Ltd.* (10-BK-31608) and *In re The Anchor Packing Company* (10-BK-31606), with *In re Garlock Sealing Technologies LLC* serving as the lead case.

[2]   For convenience, the term "Coltec" in this Declaration refers to OldCo, LLC's predecessor, Coltec Industries Inc, when referring to events prior to the Coltec Restructuring and refers to OldCo, LLC when referring to events subsequent to the Coltec Restructuring.

and, collectively, the "First Day Motions") seeking this Court's authority to take steps necessary to ensure a seamless transition into the Coltec Bankruptcy Case and coordination with the schedule and procedures already in place in the Garlock Bankruptcy Case.

5.     I submit this declaration in support of Coltec's voluntary petition for relief under the Bankruptcy Code and the First Day Motions. Any capitalized term not expressly defined herein shall have the meaning ascribed to that term in the Joint Plan or the First Day Motion referenced in that section of this Declaration. All facts set forth in this declaration are based on my personal knowledge, upon information supplied to me by employees of Coltec and its affiliates, upon my review of relevant documents, including the Disclosure Statement (as defined below), or upon my opinion based upon my experience and knowledge of Coltec's operations and financial condition. I am authorized to submit this declaration. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

## Preliminary Statement

6.     Coltec is an affiliate of Garlock Sealing Technologies LLC ("Garlock"), Garrison Litigation Management Group, Ltd. ("Garrison") and The Anchor Packing Company ("Anchor"). Garlock is a direct, wholly owned subsidiary of Coltec's parent, EnPro Holdings, Inc. f/k/a New Coltec, Inc. ("EnPro Holdings").[3] Garrison is a direct, wholly owned subsidiary of Coltec. Anchor is a wholly owned, non-operating subsidiary of Garrison.

7.     On June 5, 2010, Garlock, Garrison and Anchor (collectively, the "Garlock Debtors," and collectively with Coltec, the "Debtors") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Each of Garlock, Garrison and Anchor is operating its business and managing its property as a debtor-in-possession pursuant to sections 1107(a) and

---

[3] On November 28, 2016, New Coltec, Inc. changed its name to EnPro Holdings, Inc.

1108 of the Bankruptcy Code. The chapter 11 cases of Garlock, Garrison and Anchor (collectively, the "Garlock Bankruptcy Case") are being jointly administered (*see In re Garlock Sealing Technologies LLC, et al.*, No. 10-BK-31607 (Bankr. W.D.N.C. June 9, 2010, D.E. 58)).

8.      The Garlock Bankruptcy Case was filed to resolve permanently and in a single forum all present and future asbestos-related personal injury and wrongful death claims against Garlock and Garrison (as defined in the Joint Plan, collectively, the "GST Asbestos Claims"). The Coltec Bankruptcy Case has been filed to resolve in the same way all present and future asbestos personal injury and wrongful death claims against Coltec (as defined in the Joint Plan, the "Coltec Asbestos Claims").

9.      On June 16, 2010, this Court entered the Order Appointing Official Committee of Asbestos Personal Injury Claimants in the Garlock Bankruptcy Case (D.E. 101).  That order constituted a statutory committee of creditors for holders of GST Asbestos Claims (collectively, the "GST Asbestos Claimants") and named certain GST Asbestos Claimants as members of that committee (the "Garlock Committee").  The Court later added another claimant to the Garlock Committee in the Garlock Bankruptcy Case. (D.E. 260).

10.     On September 16, 2010, this Court entered in the Garlock Bankruptcy Case the Order Granting Debtors' Motion for Appointment of Joseph W. Grier, III as Future Asbestos Claimants' Representative (D.E. 512).   By this order, Mr. Grier was made the legal representative of individuals who will assert GST Asbestos Claims in the future (the "Garlock FCR").

11.     In January 2016, after almost six years of litigation, the parties entered into intensive negotiations aimed at a consensual reorganization plan that would provide for a global resolution of GST Asbestos Claims and Coltec Asbestos Claims.

9362126v4

12.     In that connection, the parties agreed that Mr. Grier should participate in the negotiations not only in his capacity as the Garlock FCR in the Garlock Bankruptcy Case, but also in the capacity of *ad hoc* representative for holders of Coltec Asbestos Claims (collectively, the "Coltec Asbestos Claimants") who will assert Coltec Asbestos Claims in the future (the "Ad Hoc Coltec FCR"). They also agreed that an *ad hoc* committee should be formed to represent in the negotiations the interests of persons holding present Coltec Asbestos Claims (the "Ad Hoc Coltec Committee").

13.     As described in the Disclosure Statement filed in the Garlock Bankruptcy Case (D.E. 5444) (the "Disclosure Statement"), on March 17, 2016, Coltec, Garlock and Garrison entered into the Term Sheet for Permanent Resolution of All Present and Future GST Asbestos Claims and Coltec Asbestos Claims (the "Comprehensive Settlement") with the Garlock Committee, the Garlock FCR, the Ad Hoc Coltec Committee, and the Ad Hoc Coltec FCR (collectively, the "Asbestos Claimants' Representatives"). The Comprehensive Settlement provides for the permanent settlement and resolution of present and future GST Asbestos Claims and present and future Coltec Asbestos Claims in accordance with its terms.

14.     To implement the Comprehensive Settlement, Coltec, the Garlock Debtors and the Asbestos Claimants' Representatives (collectively, the "Plan Proponents") jointly proposed the Modified Joint Plan of Reorganization of Garlock Sealing Technologies LLC et al. and OldCo, LLC, Proposed Successor by Merger to Coltec Industries Inc, dated May 20, 2016 (and modified June 21, 2016, July 29, 2016 and December 2, 2016) (as modified, the "Joint Plan"). The Joint Plan is conditioned upon, among other things, the entry of an injunction protecting Coltec from Coltec Asbestos Claims and channeling Coltec Asbestos Claims to a trust funded

4

pursuant to section 524(g) of the Bankruptcy Code, and has thus necessitated the filing of the

Coltec Bankruptcy Case.

15.     The Joint Plan recognizes that Coltec Asbestos Claims are largely intertwined

with GST Asbestos Claims and that the interests of Coltec Asbestos Claimants and the interests

of GST Asbestos Claimants are substantially aligned. Prior to the Garlock Bankruptcy Case,

Garlock and Coltec resolved Coltec Asbestos Claims filed in the tort system when GST Asbestos

Claims were settled. The Claims Resolution Procedures provided by the Joint Plan will enable

asbestos claimants who meet applicable criteria to obtain compensation based on exposure to

asbestos from products for which Garlock or Coltec is legally responsible. The amount of

compensation for an eligible asbestos claimant will not vary according to which company's

product is involved. A claimant who was exposed to asbestos from a Coltec product will not

receive a higher award if he or she also demonstrates exposure to a Garlock product, and vice

versa.

16.     On July 29, 2016, this Court entered the Order Approving Disclosure Statement

and Establishing Confirmation Procedures in the Garlock Bankruptcy Case (D.E. 5445), which

approved the Disclosure Statement and established solicitation and confirmation procedures for

the Joint Plan (the "Garlock Confirmation Procedures Order").  The Garlock Debtors and the

Asbestos Claimants' Representatives in due course solicited acceptances of the Joint Plan by

GST  Asbestos  Claimants.  Coltec  and  the  Asbestos  Claimants'  Representatives

contemporaneously solicited acceptance of the Joint Plan by Coltec Asbestos Claimants as a pre-

packaged plan of reorganization. The voting deadline on the Joint Plan was December 9, 2016.

17.     On December 16, 2016, Rust Consulting/Omni Bankruptcy, the balloting agent

with respect to the Joint Plan (the "Balloting Agent"), certified in the Garlock Bankruptcy Case

5

(D.E. 5627) that 134,212 GST Asbestos Claimants and Coltec Asbestos Claimants cast qualifying ballots on the Joint Plan and that 95.85% in number and 95.80% in amount voted to accept. The Balloting Agent also reported separately regarding qualifying ballots cast by GST Asbestos Claimants versus Coltec Asbestos Claimants. Of 127,088 ballots cast by GST Asbestos Claimants, 96.44% in number and 95.85% in amount voted to accept the Joint Plan. Of 73,716 ballots cast by Coltec Asbestos Claimants, 97.74% in number and 96.98% in amount voted to accept. Thus, both GST Asbestos Claimants and Coltec Asbestos Claimants overwhelmingly accepted the Joint Plan.

18.    The Court has set May 15, 2017, as the date for commencement of the confirmation hearing for the Joint Plan in the Garlock Bankruptcy Case. Coltec has moved for the entry of a scheduling order also setting May 15, 2017, as the date for commencing the confirmation hearing in the Coltec Bankruptcy Case.  Placing confirmation proceedings for both cases on the same schedule is appropriate since the Joint Plan is meant to reorganize Coltec as well as Garlock and Garrison.

19.    To familiarize this Court with Coltec, its business, and the initial relief sought in the First Day Motions, this declaration is organized as follows: <u>Section I</u> provides an overview of Coltec's history and corporate structure; <u>Section II</u> describes the events leading to the commencement of the Coltec Bankruptcy Case and Coltec's objectives for the case; and <u>Section III</u> sets forth relevant facts in support of the First Day Motions.

**I.    History and Corporate Structure**

20.    OldCo, LLC is a North Carolina limited liability company, the successor by merger to Coltec Industries Inc, and a wholly owned subsidiary of EnPro Holdings. OldCo, LLC and EnPro Holdings were both formed in 2016 as part of the "Coltec Restructuring" summarily described in Paragraph 26 below and described in greater detail in the Disclosure Statement filed

6

in the Garlock Bankruptcy Case (D.E. 5444, Section 2.5.3). EnPro Holdings is a direct, wholly owned subsidiary of EnPro Industries, Inc. ("EnPro"). EnPro is a publicly traded company whose shares are traded on the New York Stock Exchange. Its headquarters are in Charlotte, North Carolina.

21.    As part of the Coltec Restructuring, Coltec retained ELS, which offers safety consulting services, safety courses, and safety conferences throughout the year to assist companies in developing and implementing protocols to improve workplace safety. Following the merger of Coltec Industries Inc into OldCo, LLC (described in more detail in Paragraph 26 below), ELS was merged into Coltec, resulting in the business and operations of the former ELS becoming a division of Coltec ("Learning System").

22.    Prior to the Coltec Restructuring, Coltec was a direct, wholly owned operating subsidiary of EnPro. Coltec was a diversified manufacturer that was variously known in prior years as Penn-Texas Corporation (until 1959), Fairbanks Whitney Corporation (until 1964), and Colt Industries Inc (until 1990). Colt Industries Inc then changed its name to Coltec Industries Inc in 1990. Coltec merged with Runway Acquisition Corporation, a subsidiary of Goodrich Corporation ("Goodrich"), in 1999 and survived as a wholly owned subsidiary of Goodrich. EnPro was incorporated in 2002 as a wholly owned subsidiary of Goodrich and was the sole parent entity of Coltec. Later in 2002, the shares of EnPro were distributed to the shareholders of Goodrich, and EnPro became a separate public company, with Coltec continuing as its direct, wholly owned subsidiary.

## II.    Events Leading To the Commencement of the Coltec Bankruptcy Case and Coltec's Objectives for the Case

23.    Some of the businesses operated by Coltec and its predecessors, apart from Garlock, manufactured equipment with asbestos-containing components, principally gaskets and

packing. These asbestos-containing components were often made by Garlock and sometimes by other manufacturers.

24.     Asbestos claimants first began suing Coltec in approximately 1992. The vast majority of suits asserting Coltec Asbestos Claims also alleged GST Asbestos Claims. Plaintiffs named either Coltec or businesses for whose conduct Coltec or one of its predecessors was alleged to be responsible, including "Fairbanks Morse," "Fairbanks Morse Engine," "Fairbanks Morse Pump," "Quincy Compressor," "Central Moloney," "France Compressor," "Delavan," and "Farnam." Coltec received tens of thousands of such claims and spent approximately $7.9 million in defense costs with respect to these claims, but it never made an indemnity payment on an asbestos claim. Rather, claims asserted against Coltec or its businesses were resolved either by dismissal or in connection with payments by Garlock to settle claims against itself. When settling asbestos claims by payment, Garlock sought and often obtained releases for affiliated companies, including Coltec.

25.     Although not in bankruptcy when the Comprehensive Settlement was reached, Coltec nevertheless solicited acceptance of the Joint Plan as a "prepackaged plan of reorganization" using the Disclosure Statement and solicitation procedures approved by this Court in the Garlock Bankruptcy Case.

26.     Pursuant to the Comprehensive Settlement, and as described in the Disclosure Statement, after Coltec Asbestos Claimants accepted the Joint Plan, Coltec completed the "Coltec Restructuring."  In pertinent part, Coltec Industries Inc merged into OldCo, LLC, with OldCo, LLC as the surviving entity; Coltec distributed to EnPro Holdings all of its businesses except the Garrison and Learning System businesses; EnPro Holdings assumed all the legacy liabilities of Coltec, other than asbestos liabilities; EnPro Holdings contributed cash to Coltec to

9362126v4

fund its anticipated cash needs during the Coltec Bankruptcy Case; and EnPro Holdings delivered a keep well agreement to Coltec, committing to make contributions to Coltec as necessary to permit Coltec to pay and discharge its retained and other liabilities as those liabilities become due and payable.

27.     In sum, after receiving the overwhelming support of the Coltec Asbestos Claimants, Coltec filed the Coltec Bankruptcy Case to consummate the Comprehensive Settlement and obtain confirmation of the Joint Plan as soon as possible and consistent with the schedule previously established by the Court in the Garlock Bankruptcy Case.

III.     **The First Day Motions**

28.     Contemporaneously with the filing of the Coltec Bankruptcy Case, Coltec has filed a number of First Day Motions. I have reviewed each of the First Day Motions (including the exhibits thereto, if any) and I believe the relief sought therein (a) is necessary to enable Coltec to operate in chapter 11 with a minimum of disruption or loss of value and (b) constitutes a critical element in achieving a successful chapter 11 reorganization of Coltec. A description of the facts supporting each First Day Motion is set forth below:

A.     **Debtors' Motion for Order Directing Joint Administration of Related Chapter 11 Cases**

29.     The Debtors have moved for entry of an order authorizing and directing the joint administration, for procedural purposes only, of the Coltec Bankruptcy Case with the Garlock Bankruptcy Case, with the lead case being *In re Garlock Sealing Technologies LLC*, Case No. 10-BK-31607. Joint administration of the Debtors' cases will ease the administrative burden on the Court, the Clerk and parties in interest.

30.     The failure to administer the Coltec Bankruptcy Case jointly with the Garlock Bankruptcy Case would result in numerous duplicative pleadings filed for each issue and served

9

upon separate service lists. Such duplication of substantially identical documents would unnecessarily overburden the Debtors and the Clerk and may otherwise confuse the Court, creditors, and other parties in interest.

31.    Joint administration will permit the Clerk to use a single docket for the Coltec Bankruptcy Case and the Garlock Bankruptcy Case and to combine notices to creditors and other parties in interest of Coltec's estate and the estates of the debtors in the Garlock Bankruptcy Case.  Joint administration also will protect parties in interest by ensuring that such parties in interest in the Coltec Bankruptcy Case and the Garlock Bankruptcy Case will be apprised of the various matters before the Court in each case.

32.    The rights of the respective creditors of the Debtors will not be adversely affected by joint administration of the Coltec Bankruptcy Case and the Garlock Bankruptcy Case because the relief sought is purely procedural and is not intended to affect substantive rights.  Each creditor and party in interest will maintain whatever rights it has against each Debtor's estate. The rights of all creditors will be enhanced by the reduction in costs resulting from joint administration.  The Court also will be relieved of the burden of entering duplicative orders and keeping duplicative files.  Supervision of the administrative aspects of the Coltec Bankruptcy Case and the Garlock Bankruptcy Case by the Office of the United States Bankruptcy Administrator for the Western District of North Carolina (the "Bankruptcy Administrator") also will be simplified.

33.    Accordingly, Coltec submits that the foregoing relief requested is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

**B. Joint Motion to Appoint Certain Coltec Asbestos Claimants to the Official Committee of Asbestos Personal Injury Claimants and to Authorize the Expanded Committee to Serve in the Bankruptcy Case of OldCo, LLC**

9362126v4

34.    The Debtors, the Garlock Committee and the Ad Hoc Coltec Committee have jointly moved for entry of an order (a) appointing certain Coltec Asbestos Claimants as members of the existing Garlock Committee, and (b) enlarging the role of the Garlock Committee by authorizing it to serve as the official committee for holders of present Coltec Asbestos Claims in the Coltec Bankruptcy Case, in addition to its existing role in the Garlock Bankruptcy Case.

35.    The Garlock Committee has been one of the primary litigants in all stages of the long-running Garlock Bankruptcy Case.  The Garlock Committee, its counsel, and its other retained professionals are thus highly knowledgeable about the Garlock Bankruptcy and about the issues important to asbestos claimants.  With the proposed enlargement of its role, the Garlock Committee and its professionals will continue to bring to bear their knowledge of the Garlock Bankruptcy Case.

36.    Adding Coltec Asbestos Claimants to the Garlock Committee and authorizing it to act in the Coltec Bankruptcy Case will be appropriate and efficient in light of the following considerations:

> (a)    The Garlock Debtors and Coltec are co-proponents of the Joint Plan, as are the Asbestos Claimants' Representatives.
>
> (b)    The Joint Plan addresses both Coltec Asbestos Claims and Garlock Asbestos Claims comprehensively and contemplates that the Garlock Bankruptcy Case and the Coltec Bankruptcy Case will be jointly administered.
>
> (c)    Coltec's asbestos-related claims history is closely intertwined with that of Garlock.
>
> (d)    In the negotiations that produced the Joint Plan, the Garlock Committee represented the interests of present GST Asbestos Claimants and the Ad Hoc Coltec Committee represented the interests of present Coltec Asbestos Claimants.

37.    Adding Coltec Asbestos Claimants to the Garlock Committee will not delay the proceedings.  On the contrary, constituting the expanded Garlock Committee to function as the sole creditors' committee for present GST Asbestos Claimants and present Coltec Asbestos

11

Claimants in the Debtors' related bankruptcy cases will make it possible for confirmation proceedings in the Coltec Bankruptcy Case to advance on the same schedule as those in the Garlock Bankruptcy Case.  The relief requested will also avoid what would otherwise be the redundant costs to the estates of operating two separate official committees for asbestos tort claimants whose interests are substantially aligned.

38.    Accordingly, Coltec submits that the foregoing relief requested is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

## C. Debtor's Motion to Appoint Joseph W. Grier, III as Future Asbestos Claimants' Representative

39.    Coltec has moved for entry of an order appointing a legal representative in the Coltec Bankruptcy Case for holders of Coltec Asbestos Claims based on a medical diagnosis dated after the Effective Date of the Joint Plan (collectively, the "Future Coltec Asbestos Claimants") and requests that Mr. Joseph W. Grier, III be appointed as the Coltec FCR. Coltec also requests that this Court establish the scope and terms of Mr. Grier's representation as the Coltec FCR that mirror the scope and terms of his retention as the Garlock FCR in the Garlock Bankruptcy Case.

### The Need for a Coltec FCR

40.    The need for a Coltec FCR arises because asbestos-related diseases have long latency periods, sometimes up to forty years or longer between first exposure and manifestation of disease.  As a result, there are workers who were exposed to asbestos before the Coltec Bankruptcy, but who would not have manifested disease and asserted claims against Coltec, among others, until after the Effective Date of the Joint Plan.

41.    Coltec has been subject to thousands of asbestos claims for many years.  It is virtually certain that, absent the Court enjoining asbestos claims against Coltec in the Garlock

12

Bankruptcy Case, Coltec would have continued to receive asbestos claims into the indefinite future.

42.     Nearly all of these future claims would have come from individuals whose alleged exposures to asbestos occurred in the past, long before the Coltec Petition Date, but whose asbestos-related diseases, if any, had not yet manifested as of the Coltec Petition Date.   In addition, it is possible Coltec would have received some asbestos-related claims in the distant future from persons alleging first exposure to a Coltec asbestos-containing product *after* the Coltec Petition Date.

43.     No other constituency adequately represents the Future Coltec Asbestos Claimants.   These claimants are obviously in conflict with Coltec.   They also have actual conflicts of interest with the other Coltec Asbestos Claimants with pending claims.

44.     In the Garlock Bankruptcy Case and the Coltec Bankruptcy Case, the interests of the future GST Asbestos Claimants and the Future Coltec Asbestos Claimants are substantially aligned.   Historically, asbestos claimants who sued Coltec businesses generally also sued Garlock, Coltec has never paid any money to settle an asbestos personal injury claim, and asbestos claimants have routinely agreed to dismiss asbestos claims against Coltec when they reached settlements with Garlock for their GST Asbestos Claims.   Therefore, Coltec does not believe a conflict exists as a result of Mr. Grier's having been and continuing to be the Garlock FCR while simultaneously being the Coltec FCR.

45.     Accordingly, Coltec submits that appointing the Coltec FCR is needed in this case. Further, appointing Mr. Grier as the Coltec FCR will make it possible for confirmation proceedings in the Coltec Bankruptcy Case to advance on the same schedule as those in the Garlock Bankruptcy Case and avoid what would otherwise be the redundant costs to the estates

of having two separate representatives for asbestos tort claimants whose interests are substantially aligned.

The Coltec FCR's Terms of Retention

46.     Coltec proposes that the Coltec FCR should represent the interests of, appear on behalf of, and be a fiduciary to the Future Coltec Asbestos Claimants. With this scope of representation, Mr. Grier would be appointed in part to protect the rights of all personal injury "demand" holders, thus ensuring that Coltec can satisfy that prerequisite to issuance of the channeling injunction under section 524(g)(4)(B) of the Bankruptcy Code. He would also represent the class of persons (if any) who hold "claims" based on injuries that are diagnosed after the Effective Date of the Joint Plan. Further, Coltec proposes that Mr. Grier should be appointed as the Coltec FCR under terms substantially similar to the terms of appointment for the Garlock FCR.

47.     Accordingly, Coltec submits that the foregoing relief requested is in the best interests of Coltec, its estate, its creditors and other parties in interest.

**D. Debtor's Motion for Order Approving (I) Maintenance of Existing Bank Account and Bank Arrangements, (II) Continued Use of Existing Business Forms, (III) Intercompany Transactions, (IV) Limited Waiver of Deposit Guidelines, (V) Investment of Excess Cash, and (VI) Grant of Administrative Expense Priority Status to Post-Petition Intercompany Claims**

48.     Coltec has moved for an order approving (a) maintenance of the Bank Account and the Bank Arrangements, (b) continued use of the Business Forms, (c) the Intercompany Transactions, (d) the Deposit Limited Waiver (as defined below), (e) the Investment Policy, and (f) a grant of administrative expense priority status to post-petition intercompany claims.

The Bank Account and the Bank Arrangements

49.     In the ordinary course of business, Coltec maintains one business bank account at Bank of America, N.A. ("BOA"), which has an account number ending in 6514 (the "Bank

Account"). Money in the Bank Account is insured by the Federal Deposit Insurance Corporation (the "FDIC") up to $250,000.

50.     Through the Bank Account, Coltec can make disbursements and receive deposits. Disbursements can be made by automatic clearing house ("ACH") or wire transfer and deposits can be made by ACH or wire transfer or check. Coltec's disbursements from the Bank Account include (a) payment of accounts payable; (b) payment of *de minimis* federal and state taxes; (c) payment of professional fees and expenses; and (iv) payment of Coltec's other costs and expenses incurred in the ordinary course of business.

51.     Coltec has no employees, so it does not need to make disbursements from the Bank Account for employee payroll or other employee-related expenses or reimbursements, including payroll tax withholdings.

52.     Coltec submits that its continued use of the Bank Account will not prejudice creditors because Coltec has the capability, through its internal accounting system, to distinguish clearly between pre-petition and post-petition obligations and payments without closing the existing Bank Account and opening a new account.

53.     Coltec represents that if the relief requested in the motion is granted, it will implement appropriate mechanisms to ensure that no payments will be made on any debts it incurred before the Coltec Petition Date, other than those authorized by this Court. To further guard against such payments, Coltec has advised BOA not to honor pre-petition wire or ACH transfers on and after the Coltec Petition Date, except as otherwise expressly permitted by an order of the Court and directed by Coltec.

54.     Further, because Coltec has no employees, does not withhold payroll taxes, and pays only *de minimis* federal and state taxes, Coltec submits that there is no need for it to

9362126v4

establish a separate tax account or payroll account during the Coltec Bankruptcy Case. Instead, Coltec requests that it be authorized to use the Bank Account for all its operations and expenses.

55.    Because Coltec uses only wire transfer or ACH and other similar methods for payment of expenses incurred in its operations, it is necessary for Coltec to continue to conduct transactions in that fashion. Denying Coltec the opportunity to conduct transactions by wire transfer, ACH or other similar methods would interfere with its performance of its obligations, negatively impacting liquidity and unnecessarily disrupting its business operations.  It would also create additional costs to Coltec.

56.    Coltec also seeks approval of the Bank Arrangements to minimize disruption to the Bank Account and to assist Coltec in accomplishing a smooth transition to operating in chapter 11.

The Investment Policy

57.    Before the Coltec Petition Date, EnPro Holdings, Coltec's immediate parent, deposited $5 million into the Bank Account to give Coltec sufficient funds to pay operating and bankruptcy-related expenses during the Coltec Bankruptcy Case.

58.    Because of this deposit, the Bank Account's balance will exceed the FDIC's $250,000 insurance limit (the "Excess Cash") at the beginning of the Coltec Bankruptcy Case.

59.    Before the Coltec Petition Date, Coltec began the process of opening an investment account with Banc of America Securities, LLC (the "Investment Account") for the purpose of depositing the Excess Cash therein and investing the Excess Cash in one or more appropriate U.S. treasuries funds that invest funds solely in instruments backed by the full faith and credit of the United States (collectively, the "US Treasuries Funds").  The US Treasuries Funds being considered by Coltec are designed to yield a return on idle cash with little

16

investment risk and while maintaining liquidity. Before the Coltec Petition Date, Coltec began investigating and analyzing suitable US Treasuries Funds to meet its needs while satisfying the requirements of section 345 of the Bankruptcy Code, but had not decided on a specific US Treasuries Fund to invest in before the need to file its Chapter 11 petition. After the Coltec Petition Date, Coltec will use its best efforts to promptly, and as soon as practical, transfer the Excess Cash to the Investment Account and designate one or more US Treasuries Funds to invest the Excess Cash in. Coltec will then use funds from the Investment Account to replenish the Bank Account from time to time to allow Coltec to make payments for operating and bankruptcy-related expenses during the Coltec Bankruptcy Case.

60.     After the Investment Account is established, the funds in the Bank Account will not exceed the FDIC's $250,000 insurance limit at any time during the Coltec Bankruptcy Case, except to the extent funds are needed in excess of the FDIC insurance limit for a brief period to pay large, one-time bankruptcy-related expenses.

61.     Coltec's investment of the Excess Cash in the US Treasuries Funds will be backed by the full faith and credit of the United States Government. Out of an abundance of caution, Coltec requests the Court approve the Investment Policy, including Coltec's investment of the Excess Cash in one or more US Treasuries Funds.

62.     Coltec submits that cause exists for the Deposit Limited Waiver. Because of the strength and size of the depository bank, BOA, Coltec believes that any Excess Cash in the Bank Account before the Investment Account is established or for brief periods thereafter will not be sufficiently at risk to necessitate strict adherence to the requirements of section 345(b) of the Bankruptcy Code. Moreover, such a waiver will allow Coltec to avoid the significant administrative difficulties and expenses relating to opening new accounts to ensure that all their

9362126v4

funds are fully insured or secured strictly in accordance with the restrictions established by section 345(b) of the Bankruptcy Code.

The Business Forms

63.     In the ordinary course of business, Coltec uses the Business Forms. Coltec does not use checks. To minimize expenses to the estate, Coltec requests authority to continue to use all correspondence and business forms (including, but not limited to, bank signature cards, letterhead, purchase orders, and invoices) as such forms were in existence immediately before the Coltec Petition Date, without reference to Coltec's status as a debtor-in-possession. Further, because most parties doing business with Coltec undoubtedly will be aware of its status as a debtor-in-possession as a result of the large and highly publicized nature of the Garlock Bankruptcy Case and this case, Coltec submits that changing business forms is unnecessary and unduly burdensome.

64.     If the Court grants this Motion, Coltec will close its books and records to capture assets and liability balances as of the Coltec Petition Date and continue to record post-petition activity in the same books and records according to generally accepted accounting principles.

The Intercompany Transactions

65.     Coltec's ultimate parent is EnPro. As a wholly owned subsidiary of EnPro, Coltec is part of an enterprise in which EnPro, in the ordinary course of business, enters into intercompany transactions with its subsidiaries and provides them certain corporate services and other benefits. Through intercompany services agreements or other arrangements, EnPro charges its subsidiaries for these services and benefits.

66.     On January 27, 2017, Coltec entered into an Intercompany Services Agreement with EnPro and EnPro Holdings (collectively, the "Parent") to formalize its relationship with the Parent (the "Coltec Services Agreement"). A copy of the Coltec Services Agreement is attached

18

to the motion as <u>Exhibit A</u>.

67.     The intercompany transactions governed by the Coltec Services Agreement are summarized below (collectively, the "Intercompany Transactions"):

(a)     *Corporate Services*: The Parent agrees to provide the following services (collectively, the "Corporate Services") to Coltec as requested by Coltec:

i.      Legal support (but excluding legal support in connection with matters related to the Coltec Bankruptcy Case);

ii.     Tax, human resources, and IT support;

iii.    Treasury, accounting and other financial services;

iv.     Coverage under corporate insurance policies;

v.      Use of facilities, computer and telephone equipment, internet service and related utilities;

vi.     Use of corporate credit cards; and

vii.    Periodic services of one or more employees in connection with the marketing, administration, and delivery of services for Coltec's Learning System business or as otherwise required by Coltec's business.

(b)     *License of Certain Intellectual Property*: During the term of the Coltec Services Agreement, the Parent grants Coltec a nonexclusive, royalty-free right and license to access, use and commercially exploit certain intellectual property in connection with Coltec's business and operations (the "License"). Coltec has certain obligations under the Coltec Services Agreement regarding its use of the licensed intellectual property.

9362126v4

(c)     *Payment Advances*: In the ordinary course of business, the Parent agrees to make, or cause to be made, payments on behalf of Coltec to third-party providers for expenses related to Coltec's business or in connection with charges incurred on corporate credit cards related to the operation of Coltec's business (collectively, the "Advances").

(d)     *Tax Sharing*: Coltec agrees to periodically reimburse EnPro for Coltec's share of income tax liability.

68.     Under the Coltec Services Agreement, Coltec accrues liability for the actual out-of-pocket costs of the Corporate Services and for the Advances (collectively, the "Unpaid Charges"). Beginning on January 31, 2018, and on or before January 31 of each calendar year thereafter, Coltec must pay the Parent an amount equal to the Unpaid Charges for the previous calendar year.

69.     Coltec relies on the Parent for the provision of the Corporate Services, the License and the Advances. The uninterrupted continuation of the Corporate Services and the Advances provided to Coltec under the Coltec Services Agreement is critical for a smooth transition into the Coltec Bankruptcy Case.

70.     Further, many of the Services return benefits to Coltec exceeding the cost charged to Coltec by EnPro.  For example, EnPro can negotiate lower premiums and better coverage on insurance policies than Coltec could, since EnPro-wide policies cover far more employees and property than a policy that covered only Coltec.

71.     While the timing and form of payment set forth in the Coltec Services Agreement is different than Coltec's past practice with EnPro before the Coltec Restructuring, the formalized relationships set forth in the Coltec Services Agreement are substantially identical to

20

the intercompany operational relationship between Coltec and EnPro as it has existed before and after the Coltec Restructuring. Further, EnPro treats other of its subsidiaries substantially the same as Coltec regarding the provision and reimbursement for the Corporate Services and Advances. Coltec believes the fees associated with the Corporate Services are fair and at or below market rates.

The Intercompany Claims

72.    By reason of the Intercompany Transactions arising under the Coltec Services Agreement, Coltec maintains relationships with the Parent, so there are intercompany claims that reflect, primarily if not solely, intercompany payables made in the ordinary course of Coltec's business operations.

73.    Although the Joint Plan is scheduled for confirmation proceedings in May 2017 and Coltec hopes to emerge from Chapter 11 shortly thereafter, Coltec seeks out of an abundance of caution an order granting administrative expense priority status to the Intercompany Claims to ensure that it can pay such intercompany claims when due in the ordinary course of business after the Coltec Petition Date. Coltec relies on the benefits provided by the Intercompany Transactions for the operation of its business, and continued performance under the Coltec Services Agreement is not only important to Coltec's successful restructuring, but is integral to ensure its ability to operate its business as a debtor-in-possession.  Were Coltec required to obtain the services that comprise the Intercompany Transactions elsewhere, aside from incurring excessive financial burdens in identifying appropriate providers of these services and entering into individual agreements for providing these services, Coltec would be required to divert attention and efforts from ensuring a smooth transition into the chapter 11 process and, ultimately, working towards a successful restructuring.  Moreover, the services provided under

21

the Intercompany Transactions are ordinary course type tasks and functions.

74.     Accordingly, Coltec submits that the foregoing relief requested is in the best interests of Coltec, its estate, its creditors and other parties in interest.

**E.  Debtor's Motion for Order Waiving Obligations to (I) File Schedules and Statement of Financial Affairs, (II) Appoint an Unsecured Creditors' Committee, (III) File List of Twenty Largest Unsecured Creditors, and (IV) Convene Section 341 Meeting Of Creditors**

75.     Coltec has moved for entry of an order (a) waiving any obligation for Coltec to file schedules (other than Schedule G), and a statement of financial affairs, (b) waiving any obligation for Coltec to file a 20 Largest Creditors List, (c) waiving any obligation for the Bankruptcy Administrator to solicit unsecured creditors to join a Coltec Creditors' Committee and for the Court to appoint a Coltec Creditors' Committee, and (d) waiving any obligation for the Court to set a time, date and place for, and the Bankruptcy Administrator to convene and preside over, a meeting of creditors under section 341 of the Bankruptcy Code.

76.     Because the Coltec Bankruptcy Case is a prepackaged chapter 11 case in which the Joint Plan has been overwhelmingly accepted by creditors entitled to vote and in which creditors holding non-asbestos claims are not impaired under the Joint Plan and was filed to solely enable Coltec to implement the Comprehensive Settlement to permanently resolve all present and future asbestos claims, Coltec submits that no purpose would be served by requiring it to file schedules of assets and liabilities, a schedule of current income and expenditures or a statement of financial affairs. Because the Joint Plan contains provisions relating to executory contracts and unexpired leases, Coltec does not seek a waiver of the requirement to file a Schedule G.

77.     Coltec also seeks to have the Coltec Bankruptcy Case jointly administered with the Garlock Bankruptcy Case so that Coltec can implement the Comprehensive Settlement and

22

9362126v4

permanently resolve all present and future asbestos claims against it contemporaneously with the permanent settlement of all present and future asbestos claims against Garlock and Garrison. In the Garlock Bankruptcy Case, the Court appointed an Official Committee of Unsecured Creditors, so Coltec submits that the interests of general unsecured creditors in the Coltec Bankruptcy Case, which is expected to be jointly administered with the Garlock Bankruptcy Case, are adequately represented. Moreover, under the Joint Plan that has been overwhelmingly accepted by those creditors entitled to vote, general unsecured creditors will not be impaired. For those reasons, Coltec submits that little purpose would be served by the appointment of a Coltec Creditors' Committee, and the appointment of a Coltec Creditors' Committee would needlessly increase the administrative expenses of the Coltec Bankruptcy Case.

78.     If the Court grants Coltec's request to waive the requirement for the solicitation and appointment of Coltec Creditors' Committee, Coltec submits that the Bankruptcy Rule 1007(d) obligation for Coltec to file the 20 Largest Creditors List should also be waived.

79.     Finally, before filing the Coltec Bankruptcy Case, Coltec solicited acceptances of the Joint Plan, and the Joint Plan has been overwhelmingly accepted by those creditors entitled to vote. Creditors holding non-asbestos claims against Coltec are not impaired by the Joint Plan. Coltec submits that convening a section 341 meeting of creditors would not serve any meaningful purpose in this case. Accordingly, Coltec requests that the Court not set a time, date and place for a meeting of creditors under section 341 of the Bankruptcy Code and waive the obligation under that section for the Bankruptcy Administrator to convene and preside over a meeting of creditors.

80.     Accordingly, Coltec submits that the foregoing relief requested is in the best interests of Coltec, its estate, its creditors and other parties in interest.

9362126v4

**F. Debtors' Motion for an Order Establishing Case Management and Notice Procedures in OldCo, LLC's Chapter 11 Case and Single Master Service List in Debtors' Chapter 11 Cases**

81.    The Debtors have moved for (a) entry of an order in the Garlock Bankruptcy Case approving the Master Service List and (b) entry of an order in the Coltec Bankruptcy Case (i) approving the Notice Procedures for use in the Coltec Bankruptcy Case and (ii) approving the Master Service List for use in the Coltec Bankruptcy Case.

82.    In effect, Coltec seeks to apply the Garlock Notice Procedures Order to the Coltec Bankruptcy Case, pursuant to which every notice, motion or application, and all briefs, memoranda, affidavits, declarations or other documents filed concurrently in support thereof (collectively, the "Filings") in the Coltec Bankruptcy Case and all Filings, complaints and other pleadings filed in any adversary proceeding commenced in the Coltec Bankruptcy Case (collectively, the "Adversary Pleadings") would be subject to the Notice Procedures, unless otherwise ordered by the Court.

83.    The Debtors also have requested that the Court approve the use of a single Master Service List in the Garlock Bankruptcy Case and the Coltec Bankruptcy Case for all Filings served therein.

84.    Currently, more than ten thousand (10,000) creditors and parties in interest may be entitled to receive notice in the Coltec Bankruptcy Case. To require Coltec and other parties in the Coltec Bankruptcy Case to provide notice of all pleadings and other papers filed in these cases to these parties in interest would be extremely burdensome and costly to Coltec's estate, as a result of photocopying and postage expenses as well as other expenses associated with such large mailings.

85.    The costs associated with copying and mailing or otherwise serving all notices and motions to all creditors and parties in interest would impose an expensive administrative and

economic burden on Coltec's estate and on creditors. Such mass mailings would be extraordinarily costly to Coltec's estate and require Coltec to divert resources to comply with these administrative requirements. Additionally, the repeated drafting and filing of motions to limit notice for each motion would increase the administrative and economic burden on Coltec's estate.

86.     Coltec believes that adopting the Notice Procedures in the Coltec Bankruptcy Case will substantially reduce administrative burdens and result in substantial cost savings to Coltec's estate because of the reduction of time and money Coltec must expend on the Filings. Coltec further believes that adopting the Notice Procedures in the Coltec Bankruptcy Case will also significantly reduce the administrative and economic burden placed on creditors and other parties in interest when filing the Filings.

87.     The Notice Procedures have been tailored to ensure that all parties in interest that may be directly affected by the relief sought by a particular Filing or Adversary Pleading will receive notice of such Filing or Adversary Pleading directly from the party submitting the Filing or Adversary Pleading to the Court. Thus, Coltec believes no party will be adversely affected. Particularly in light of the Coltec Asbestos Claimants' overwhelming support for its pre-packaged plan, Coltec believes the Notice Procedures are appropriate and should be approved and implemented in the Coltec Bankruptcy Case.

88.     Accordingly, Coltec submits that the foregoing relief requested is in the best interests of the Debtors, their estate, their creditors and other parties in interest.

**G.  Debtor's Motion for Approval of (I) Form of Notice of Commencement of Case, (II) Mailing and Publication Procedures for Notice of Commencement of Case, and (III) Related Relief**

89.     Coltec has moved for entry of an order approving the form of the Commencement Notice, (b) approving the Actual Notice Procedures for the Commencement Notice, (c)

9362126v4

approving the form of the Combined Publication Notice, (d) approving the Publication Procedures for the Combined Publication Notice, and (e) otherwise limiting service of the Commencement Notice with respect to non-asbestos creditors of Coltec.

90.     Coltec proposes to limit the notice of the Coltec Bankruptcy Case solely to the Commencement Notice Parties and proposes not to send the Commencement Notice to its non-asbestos creditors, other than those who are Commencement Notice Parties, because the rights and interests of those non-asbestos creditors will not be affected by the Coltec Bankruptcy Case. Coltec is not in financial distress, but has filed its prepackaged chapter 11 case solely to implement the Comprehensive Settlement. Under the Joint Plan overwhelmingly approved by the Coltec Asbestos Claimants, the claims of non-asbestos creditors of Coltec are not impaired, and valid claims will be paid in full in the ordinary course of business. Under the Joint Plan, Coltec will be merged with and into EnPro Holdings after the Joint Plan is confirmed.

91.     Coltec believes that, based upon the number of Commencement Notice Parties to whom the Commencement Notice is to be mailed, the Notice Agent will be able to initiate and complete the mailing of the Commencement Notice within approximately three (3) business days after the date of entry of the Commencement Notice Order. Since the proposed Asbestos Claims Bar Date and the deadline for objecting to confirmation of the Joint Plan are not until March 24, 2017, Coltec believes that parties in interest will have adequate time from the mailing of the Commencement Notice to protect their rights in the Coltec Bankruptcy Case.

92.     Coltec submits that, under the circumstances of this prepackaged chapter 11 case, sending the Commencement Notice as described above is reasonably calculated to notify the interested parties of the Coltec Bankruptcy Case and afford them the opportunity to appear to protect their interests.

9362126v4

93.     Coltec proposes to provide notice of the filing of the Coltec Bankruptcy Case by publication to all potentially interested parties other than the Commencement Notice Parties. Giving actual notice of the filing of the Coltec Bankruptcy Case to those other than the Commencement Notice Parties would be time-consuming and potentially wasteful in this prepackaged chapter 11 case which has been filed to implement the Comprehensive Settlement and in which non-asbestos creditors are not impaired under the Joint Plan.

94.     Coltec, therefore, proposes to publish the Combined Publication Notice in the national edition of *USA Today* as soon as practicable following entry of the Commencement Notice Order and on the date or dates during one week that *USA Today* publishes legal notices, but in any event no later than Monday, February 13, 2017.

95.     Accordingly, Coltec submits that the foregoing relief requested is in the best interests of Coltec, its estate, its creditors and other parties in interest.

**H.  Debtor's Motion to Approve Notice Procedures for Asbestos Claimants**

96.     Coltec has moved for entry of an order authorizing notices and other communications to Coltec Asbestos Claimants, when required by this Court, to be transmitted to (a) their counsel of record instead of sending such notices to Coltec Asbestos Claimants individually and separately, and (b) the Court-appointed legal representative for future Coltec Asbestos Claimants against Coltec and counsel of record for such legal representative.

97.     Coltec also requests that the Court (a) approve the Asbestos Claimant Notice Procedures, (b) approve Coltec's using the Asbestos Claimant Notice Procedures for matters requiring notice be given to all Coltec Asbestos Claimants, and (c) relieve Coltec of all obligations to send any notices or other communications directly to Coltec Asbestos Claimants for the Coltec Bankruptcy Case.

98.     This relief requested is substantively identical to the relief granted by the Court

27

9362126v4

soon after the Garlock Bankruptcy Case was filed on June 5, 2010, and notices procedures substantively identical to the Asbestos Claimant Notice Procedures have been in use in the Garlock Bankruptcy Case for more than six years. The Coltec Bankruptcy Case involves essentially the same asbestos claimants and their same lawyers as the Garlock Bankruptcy Case. Coltec, therefore, requests that the Court grant the same relief as was granted in the Garlock Bankruptcy Case.

99.    Coltec has received tens of thousands of Coltec Asbestos Claims from Coltec Asbestos Claimants. Nearly all of these Coltec Asbestos Claimants have initiated legal proceedings against Coltec or made demands to Coltec through their counsel.  Because of the manner in which counsel have represented these Coltec Asbestos Claimants, Coltec has not obtained, nor can it reasonably obtain, personal contact information to permit Coltec or the Court to transmit bankruptcy notices to the Coltec Asbestos Claimants directly.

100.    In these circumstances, before the Coltec Petition Date, all communications between Coltec and the Coltec Asbestos Claimants regarding the Coltec Asbestos Claims were through their counsel of record.

101.    Coltec has no reasonable means to discover information to permit direct communications with the known Coltec Asbestos Claimants, nor would initiating such direct communications comport with its course of dealings.  Even if Coltec could undertake investigations to identify such contact information, obtaining that information would substantially increase costs to the bankruptcy estate, and transmitting separate and individual notices would further multiply estate administration costs.

102.    By transmitting notices directly to Coltec Asbestos Claimants' counsel instead of attempting to transmit notices to Coltec Asbestos Claimants directly, the bankruptcy estate will

28

9362126v4

preserve assets and maximize the possibility that each known Coltec Asbestos Claimant comprehends such notice and evaluates it with the benefit of the advice of counsel.

103.    Coltec believes that the Asbestos Claimant Notice Procedures represent a fair and appropriate process to provide each of the Coltec Asbestos Claimants with all necessary notices and communications in the Coltec Bankruptcy Case and that the Asbestos Claimant Notice Procedures are reasonably calculated, under all the circumstances, to apprise interested parties of the matter before the Court and present them an opportunity to make objections.

104.    Moreover, the Asbestos Claimant Notice Procedures will ease Coltec's administrative burden of sending notices to tens of thousands of individuals, resulting in cost savings to Coltec's estate for the benefit of creditors.  Indeed, because Coltec has little or no personal contact information for the individual Coltec Asbestos Claimants, giving direct notice to these individuals would be a practical impossibility.

105.    Accordingly, Coltec submits that the foregoing relief requested is in the best interests of Coltec, its estate, its creditors and other parties in interest.

I.    **Debtor's Motion to (I) Fix Bar Date for Certain Coltec Asbestos Claims, (II) Approve Proof of Claim Form and Proposed Procedures for Filing Certain Coltec Asbestos Claims, and (III) Approve Form and Manner of Notice Thereof**

106.    Coltec has moved for entry of an order (a) fixing March 24, 2017 as the bar date for certain Coltec Asbestos Claims, (b) approving a proof of claim form and proposed procedures for filing Coltec Asbestos Claims before the bar date, and (c) approving the form and manner of notice regarding the bar date for Coltec Asbestos Claims.

107.    Coltec submits that a limited bar date for certain Coltec Asbestos Claims is appropriate because Coltec Asbestos Claims are disputed, contingent or unliquidated. Moreover, the Asbestos Trust's Claims Resolution Procedures, which are an integral part of the Comprehensive Settlement and the Joint Plan, contemplate that certain Coltec Asbestos Claims

29

will be subject to a claims bar date. Coltec, therefore, submits a bar date for certain Coltec Asbestos Claims is necessary to proceed to confirmation of the Joint Plan.

108.    Coltec proposes that the Coltec Asbestos Claims Bar Date be set on March 24, 2017 and apply to any Coltec Asbestos Claim that is based on an asbestos-related disease diagnosed on or before August 1, 2014 and for which a lawsuit against any defendant or a claim against any asbestos trust was filed on or before August 1, 2014. Coltec further proposes that any Holder of a Coltec Asbestos Claim who (a) in the Garlock Bankruptcy Case, filed a proof of GST Asbestos Claim or timely filed a ballot (including a master ballot) with respect to the now-superseded Second Amended Plan or (b) submitted by the December 9, 2016 voting deadline a ballot (including a master ballot) on the Joint Plan be deemed to have filed a Coltec Asbestos Claim in the Coltec Bankruptcy Case and be relieved from the requirement to file a proof of Coltec Asbestos Claim by the Coltec Asbestos Claims Bar Date.

109.    Coltec Asbestos Claimants that are subject to the Coltec Asbestos Claims Bar Date have been on notice that the Coltec Asbestos Claims Bar Date would be set for a date in March 2017 for over seven (7) months. Known Coltec Asbestos Claimants received actual notice of the proposed bar date through their counsel of record or, if not represented, by service of notice on the Coltec Asbestos Claimants themselves on or around August 22, 2016, and unknown Coltec Asbestos Claimants received publication notice through an extensive national multimedia notice program that ran from September 12, 2016 to October 9, 2016.

110.    Independent of the notice of the proposed bar date known and unknown Coltec Asbestos Claimants received before the Coltec Petition Date, Coltec proposes to give known and unknown Coltec Asbestos Claimants whose Coltec Asbestos Claims are subject to the Coltec Asbestos Claims Bar Date at least five (5) weeks' notice of the Coltec Asbestos Claims Bar Date

pursuant to the proposed Coltec Bar Date Notice Procedures. The Coltec Bar Date Notice Procedures include (a) mailing the Coltec Asbestos Claims Bar Date Notice to known Coltec Asbestos Claimants through their counsel of record within five (5) business days after entry of the order on this motion and (b) publishing the Combined Publication Notice, which includes notice of the Coltec Asbestos Claims Bar Date, in the national edition of *USA Today* as soon as practicable following entry of the order on this motion on the date or dates during one week that *USA Today* publishes legal notices, but in any event no later than Monday, February 13, 2017.

111.    Coltec proposes to allow Coltec Asbestos Claimants to file their claims using Official Bankruptcy Form No. 410, the standard proof of claim form used by creditors. For any Coltec Asbestos Claim to be validly and properly filed in accordance with the Coltec Asbestos Claims Bar Date, Coltec proposes that the claimant complete and submit an Official Bankruptcy Form No. 410 to the Balloting Agent, via first-class mail or courier, so as to be actually received by the Balloting Agent on or before the Coltec Asbestos Claims Bar Date. Coltec requests that proofs of claim sent by facsimile or other electronic means not be accepted.

112.    Accordingly, Coltec submits that the foregoing relief requested is in the best interests of Coltec, its estate, its creditors and other parties in interest.

**J.  Debtor's Motion to Approve Solicitation and Confirmation Procedures and Schedule for Confirmation of the Joint Plan**

113.    Coltec has moved for entry of an order (a) approving the Notice Program and the Supplemental Notice Program, (b) approving the Solicitation Documents, (c) establishing dates and deadlines in connection with approval of the Disclosure Statement and confirmation of the Joint Plan, and (d) approving the Voting Procedures used for Coltec's prepetition solicitation and tabulation of votes to accept or reject the Joint Plan.

114.    In essence, this Motion seeks relief approving solicitation and confirmation

31

procedures that largely mirror the solicitation and confirmation procedures the Court has already approved in the Garlock Bankruptcy Case, with the knowledge that Coltec intended to file the Coltec Bankruptcy Case if both GST Asbestos Claimants and Coltec Asbestos Claimants accepted the Joint Plan.

115.    Coltec seeks approval of the Notice Program approved by this Court in the Garlock Bankruptcy Case in the Garlock Confirmation Procedures Order.  The Notice Program was devised by Kinsella and implemented by Kinsella and the Balloting Agent in accordance with the Garlock Confirmation Procedures Order. Coltec submits that the Notice Program gave Asbestos Claimants notice of the Joint Plan and the confirmation hearing in an effective manner. It also provided for direct notice to known Asbestos Claimants of Garlock and Coltec and publication notice through print media, electronic media and television advertising, all designed based on Kinsella's expertise to give effective notice to potential Asbestos Claimants.  Coltec submits that the Notice Program, coupled with the appointment and participation of the Asbestos Claimants' Representatives, satisfied the dictates of due process.

116.    Coltec also seeks approval of a pre-confirmation schedule nearly identical to the one established in the Garlock Confirmation Procedures Order. Coltec has complied with the deadlines in this schedule that are applicable to it and already have passed. This schedule provided sufficient time for publication and media notice to Asbestos Claimants to be implemented and become effective before the voting deadline on December 9, 2016. The schedule seeks to set a combined hearing on May 15, 2017 for approval of the Disclosure Statement and confirmation of the Joint Plan in the Coltec Bankruptcy Case. Coltec submits that such a hearing is proper given the nature and circumstances of the Coltec Bankruptcy Case.

117.    Accordingly, Coltec submits that the foregoing relief requested is in the best

9362126v4

interests of Coltec, its estate, its creditors and other parties in interest.

**K. Debtors' *Ex Parte* Motion for Entry of an Order (I) Shortening the Notice Period on First Day Motions Filed by the Debtors, (II) Limiting the Notice on First Day Motions, (III) Scheduling an Expedited Hearing on First Day Motions and (IV) Approving the Form and Manner of Notice on First Day Motions**

118.    The Debtors have moved *ex parte* for entry of an order shortening the notice period for and limiting the notice on the First Day Motions and scheduling an expediting hearing on those motions.

119.    The relief requested in the First Day Motions is essential to maintaining the viability of Coltec's business, preserving Coltec's ability to reorganize successfully pursuant to the Joint Plan and consummating the Comprehensive Settlement pursuant to the Joint Plan.  An expedited, emergency hearing on the First Day Motions will permit Coltec to notice the filing of the Coltec Bankruptcy Case, pursue confirmation of the Joint Plan consistent with the procedures ordered by the Court in the Garlock Bankruptcy Case and stay on track in pursuing confirmation of the Joint Plan on the same schedule as the Court has set in the Garlock Bankruptcy Case.

120.    Coltec respectfully submits that there is no prospect of harm to their creditors and other parties in interest by allowing the relief requested.

121.    Accordingly, Coltec submits that the foregoing relief requested is in the best interests of Coltec, its estate, its creditors and other parties in interest.

**L. Debtor's *Ex Parte* Motion to Suspend Entry and Service of Standard Notice of Commencement**

122.    Coltec has moved *ex parte* for entry of an order suspending entry and service of a standard notice of commencement of the Coltec Bankruptcy Case, pending an order of the Court with respect to the Commencement Notice Motion, described in Section G above.

123.    If the Court grants the Commencement Notice Motion, there will be no need for entry and service of the standard notice of commencement for a chapter 11 case. Further,

9362126v4

suspending entry and service of the standard case commencement notice will help avoid confusion that may result from the docketing and service of multiple notices of commencement of the Coltec Bankruptcy Case.

124.    Accordingly, Coltec submits that the foregoing relief requested is in the best interests of Coltec, its estate, its creditors and other parties in interest.

[remainder of page left blank intentionally –
signature page of declarant follows]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

This the 30th day of January, 2017.

Joseph Wheatley