**THIS SOLICITATION IS BEING CONDUCTED NOT ONLY WITH RESPECT TO THE THREE DEBTORS IN THE BELOW-CAPTIONED BANKRUPTCY CASE, BUT ALSO BY COLTEC INDUSTRIES INC WITH RESPECT TO A NEW ENTITY NAMED OLDCO, LLC (WHICH WILL BE A SUCCESSOR BY MERGER TO COLTEC INDUSTRIES INC) PRIOR TO ITS FILING OF A VOLUNTARY PETITION UNDER CHAPTER 11 OF TITLE 11 OF THE UNITED STATES CODE. BECAUSE NO CHAPTER 11 CASE HAS YET BEEN COMMENCED FOR OLDCO, LLC, THE DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING "ADEQUATE INFORMATION" WITHIN THE MEANING OF SECTION 1125(a) OF THE BANKRUPTCY CODE WITH RESPECT TO OLDCO, LLC. FOLLOWING COMMENCEMENT OF ITS CHAPTER 11 CASE, OLDCO, LLC EXPECTS TO PROMPTLY SEEK AN ORDER OF THE BANKRUPTCY COURT APPROVING THE DISCLOSURE STATEMENT AND THE SOLICITATION OF VOTES WITH RESPECT TO OLDCO, LLC. THE ASSETS AND LIABILITIES OF OLDCO, LLC AND THE TRANSACTIONS THAT WILL CREATE OLDCO, LLC ARE DESCRIBED IN FULL IN THE DISCLOSURE STATEMENT ACCOMPANYING THIS JOINT PLAN OF REORGANIZATION.**

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF NORTH CAROLINA
#### Charlotte Division

| | |
|---|---|
| IN RE:<br><br>GARLOCK SEALING TECHNOLOGIES LLC, et al.,<br><br>Debtors.[1] | Case No. 10-BK-31607<br><br>Chapter 11<br><br>Jointly Administered |
| IN RE:<br><br>OLDCO, LLC, SUCCESSOR BY MERGER TO COLTEC INDUSTRIES INC,<br><br>Debtor. | Case No. [Not yet filed]<br><br>Chapter 11<br><br>[Joint Administration To Be Requested] |

---

[1] The debtors in these jointly administered cases are Garlock Sealing Technologies LLC; Garrison Litigation Management Group, Ltd.; and The Anchor Packing Company. This solicitation is also being conducted by Coltec Industries Inc pursuant to Sections 1125(g) and 1126(b) of the Bankruptcy Code and Rule 3018(b) of the Bankruptcy Rules with respect to OldCo, LLC which, if this Plan is accepted by the requisite numbers of claimants in Class 5, will become a successor by merger to Coltec Industries Inc and commence a bankruptcy case that will be jointly administered under Case No. 10-BK-31607. The term "Debtors" includes OldCo, LLC.

**MODIFIED JOINT PLAN OF REORGANIZATION OF GARLOCK SEALING TECHNOLOGIES LLC, ET AL. AND OLDCO, LLC, PROPOSED SUCCESSOR BY MERGER TO COLTEC INDUSTRIES INC**

Dated: May 20, 2016
As Modified: ~~June 21,~~July 29, 2016

**THIS PLAN PROVIDES, AMONG OTHER THINGS, FOR THE ISSUANCE OF AN INJUNCTION PURSUANT TO SECTION 524(g) OF THE BANKRUPTCY CODE THAT CHANNELS ALL ASBESTOS CLAIMS AGAINST DEBTORS AND THE ASBESTOS PROTECTED PARTIES (AS DEFINED HEREIN) TO A TRUST, AS WELL AS OTHER INJUNCTIONS DESCRIBED IN ARTICLE 8 OF THIS PLAN.**

RAYBURN COOPER & DURHAM, P.A.

C. Richard Rayburn, Jr. (N.C. Bar No. 6357)
Albert F. Durham (N.C. Bar No. 6600)
John R. Miller, Jr. (N.C. Bar No. 28689)

1200 Carillion, 227 West Trade Street
Charlotte, NC 28202
Telephone: (704) 334-0891

*Counsel to the Debtors Garlock Sealing Technologies, LLC, Garrison Litigation Management Group, Ltd., and The Anchor Packing Company*

ROBINSON, BRADSHAW & HINSON, P.A.

Garland S. Cassada (N.C. Bar No. 12352)
Jonathan C. Krisko (N.C. Bar No. 28625)
Richard C. Worf (N.C. Bar No. 37143)

101 North Tryon Street, Suite 1900
Charlotte, NC 28246
Telephone: (704) 377-2536

*Special Corporate and Litigation Counsel to the Debtors Garlock Sealing Technologies LLC, Garrison Litigation Management Group, Ltd., The Anchor Packing Company, and OldCo, LLC, Successor by Merger to Coltec Industries Inc*

ORRICK, HERRINGTON & SUTCLIFFE, LLP

Jonathan P. Guy
Gregory D. Beaman

1152 15th Street, NW
Washington, DC 20005
Telephone: (202) 339-8400

*Counsel for Joseph W. Grier, III, Future Asbestos Claimants' Representative and Ad Hoc Coltec Future Asbestos Claimants' Representative*

GRIER FURR & CRISP, PA

A. Cotten Wright (N.C. Bar No. 28162)

101 North Tryon Street, Suite 1240
Charlotte, NC 28246
Telephone: (704) 375-3720

*Counsel for Joseph W. Grier, III, Future Asbestos Claimants' Representative and Ad Hoc Coltec Future Asbestos Claimants' Representative*

CAPLIN & DRYSDALE, CHARTERED

Elihu Inselbuch
Trevor W. Swett III
Jeffrey A. Liesemer

One Thomas Circle, N.W.
Washington, D.C.  20005
Telephone: (202) 862-5000

*Counsel for the Official Committee of Asbestos*
*Personal Injury Claimants and the Ad Hoc*
*Coltec Asbestos Claimants Committee*


PARKER POE ADAMS & BERNSTEIN, LLP

Daniel G. Clodfelter (N.C. Bar No. 7661)
Ashley A. Edwards (N.C. Bar No. 40695)

Three Wells Fargo Center
401 South Tryon Street, Suite 3000
Charlotte, NC 28202
Telephone: (704) 335-9054

*Counsel to OldCo, LLC, Successor by Merger*
*to Coltec Industries Inc*


MOON WRIGHT & HOUSTON, PLLC

Travis W. Moon (N.C. Bar No. 3067)
Richard S. Wright (N.C. Bar No. 24622)

227 West Trade St., Suite 1800
Charlotte, NC 28202
Telephone: (704) 944-6560

*Counsel for the Official Committee of Asbestos*
*Personal Injury Claimants and the Ad Hoc*
*Coltec Asbestos Claimants Committee*

# TABLE OF CONTENTS

**PAGE**

ARTICLE 1   DEFINITIONS, CONSTRUCTION OF TERMS, EXHIBITS AND
ANCILLARY DOCUMENTS..................................................................................2

    1.1   DEFINED TERMS..................................................................................................2

        1.   Additional Coltec Insurance................................................................2
        2.   Additional Coltec Insurers..................................................................2
        3.   Ad Hoc Coltec Asbestos Claimants Committee...................................2
        4.   Ad Hoc Coltec Future Asbestos Claimants' Representative.................2
        5.   Administrative Expense Claim.............................................................3
        6.   Affiliate..............................................................................................3
        7.   Allowance Date...................................................................................3
        8.   Allowed...............................................................................................3
        9.   Allowed Amount..................................................................................4
        10.   Anchor................................................................................................4
        11.   Anchor Claim......................................................................................4
        12.   Asbestos Channeling Injunction.........................................................4
        13.   Asbestos Claimant...............................................................................4
        14.   Asbestos Claims..................................................................................4
        15.   Asbestos Claimants Committee...........................................................4
        16.   Asbestos Insurance Action..................................................................4
        17.   Asbestos Insurance Agreement...........................................................5
        18.   Asbestos Insurance Entity...................................................................5
        19.   Asbestos Insurance Policy...................................................................5
        20.   Asbestos Insurance Rights...................................................................5
        21.   Asbestos Protected Party.....................................................................5
        22.   Asbestos Trust.....................................................................................7
        23.   Asbestos Trust Agreement...................................................................7
        24.   Asbestos Trust Assets..........................................................................7
        25.   Asbestos Trustee.................................................................................7
        26.   Asbestos Trust Expenses.....................................................................7
        27.   Avoidance Action................................................................................7
        28.   Ballot..................................................................................................7
        29.   Bankruptcy Administrator....................................................................7
        30.   Bankruptcy Code.................................................................................7
        31.   Bankruptcy Court................................................................................8
        32.   Bankruptcy Rules................................................................................8
        33.   Board of Directors...............................................................................8
        34.   Business Day........................................................................................8
        35.   By-Laws...............................................................................................8
        36.   Canadian Settlement............................................................................8
        37.   Capital Stock.......................................................................................8
        38.   Cash.....................................................................................................8
        39.   Certificate of Incorporation................................................................8

# TABLE OF CONTENTS
(continued)

**PAGE**

| | | |
|---|---|---|
| 40. | Chapter 11 Cases | 8 |
| 41. | Claim | 9 |
| 42. | Claimant | 9 |
| 43. | Claimants Advisory Committee or CAC | 9 |
| 44. | Claims Resolution Procedures or CRP | 9 |
| 45. | Class | 9 |
| 46. | Coltec | 9 |
| 47. | Coltec Asbestos Claim | 9 |
| 48. | Coltec General Unsecured Claim | 10 |
| 49. | Coltec Restructuring | 10 |
| 50. | Coltec Workers' Compensation Claim | 10 |
| 51. | Confirmation Date | 11 |
| 52. | Confirmation Hearing | 11 |
| 53. | Confirmation Order | 11 |
| 54. | Confirmation Procedures Order | 11 |
| 55. | Contingent Claim | 11 |
| 56. | Court | 11 |
| 57. | Debtor in Possession | 11 |
| 58. | Debtors | 11 |
| 59. | Deferred Contribution | 11 |
| 60. | Delaware Trustee | 11 |
| 61. | Demand | 11 |
| 62. | Disallowed | 11 |
| 63. | Disclosure Statement | 12 |
| 64. | Disputed Claim | 12 |
| 65. | Distribution | 12 |
| 66. | Distribution Date | 12 |
| 67. | District Court | 12 |
| 68. | Effective Date | 12 |
| 69. | EnPro | 12 |
| 70. | Encumbrance | 12 |
| 71. | Entity | 12 |
| 72. | Equity Interest | 12 |
| 73. | ERISA | 13 |
| 74. | Estate | 13 |
| 75. | Estate Parties | 13 |
| 76. | Exhibit Book | 13 |
| 77. | Fee Claim | 13 |
| 78. | Fee Dispute Remedy | 13 |
| 79. | Fee Order | 13 |
| 80. | File or Filed or Filing | 13 |
| 81. | Final Order | 13 |
| 82. | Foreign Asbestos Claim | 14 |

# TABLE OF CONTENTS
(continued)

**PAGE**

| | | |
|---|---|---|
| 83. | Future Asbestos Claimants' Representative or FCR | 14 |
| 84. | Garrison | 14 |
| 85. | Governmental Unit | 14 |
| 86. | GST | 14 |
| 87. | GST Asbestos Claim | 14 |
| 88. | GST/Garrison Equity Interests | 15 |
| 89. | GST General Unsecured Claim | 15 |
| 90. | GST Recovery Action | 15 |
| 91. | GST Recovery Action Settlement Package | 15 |
| 92. | GST Workers' Compensation Claim | 16 |
| 93. | Holder | 16 |
| 94. | Initial Asbestos Trust Assets | 16 |
| 95. | Intercompany Claim | 16 |
| 96. | IRC | 16 |
| 97. | IRS | 16 |
| 98. | Master Ballot | 17 |
| 99. | New Coltec | 17 |
| 100. | Non-Asbestos Plan Claim | 17 |
| 101. | Non-Debtor Affiliate | 17 |
| 102. | Option | 17 |
| 103. | Other Debtor Equity Interests | 17 |
| 104. | PBGC | 17 |
| 105. | Petition Date | 17 |
| 106. | Plan | 17 |
| 107. | Plan Claims | 17 |
| 108. | Plan Documents | 17 |
| 109. | Plan Supplement | 17 |
| 110. | Post-Bankruptcy Anchor | 17 |
| 111. | Priority Claim | 18 |
| 112. | Priority Tax Claim | 18 |
| 113. | Professional | 18 |
| 114. | Reorganized Debtor or Reorganized Debtors | 18 |
| 115. | Representatives | 18 |
| 116. | Retained Causes of Action | 18 |
| 117. | Schedules | 18 |
| 118. | SEC | 18 |
| 119. | Secured Claim | 18 |
| 120. | Secured Tax Claim | 19 |
| 121. | Securities Act | 19 |
| 122. | United States | 19 |
| 123. | Unliquidated Claim | 19 |
| 124. | Unsecured Creditors Committee | 19 |
| 125. | Voting Record Date | 19 |

# TABLE OF CONTENTS
(continued)

**PAGE**

126.   Workers' Compensation Claims ........................................................ 19

1.2   OTHER TERMS/INTERPRETATION ........................................................ 19
1.3   THE PLAN DOCUMENTS .......................................................................... 21
1.4   ANCILLARY DOCUMENTS ...................................................................... 21

ARTICLE 2   PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSES
AND PRIORITY TAX CLAIMS ................................................................. 21

2.1   UNCLASSIFIED CLAIMS ........................................................................... 21

2.1.1   Payment of Allowed Administrative Expense Claims ................ 21
2.1.2   Priority Tax Claims ...................................................................... 22

ARTICLE 3   CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY
INTERESTS ................................................................................................... 22

3.1   SUMMARY .................................................................................................. 22

3.1.1   Class 1. Priority Claims ............................................................... 23
3.1.2   Class 2. Secured Claims .............................................................. 23
3.1.3   Class 3. Workers' Compensation Claims ..................................... 24
3.1.4   Class 4. Intercompany Claims ..................................................... 24
3.1.5   Class 5. Asbestos Claims ............................................................. 25
3.1.6   Class 6. GST General Unsecured Claims ..................................... 25
3.1.7   Class 7. Coltec General Unsecured Claims .................................. 26
3.1.8   Class 8. Anchor Claims ............................................................... 26
3.1.9   Class 9. GST/Garrison Equity Interests ...................................... 26
3.1.10  Class 10. Other Debtor Equity Interests ...................................... 27

ARTICLE 4   MODIFICATION OR WITHDRAWAL OF THIS PLAN ......................... 27

4.1   MODIFICATION OF THE PLAN; AMENDMENT OF PLAN
DOCUMENTS .............................................................................................. 27

4.1.1   Modification of the Plan .............................................................. 27
4.1.2   Post-Effective Date Amendment of Other Plan Documents ........ 27

4.2   WITHDRAWAL OF THIS PLAN ................................................................ 27

4.2.1   Right to Withdraw this Plan ........................................................ 27
4.2.2   Effect of Withdrawal .................................................................... 28

ARTICLE 5   PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS AND
ASBESTOS CLAIMS GENERALLY ......................................................... 28

# TABLE OF CONTENTS
### (continued)

**PAGE**

| | | | |
|---|---|---|---|
| 5.1 | OBJECTION TO PLAN CLAIMS (OTHER THAN ASBESTOS CLAIMS); PROSECUTION OF DISPUTED CLAIMS | | 28 |
| 5.2 | DISTRIBUTION ON ACCOUNT OF DISPUTED CLAIMS | | 29 |
| 5.3 | BAR DATES FOR ADMINISTRATIVE EXPENSE CLAIMS | | 29 |
| | 5.3.1 | Administrative Expense Claims | 29 |
| | 5.3.2 | Fee Claims | 29 |
| 5.4 | RESOLUTION OF ASBESTOS CLAIMS | | 30 |

| | | | |
|---|---|---|---|
| ARTICLE 6 | ACCEPTANCE OR REJECTION OF THIS PLAN | | 30 |
| 6.1 | IMPAIRED CLASSES TO VOTE | | 30 |
| 6.2 | ACCEPTANCE BY IMPAIRED CLASSES OF PLAN CLAIMS | | 30 |
| 6.3 | PRESUMED ACCEPTANCE OF THIS PLAN | | 30 |
| 6.4 | ACCEPTANCE PURSUANT TO SECTION 524(g) OF THE BANKRUPTCY CODE | | 31 |
| 6.5 | NONCONSENSUAL CONFIRMATION | | 31 |
| | 6.5.1 | Cram Down | 31 |
| | 6.5.2 | General Reservation of Rights | 31 |

| | | | |
|---|---|---|---|
| ARTICLE 7 | IMPLEMENTATION OF THIS PLAN | | 31 |
| 7.1 | VESTING OF ASSETS OF THE DEBTORS | | 31 |
| 7.2 | CORPORATE GOVERNANCE | | 32 |
| | 7.2.1 | Amendment of Certificates of Incorporation of the Debtors | 32 |
| | 7.2.2 | D&O and Fiduciary Liability Tail Coverage Policies | 32 |
| 7.3 | THE ASBESTOS TRUST | | 32 |
| | 7.3.1 | Creation of the Asbestos Trust | 32 |
| | 7.3.2 | Funding of the Asbestos Trust | 33 |
| | 7.3.3 | Vesting of Assets in the Asbestos Trust | 34 |
| | 7.3.4 | Transfer of Claims and Demands to the Asbestos Trust | 34 |
| | 7.3.5 | Appointment and Termination of Asbestos Trustee | 35 |
| | 7.3.6 | Creation of the CAC | 35 |
| | 7.3.7 | Cooperation Agreement | 35 |
| | 7.3.8 | Continuation of the FCR | 36 |
| | 7.3.9 | Institution and Maintenance of Legal and Other Proceedings | 36 |
| | 7.3.10 | Asbestos Insurance Rights and Authority of Reorganized Debtors to Extend Asbestos Channeling Injunction to Asbestos Insurance Entities and Successor Entities Prior to Confirmation Date | 36 |
| 7.4 | PAYMENTS AND DISTRIBUTIONS UNDER THIS PLAN | | 37 |
| | 7.4.1 | Asbestos Trust Payments and Plan Distributions | 37 |

# TABLE OF CONTENTS

(continued)

**PAGE**

|  | 7.4.2 | Timing of Plan Distributions | 38 |
| 7.5 | | DELIVERY OF DISTRIBUTIONS AND UNDELIVERABLE OR UNCLAIMED DISTRIBUTIONS | 38 |
|  | 7.5.1 | Delivery by the Reorganized Debtors of Distributions in General | 38 |
|  | 7.5.2 | Undeliverable Distributions by the Reorganized Debtors | 38 |
| 7.6 | | PAYMENTS UNDER THIS PLAN | 38 |
|  | 7.6.1 | Manner of Cash Payments under this Plan | 38 |
|  | 7.6.2 | Fractional Payments under this Plan | 38 |
| 7.7 | | DISSOLUTION OF ANCHOR | 39 |
| 7.8 | | CONDITIONS TO OCCURRENCE OF THE CONFIRMATION DATE | 39 |
| 7.9 | | CONDITIONS TO OCCURRENCE OF THE EFFECTIVE DATE | 43 |
| 7.10 | | MERGER OF COLTEC WITH NEW COLTEC | 45 |
| 7.11 | | MANAGEMENT OF THE REORGANIZED DEBTORS | 45 |
| 7.12 | | CORPORATE ACTION | 45 |
| 7.13 | | EFFECTUATING DOCUMENTS AND FURTHER TRANSACTIONS | 45 |
| 7.14 | | ALLOCATION OF PLAN DISTRIBUTIONS BETWEEN PRINCIPAL AND INTEREST | 46 |
| 7.15 | | NO SUCCESSOR LIABILITY | 46 |
| 7.16 | | INSURANCE NEUTRALITY | 46 |
| ARTICLE 8 | | DISCHARGE, INJUNCTIONS & RELEASES | 47 |
| 8.1 | | DISCHARGE | 47 |
|  | 8.1.1 | Discharge of GST, Garrison, and Coltec and Related Discharge Injunction | 47 |
|  | 8.1.2 | Non-Dischargeable ERISA Liability | 47 |
| 8.2 | | THE ASBESTOS CHANNELING INJUNCTION | 48 |
|  | 8.2.1 | Asbestos Channeling Injunction | 48 |
|  | 8.2.2 | Reservations from Asbestos Channeling Injunction | 49 |
| 8.3 | | TERM OF CERTAIN INJUNCTIONS AND AUTOMATIC STAY | 49 |
|  | 8.3.1 | Injunctions and/or Automatic Stays in Existence Immediately Prior to Confirmation | 49 |
|  | 8.3.2 | Injunctions Provided for in this Plan | 50 |
| 8.4 | | RELEASES AND INDEMNIFICATION | 50 |
|  | 8.4.1 | Settlement and Release by Debtors and Reorganized Debtors of Avoidance Actions and Other Estate Claims | 50 |
|  | 8.4.2 | Specific Release of Intercompany Asbestos Claims | 50 |
|  | 8.4.3 | Settlement and Release by Debtors and Estate Parties | 51 |

## TABLE OF CONTENTS
(continued)

**PAGE**

| | | |
|---|---|---|
| 8.4.4 | Settlement and Release of Certain Claims | 51 |
| 8.4.5 | No Actions on Account of Released Claims | 51 |
| 8.4.6 | Indemnification of Representatives of the Debtors and Non-Debtor Affiliates | 52 |
| 8.4.7 | Indemnification of Debtors and Other Asbestos Protected Parties by the Asbestos Trust | 52 |

8.5    CARVE-OUT FOR CERTAIN FOREIGN ASBESTOS CLAIMS .......... 53
8.6    NO EFFECT ON INDEPENDENT LIABILITIES OF NON-DEBTORS ...... 53

ARTICLE 9    EXECUTORY CONTRACTS, UNEXPIRED LEASES, LETTERS OF CREDIT, SURETY BONDS, COMPENSATION, INDEMNITY AND BENEFIT PROGRAMS ........ 53

9.1    ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........ 53

9.1.1    Assumption Generally ........ 53
9.1.2    Assumption Procedures ........ 53
9.1.3    Rejection of Certain Executory Contracts and Unexpired Leases ...... 54

9.2    LETTERS OF CREDIT AND SURETY BONDS ........ 55
9.3    COMPENSATION, INDEMNITY AND BENEFIT PROGRAM ........ 55

9.3.1    Employee Benefits ........ 55
9.3.2    Retiree Benefits ........ 55
9.3.3    Workers' Compensation Benefits ........ 56

ARTICLE 10    RETENTION OF JURISDICTION ........ 56

10.1    PLAN DOCUMENTS ........ 56
10.2    EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........ 56
10.3    DISPUTED CLAIMS ALLOWANCE/DISALLOWANCE ........ 56
10.4    ENFORCEMENT/MODIFICATION OF THIS PLAN AND THE RELEASES, INJUNCTIONS AND DISCHARGE PROVIDED UNDER THE PLAN ........ 57
10.5    COMPENSATION AND EXPENSES ........ 58
10.6    SETTLEMENTS ........ 58
10.7    TAXES ........ 58
10.8    SPECIFIC PURPOSES ........ 58
10.9    INSURANCE MATTERS ........ 58
10.10    ORDERS CLOSING CHAPTER 11 CASES ........ 58
10.11    EXCLUSIVE JURISDICTION OF DISTRICT COURT ........ 59

ARTICLE 11    MISCELLANEOUS PROVISIONS ........ 59

# TABLE OF CONTENTS
### (continued)

**PAGE**

| | | |
|---|---|---|
| 11.1 | AUTHORITY OF THE DEBTORS | 59 |
| 11.2 | PAYMENT OF STATUTORY FEES | 59 |
| 11.3 | RETAINED CAUSES OF ACTION | 59 |
| | 11.3.1 Maintenance of Causes of Action | 59 |
| | 11.3.2 Preservation of All Causes of Action Not Expressly Settled or Released | 60 |
| 11.4 | THIRD-PARTY AGREEMENTS | 60 |
| 11.5 | PRESERVATION OF POLICE AND REGULATORY POWERS | 60 |
| 11.6 | DISSOLUTION OF THE UNSECURED CREDITORS COMMITTEE AND THE ASBESTOS CLAIMANTS COMMITTEE | 61 |
| 11.7 | EXCULPATION | 61 |
| 11.8 | ENTIRE AGREEMENT | 62 |
| 11.9 | NOTICES | 62 |
| 11.10 | HEADINGS | 64 |
| 11.11 | GOVERNING LAW | 64 |
| 11.12 | FILING OF ADDITIONAL DOCUMENTS | 64 |
| 11.13 | COMPLIANCE WITH TAX REQUIREMENTS | 64 |
| 11.14 | EXEMPTION FROM TRANSFER TAXES | 64 |
| 11.15 | FURTHER ASSURANCES | 65 |
| 11.16 | FURTHER AUTHORIZATIONS | 65 |

| | |
|---|---|
| Exhibit A | Asbestos Trust Agreement |
| Exhibit B | CRP |
| Exhibit C | Form of Cooperation Agreement |
| Exhibit D | List of Affiliates and Former Divisions/Successor Entities |
| Exhibit E | List of Asbestos Insurance Policies and Protected Asbestos Insurance Entities |
| Exhibit F | Schedule of Retained Causes of Action |
| Exhibit G | Schedule of Rejected Executory Contracts |
| Exhibit H | Form of Option and Registration Rights Agreement |
| Exhibit I | Form of Pledge Agreement |
| Exhibit J | Form of Parent Guaranty |
| Exhibit K | Form of Articles of Merger |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

| | |
|---|---|
| IN RE: | Case No. 10-BK-31607 |
| GARLOCK SEALING TECHNOLOGIES LLC, et al., | Chapter 11 |
| Debtors.[2] | Jointly Administered |
| IN RE: | Case No. [Not yet filed] |
| OLDCO, LLC, SUCCESSOR BY MERGER TO COLTEC INDUSTRIES INC, | Chapter 11 |
| Debtor. | [Joint Administration To Be Requested] |

## MODIFIED JOINT PLAN OF REORGANIZATION OF GARLOCK SEALING TECHNOLOGIES LLC, ET AL. AND OLDCO, LLC, PROPOSED SUCCESSOR BY MERGER TO COLTEC INDUSTRIES INC

**THIS PLAN PROVIDES, AMONG OTHER THINGS, FOR THE ISSUANCE OF AN INJUNCTION PURSUANT TO SECTION 524(g) OF THE BANKRUPTCY CODE THAT CHANNELS ALL ASBESTOS CLAIMS AGAINST DEBTORS AND THE ASBESTOS PROTECTED PARTIES (AS DEFINED HEREIN) TO A TRUST, AS WELL AS OTHER INJUNCTIONS DESCRIBED IN ARTICLE 8 OF THIS PLAN.**

**This Plan[3] constitutes a settlement of all Claims and Demands against the Debtors on, and subject to, the terms described herein and the other Plan Documents. Nothing in the Plan Documents constitutes an admission by the Debtors as to the existence, merits, or amount of the Debtors' actual present or future liability on account of any Claim or Demand except to the extent that such liability is specifically provided for in the Plan or the other Plan Documents in accordance with the Confirmation Order effective as of the Effective Date.**

---

[2]   The debtors in these jointly administered cases are Garlock Sealing Technologies LLC; Garrison Litigation Management Group, Ltd.; and The Anchor Packing Company. This solicitation is also being conducted by Coltec Industries Inc pursuant to Sections 1125(g) and 1126(b) of the Bankruptcy Code and Rule 3018(b) of the Bankruptcy Rules with respect to OldCo, LLC which, if this Plan is accepted by the requisite numbers of claimants in Class 5, will become a successor by merger to Coltec Industries Inc and commence a bankruptcy case that will be jointly administered under Case No. 10-BK-31607. The term "Debtors" includes OldCo, LLC.

[3]   Unless otherwise indicated, capitalized terms shall have the meanings ascribed to them in Article 1 of this Plan.

This Plan is not an offer with respect to any securities or a solicitation of acceptances of this Plan; any such offer or solicitation will only be made in compliance with applicable law, including applicable provisions of securities laws and the Bankruptcy Code. This Plan has not been filed with or reviewed by the Securities and Exchange Commission or any securities regulatory authority of any state under the Securities Act of 1933, as amended, or under any state securities or "blue sky" laws. This Plan has not been approved or disapproved by any court or the Securities and Exchange Commission. Any representation to the contrary is a criminal offense.

The Debtors, the Official Committee of Asbestos Personal Injury Claimants, the Future Asbestos Claimants' Representative, the Ad Hoc Coltec Future Asbestos Claimants' Representative, and the Ad Hoc Coltec Asbestos Claimants Committee (together the "**Plan Proponents**") hereby jointly propose the following Plan of Reorganization (the "**Plan**") pursuant to the provisions of chapter 11 of title 11 of the United States Code for the Debtors in these Chapter 11 Cases. Reference is made to the Disclosure Statement distributed contemporaneously herewith for, among other things, a discussion of the history, businesses, properties, results of operations of the Debtors, and projections for future operations, and risks associated with this Plan. The Disclosure Statement also provides a summary of this Plan. **YOU ARE URGED TO READ THE DISCLOSURE STATEMENT WITH CARE IN EVALUATING HOW THIS PLAN WILL AFFECT YOUR CLAIM(S).**

**ARTICLE 1**
**DEFINITIONS, CONSTRUCTION OF TERMS, EXHIBITS**
**AND ANCILLARY DOCUMENTS**

**1.1   DEFINED TERMS**

Terms defined in this Section 1 apply to the Plan, the Disclosure Statement and the other Plan Documents (unless specifically provided otherwise in any such Plan Document).

1.   "**Additional Coltec Insurance**" shall mean those Asbestos Insurance Rights involving pre-July 1975 Coltec comprehensive general liability insurance coverage or Coltec commercial general liability insurance coverage, or excess liability coverage.

2.   "**Additional Coltec Insurers**" shall mean Asbestos Insurance Entities that issued Additional Coltec Insurance.

3.   "**Ad Hoc Coltec Asbestos Claimants Committee**" shall mean the ad hoc committee of persons holding present Coltec Asbestos Claims.

4.   "**Ad Hoc Coltec Future Asbestos Claimants' Representative**" shall mean the ad hoc representative of Holders of future Coltec Asbestos Claims, to be appointed as the legal representative to represent the interests of, appear on behalf of, and be a fiduciary to the Holders of future Coltec Asbestos Claims upon the commencement of Coltec's Chapter 11 Case.

5.   "**Administrative Expense Claim**" shall mean a cost or expense of the type described in Section 503 of the Bankruptcy Code and all fees and charges assessed against the Estates

2

pursuant to 28 U.S.C. § 1930. Administrative Expense Claims shall not include any Asbestos Claims.

6.    "**Affiliate**" shall mean as to any specified Entity: (i) any other Entity that, directly or indirectly through one or more intermediaries or otherwise, controls, is controlled by, or is under common control with, the specified Entity, and (ii) any Entity that is an "affiliate" (within the meaning of Section 101(2) of the Bankruptcy Code) of the specified Entity. As used in clause (i) of this definition, "control" shall include the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of an Entity (whether through ownership of Capital Stock of that Entity, by contract, or otherwise).

7.    "**Allowance Date**" shall mean the date on which a Claim becomes an Allowed Claim.

8.    "**Allowed**" shall mean:

(a)    With respect to any Plan Claim other than an Administrative Expense Claim or an Asbestos Claim, as to which a proof of claim was Filed within the applicable period of limitation fixed in accordance with Bankruptcy Rule 3003(c)(3) by the Court, (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy Court, (ii) as to which an objection to the allowance thereof has been interposed within such time as is set by the Bankruptcy Court pursuant to the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy Court, such Plan Claim to the extent that such objection has been (A) overruled in whole or in part by a Final Order of the Bankruptcy Court, (B) resolved by agreement of the Debtors and the Claimant which is approved by a Final Order of the Bankruptcy Court, (C) resolved by agreement of the Reorganized Debtors and the Claimant pursuant to Section 5.1 of the Plan, or (D) determined by Final Order in the Chapter 11 Cases, or (iii) as to which such Claim is listed on an Undisputed Claims Exhibit indicating allowance thereof, which has been Filed pursuant to Section 5.1 of the Plan;

(b)    With respect to any Plan Claim other than an Administrative Expense Claim or Asbestos Claim, as to which no proof of claim was Filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy Court, such Plan Claim to the extent that it has been listed by the Debtors in their Schedules as liquidated in amount and not disputed or contingent and not otherwise subject to an objection Filed within such time as is set by the Bankruptcy Court pursuant to the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy Court;

(c)    With respect to any Equity Interest in a Debtor, any Equity Interest registered in the stock register (or its equivalent) maintained by or on behalf of the relevant Debtor as of the Confirmation Date; and

3

(d)      With respect to any Administrative Expense Claim:

      (i)      that is a Fee Claim, such a Claim to the extent it is allowed in whole or in part by a Final Order of the Bankruptcy Court; or

      (ii)      other than with respect to a Fee Claim, (X) a Claim to the extent that the Debtors or the Reorganized Debtors determine it to constitute an Administrative Expense Claim, or (Y) a Claim to the extent it is allowed in whole or in part by a Final Order of the Bankruptcy Court and only to the extent that such allowed portion is deemed, pursuant to a Final Order of the Bankruptcy Court, to constitute a cost or expense of administration under Sections 503 or 1114 of the Bankruptcy Code.

9.      "**Allowed Amount**" shall mean the dollar amount of an Allowed Plan Claim (other than an Asbestos Claim).

10.      "**Anchor**" means Debtor The Anchor Packing Company and any predecessor Entity or predecessor in interest respecting such Debtor.

11.      "**Anchor Claim**" means a Claim against Anchor.

12.      "**Asbestos Channeling Injunction**" shall mean the order(s) issued or affirmed by the District Court, in accordance with and pursuant to Sections 524(g) and 105(a) of the Bankruptcy Code, permanently and forever staying, restraining, and enjoining any Entity from taking any action against any Asbestos Protected Party for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Asbestos Claims, all of which shall be channeled to the Asbestos Trust for resolution as set forth in the claims resolution procedures (other than actions brought to enforce any right or obligation under the Plan or any agreement or instrument between the Debtors or Reorganized Debtors, on the one hand, and the Trust, on the other hand, entered into pursuant to the Plan).

13.      "**Asbestos Claimant**" shall mean the Holder of an Asbestos Claim.

14.      "**Asbestos Claims**" shall mean any and all GST Asbestos Claims and Coltec Asbestos Claims, and any and all Demands related thereto.

15.      "**Asbestos Claimants Committee**" shall mean the Official Committee of Asbestos Personal Injury Claimants appointed in the Chapter 11 Cases, to include after Coltec's Petition Date the members of the Ad Hoc Coltec Asbestos Claimants Committee.

16.      "**Asbestos Insurance Action**" shall mean any claim, cause of action, or right of any Debtor, under the laws of any jurisdiction, against any Asbestos Insurance Entity, arising from or based on: (i) any such Asbestos Insurance Entity's failure to provide coverage for, or failure to pay or agree to pay, any claim under any Asbestos Insurance Policy or any related settlement or agreement; (ii) the refusal of any such Asbestos Insurance Entity to compromise or settle any claim under or pursuant to any Asbestos Insurance Policy or any related settlement or agreement; (iii) the interpretation or enforcement of

4

the terms of any Asbestos Insurance Policy or any related settlement or agreement; or (iv) any conduct of any Asbestos Insurance Entity constituting "bad faith," violations of state insurance codes, unfair claims practices, or other wrongful conduct under applicable law with respect to any Asbestos Insurance Policy or any related settlement or agreement.

17.    "**Asbestos Insurance Agreement**" shall mean any settlement agreement or coverage-in-place agreement between an Asbestos Insurance Entity and any of the Debtors or their Affiliates relating to an Asbestos Insurance Policy.

18.    "**Asbestos Insurance Entity**" shall mean any Entity, including any insurance company, broker, or guaranty association, that has issued, or that has or had actual or potential liability, duties or obligations under or with respect to, any Asbestos Insurance Policy or any agreements or settlements relating to any Asbestos Insurance Policy.

19.    "**Asbestos Insurance Policy**" shall mean any insurance policy under which any Debtor or Affiliate of the Debtors has or had indemnity, defense, or other insurance coverage, whether known or unknown, that actually or potentially provides insurance coverage for any Asbestos Claim, including but not limited to the policies listed on Exhibit E in the Exhibit Book.

20.    "**Asbestos Insurance Rights**" shall mean any and all rights, titles, privileges, interests, claims, demands or entitlements to any proceeds, payments, defense costs, indemnification, escrowed funds, initial or supplemental dividends, scheme payments, supplemental scheme payments, causes of action, and choses in action of any Debtor or other Entity with respect to any Asbestos Insurance Policy, any rights under any Asbestos Insurance Agreement, and any rights in any Asbestos Insurance Action.

21.    "**Asbestos Protected Party**" shall mean any of the following parties:

(a)    GST, Garrison, and Coltec;

(b)    the Reorganized Debtors;

(c)    Anchor and Post-Bankruptcy Anchor (but only to the extent that the liability asserted against Anchor or Post-Bankruptcy Anchor derives from the conduct, operations, or products of GST or Coltec or is based on Anchor's relation to GST, Garrison, or Coltec as an Affiliate);

(d)    any current or former Affiliate of each of the Debtors or Reorganized Debtors (including the Entities specified on Exhibit D in the Exhibit Book), to the extent that any liability is asserted to exist as a result of such Entity's being or having been such an Affiliate;

(e)    Coltec's former divisions and their successor Entities specified on Exhibit D in the Exhibit Book, as well as any successor Entities added to Exhibit D as Asbestos Protected Parties pursuant to Section 7.3.10 hereof (but, in any case, the successor Entities only in their respective capacities as successors);

(f)     the Asbestos Insurance Entities listed as Asbestos Protected Parties on Exhibit E in the Exhibit Book, as well as any Asbestos Insurance Entities added to Exhibit E as Asbestos Protected Parties pursuant to Section 7.3.10 hereof;

(g)     any Entity that, pursuant to the Plan or otherwise on or after the Effective Date, becomes a direct or indirect transferee of, or successor to, any of the Debtors, the Reorganized Debtors, the Affiliates of the Debtors or Reorganized Debtors, or any of their respective assets, to the extent that any liability on account of GST Asbestos Claims or Coltec Asbestos Claims is asserted to exist as a result of its becoming such a transferee or successor, including New Coltec (as described in the Disclosure Statement);

(h)     any Entity that is alleged to be directly or indirectly liable for an Asbestos Claim by reason of such Entity's (i) ownership of a financial interest in a Debtor, a past or present Affiliate of a Debtor, or a predecessor in interest of a Debtor, (ii) involvement in the management of a Debtor or a predecessor in interest of a Debtor, or service as an officer, director or employee of a Debtor or a related party within the meaning of Section 524(g)(4)(A)(iii) of the Bankruptcy Code, or (iii) involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition, of a Debtor or a related party within the meaning of Section 524(g)(4)(A)(iii) of the Bankruptcy Code, including but not limited to involvement in the Coltec Restructuring;

(i)     any Entity that makes a loan to any of the Reorganized Debtors, their Affiliates, the Trust, or to a successor to, or transferee of any of the respective assets of, the Debtors, the Reorganized Debtors, their Affiliates, or the Asbestos Trust, to the extent that any liability is asserted to exist as a result of its becoming such a lender or to the extent that any Encumbrance of assets made in connection with such a loan is sought to be invalidated, upset, or impaired, in whole or in part, as a result of its being such a lender;

(j)     each future Affiliate of each of the Debtors, the Reorganized Debtors and the Affiliates of the Debtors or the Reorganized Debtors (but, in any case, only to the extent that any liability is asserted to exist as a result of its being or becoming such an Affiliate); and

(k)     the Representatives of each of the Debtors, the Reorganized Debtors, and the Affiliates of the Debtors and Reorganized Debtors, respectively, but only to the extent that any liability is asserted to exist as a result of the Representative being, or acting in the capacity as, a Representative of one or more of the aforementioned Entities.

22.     "**Asbestos Trust**" shall mean the GST Settlement Facility, a Delaware statutory trust**,** established pursuant to Section 524(g) of the Bankruptcy Code and in accordance with the Asbestos Trust Agreement.

23.  "**Asbestos Trust Agreement**" shall mean the agreement, effective as of the day immediately preceding the Effective Date, substantially in the form included as Exhibit A in the Exhibit Book, to be entered into by and among the Debtors, the FCR, the Asbestos Claimants Committee, the CAC, the Asbestos Trustee, and the Delaware Trustee in connection with the formation of the Asbestos Trust.

24.  "**Asbestos Trust Assets**" shall mean (a) $370 million in Cash contributed to the Asbestos Trust by GST or Garrison on the day immediately preceding the Effective Date; (b) $30 million in Cash contributed to the Asbestos Trust by Coltec on the day immediately preceding the Effective Date; (c) the Deferred Contribution; (d) the Option; (e) any insurance recoveries paid to the Asbestos Trust in accordance with Section 7.3.10 hereof; (f) the Asbestos Trust Causes of Action (as defined in Section 7.3.4 hereof); and (g) following the transfer or vesting of the foregoing to or in the Asbestos Trust, any proceeds thereof and earnings and income thereon.

25.  "**Asbestos Trustee**" shall mean Lewis R. Sifford, the trustee of the Asbestos Trust, or any successor who subsequently may be appointed pursuant to the terms of the Asbestos Trust Agreement.

26.  "**Asbestos Trust Expenses**" shall mean any liabilities, costs, taxes, or expenses of, or imposed upon, or in respect of, the Asbestos Trust or, on and after the Effective Date, the Asbestos Trust Assets (except for payments to Holders of Asbestos Claims on account of such Asbestos Claims), including all costs of administering the Asbestos Trust and carrying out the terms of the Asbestos Trust Agreement and CRP, all to be paid solely from the Asbestos Trust Assets.

27.  "**Avoidance Action**" shall mean any claim, cause of action, or right of the Debtors, the Reorganized Debtors, their Estates, or any of them, arising under the Bankruptcy Code or other applicable law, including without limitation any avoidance or recovery actions under Sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws and principles of equitable subordination, whether or not litigation has been commenced to prosecute such causes of action as of the Effective Date or such actions are described in the Disclosure Statement or the Debtors' Schedules and Statements of Financial Affairs, all as may be amended or supplemented.

28.  "**Ballot**" shall mean the form or forms distributed to certain Holders of Plan Claims or Equity Interests by which such parties may indicate acceptance or rejection of the Plan.

29.  "**Bankruptcy Administrator**" shall mean the office of the United States Bankruptcy Administrator for the Western District of North Carolina.

30.  "**Bankruptcy Code**" shall mean title 11 of the United States Code, as set forth in §§ 101 *et seq.*, and applicable portions of titles 18 and 28 of the United States Code, each as in effect on the Petition Date or as thereafter amended to the extent such amendment is applicable to the Chapter 11 Cases.

31.   "**Bankruptcy Court**" shall mean the United States Bankruptcy Court for the Western District of North Carolina.

32.   "**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure, as amended, as applicable to the Chapter 11 Cases, including the Local Rules of the Bankruptcy Court.

33.   "**Board of Directors**" shall mean the board of directors, managers, or equivalent thereof of any of the Debtors, or any of the Reorganized Debtors, as the case may be, as it may exist from time to time.

34.   "**Business Day**" shall mean any day other than a Saturday, Sunday or legal holiday (as defined in Bankruptcy Rule 9006(a)) in the United States of America.

35.   "**By-Laws**" shall mean the by-laws or operating agreements of any of the specified Debtors, as amended as of the Effective Date or thereafter.

36.   "**Canadian Settlement**" shall mean a settlement evidenced by a written agreement, to be consummated on the Effective Date, between Debtors, EnPro, and Garlock of Canada Ltd and the Canadian provincial workers' compensation boards (the "**Provincial Boards**") resolving all remedies the Provincial Boards may possess under Canadian law or in the United States under U.S. law against Garlock of Canada Ltd, Debtors, or any Affiliate of Debtors and providing that the Provincial Boards shall deliver releases for all pending asbestos-related claims and a covenant not to bring suit or otherwise seek recovery in the future from Garlock of Canada Ltd, GST, Coltec, EnPro, the Asbestos Trust, or any of Debtors' or EnPro's other Affiliates for any present or future asbestos-related claim.

37.   "**Capital Stock**" shall mean (i) with respect to any corporation, any share, or any depositary receipt or other certificate representing any share, of equity interest in that corporation; and (ii) with respect to any other Entity, any share, membership, or percentage interest, unit of participation, or other equivalent (however designated) in or of equity interest in that Entity.

38.   "**Cash**" shall mean lawful currency of the United States of America.

39.   "**Certificate of Incorporation**" shall mean the articles of incorporation, articles of organization, or equivalent document of any of the Debtors, as applicable, as amended as of the Effective Date or thereafter.

40.   "**Chapter 11 Cases**" shall mean the cases commenced by the Filing, on the Petition Date, by GST, Garrison, and Anchor of voluntary petitions for relief under chapter 11 of the Bankruptcy Code, jointly administered under Case No. 10-31607, United States Bankruptcy Court for the Western District of North Carolina, as well as the case to be commenced in the Bankruptcy Court under chapter 11 of the Bankruptcy Code for Coltec.

41.   "**Claim**" shall mean a claim (as defined in Section 101(5) of the Bankruptcy Code) against a Debtor (and, in the case of Coltec Asbestos Claims and GST Asbestos Claims,

against any Debtor or Asbestos Protected Party) including any right to: (a) payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

42.  "**Claimant**" shall mean the Holder of a Claim.

43.  "**Claimants Advisory Committee**" or "**CAC**" shall mean the committee established pursuant to the Asbestos Trust Agreement to represent the interests of Holders of present Asbestos Claims.

44.  "**Claims Resolution Procedures**" or "**CRP**" shall mean the procedures, substantially in the form attached as Exhibit B in the Exhibit Book, to be implemented by the Trustee pursuant to the terms and conditions of the Plan and the Asbestos Trust Agreement, to liquidate, determine, and pay (if entitled to payment) Asbestos Claims as and to the extent set forth in such procedures.

45.  "**Class**" shall mean a group of Plan Claims or Equity Interests classified by the Plan pursuant to Section 1122(a) of the Bankruptcy Code.

46.  "**Coltec**" shall mean OldCo, LLC, successor by merger to Coltec Industries Inc, and any predecessor Entity or predecessor in interest respecting such Debtor.

47.  "**Coltec Asbestos Claim**" shall mean a Claim or Demand against Coltec or any Asbestos Protected Party, whether or not such Claim or Demand is reduced to judgment, liquidated, unliquidated, fixed, settled, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether or not the facts of or legal bases therefor are known or unknown, whether the disease or condition upon which the Claim or Demand is based had manifested, become evident, or been diagnosed before or after the Confirmation Date, and whether in the nature of or sounding in tort, or under contract (including settlement agreements alleged to be enforceable under applicable law), warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity, or any other statute or theory of law, equity, admiralty, or otherwise (including conspiracy and piercing the corporate veil, alter ego, and similar theories), including (i) all related claims, debts, rights, remedies, liabilities, or obligations for compensatory (including general, special, proximate, or consequential damages, loss of consortium, lost wages or other opportunities, wrongful death, medical monitoring, or survivorship), punitive or exemplary damages, or costs or expenses, and (ii) all cross-claims, contribution claims, subrogation claims, reimbursement claims, or indemnity claims, in each case for, based on, arising out of, resulting from, attributable to, or under the laws of any jurisdiction, by reason of, in whole or in part, directly or indirectly:

9

(a) death, wrongful death, personal or bodily injury (whether physical, emotional, or otherwise), sickness, illness, ailment, disease, medical monitoring for increased risk, fear of or increased risk of any of the foregoing, loss of consortium, lost wages or other opportunities, survivorship, or other personal injuries (whether physical, emotional, or otherwise) or other damages (including medical, legal, and other expenses or punitive damages), caused or allegedly caused by, based on or allegedly based on or arising or allegedly arising from or attributable to, directly or indirectly, in whole or in part, acts, omissions, or conduct of Coltec or any other Entity for whose products or operations Coltec allegedly has liability or is otherwise liable, including any past or present Affiliate (including, without limitation, Anchor), predecessor, successor, or assign of Coltec; and

(b) the presence of, exposure to, or contact with, at any time, asbestos or any products or materials containing asbestos that were mined, processed, consumed, used, stored, manufactured, fabricated, constructed, designed, engineered, sold, assembled, supplied, produced, specified, selected, distributed, released, maintained, repaired, purchased, owned, occupied, serviced, removed, replaced, disposed of, installed by, or in any way marketed by, or on behalf of, (i) Coltec, or (ii) any other Entity (including any past or present Affiliate (including, without limitation, Anchor), predecessor, successor, or assign of Coltec) for whose products or operations Coltec allegedly has liability or is otherwise liable.

Notwithstanding the foregoing, the term "Coltec Asbestos Claim" does not include any Coltec Workers' Compensation Claim.

48. "**Coltec General Unsecured Claim**" shall mean any Claim against Coltec in the Chapter 11 Cases that is not an Administrative Expense Claim, Priority Tax Claim, Priority Claim, Secured Claim, Workers' Compensation Claim, Intercompany Claim, or Asbestos Claim.

49. "**Coltec Restructuring**" shall mean the transactions resulting in the creation of OldCo, LLC prior to its bankruptcy filing, including all related transactions, as described in Section 2.5.3 of the Disclosure Statement.

50. "**Coltec Workers' Compensation Claim**" shall mean any Claim against Coltec (a) for benefits under a state-mandated workers' compensation system, which a past, present, or future employee of Coltec or its predecessors is receiving, or may in the future have a right to receive and/or (b) for reimbursement brought by any insurance company or state agency as a result of payments made by such insurance company or state agency for any statutory benefit owed (but not paid) by Coltec to such employees under such a system and fees and expenses that are incurred and reimbursable under any insurance policies or laws or regulations covering such statutory employee benefit Claims. For the avoidance of doubt, Coltec Workers' Compensation Claims shall not include any right of such employee or any other Entity that exists outside of such state workers' compensation system.

51.     "**Confirmation Date**" shall mean the date the Confirmation Order is entered on the docket of the Bankruptcy Court.

52.     "**Confirmation Hearing**" shall mean the hearing that the Court conducts to consider confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

53.     "**Confirmation Order**" shall mean the order(s) entered by the Court on the Confirmation Date confirming the Plan.

54.     "**Confirmation Procedures Order**" shall mean the order(s) of the Bankruptcy Court (i) approving procedures relating to provision of notice of the Confirmation Hearing and the solicitation and tabulation of votes with respect to the Plan; and (ii) providing or establishing the basis for calculating the amount of any Plan Claim for voting purposes.

55.     "**Contingent Claim**" shall mean any Plan Claim, the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, an event, which event has not yet occurred, happened, or been triggered, as of the date on which such Plan Claim is sought to be estimated or an objection to such Plan Claim is Filed, whether or not such event is within the actual or presumed contemplation of the Holder of such Plan Claim.

56.     "**Court**" shall mean either the Bankruptcy Court or the District Court, as appropriate.

57.     "**Debtor in Possession**" or "**Debtors in Possession**" shall mean one or more of the Debtors, each in its capacity as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

58.     "**Debtors**" shall mean, collectively, Garlock Sealing Technologies LLC; Garrison Litigation Management Group, Ltd.; The Anchor Packing Company; and OldCo, LLC, successor by merger to Coltec Industries Inc (once it has filed its Chapter 11 Case).

59.     "**Deferred Contribution**" shall mean $60 million (or such lesser amount as may be agreed by the Reorganized Debtors and the Asbestos Trust as permitted by Section 7.3.2) in Cash to be paid by Coltec to the Asbestos Trust no later than the first anniversary of the Effective Date.

60.     "**Delaware Trustee**" shall mean the Delaware Trustee described in the Asbestos Trust Agreement.

61.     "**Demand**" shall mean a "demand" as defined in Section 524(g)(5) of the Bankruptcy Code against a Debtor or any Asbestos Protected Party.

62.     "**Disallowed**" shall mean, with respect to a Plan Claim (other than an Asbestos Claim) or Equity Interest, disallowed in its entirety by a Final Order of the Bankruptcy Court, District Court, or another court of competent jurisdiction.

11

63.    "**Disclosure Statement**" shall mean the disclosure statement relating to the Plan, including all exhibits, appendices and schedules thereto, approved with respect to GST, Garrison, and Anchor by order of the Bankruptcy Court in connection with the Plan pursuant to Section 1125 of the Bankruptcy Code, together with any amendments and supplements thereto, and to be approved with respect to Coltec following commencement of its Chapter 11 Case.

64.    "**Disputed Claim**" shall mean a Plan Claim (other than an Asbestos Claim) that is neither Allowed nor Disallowed.

65.    "**Distribution**" shall mean the payment, distribution, or assignment under the Plan by the Reorganized Debtors of property or interests in property to:  (i) any Holder of an Allowed Plan Claim (other than an Asbestos Claim) or Allowed Equity Interest, or (ii) the Asbestos Trust.

66.    "**Distribution Date**" shall mean, with respect to an Allowed Claim, the date which is as soon as reasonably practicable after the later of: (i) the Effective Date, (ii) the Allowance Date, or (iii) such other date agreed to in writing by such Claimant and the Debtors or Reorganized Debtors, as applicable.

67.    "**District Court**" shall mean the United States District Court for the Western District of North Carolina.

68.    "**Effective Date**" shall mean the first Business Day (beginning at 12:01 a.m. Charlotte, North Carolina time) after the date on which all of the conditions precedent to the effectiveness of the Plan specified in Section 7.9 hereto shall have been satisfied or waived or, if a stay of the Confirmation Order is in effect on such date, the first Business Day (beginning at 12:01 a.m. Charlotte, North Carolina time) after the expiration, dissolution, or lifting of such stay; and unless otherwise specified herein an event to be effective on the Effective Date shall be effective as of 12:01 a.m. on the Effective Date.

69.    "**EnPro**" shall mean EnPro Industries, Inc.

70.    "**Encumbrance**" shall mean with respect to any property or asset (whether real or personal, tangible or intangible), any mortgage, lien, pledge, charge, security interest, assignment as collateral, or encumbrance of any kind or nature in respect of such property or asset (including any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction) to secure payment of a debt or performance of an obligation.

71.    "**Entity**" shall mean any person, individual, corporation, company, limited liability company, firm, partnership, association, joint stock company, joint venture, estate, trust, business trust, unincorporated organization, the Bankruptcy Administrator, any other entity, or any Governmental Unit or any political subdivision thereof.

72.    "**Equity Interest**" shall mean any interest in any of the Debtors that is an "equity security" within the meaning of Section 101(16) of the Bankruptcy Code, or any similar

interest in an Entity that is recognized under applicable law, including any such interest that is a "certificated security" or "uncertificated security" within the meaning of Article 8 of the Uniform Commercial Code.

73.  "**ERISA**" shall mean the Employee Retirement Income Security Act of 1974 and any regulations issued pursuant thereto, as amended from time to time.

74.  "**Estate**" shall mean the relevant estate of any Debtor created in its Chapter 11 Case pursuant to Section 541 of the Bankruptcy Code.

75.  "**Estate Parties**" shall mean each of the Debtors, the estate of each Debtor, each of the Reorganized Debtors, and any trustee that may be appointed in any of the Debtors' cases under the Bankruptcy Code.

76.  "**Exhibit Book**" shall mean the exhibits to the Plan, as such exhibits may be amended, supplemented, or modified from time to time.

77.  "**Fee Claim**" shall mean all Claims (a) for allowance and payment of compensation and expenses earned or incurred by Professionals on and after the Petition Date, and up to and through the Effective Date, in accordance with Sections 328, 330(a), 331, and 503(b)(2) of the Bankruptcy Code; or (b) subject to Bankruptcy Court approval under Section 1129(a)(4) of the Bankruptcy Code.

78.  "**Fee Dispute Remedy**" shall mean (a) any objection to allowance or payment of any Fee Claim, including objections to final fee applications; or (b) any claim, motion, or request for reimbursement, penalties, cost-shifting, or sanctions in connection with any disputed Fee Claims, or for which disgorgement is sought, in the Debtors' Chapter 11 Cases.

79.  "**Fee Order**" shall mean the Bankruptcy Court's Administrative Order, Pursuant to Sections 105(a) and 331 of the Bankruptcy Code, Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals dated July 15, 2010 (Docket No. 233) in the Chapter 11 Cases, as may have been amended or supplemented from time to time.

80.  "**File**" or "**Filed**" or "**Filing**" shall mean file, filed, or filing with the Court in or to commence the Chapter 11 Cases, as the case may be.

81.  "**Final Order**" shall mean an order, judgment, ruling, or decree, the operation or effect of which has not been stayed, reversed, modified, or amended and as to which order, judgment, ruling, or decree the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing by all Entities possessing such right, or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or from which reargument or rehearing was sought or certiorari has been denied, and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have

13

expired; *provided, however,* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order shall not cause such order not to be a Final Order.

82.     "**Foreign Asbestos Claim**" shall mean an Asbestos Claim held or asserted by an Entity that both is not a citizen or permanent resident of the United States and whose Asbestos Claim is not based on alleged exposure to asbestos in the United States.

83.     "**Future Asbestos Claimants' Representative**" or "**FCR**" shall mean Joseph W. Grier, III (or any Court-appointed successor), appointed as the legal representative to represent the interests of, appear on behalf of, and be a fiduciary to the Holders of future GST Asbestos Claims in the Order Granting Debtors' Motion for Appointment of Joseph W. Grier, III as Future Asbestos Claimants' Representative (Docket No. 512), and after commencement of Coltec's Chapter 11 case, to be appointed by the Bankruptcy Court as the legal representative to represent the interests of, appear on behalf of, and be a fiduciary to the Holders of future Coltec Asbestos Claims.

84.     "**Garrison**" shall mean Debtor Garrison Litigation Management Group, Ltd. and any predecessor Entity or predecessor in interest respecting such Debtor.

85.     "**Governmental Unit**" shall mean any domestic, foreign, provincial, federal, state, local or municipal (a) government, or (b) governmental agency, commission, department, bureau, ministry, or other governmental entity, or (c) any other "governmental unit" (as defined in Section 101(27) of the Bankruptcy Code).

86.     "**GST**" shall mean Debtor Garlock Sealing Technologies LLC and any predecessor Entity or predecessor in interest respecting such Debtor.

87.     "**GST Asbestos Claim**" shall mean a Claim or Demand against GST, Garrison, or any Asbestos Protected Party, whether or not such Claim or Demand is reduced to judgment, liquidated, unliquidated, fixed, settled, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether or not the facts of or legal bases therefor are known or unknown, whether the disease or condition upon which the Claim or Demand is based had manifested, become evident, or been diagnosed before or after the Confirmation Date, and whether in the nature of or sounding in tort, or under contract (including settlement agreements alleged to be enforceable under applicable law), warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity, or any other statute or theory of law, equity, admiralty, or otherwise (including conspiracy and piercing the corporate veil, alter ego, and similar theories), including (i) all related claims, debts, rights, remedies, liabilities, or obligations for compensatory (including general, special, proximate, or consequential damages, loss of consortium, lost wages or other opportunities, wrongful death, medical monitoring, or survivorship), punitive or exemplary damages, or costs or expenses, and (ii) all cross-claims, contribution claims, subrogation claims, reimbursement claims, or indemnity claims, in each case for, based on, arising out of, resulting from, attributable to, or under the laws of any jurisdiction, by reason of, in whole or in part, directly or indirectly:

14

(a)     death, wrongful death, personal or bodily injury (whether physical, emotional, or otherwise), sickness, illness, ailment, disease, medical monitoring for increased risk, fear of or increased risk of any of the foregoing, loss of consortium, lost wages or other opportunities, survivorship, or other personal injuries (whether physical, emotional, or otherwise) or other damages (including medical, legal, and other expenses or punitive damages), caused or allegedly caused by, based on or allegedly based on or arising or allegedly arising from or attributable to, directly or indirectly, in whole or in part, acts, omissions, or conduct of GST or Garrison or any other Entity for whose products or operations GST or Garrison allegedly has liability or is otherwise liable, including any past or present Affiliate (including, without limitation, Anchor), predecessor, successor, or assign of GST or Garrison; and

(b)     the presence of, exposure to, or contact with, at any time, asbestos or any products or materials containing asbestos that were mined, processed, consumed, used, stored, manufactured, fabricated, constructed, designed, engineered, sold, assembled, supplied, produced, specified, selected, distributed, released, maintained, repaired, purchased, owned, occupied, serviced, removed, replaced, disposed of, installed by, or in any way marketed by, or on behalf of, (i) GST, (ii) Garrison, or (iii) any other Entity (including any past or present Affiliate (including, without limitation, Anchor), predecessor, successor, or assign of GST or Garrison) for whose products or operations GST or Garrison allegedly has liability or is otherwise liable.

Notwithstanding the foregoing, the term "GST Asbestos Claim" does not include any GST Workers' Compensation Claim.

88.    "**GST/Garrison Equity Interests**" shall mean Equity Interests in GST and Garrison.

89.    "**GST General Unsecured Claim**" shall mean any Claim against GST or Garrison in the Chapter 11 Cases that is not an Administrative Expense Claim, Priority Tax Claim, Priority Claim, Secured Claim, Workers' Compensation Claim, Intercompany Claim, or Asbestos Claim.

90.    "**GST Recovery Action**" shall mean any cause of action, claim, demand, or suit by Coltec, GST, Garrison, or any of their respective Affiliates, predecessors, successors, or assigns against (a) attorneys or law firms representing, or who have represented, holders of asbestos-related claims, or (b) such holders of asbestos-related claims, which cause of action, claim, demand, or suit is based on, arises from, results from, or is attributable to any acts, omissions, or conduct by such attorneys, law firms, or holders, in connection with an action or suit to recover compensatory damages or other remedies for alleged asbestos-related injury or wrongful death before the Confirmation Date.

91.    "**GST Recovery Action Settlement Package**" shall mean the documents necessary to implement settlement of the pending GST Recovery Actions, which shall be reasonably agreeable to the plaintiffs and defendants in form and substance, and shall include without limitation (a) broad mutual releases extinguishing all the parties' respective

claims, counterclaims, and countersuits against each other, asserted or unasserted (including any claims by or against the parties' respective affiliates, predecessors, successors, or assigns), and including without limitation releases of each party's respective officers, directors, employees, lawyers (including corporate and outside counsel, past and present, specifically including David Glaspy, John Turlik, and their law firms), experts, witnesses, Representatives, agents, successors and assigns and all other Asbestos Protected Parties; (b) stipulations of dismissals with prejudice by all parties; and (c) mutual non-disparagement agreements that will prohibit disparagement of each party and each party's respective officers, directors, employees, lawyers (including corporate and outside counsel, past and present, and specifically including David Glaspy, John Turlik, and their law firms), experts, witnesses, agents, and Representatives.

92. "**GST Workers' Compensation Claim**" shall mean any Claim against GST or Garrison (a) for benefits under a state-mandated workers' compensation system, which a past, present, or future employee of GST or Garrison or their predecessors is receiving, or may in the future have a right to receive and/or (b) for reimbursement brought by any insurance company or state agency as a result of payments made by such insurance company or state agency for the statutory benefit owed (but not paid) by GST or Garrison to such employees under such a system and fees and expenses that are incurred and reimbursable under any insurance policies or laws or regulations covering such statutory employee benefit Claims.  For the avoidance of doubt, "GST Workers' Compensation Claim" shall not include any right of such employee or any other Entity that exists outside of such state workers' compensation system.

93. "**Holder**" shall mean any Entity holding any Plan Claim or Equity Interest and, with respect to a vote on the Plan, shall mean the beneficial holders on the Voting Record Date or any authorized signatory who has completed and executed a Ballot or on whose behalf a Master Ballot has been properly completed and executed.

94. "**Initial Asbestos Trust Assets**" shall mean (a) $370 million in Cash contributed to the Asbestos Trust by GST or Garrison on the day immediately preceding the Effective Date; (b) $30 million in Cash contributed to the Asbestos Trust by Coltec on the day immediately preceding the Effective Date; (c) the Option; and (d) the Asbestos Trust Causes of Action (as defined in Section 7.3.4 hereof).

95. "**Intercompany Claim**" shall mean any Claim by any Debtor against any other Debtor, or a Non-Debtor Affiliate against any Debtor; *provided, however*, that Intercompany Claims shall not include Asbestos Claims or Anchor Claims.

96. "**IRC**" shall mean the Internal Revenue Code of 1986, as amended, and any applicable regulations (including temporary and proposed regulations) promulgated thereunder by the United States Treasury Department.

97. "**IRS**" shall mean the United States Internal Revenue Service.

98.    "**Master Ballot**" shall mean a Ballot cast on behalf of more than one Asbestos Claimant, pursuant to the terms and guidelines established in the Plan Documents or the Confirmation Procedures Order.

99.    "**New Coltec**" shall mean the entity described as New Coltec in the Disclosure Statement.

100.    "**Non-Asbestos Plan Claim**" shall mean any Plan Claim that is not an Asbestos Claim.

101.    "**Non-Debtor Affiliate**" shall mean each Affiliate of the Debtors that is not a debtor or debtor-in-possession in the Chapter 11 Cases.

102.    "**Option**" shall have the meaning given to such term in Section 7.3.2 hereof.

103.    "**Other Debtor Equity Interests**" shall mean Equity Interests in Debtors other than GST and Garrison.

104.    "**PBGC**" shall have the meaning set forth in Section 8.1.2 of the Plan.

105.    "**Petition Date**" shall mean, with respect to GST, Garrison, and Anchor, June 5, 2010, the date on which such Debtors Filed their petitions for relief commencing their Chapter 11 Cases, and with respect to Coltec, the date on which Coltec Files its petition for relief commencing its Chapter 11 Case.

106.    "**Plan**" shall mean this plan, as it may be amended, supplemented, or otherwise modified from time to time, and the exhibits and schedules to the foregoing, as the same may be in effect from time to time.

107.    "**Plan Claims**" shall mean, collectively, Administrative Expense Claims, Anchor Claims, Asbestos Claims, Coltec General Unsecured Claims, GST General Unsecured Claims, Intercompany Claims, Priority Claims, Priority Tax Claims, Secured Claims, and Workers' Compensation Claims.

108.    "**Plan Documents**" shall mean the Plan, the Exhibit Book, the Disclosure Statement, and the Plan Supplement, either in the form approved by each of the Plan Proponents or as each may be amended, supplemented, or otherwise modified from time to time in accordance with its terms.

109.    "**Plan Supplement**" shall mean the supplement, containing copies of certain exhibits or schedules to the Plan and Disclosure Statement, including the By-Laws of the Reorganized Debtors, draft amended Certificates of Incorporation, and a list disclosing the identity and affiliates of any person proposed to serve on the initial board of directors or be an officer of one or more of the Reorganized Debtors, which shall be Filed with the Bankruptcy Court at least ten (10) days before the objection deadline with respect to the Plan and served on the Entities listed in Section 11.9 of this Plan.

110.    "**Post-Bankruptcy Anchor**" shall mean Debtor Anchor from and after the Effective Date.

17

111.    "**Priority Claim**" shall mean any Claim (other than an Administrative Expense Claim or Priority Tax Claim) against GST, Garrison, or Coltec to the extent such Claim is entitled to priority in right of payment under Section 507 of the Bankruptcy Code; *provided, however*, that Priority Claims shall not include any Asbestos Claims.

112.    "**Priority Tax Claim**" shall mean a Claim that is of a kind specified in Sections 502(i) or 507(a)(8) of the Bankruptcy Code.

113.    "**Professional**" shall mean an Entity (a) whose employment as a professional in the Chapter 11 Cases has been approved by order of the Bankruptcy Court, in accordance with Sections 327, 328, 363, 524(g)(4)(B)(i) and/or 1103 of the Bankruptcy Code, or (b) whose compensation or reimbursable expenses are subject to the Fee Order.

114.    "**Reorganized Debtor**" or "**Reorganized Debtors**" shall mean Debtors GST, Garrison, and Coltec from and after the Effective Date.

115.    "**Representatives**" shall mean, (a) with respect to any Entity, the past, present, or future managers, directors, members, trustees, officers, employees, accountants (including independent registered public accountants), advisors, attorneys, consultants, or other agents, representatives, or professionals of that Entity, but only in their capacities as such, and (b) the firms or other Entities, other than the Debtors and their Non-Debtor Affiliates, with whom the Representatives identified in part (a) are employed or associated, but only in such firms' or Entities' respective capacities as such.

116.    "**Retained Causes of Action**" shall mean the actual and potential causes of action that the Reorganized Debtors shall retain under the Plan, on and after the Effective Date, on behalf of the Debtors, to commence and pursue, as appropriate, in any court or other tribunal including in an adversary proceeding filed in one or more of the Chapter 11 Cases, whether such causes of action accrued before or after the Petition Date and whether such causes of action are known or unknown as of any date of determination, including, but not limited to, the actions listed in Exhibit F in the Exhibit Book, but specifically excluding the GST Recovery Actions and the claims and causes of action settled and released in Section 8.4.

117.    "**Schedules**" shall mean the schedules of assets and liabilities and the statements of financial affairs Filed by the Debtors in Possession with the Bankruptcy Court, as required by Section 521 of the Bankruptcy Code and the Bankruptcy Rules, as such schedules and statements may be amended by the Debtors in Possession from time to time in accordance with Bankruptcy Rule 1007.

118.    "**SEC**" shall mean the United States Securities and Exchange Commission.

119.    "**Secured Claim**" shall mean a Claim against GST, Garrison, or Coltec that is:  (i) secured by a lien (as such term is defined in Section 101(37) of the Bankruptcy Code) on property in which the Debtors have an interest, which lien is valid, perfected, and enforceable under applicable law or by reason of a Final Order, or (ii) entitled to setoff under Section 553 of the Bankruptcy Code, to the extent of (A) the value of the

Claimant's interest in the Debtor's interest in such property or (B) the amount subject to setoff, as applicable, as determined pursuant to Section 506(a) of the Bankruptcy Code; *provided, however*, that Secured Claims shall not include any Asbestos Claims.

120.   "**Secured Tax Claim**" shall mean a Secured Claim for the payment of taxes to a governmental Entity.

121.   "**Securities Act**" shall mean the Securities Act of 1933, as amended.

122.   "**United States**" shall mean the United States of America and its political subdivisions, including states, territories, commonwealths, possessions, and now-existing compacts of free association (namely, those with the Federated States of Micronesia, the Marshall Islands, and Palau), as well as all ships and vessels of the United States Navy, the United States Coast Guard, or any other branch of the armed services of the United States of America.

123.   "**Unliquidated Claim**" shall mean:  (i) any Plan Claim (other than an Asbestos Claim), the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be fixed, or (ii) any Plan Claim (other than an Asbestos Claim) for which no Allowed Amount has been determined.

124.   "**Unsecured Creditors Committee**" shall mean the Official Committee of Unsecured Creditors appointed by order of the Bankruptcy Court dated June 17, 2011 (Docket No. 104), as subsequently amended, in the Chapter 11 Cases pursuant to Section 1102 of the Bankruptcy Code.

125.   "**Voting Record Date**" shall mean the record date set by the Bankruptcy Court in the Confirmation Procedures Order.

126.   "**Workers' Compensation Claims**" shall mean GST Workers' Compensation Claims and Coltec Workers' Compensation Claims.

## 1.2   OTHER TERMS/INTERPRETATION

(a)     Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the other genders.

(b)     When used in this Plan, the term "claim" shall mean a claim (as defined in Section 101(5) of the Bankruptcy Code) against any Entity including any right to: (a) payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

(c)     Any reference in a Plan Document to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions shall mean that such document shall be substantially in such form or substantially on such terms and conditions.

(d)     Any specific references to promissory notes, deeds of trust, or other instruments of indebtedness or security shall include any amendments, modifications, and extensions thereto.

(e)     Nothing contained in this Plan or the Plan Documents shall constitute an admission by any party of either liability for or the validity, priority, or extent of (i) any Claim asserted against the Debtors or any third party; (ii) any defense against such a Claim; or (iii) any theory or counterclaim asserted by the Debtors or any third party.

(f)     Any reference in a Plan Document to an existing document or exhibit in the Exhibit Book filed or to be filed shall mean the document or exhibit as it may have been or may be amended, modified or supplemented.

(g)     Any reference to an Entity as a Holder of a Claim or Plan Claim shall include that Entity's successors, assigns and Affiliates.

(h)     The words "herein," "hereof," "hereto," "hereunder," and others of similar import when used in a Plan Document refer to such Plan Document as a whole and not to any particular section, subsection, or clause contained in such Plan Document.

(i)     The word "including" (and, with correlative meaning, the forms of the word "include") shall mean including, without limiting the generality of any description preceding that word; and the words "shall" and "will" are used interchangeably and have the same meaning.

(j)     All references to dollars are to United States dollars.

(k)     An initially capitalized term used herein that is not defined herein shall have the meaning ascribed to such term, if any, in the Bankruptcy Code, unless the context shall otherwise require.

(l)     The descriptive headings contained in Plan Documents are included for convenience of reference only and are not intended to be a part of and shall not affect in any way the meaning or interpretation of Plan Documents.

(m)     All references in a particular Plan Document to sections, articles, and exhibits are references to sections, articles and exhibits of or to such Plan Document unless otherwise specified.

(n)     In computing any period of time prescribed or allowed by a Plan Document, the provisions of Bankruptcy Rule 9006(a) shall apply.

(o)     Unless otherwise provided herein, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply.

## 1.3    THE PLAN DOCUMENTS

The Plan Documents, once Filed, shall also be available for review in the office of the clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court. Holders of Plan Claims and Equity Interests may also obtain a copy of the Plan Documents following their Filing with the clerk of the Court on Business Days from 9:00 a.m. through 5:00 p.m. (prevailing Eastern Time) at the following addresses:

RAYBURN COOPER & DURHAM, P.A.        ROBINSON, BRADSHAW & HINSON, P.A.
1200 Carillion, 227 West Trade Street        101 North Tryon Street, Suite 1900
Charlotte, NC 28202        Charlotte, NC 28246
Telephone: (704) 334-0891        Telephone: (704) 377-2536
Attn: John R. Miller, Jr.        Attn: Richard C. Worf

Holders of Plan Claims may also obtain a copy of the Plan Documents following their Filing with the clerk of the Bankruptcy Court by contacting counsel for the Debtors by a written request sent to the above address.

## 1.4    ANCILLARY DOCUMENTS

Each of the Plan Documents is an integral part of this Plan and is hereby incorporated by reference and made a part of this Plan.

### ARTICLE 2
### PROVISIONS FOR PAYMENT OF ADMINISTRATIVE
### EXPENSES AND PRIORITY TAX CLAIMS

## 2.1    UNCLASSIFIED CLAIMS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not classified and are excluded from the Classes set forth in Article 3 of this Plan.

### 2.1.1    Payment of Allowed Administrative Expense Claims

Subject to the terms herein and unless otherwise agreed to by the Holder of an Allowed Administrative Expense Claim (in which event such other agreement shall govern), Allowed Administrative Expense Claims shall be provided for as follows:

(a)    if such Claim is for goods sold or services rendered representing liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases involving customers, suppliers, or trade or vendor Claims, such Claim shall be paid by the Debtors or the Reorganized Debtors in the ordinary course in accordance with the terms and conditions of any agreements relating thereto;

(b)    if such Claim is for amounts necessary to cure executory contracts and unexpired leases assumed by the Debtors, such Claim shall be paid by the Debtors or

21

Reorganized Debtors as soon as practicable after the Effective Date or as ordered by the Bankruptcy Court;

(c)    amounts due Holders of other Allowed Administrative Expense Claims, including, without limitation, Allowed Fee Claims or Claims arising pursuant to Section 503(b)(9) of the Bankruptcy Code, shall be paid as soon as practicable after the Effective Date or as ordered by the Bankruptcy Court, unless otherwise agreed between the Debtors and such Holders; and

(d)    Administrative Expense Claims of the Bankruptcy Administrator for fees pursuant to 28 U.S.C. § 1930(a)(6) and (7) shall be paid in accordance with the applicable schedule for payment of such fees by Debtors.

### 2.1.2  Priority Tax Claims

Subject to the terms herein, each Holder of an Allowed Priority Tax Claim shall be paid 100% of the unpaid Allowed Amount of such Allowed Priority Tax Claim in Cash by the Reorganized Debtors on the Distribution Date. Any Claim or demand for penalty relating to any Priority Tax Claim (other than a penalty of the type specified in Section 507(a)(8)(G) of the Bankruptcy Code) shall be Disallowed, and the Holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtors or Reorganized Debtors, or their Estates or assets.

### ARTICLE 3
### CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 3.1  SUMMARY

Claims and Equity Interests are classified for all purposes, including voting, confirmation, and Distribution pursuant to this Plan and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code, as follows:

|  | **CLASSIFICATION** | **IMPAIRMENT AND VOTING** |
|---|---|---|
| Class 1 | Priority Claims | Unimpaired -- deemed to have voted to accept the Plan; no separate vote being solicited. |
| Class 2 | Secured Claims | Unimpaired -- deemed to have voted to accept the Plan; no separate vote being solicited. |
| Class 3 | Workers' Compensation Claims | Unimpaired -- deemed to have voted to accept the Plan; no separate vote being solicited. |
| Class 4 | Intercompany Claims | Unimpaired -- deemed to have voted to accept the Plan; no separate vote being solicited. |
| Class 5 | Asbestos Claims | Impaired -- vote being solicited. |
| Class 6 | GST General Unsecured Claims | Unimpaired -- deemed to have voted to accept the Plan; no separate vote being solicited. |
| Class 7 | Coltec General Unsecured | Unimpaired -- deemed to have voted to accept the |

22

|          | Claims                        | Plan; no separate vote being solicited.                                            |
|----------|-------------------------------|-----------------------------------------------------------------------------------|
| Class 8  | Anchor Claims                 | Unimpaired – deemed to have voted to accept the Plan; no separate vote being solicited. |
| Class 9  | GST/Garrison Equity Interests | Impaired –vote being solicited.                                                   |
| Class 10 | Other Debtor Equity Interests | Unimpaired – deemed to have voted to accept the Plan; no separate vote being solicited. |

### 3.1.1    Class 1.        Priority Claims

(a)    Classification

Class 1 consists of all Priority Claims against the Debtors.

(b)    Treatment

Each Holder of an Allowed Priority Claim shall be paid the Allowed Amount of its Allowed Priority Claim either (i) in full, in Cash, on the Distribution Date, or (ii) upon such other less favorable terms as may be mutually agreed upon between the Holder of an Allowed Priority Claim and the Debtors or the Reorganized Debtors.

(c)    Impairment and Voting

Class 1 is unimpaired.  The Holders of the Allowed Priority Claims in Class 1 are deemed to have voted to accept this Plan and, accordingly, their separate vote will not be solicited.

### 3.1.2    Class 2.        Secured Claims

(a)    Classification

Class 2 consists of all Secured Claims against the Debtors.

(b)    Treatment

(i)    Non-Tax Secured Claim. Subject to the provisions of Sections 502(b) and 506(d) of the Bankruptcy Code and the terms herein, each Holder of an Allowed Secured Claim other than an Allowed Secured Tax Claim shall, at the option of the Reorganized Debtors, receive treatment according to the following alternatives: (i) the Plan will leave unaltered the legal, equitable and contractual rights to which the Holder of such Claim is entitled; (ii) the Reorganized Debtors shall pay the Allowed Secured Claim in full on the Effective Date or as soon thereafter as reasonably practicable; or (iii) the Reorganized Debtors shall provide such other treatment as is agreed to in writing between the Debtors or the Reorganized Debtors and the Holder of any such Allowed Secured Claim.

(ii)    Secured Tax Claim. Except to the extent that a Holder of an Allowed Secured Tax Claim agrees to a different treatment, each Holder of an Allowed Secured Tax

23

Claim shall receive 100% of the unpaid amount of such Allowed Secured Tax Claim in Cash from the Debtors or Reorganized Debtors on the Distribution Date.

(c)      Impairment and Voting

Class 2 is unimpaired.  The Holders of the Allowed Secured Claims in Class 2 are deemed to have voted to accept this Plan and, accordingly, their separate vote will not be solicited.

**3.1.3   Class 3.        Workers' Compensation Claims**

(a)      Classification

Class 3 consists of all Workers' Compensation Claims against the Debtors.

(b)      Treatment

Each Workers' Compensation Claim shall be reinstated and shall have all legal, equitable, and contractual rights to which each such Workers' Compensation Claim entitles the Holder of such Workers' Compensation Claim.

(c)      Impairment and Voting

Class 3 is unimpaired.  The Holders of the Workers' Compensation Claims in Class 3 are deemed to have voted to accept this Plan and, accordingly, their separate vote will not be solicited.

**3.1.4   Class 4.        Intercompany Claims**

(a)      Classification

Class 4 consists of all Intercompany Claims.

(b)      Treatment

Each Intercompany Claim shall be reinstated and shall have all legal, equitable, and contractual rights to which each such Intercompany Claim entitles the Holder of such Intercompany Claim, except to the extent any such Claims are released pursuant to Section 8.4 of this Plan.

(c)      Impairment and Voting

Class 4 is unimpaired.  The Holders of Intercompany Claims in Class 4 are deemed to have voted to accept this Plan and, accordingly, their separate vote will not be solicited.

### 3.1.5   Class 5.        Asbestos Claims

(a)      Classification

Class 5 consists of all Asbestos Claims against GST, Coltec, or Garrison.

(b)      Treatment

(i)      All Asbestos Claims shall be resolved in accordance with the terms, provisions, and procedures of the Asbestos Trust Agreement and the CRP.

(ii)      All Asbestos Claims shall be paid by the Asbestos Trust solely from the Asbestos Trust Assets as and to the extent provided in the CRP.  Asbestos Claims shall not be deemed Allowed or Disallowed, but rather shall be resolved by the Asbestos Trust pursuant to the terms of the CRP.

(c)      Asbestos Channeling Injunction

The sole recourse of the Holder of an Asbestos Claim on account of such Asbestos Claim shall be to the Asbestos Trust pursuant to the provisions of the Plan, the Asbestos Channeling Injunction, the Asbestos Trust Agreement, and the CRP.

(d)      Impairment and Voting

Class 5 is impaired.  The Debtors are soliciting the votes of Holders of the Asbestos Claims in Class 5 to accept or reject this Plan in the manner and to the extent provided in the Confirmation Procedures Order.

### 3.1.6   Class 6.        GST General Unsecured Claims

(a)      Classification

Class 6 consists of all GST General Unsecured Claims.

(b)      Treatment

Each Holder of an Allowed GST General Unsecured Claim shall be paid the Allowed Amount of its GST General Unsecured Claim on the Distribution Date. Such payment shall be (i) in full, in Cash, plus post-petition interest at the federal judgment rate in effect on the Petition Date, or (ii) upon such other less favorable terms as may be mutually agreed upon between the Holder of an Allowed GST General Unsecured Claim and the Debtors or Reorganized Debtors. Post-petition interest shall accrue from the Petition Date through the date of payment.

(c)      Impairment and Voting

Class 6 is unimpaired.  The Holders of GST General Unsecured Claims in Class 6 are deemed to have voted to accept this Plan and, accordingly, their separate vote will not be solicited.

25

### 3.1.7   Class 7.   Coltec General Unsecured Claims

(a)   Classification

Class 7 consists of all Coltec General Unsecured Claims.

(b)   Treatment

Each Coltec General Unsecured Claim shall be reinstated and shall have all legal, equitable, and contractual rights to which each such Coltec General Unsecured Claim entitles the Holder of such Coltec General Unsecured Claim

(c)   Impairment and Voting

Class 7 is unimpaired.  The Holders of Coltec General Unsecured Claims in Class 7 are deemed to have voted to accept this Plan and, accordingly, their separate vote will not be solicited.

### 3.1.8   Class 8.   Anchor Claims

(a)   Classification

Class 8 consists of all Anchor Claims.

(b)   Treatment

Each Holder of a Class 8 Anchor Claim shall be entitled to assert such Claim against Anchor in accordance with the provisions of Article 14 of Chapter 55 of the North Carolina Business Corporation Act.

(c)   Impairment and Voting

Class 8 is unimpaired. The Holders of Class 8 Anchor Claims are deemed to have voted to accept this Plan and, accordingly, their separate vote will not be solicited.

### 3.1.9   Class 9.   GST/Garrison Equity Interests

(a)   Classification

Class 9 consists of GST/Garrison Equity Interests.

(b)   Treatment

On the Effective Date, Class 9 GST/Garrison Equity Interests shall be retained, subject to the Lien described in Section 7.3.2.

26

(c)     <u>Impairment and Voting</u>

Class 9 is impaired.  The Debtors are soliciting the votes of Holders of the GST/Garrison Equity Interests in Class 9 to accept or reject this Plan in the manner and to the extent provided in the Confirmation Procedures Order.

### 3.1.10  Class 10.        Other Debtor Equity Interests

(a)     <u>Classification</u>

Class 10 consists of Other Debtor Equity Interests.

(b)     <u>Treatment</u>

This Plan leaves unaltered the legal, equitable, and contractual rights to which each such Other Debtor Equity Interest entitles the Holder of such Other Debtor Equity Interest.

(c)     <u>Impairment and Voting</u>

Class 10 is unimpaired.  The Holders of the Other Debtor Equity Interests in Class 10 are deemed to have voted to accept this Plan and, accordingly, their separate vote will not be solicited.

## ARTICLE 4
## MODIFICATION OR WITHDRAWAL OF THIS PLAN

## 4.1     MODIFICATION OF THE PLAN; AMENDMENT OF PLAN DOCUMENTS

### 4.1.1   Modification of the Plan

The Plan Proponents, acting unanimously, may alter, amend, or modify this Plan, or any other Plan Document, under Section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date so long as this Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code or the Court has approved such modifications to the Plan. After the Confirmation Date, the Plan Proponents, acting unanimously, may alter, amend, or modify this Plan in accordance with Section 1127(b) of the Bankruptcy Code but only before its substantial consummation.

### 4.1.2   Post-Effective Date Amendment of Other Plan Documents

From and after the Effective Date, the authority to amend, modify, or supplement the Plan Documents, other than the Plan, will be as provided in such Plan Documents.

## 4.2     WITHDRAWAL OF THIS PLAN

### 4.2.1   Right to Withdraw this Plan

This Plan may be withdrawn by the Plan Proponents, acting unanimously, prior to the Confirmation Date.

### 4.2.2    Effect of Withdrawal

If this Plan is withdrawn prior to the Confirmation Date, this Plan shall be deemed null and void. In such event, nothing contained herein or in any of the Plan Documents shall be deemed to constitute a waiver or release of any claims or defenses of, or an admission or statement against interest by, any of the Plan Proponents or any other Entity or to prejudice in any manner the rights of any of the Plan Proponents or any Entity in any further proceedings involving the Debtors.

## ARTICLE 5
## PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS
## AND ASBESTOS CLAIMS GENERALLY

### 5.1    OBJECTION TO PLAN CLAIMS (OTHER THAN ASBESTOS CLAIMS); PROSECUTION OF DISPUTED CLAIMS

Subject to the treatment provisions of this Plan, the Debtors or Reorganized Debtors, as applicable, may object to the allowance of any Non-Asbestos Plan Claims Filed with the Bankruptcy Court or to be otherwise resolved pursuant to any provisions of this Plan with respect to which they dispute liability, in whole or in part. Subject to the treatment provisions of this Plan, the Debtors' pending objections to any Non-Asbestos Plan Claims shall be transferred to the Reorganized Debtors on the Effective Date for final resolution.

Not later than ten (10) days before the Effective Date, the Debtors shall File with the Bankruptcy Court an exhibit listing all Non-Asbestos Plan Claims that the Debtors have already analyzed and to which the Debtors have no objection (the "**Undisputed Claims Exhibit**"). Plan Claims listed on the Undisputed Claims Exhibit shall be Allowed Claims. The Debtors or the Reorganized Debtors, as applicable, may File additional Undisputed Claims Exhibits with the Court at any time after the Filing of the initial Undisputed Claims Exhibit with respect to any remaining Non-Asbestos Plan Claims if they have determined not to object to any of such Claims.

After the Effective Date, all objections that are Filed and prosecuted by the Reorganized Debtors as provided herein may be: (i) compromised and settled in accordance with the business judgment of the Reorganized Debtors without approval of the Bankruptcy Court, or (ii) litigated to Final Order by the Reorganized Debtors. Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections by the Reorganized Debtors to Non-Asbestos Plan Claims shall be served and Filed no later than 180 days after the Effective Date, subject to any extensions granted pursuant to a further order of the Bankruptcy Court. Such further order may be obtained by the Reorganized Debtors upon notice to all Holders of Non-Asbestos Plan Claims that are still pending allowance and are not subject to a pending objection.

After the Confirmation Date, no Plan Claim may be Filed or amended to increase the amount or a lien or priority demanded unless otherwise provided by order of the Bankruptcy Court. Unless otherwise provided herein, any such new or amended Claim Filed after the Confirmation Date shall be disregarded and deemed Disallowed in full and expunged without

need for objection, unless the Holder of such Claim has obtained prior Bankruptcy Court authorization for the filing.

Any order creating a Disallowed Claim that is not a Final Order as of the Effective Date solely because of an Entity's right to move for reconsideration of such order pursuant to Section 502(j) of the Bankruptcy Code or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a Final Order on the Effective Date, without prejudice to such right to move for reconsideration.

## 5.2    DISTRIBUTION ON ACCOUNT OF DISPUTED CLAIMS

Notwithstanding Section 5.1 hereof, a Distribution shall be made to the Holder of a Disputed Claim only when, and to the extent that, such Disputed Claim becomes Allowed and pursuant to the appropriate provisions of this Plan covering the Class of which such Disputed Claim is a part. No Distribution shall be made with respect to all or any portion of any Disputed Claim pending the entire resolution thereof in the manner prescribed by Section 5.1 hereof.

## 5.3    BAR DATES FOR ADMINISTRATIVE EXPENSE CLAIMS

### 5.3.1   Administrative Expense Claims

All parties seeking payment of an Administrative Expense Claim that is not a Fee Claim must File with the Bankruptcy Court and serve upon the Debtors a request for payment of such Administrative Expense Claim prior to the applicable deadline set forth below; *provided, however*, that parties seeking payment of postpetition ordinary course trade obligations, postpetition payroll obligations incurred in the ordinary course of a Debtor's postpetition business, and amounts arising under agreements approved by the Bankruptcy Court or the Plan need not File such a request.

**All Holders of Administrative Expense Claims must File with the Bankruptcy Court and serve on the Debtors a request for payment of such Claim so as to be received on or before 4:00 p.m. (Eastern Time) on the date that is the first Business Day after the date that is thirty (30) days after the Effective Date, unless otherwise agreed to by the appropriate Debtor or Reorganized Debtor, without further approval by the Bankruptcy Court. Failure to comply with these deadlines shall forever bar the Holder of an Administrative Expense Claim from seeking payment thereof.**

**Any Holder of an Administrative Expense Claim that does not assert such Claim in accordance with this Section shall have its Claim deemed Disallowed under this Plan and be forever barred from asserting such Claim against any of the Debtors, their Estates or their assets. Any such Claim and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, recoup, or recover such Claim.**

### 5.3.2   Fee Claims

All parties seeking allowance or payment of a Fee Claim must File with the Bankruptcy Court and serve upon the Debtors a proof or application for allowance or payment of such Fee

Claim in accordance with the Fee Order by the date that is the first Business Day after the date that is ninety (90) days after the Effective Date; *provided, however*, that the Plan Proponents may extend that deadline by agreement without further order by the Bankruptcy Court. Failure to comply with the applicable deadline set forth herein shall forever bar the Holder of a Fee Claim from seeking payment thereof.

**Any Holder of a Fee Claim that does not assert such Claim in accordance with the Fee Order and this Section shall have its Claim deemed Disallowed under this Plan and be forever barred from asserting such Claim against any of the Debtors, their Estates or their assets. Any such Claim and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.**

Any objection to a Fee Claim shall be Filed and served in accordance with a scheduling order to be entered by the Bankruptcy Court, at the request of the Plan Proponents. **Each of the Plan Proponents expressly reserves the right to object to any Fee Claim prior to, on, and after the Effective Date, subject to the provisions of this Plan and the aforementioned scheduling order.**

## 5.4    RESOLUTION OF ASBESTOS CLAIMS

Asbestos Claims shall be resolved in accordance with the Asbestos Trust Agreement and the CRP.

**ARTICLE 6**
**ACCEPTANCE OR REJECTION OF THIS PLAN**

## 6.1    IMPAIRED CLASSES TO VOTE

Each Holder of a Plan Claim or Equity Interest in an impaired Class is entitled to vote to accept or reject this Plan to the extent and in the manner provided herein or in the Confirmation Procedures Order.

## 6.2    ACCEPTANCE BY IMPAIRED CLASSES OF PLAN CLAIMS

Acceptance of this Plan by any impaired Class of Plan Claims shall be determined in accordance with the Confirmation Procedures Order and the Bankruptcy Code.

## 6.3    PRESUMED ACCEPTANCE OF THIS PLAN

Classes 1, 2, 3, 4, 6, 7, 8, and 10 of Plan Claims and Other Debtor Equity Interests are unimpaired.  Under Section 1126(f) of the Bankruptcy Code, the Holders of Plan Claims and Equity Interests in such Classes are conclusively presumed to have voted to accept this Plan.

**6.4    ACCEPTANCE PURSUANT TO SECTION 524(g) OF THE BANKRUPTCY CODE**

This Plan shall have been voted upon favorably as required by Section 524(g)(2)(B)(ii)(IV)(bb) of the Bankruptcy Code to the extent that at least 75% of those voting in Class 5 vote to accept this Plan.

**6.5    NONCONSENSUAL CONFIRMATION**

**6.5.1    Cram Down**

If any impaired Class of Plan Claims or Equity Interests, other than Class 5, fails to accept this Plan in accordance with Sections 1126 and 1129(a) of the Bankruptcy Code, the Plan Proponents will request, to the extent consistent with applicable law, that the Court confirm this Plan in accordance with Section 1129(b) of the Bankruptcy Code with respect to such non-accepting Class of Plan Claims or Equity Interests (other than Class 5), and this Plan constitutes a motion for such relief.

**6.5.2    General Reservation of Rights**

Should this Plan fail to be accepted by the requisite number and amount of the Holders of Plan Claims and Equity Interests required to satisfy Sections 524(g) and 1129 of the Bankruptcy Code, then, notwithstanding any other provision of this Plan to the contrary, the Plan Proponents reserve the right to amend this Plan.

**ARTICLE 7**
**IMPLEMENTATION OF THIS PLAN**

**7.1    VESTING OF ASSETS OF THE DEBTORS**

On the Effective Date, pursuant to Section 1141(b) of the Bankruptcy Code, except as otherwise expressly provided in this Plan, in the Plan Documents, or in the Confirmation Order, the assets and property of the Debtors shall vest or re-vest in the appropriate Reorganized Debtors for use, sale and distribution in accordance with operation of the Reorganized Debtors' business and this Plan.

As of the Effective Date, all assets vested or re-vested, and all assets dealt with by the Plan, shall be free and clear of all Claims, Encumbrances, liens, and interests except as otherwise specifically provided in the Plan, in any of the Plan Documents, or in the Confirmation Order.

From and after the Effective Date, the Reorganized Debtors may operate their businesses and use, acquire, sell and otherwise dispose of property without supervision or approval of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the guidelines and requirements of the Bankruptcy Administrator, other than those restrictions expressly imposed by the Plan, the Plan Documents, or the Confirmation Order; *provided, however*, that nothing herein restricts the right of the Reorganized Debtors to seek Bankruptcy Court approval for the sale, assignment, transfer, or other disposal of certain of the Reorganized

31

Debtors' assets after the Confirmation Date in the event that such Court approval is deemed to be necessary or appropriate.

All Retained Causes of Action are expressly preserved for the benefit of the Reorganized Debtors pursuant to Section 11.3.

## 7.2    CORPORATE GOVERNANCE

### 7.2.1    Amendment of Certificates of Incorporation of the Debtors

The Certificates of Incorporation, By-Laws, or Articles of Organization, as applicable, of each of the Debtors shall be amended as of the Effective Date as needed to effectuate the terms of the Plan and the requirements of the Bankruptcy Code.  The amended Certificates of Incorporation of the Debtors that are corporations shall, among other things, prohibit the issuance of nonvoting equity securities as required by Section 1123(a)(6) of the Bankruptcy Code.  The amended Certificates of Incorporation or Articles of Organization, as applicable, shall be filed with the Secretary of State or equivalent official in their respective jurisdictions of incorporation on or prior to the Effective Date and be in full force and effect without any further amendment as of the Effective Date.

### 7.2.2    D&O and Fiduciary Liability Tail Coverage Policies

The Reorganized Debtors, with the assistance, if necessary, of EnPro and its Affiliates, shall maintain continuous directors and officers liability insurance coverage with regard to any liabilities, losses, damages, claims, costs and expenses they or any current or former officer, manager, or director of any of the Debtors may incur, including but not limited to attorneys' fees, arising out of or due to the actions or omissions of any of them or the consequences of such actions or omissions, including, without limitation, service as an officer, manager, or director, other than as a result of their willful misconduct or fraud. Each such policy shall cover each current and former officer, manager, or director of any of the Debtors.

Except as otherwise specifically provided herein, any obligations of the Debtors to indemnify their present and former directors, managers, officers, employees or professionals under their Certificates of Incorporation, By-Laws, employee indemnification policy, or under state law or any agreement with respect to any claim, demand, suit, cause of action, or proceeding, shall be deemed assumed by the Reorganized Debtors on the Effective Date, and shall survive and be unaffected by this Plan's confirmation, and remain an obligation of the Reorganized Debtors, regardless of whether the right to indemnification arose before or after the Petition Date.

## 7.3    THE ASBESTOS TRUST

### 7.3.1    Creation of the Asbestos Trust

Upon the entry of the Confirmation Order, effective as of the day immediately preceding the Effective Date, the Asbestos Trust shall be created pursuant to Bankruptcy Code Section 524(g) and in accordance with the Plan Documents.  The Asbestos Trust shall be a "qualified

settlement fund" for federal income tax purposes within the meaning of the treasury regulations issued pursuant to Section 468B of the IRC.

The purpose of the Asbestos Trust shall be to, among other things:  (i) assume the liabilities of the Debtors with respect to all Asbestos Claims except as provided in Sections 8.4.2 and 8.5 of this Plan (with the Reorganized Debtors and Asbestos Protected Parties having no responsibility whatsoever for such Asbestos Claims, apart from transferring the Asbestos Trust Assets to the Asbestos Trust in accordance with this Plan); (ii) process, liquidate, pay and satisfy all Asbestos Claims in accordance, as applicable, with this Plan, the Asbestos Trust Agreement and the CRP and in such a way that provides reasonable assurance that the Asbestos Trust will value, and be in a financial position to pay, present and future Asbestos Claims (including Demands that involve similar claims) in substantially the same manner and to otherwise comply with Section 524(g)(2)(B)(i) of the Bankruptcy Code; (iii) preserve, hold, manage, and maximize the assets of the Asbestos Trust for use in paying and satisfying Asbestos Claims entitled to payment; (iv) qualify at all times as a "qualified settlement fund" for federal income tax purposes within the meaning of the treasury regulations issued pursuant to Section 468B of the IRC; (v) pay Asbestos Trust Expenses from the Asbestos Trust Assets as incurred (with the Reorganized Debtors and Asbestos Protected Parties having no responsibility whatsoever for any Asbestos Trust Expenses, apart from transferring the Asbestos Trust Assets to the Asbestos Trust in accordance with this Plan), and (vi) otherwise carry out the provisions of the Asbestos Trust Agreement and any other agreements into which the Asbestos Trustee has entered or will enter in connection with this Plan.

### 7.3.2   Funding of the Asbestos Trust

On the day immediately preceding the Effective Date, (a) GST or Garrison shall transfer $370 million in Cash to the Asbestos Trust; (b) Coltec shall transfer $30 million in Cash to the Asbestos Trust, and (c) Coltec, EnPro, and the Asbestos Trust shall enter into the Option and Registration Rights Agreement substantially in the form attached as **Exhibit H** hereto (the "**Option**"). On or before the first anniversary of the Effective Date, Coltec shall transfer the full amount of the Deferred Contribution in Cash to the Asbestos Trust.

Effective on the Effective Date and immediately following the merger of Coltec with and into New Coltec as provided in Section 7.10 hereof, the Deferred Contribution shall be guaranteed by EnPro, pursuant to a Parent Guaranty substantially in the form attached hereto as **Exhibit J** (the "**Guaranty**"), and secured by a possessory lien on or possessory security interest in 50.1% of the GST/Garrison Equity Interests (the "**Lien**"), which Lien shall be granted by New Coltec (immediately after its merger with Coltec) on the Effective Date to, and held by, the Asbestos Trust pursuant to a Pledge Agreement substantially in the form attached hereto as **Exhibit I** (the "**Pledge Agreement**").  The Lien shall be first priority and perfected in a manner such that it will not be rendered subordinate to, or *pari passu* with, any other lien, security interest, pledge, or other Encumbrance or interest prior to the release of the Lien under the terms set forth below in this paragraph.  On the Effective Date, New Coltec will deliver certificates representing 50.1% of the GST/Garrison Equity Interests, together with stock power executed in blank, to the Asbestos Trust to be held by the Asbestos Trustee in accordance with the Pledge Agreement. Coltec will be entitled to prepay all or part of the Deferred Contribution at any time without penalty.  Once the Deferred Contribution has been paid in Cash and in full to the

Asbestos Trust, or otherwise satisfied by agreement of the Reorganized Debtors and the Asbestos Trust, the Lien will be released in accordance with the terms of the Pledge Agreement and the Guaranty will be terminated in accordance with the terms of the Guaranty. The Reorganized Debtors and the Asbestos Trust shall be free to negotiate or enter into an agreement that would permit payment of the Deferred Contribution before the first anniversary of the Effective Date at an agreed discount rate.

Prior to the delivery to the Asbestos Trust of shares of EnPro common stock upon exercise of the Option, EnPro shall cause a registration statement under the Securities Act of 1933, as amended, to become effective registering the resale of such shares, and such shares shall not be subject to any lien, Encumbrance, or restriction that would prevent such stock from being sold or traded in a public securities market.  No "poison pill," shareholder or stockholder rights plan, or other anti-takeover or takeover defense plan, contract, agreement, instrument, or provision adopted or implemented by EnPro shall apply to or be triggered by the issuance of the Option or upon exercise of the Option by the Asbestos Trust.

### 7.3.3    Vesting of Assets in the Asbestos Trust

Upon the transfer of the Asbestos Trust Assets to the Asbestos Trust, such Asbestos Trust Assets shall be indefeasibly and irrevocably vested in the Asbestos Trust free and clear of all claims, Equity Interests, Encumbrances, and other interests of any Entity, subject to the Asbestos Channeling Injunction and other provisions of this Plan.

### 7.3.4    Transfer of Claims and Demands to the Asbestos Trust

On the Effective Date, without any further action of any Entity, all liabilities, obligations, and responsibilities of any Asbestos Protected Party, financial or otherwise, with respect to all Asbestos Claims shall be channeled to and assumed by the Asbestos Trust (except as provided in Sections 8.4.2 and 8.5 of this Plan), and the Reorganized Debtors and other Asbestos Protected Parties shall have no liability or responsibility, financial or otherwise, for any Asbestos Claims, other than to transfer the Asbestos Trust Assets to the Asbestos Trust in accordance with this Plan.  This Section 7.3.4 is intended to further effect the Asbestos Channeling Injunction described in Section 8.2 of this Plan, and the discharge described in Section 8.1 of this Plan. This Section 7.3.4 is not intended to, and it shall not, serve as a waiver of any defense to any claim the Debtors, the Asbestos Trust, or any other Asbestos Protected Party would otherwise have.

Except as otherwise provided in the Plan, the Asbestos Trust Agreement, or the CRP, the Asbestos Trust shall have any and all of the actions, claims, rights, defenses, cross-claims, counterclaims, suits, and causes of action of the Debtors and the other Asbestos Protected Parties, whether known or unknown, at law, in equity or otherwise, arising under the laws of any jurisdiction, that are based on or attributable to (a) all defenses to any Asbestos Claims; (b) with respect to any Asbestos Claims, all rights of setoff, recoupment, contribution, reimbursement, subrogation, or indemnity (as those terms are defined by the nonbankruptcy law of any relevant jurisdiction), and any other indirect claim of any kind whatsoever and whenever arising or asserted; and (c) any other claims or rights with respect to Asbestos Claims that any of the Debtors or other Asbestos Protected Parties would have had under applicable law if the Chapter

34

11 Cases had not occurred and the Holder of such Asbestos Claim had asserted it by initiating civil litigation against any such Debtor or other Asbestos Protected Party (together, the "**Asbestos Trust Causes of Action**"), and the Asbestos Trust shall thereby become the estate representative pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code with the exclusive right to enforce each of the Asbestos Trust Causes of Action, and the proceeds of the recoveries on any of the Asbestos Trust Causes of Action shall be deposited in and become the property of the Asbestos Trust; *provided, however*, that (a) the Asbestos Trust shall have no rights against the Reorganized Debtors or Asbestos Protected Parties other than the right to enforce the Plan or any of the other Plan Documents according to their respective terms, including the right to receive the Asbestos Trust Assets as provided in this Plan; (b) the Asbestos Trust Causes of Action shall not include any of the Asbestos Insurance Rights; (c) the Asbestos Trust Causes of Action shall not include any claim, cause of action, or right of the Debtors or any of them, under the laws of any jurisdiction, against any party, including the Asbestos Insurance Entities, for reimbursement, indemnity, contribution, breach of contract, or otherwise arising from or based on any payments made by the Debtors on account of asbestos claims prior to the Effective Date, (d) the Asbestos Trust Causes of Action shall not include any claims released, compromised, or settled under Section 8.4 of this Plan, and (e) for the avoidance of doubt, Asbestos Trust Causes of Action do not include any rights of the Debtors, the Reorganized Debtors, or the other Asbestos Protected Parties arising under the Asbestos Channeling Injunction or any of the other injunctions, releases, or the discharge granted under the Plan and the Confirmation Order.

### 7.3.5    Appointment and Termination of Asbestos Trustee

The initial Asbestos Trustee shall be Lewis R. Sifford.  Any successor Asbestos Trustee shall be appointed in accordance with the terms of the Asbestos Trust Agreement.  Upon termination of the Asbestos Trust, the Asbestos Trustee's employment shall be deemed terminated and the Asbestos Trustee shall be released and discharged of and from all further authority, duties, responsibilities and obligations relating to or arising from or in connection with the Chapter 11 Cases.

### 7.3.6    Creation of the CAC

The CAC shall be established pursuant to the Asbestos Trust Agreement and shall have the functions, duties, and rights provided in the Asbestos Trust Agreement. The initial members of the CAC are identified on the signature page of the Asbestos Trust Agreement.  Upon termination of the Asbestos Trust, the CAC shall be deemed dissolved and the CAC shall be released and discharged of and from all further authority, duties, responsibilities and obligations based on or arising from the Plan, the Plan Documents, or the Confirmation Order, and the CAC shall be deemed dissolved. All reasonable and necessary post-Effective Date fees and expenses of the CAC and its professionals shall be paid by the Asbestos Trust in accordance with the terms of the Asbestos Trust Agreement.

### 7.3.7    Cooperation Agreement

On the Effective Date, the Reorganized Debtors and the Asbestos Trust shall enter into a cooperation agreement (the "**Cooperation Agreement**") substantially in the form included as Exhibit C in the Exhibit Book.

### 7.3.8    Continuation of the FCR

The FCR shall continue to serve through the termination of the Asbestos Trust in order to perform the functions required by the Asbestos Trust Agreement. Upon termination of the Asbestos Trust, the FCR shall thereupon be released and discharged of and from all further authority, duties, responsibilities, and obligations based on or arising from the Plan, the Plan Documents, or the Confirmation Order, and the role of the FCR shall be deemed terminated. All reasonable and necessary post-Effective Date fees and expenses of the FCR and his or her professionals shall be paid by the Asbestos Trust in accordance with the terms of the Asbestos Trust Agreement.

### 7.3.9    Institution and Maintenance of Legal and Other Proceedings

As of the Effective Date, without any further action of the Court or any Entity, the Asbestos Trust shall be empowered to initiate, prosecute, defend, and resolve all legal actions and other proceedings related to any asset, liability, or responsibility of the Asbestos Trust.

### 7.3.10   Asbestos Insurance Rights and Authority of Reorganized Debtors to Extend Asbestos Channeling Injunction to Asbestos Insurance Entities and Successor Entities Prior to Confirmation Date

Under this Plan, apart from the allocation of certain insurance recoveries to the Asbestos Trust, as provided below, Debtors and Reorganized Debtors shall retain ownership of all Asbestos Insurance Rights, including their rights to seek reimbursement for their contributions to the Asbestos Trust under the Plan. Exhibit E in the Exhibit Book identifies the Asbestos Insurance Entities that are Asbestos Protected Parties. Subject to the terms set forth in this Section 7.3.10, the Debtors and Reorganized Debtors shall have the sole right to assert, and the sole discretion to compromise and settle, Asbestos Insurance Actions or any other Asbestos Insurance Rights, as well as settle with any successor Entities who may have insurance rights related to any of Coltec's former business divisions. In connection with any such compromise or settlement with an Asbestos Insurance Entity or successor Entity before entry of the Confirmation Order, the Debtors and Reorganized Debtors will, subject to the right of the Asbestos Claimants Committee and FCR set forth below in this Section 7.3.10, add such Asbestos Insurance Entity to Exhibit E and/or successor Entity to Exhibit D and thereby designate such Asbestos Insurance Entity as an Asbestos Protected Party pursuant to Section 1.1.21(f) hereof and/or such successor Entity as an Asbestos Protected Party pursuant to Section 1.1.21(e) hereof. The Asbestos Claimants Committee and FCR shall each have the right to object to any addition of an Asbestos Insurance Entity to Exhibit E or successor Entity to Exhibit D if they reasonably believe in good faith that (a) the terms of such compromise or settlement, (b) the addition of such Asbestos Insurance Entity to Exhibit E or successor Entity to Exhibit D, or (c) the extension of the Asbestos Channeling Injunction to such Asbestos Insurance Entity or successor Entity would (i) result in the channeling or transfer to, or assumption by, the Asbestos Trust of any Claims, Demands, duties, obligations, or liabilities (A) that are not Asbestos Claims or Asbestos Trust Expenses or (B) that are not otherwise contemplated to be the responsibility of the Asbestos Trust under this Plan; or (ii) result in or impose undue burden or expense on the administration of the Asbestos Trust or the Asbestos Trust Assets. Before making any such addition to Exhibit D or Exhibit E, the Debtors shall disclose to the FCR and the Asbestos

36

Claimants Committee the terms of the underlying compromise or settlement and sufficient information concerning the relevant Asbestos Insurance Entity or successor Entity to enable the FCR and the Asbestos Claimants Committee to evaluate the proposed addition under the criteria specified in the preceding sentence. The Bankruptcy Court will hear and determine any such objection. Upon being added to Exhibit E or Exhibit D, any such Asbestos Insurance Entity or successor Entity will receive the benefits and protections of an Asbestos Protected Party under the Asbestos Channeling Injunction.

Any recovery by the Debtors or Reorganized Debtors of settlements or judgments related to Asbestos Insurance Policies shall be for their own account except that Coltec's recoveries from any Additional Coltec Insurer and/or from any successor on account of the Additional Coltec Insurance shall be allocated between the Asbestos Trust and Coltec as follows:  Coltec shall retain all recoveries up to the first $25 million and fifty percent (50%) of recoveries in excess of the first $25 million and shall contribute to the Asbestos Trust (or have contributed directly to the Asbestos Trust) fifty percent (50%) of recoveries in excess of the first $25 million. Upon receiving any recovery on account of the Additional Coltec Insurance, Coltec shall provide the Asbestos Trust with reasonably prompt written notice of the date, amount, and source of the recovery. Furthermore, Coltec shall provide the Asbestos Trust with a recap of any and all such recoveries at least annually, commencing on December 31 of the year in which the Effective Date occurs, for so long as Coltec's efforts to monetize any such Additional Coltec Insurance are continuing.

As set forth in Section 12.2 of the CRP, the Asbestos Trust shall provide to Debtors or Reorganized Debtors, or any settling Asbestos Insurance Entity, certain information reasonably relating to Asbestos Claims submitted to and accepted and paid by the Asbestos Trust. Debtors, Reorganized Debtors, and their Affiliates shall not be excused from timely paying the Deferred Contribution to the Asbestos Trust because of (a) any Asbestos Insurance Entity's refusal to indemnify, reimburse, or pay Debtors or Reorganized Debtors on account of any Claim submitted to and accepted and paid by the Asbestos Trust or (b) the Asbestos Trust's alleged failure to produce, or provide access to, the data and other information described in this paragraph.

## 7.4   PAYMENTS AND DISTRIBUTIONS UNDER THIS PLAN

### 7.4.1   Asbestos Trust Payments and Plan Distributions

Payments to Holders of Asbestos Claims and payments of Asbestos Trust Expenses shall be made by the Asbestos Trust in accordance with the Asbestos Trust Agreement and the CRP. All other Distributions or payments required or permitted to be made under this Plan (other than to Professionals) shall be made by the Reorganized Debtors or, in their discretion, a disbursing agent employed by the Reorganized Debtors, in accordance with the treatment specified for each such Holder as specified herein (unless otherwise ordered by the Bankruptcy Court). Distributions shall be deemed actually made on the Distribution Date if made either (i) on the Distribution Date or (ii) as soon as practicable thereafter. The Debtors or Reorganized Debtors shall pay Allowed Fee Claims in accordance with Section 2.1.1(c) hereof.

### 7.4.2   Timing of Plan Distributions

Whenever any Distribution to be made under this Plan shall be due on a day other than a Business Day, such Distribution shall instead be made, without the accrual of any additional interest (if interest is accruing pursuant to this Plan), on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.

## 7.5   DELIVERY OF DISTRIBUTIONS AND UNDELIVERABLE OR UNCLAIMED DISTRIBUTIONS

### 7.5.1   Delivery by the Reorganized Debtors of Distributions in General

Payments by the Asbestos Trust to Holders of Asbestos Claims shall be made in accordance with the Asbestos Trust Agreement and the CRP.  All Distributions to Holders of Allowed Claims shall be made at the address of the Holder of such Allowed Claim as set forth on the Schedules, unless superseded by a new address set forth (i) on a proof of claim Filed by a Holder of an Allowed Claim, (ii) in another writing notifying the Reorganized Debtors of a change of address prior to the date of Distribution, or (iii) in a request for payment of an Administrative Expense Claim.

### 7.5.2   Undeliverable Distributions by the Reorganized Debtors

Any Cash, assets, and other properties to be distributed by the Reorganized Debtors under this Plan to Holders of Non-Asbestos Plan Claims that remain unclaimed (including by an Entity's failure to negotiate a check issued to such Entity) or otherwise not deliverable to the Entity entitled thereto one year after Distribution shall become vested in, and shall be transferred and delivered to, the Reorganized Debtors.  In such event, such Entity's Non-Asbestos Plan Claim shall no longer be deemed to be Allowed or payable by the Reorganized Debtors, and such Entity shall be deemed to have waived its rights to such payments or Distributions under this Plan pursuant to Section 1143 of the Bankruptcy Code, shall have no further Claim in respect of such Distribution, and shall not participate in any further Distributions under this Plan with respect to such Claim.

## 7.6   PAYMENTS UNDER THIS PLAN

### 7.6.1   Manner of Cash Payments under this Plan

Unless the Entity receiving a Distribution or payment agrees otherwise, any such Distribution or payment to be made by the Reorganized Debtors or the Asbestos Trust in Cash shall be made, at the election of the Reorganized Debtors or the Asbestos Trust, as applicable, by check drawn on a domestic bank or by wire transfer from a domestic bank; *provided, however,* that Distributions of Cash to the Asbestos Trust shall be by wire transfer.

### 7.6.2   Fractional Payments under this Plan

Notwithstanding any other provision of this Plan, payments of fractions of dollars or of fractional shares shall not be made.  Except as provided in the Option and Registration Rights Agreement, whenever under this Plan any payment of a fraction of a dollar or a fractional share

of stock would otherwise be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar or nearest whole share of stock, as applicable (up or down), with half dollars or half shares being rounded up.

## 7.7    DISSOLUTION OF ANCHOR

As of the Effective Date, Anchor shall be dissolved under North Carolina General Statutes §§ 55-14-01 *et seq*. Such dissolution shall occur as soon as reasonably practicable following the Effective Date. Anchor, through its directors and officers, shall commence liquidating and winding down its businesses and affairs, including, without limitation, marshaling its assets for the benefit of all constituencies. All Holders of Class 8 Anchor Claims shall be permitted, after the Effective Date, to assert and pursue Claims against Anchor, and such Claims shall be fully reinstated to the *status quo ante* as of the Petition Date.

## 7.8    CONDITIONS TO OCCURRENCE OF THE CONFIRMATION DATE

The Court shall have made the following findings of fact, conclusions of law, orders, and/or decrees among others, substantially to the effect as follows, in connection with the confirmation of this Plan, each of which shall be expressly set forth in the Confirmation Order:

(a)    The Coltec Restructuring has been consummated and OldCo, LLC has commenced its Chapter 11 Case;

(b)    The Ad Hoc Coltec Future Asbestos Claimants' Representative has been appointed by the Bankruptcy Court as the legal representative to represent the interests of, appear on behalf of, and be a fiduciary to the Holders of future Coltec Asbestos Claims;

(c)    One or more Coltec Asbestos Claimants from among the clients of the plaintiff law firms comprising the Ad Hoc Coltec Asbestos Claimants Committee have been appointed to the Official Committee of Asbestos Personal Injury Claimants;

(d)    The Plan satisfies all applicable sections of the Bankruptcy Code, including Section 524(g) of the Bankruptcy Code;

(e)    The program for providing notice of the Plan, Confirmation Hearing, and appointment of the FCR as legal representative for future Asbestos Claimants is reasonably calculated under the circumstances to apprise Asbestos Claimants of the Plan, Confirmation Hearing, and the appointment of the FCR as the legal representative for future Asbestos Claimants, and to afford Asbestos Claimants an opportunity to present their objections, and such program therefore provides constitutionally effective notice to the fullest extent achievable by law;

(f)    The program for providing notice of the Plan, Confirmation Hearing, and appointment of the FCR as the legal representative for future Asbestos Claimants was in fact implemented, and was reasonably calculated under the circumstances to apprise Asbestos Claimants of the Plan, Confirmation Hearing, and the appointment of the FCR as the legal representative for future Asbestos Claimants, and to afford Asbestos Claimants an opportunity to

present their objections, and such program therefore provided constitutionally effective notice to the fullest extent achievable by law;

(g) Claimants in Class 5 have voted to accept the Plan in the requisite numbers and amounts required by Sections 524(g), 1126, and 1129 of the Bankruptcy Code;

(h) As of the Petition Date, each of GST, Garrison, and Coltec have been named as defendants in personal injury and wrongful death actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products;

(i) Effective as of the day immediately preceding the Effective Date, the Asbestos Trust shall be created pursuant to Section 524(g) of the Bankruptcy Code and in accordance with the Plan Documents;

(j) The Asbestos Trust shall be a "qualified settlement fund" for federal income tax purposes within the meaning of the treasury regulations issued pursuant to Section 468B of the IRC and shall be subject to the continuing jurisdiction of the Bankruptcy Court;

(k) On the Effective Date, the Asbestos Trust shall assume responsibility for all Asbestos Claims, except Foreign Asbestos Claims that are not filed, asserted, or sought to be enforced in or before any court or tribunal within the judicial system of the United States; and upon such assumption, no Asbestos Protected Party shall have any liability or responsibility, financial or otherwise, for such Asbestos Claims, except for the obligations to timely transfer or deliver the Asbestos Trust Assets to the Asbestos Trust as provided in the Plan;

(l) The Asbestos Trust is to be funded in part by securities of one or more Reorganized Debtors and by the obligations of the Reorganized Debtors to make future payments;

(m) The Asbestos Trust is to own, or by the exercise of rights granted under the Plan will be entitled to own if specified contingencies occur, a majority of the voting shares of each Reorganized Debtor or a subsidiary of each Reorganized Debtor that is also a Debtor;

(n) The Asbestos Trust is to use the Asbestos Trust Assets to pay Asbestos Claims (including Demands) and Asbestos Trust Expenses;

(o) GST, Garrison, and Coltec are likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to the Asbestos Claims, which Demands are addressed by the Asbestos Channeling Injunction;

(p) The actual amounts, numbers, and timing of such future Demands cannot be determined;

(q) Pursuit of such Demands outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to deal equitably with Asbestos Claims;

(r) The terms of the Asbestos Channeling Injunction, and any provisions barring actions against third parties, are set out in the Plan and the Disclosure Statement, and each of the

40

Plan and the Disclosure Statement adequately describes such injunctions and provisions (and the acts and entities to which they apply) in specific and conspicuous language in accordance with the requirements of Bankruptcy Rule 3016(c);

(s)      The Plan establishes, in Class 5, a separate class of the Claimants whose Claims are to be addressed by the Asbestos Trust;

(t)      Class 5 has voted, by at least 75% of those voting, in favor of the Plan;

(u)      Pursuant to Court orders or otherwise, the Asbestos Trust shall operate through mechanisms such as structured, periodic, or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the numbers and values of Asbestos Claims (including Demands), or other comparable mechanisms that provide reasonable assurance that the Asbestos Trust shall value, and be in a financial position to pay, Asbestos Claims (including Demands that involve similar claims) in substantially the same manner;

(v)      Each Asbestos Protected Party is identifiable from the terms of the Asbestos Channeling Injunction by name or as part of an identifiable group, and each Asbestos Protected Party falls within the categories of non-debtors protectable under Section 524(g) of the Bankruptcy Code;

(w)      The FCR has been appointed by the Bankruptcy Court as part of the proceedings leading to the issuance of the Asbestos Channeling Injunction for the purpose of, among other things, protecting the rights of Entities that might subsequently assert future Claims and Demands of the kind that are addressed in the Asbestos Channeling Injunction and transferred to the Asbestos Trust;

(x)      The Court has jurisdiction over each of the Claims and Demands that is subject to the Asbestos Channeling Injunction described in Section 8.2 of the Plan and the releases described in the Plan;

(y)      In light of the benefits provided, or to be provided, to the Asbestos Trust by, or on behalf of, each Asbestos Protected Party, (i) the Asbestos Channeling Injunction is fair and equitable (including with respect to the Entities that might subsequently assert Demands against any Asbestos Protected Party) and is supported by reasonable consideration, and (ii) the releases in favor of the Asbestos Protected Parties described in the Plan are fair and equitable and are supported by reasonable consideration;

(z)      The Asbestos Channeling Injunction and the releases in favor of the Asbestos Protected Parties described in the Plan are to be implemented and granted in connection with the Plan and the Plan Documents and the Asbestos Trust;

(aa)      The Asbestos Channeling Injunction and the releases in favor of the Asbestos Protected Parties described in the Plan (i) are essential to the Debtors' reorganization efforts and the feasibility of the Plan, (ii) enable necessary funding to the Plan that otherwise would be unavailable absent the injunctions and releases, (iii) are necessary to induce the Asbestos Protected Parties to enter into the settlements and agreements described in the Plan and to otherwise settle their disputes, (iv) are necessary to resolve finally all claims of the Debtors, the

Non-Debtor Affiliates, and the Debtors' creditors against the other Asbestos Protected Parties; and (v) have been overwhelmingly approved by Holders of Asbestos Claims;

(bb)    An identity of interests exists among the Debtors and the Asbestos Protected Parties such that an Asbestos Claim asserted against any of the Asbestos Protected Parties gives rise to a Claim against the Debtors, including by the operation of the law of indemnity (contractual or otherwise) and/or contribution;

(cc)    The settlements, compromises, releases, and injunctions in favor of the Asbestos Protected Parties described in the Plan are approved in all respects;

(dd)    In approving the settlements, compromises, releases, and injunctions with respect to the Asbestos Protected Parties, the Court has considered, among other things: (i) the nature of the claims asserted or potentially asserted by the Debtors, the Non-Debtor Affiliates, and/or the Debtors' creditors against the Asbestos Protected Parties, and the claims asserted or potentially assertable by the Asbestos Protected Parties against the Debtors and the Non-Debtor Affiliates, (ii) the balance of the likelihood of success of claims which might be asserted by the Debtors or other claimants against the Asbestos Protected Parties against the likelihood of success of the defenses or counterclaims possessed by the Asbestos Protected Parties, (iii) the complexity, cost, and delay of litigation that would result in the absence of these settlements, compromises, releases, and injunctions, (iv) the lack of objections by, or the overruling of objections of any creditor or party-in-interest to the settlements, compromises, releases and injunctions, (v) that the Asbestos Claims will be channeled to the Asbestos Trust rather than extinguished, (vi) that the Estate Parties and the Asbestos Trust will receive substantial consideration from the Asbestos Protected Parties described in the Plan, (vii) that the Asbestos Protected Parties that will benefit from the releases and injunctions share an identity of interest with the Debtors, (viii) that the enjoined claims against the Asbestos Protected Parties would otherwise indirectly impact the Debtors' reorganization by way of indemnity or contribution, and (ix) the Plan and the settlements, compromises, releases, and injunctions described in the Plan are the product of extensive arms' length negotiations among the Debtors, the Asbestos Claimants Committee, the FCR, and the Asbestos Protected Parties, among others;

(ee)    As of the Effective Date, the Reorganized Debtors will have the ability to pay and satisfy in the ordinary course of business their respective obligations and liabilities;

(ff)    All Asbestos Claims (except Foreign Asbestos Claims that are not filed, asserted, or sought to be enforced in or before any court or tribunal within the judicial system of the United States) shall be channeled to and resolved by the Asbestos Trust in accordance with the terms set forth in the Plan, the Asbestos Trust Agreement, and the CRP;

(gg)    The FCR and Ad Hoc Coltec Future Asbestos Claimants' Representative have adequately protected the rights of Holders of future GST Asbestos Claims and future Coltec Asbestos Claims;

(hh)    The FCR, the Ad Hoc Coltec Future Asbestos Claimants' Representative, the Asbestos Claimants Committee and its members, and the Ad Hoc Coltec Asbestos Claimants Committee and its members (before and after merger with the Asbestos Claimants Committee)

have each fulfilled their responsibilities and fiduciary duties to their respective constituencies pursuant to the applicable appointment orders;

(ii)     EnPro and Debtors have obtained such amendments, consents and waivers as may be necessary under any agreements binding on them or any subsidiary to permit the transactions and actions contemplated by the March 17, 2016 Term Sheet for Permanent Resolution of All Present and Future GST Asbestos Claims and Coltec Asbestos Claims, and its attachments;

(jj)     The Canadian Settlement has been agreed to; Debtors have moved for entry of an order that approves such agreement and have given parties in interest, including the FCR, notice and an opportunity to object to such motion, and notwithstanding anything to the contrary in the Plan and the Plan Documents, all rights of all persons with respect to such motion are preserved; and the Bankruptcy Court has entered an order either approving the Canadian Settlement or concluding that the Bankruptcy Court's approval is not necessary and such order has become a Final Order;

(kk)     EnPro has obtained a private letter ruling from the IRS recognizing the Asbestos Trust as a "designated settlement fund" or "qualified settlement fund" under Section 468B of the Internal Revenue Code, and any related regulations (or, if such a ruling is not available, a legal opinion satisfactory in form and substance to EnPro that the IRS will so recognize the Asbestos Trust);

(ll)     All Asbestos Claimants have been afforded due process based on the notice program described above, the appointment of the FCR as the legal representative for future Asbestos Claimants, and the Plan's compliance with Section 524(g) of the Bankruptcy Code;

(mm)   The Coltec Restructuring was an appropriate and necessary step to facilitate the formulation, confirmation, and implementation of this Plan and the payment of Coltec Asbestos Claims and was not undertaken in order to hinder, delay, or defeat any of Debtors' creditors or the resolution of any Claims against the Debtors; and

(nn)     On and after the Effective Date, each Reorganized Debtor may operate its business free of any restrictions imposed by the Bankruptcy Code or by the Bankruptcy Court and, except as otherwise expressly provided in this Plan, will be vested with all of the assets and property of its respective Estate, free and clear of all claims, liens, encumbrances, charges, and other interests of Holders of Claims or Interests.

The Confirmation Order, and Findings of Fact and Conclusions of Law in support thereof, shall be in form and substance acceptable to each of the Plan Proponents.  This Plan shall not be confirmed and the Confirmation Order shall not be entered until and unless each of the foregoing conditions to confirmation is either satisfied or waived by each of the Plan Proponents, with the exception of the following, which may be waived by Debtors and EnPro alone:  7.8(j), 7.8(ii), 7.8(jj), 7.8(kk).

## 7.9     CONDITIONS TO OCCURRENCE OF THE EFFECTIVE DATE

The "effective date of the plan," as used in Section 1129 of the Bankruptcy Code, shall occur, and this Plan shall be in full force and effect, at 12:01 a.m. Charlotte, North Carolina time

on the Effective Date. The occurrence of the Effective Date is subject to satisfaction of the following conditions precedent:

(a)     The Court shall have entered the Confirmation Order granting the Asbestos Channeling Injunction, to take effect as of the Effective Date, and the Confirmation Order shall have become a Final Order and shall have been a Final Order for a minimum of ten Business Days;

(b)     The District Court shall have entered, issued, or affirmed an order(s) granting the Asbestos Channeling Injunction and all releases in favor of the Asbestos Protected Parties, in their entirety, and such order(s) shall have become Final Orders;

(c)     The District Court shall have entered, issued, or affirmed the Confirmation Order, and such order shall have become a Final Order;

(d)     The Asbestos Channeling Injunction and all releases in favor of the Asbestos Protected Parties shall be in full force and effect;

(e)     Each of the Plan Documents shall have been executed or otherwise finalized, as the case may be, in a form acceptable to each of the Plan Proponents and, where applicable, filed with the appropriate governmental or supervisory authorities;

(f)     The Certificate of Incorporation and Articles of Organization, as applicable, of each of the Debtors, as amended in accordance with this Plan, shall have been filed with the secretary of state or equivalent agency of its jurisdiction of incorporation;

(g)     The Debtors shall have obtained either (i) private letter rulings establishing that the Asbestos Trust is a "qualified settlement fund" pursuant to Section 468B of the IRC, or (ii) an opinion of counsel regarding the tax classification of the Asbestos Trust satisfactory to the Debtors;

(h)     The Initial Asbestos Trust Assets shall have been transferred to the Asbestos Trust;

(i)     The GST Recovery Action Settlement Packages shall have been delivered;

(j)     The pending GST Recovery Actions shall have been dismissed with prejudice; and

(k)     The Articles of Merger (as defined in Section 7.10 hereof) shall have been executed and delivered by and between Coltec and New Coltec, and shall have been filed with the North Carolina Secretary of State or equivalent agency of their jurisdiction of incorporation or organization.

The Effective Date shall not occur unless and until each of the foregoing conditions is either satisfied or waived by each of the Plan Proponents, except Debtors and EnPro acting alone may waive condition 7.9(g). Notice of the occurrence of the Effective Date reflecting that the foregoing conditions have been satisfied or waived shall:  (i) be signed by each of the Plan

Proponents, (ii) state the date of the Effective Date, and (iii) be Filed with the Bankruptcy Court by counsel to the Debtors.  No waiver shall be effective unless it complies with the requirements of this provision.

## 7.10    MERGER OF COLTEC WITH NEW COLTEC

Immediately upon the effectiveness of the Asbestos Channeling Injunction on the Effective Date, Coltec shall merge with and into New Coltec, with New Coltec as the survivor of such merger, pursuant to articles of merger that are substantially in the form attached hereto as **Exhibit K** ("**Articles of Merger**"). In such merger, the outstanding Capital Stock of Coltec shall be cancelled and each outstanding share of Capital Stock of New Coltec shall be converted into a share of common stock of the survivor. New Coltec shall succeed to Coltec's obligations under this Plan. The Articles of Merger shall provide that such merger shall become effective at 12:02 a.m. Charlotte, North Carolina time on the Effective Date. On and after the Effective Date, New Coltec will be free to operate its business and use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or Bankruptcy Rules in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except for obligations under this Plan, the Plan Documents, and the Confirmation Order.

## 7.11    MANAGEMENT OF THE REORGANIZED DEBTORS

On and after the Effective Date, the business and affairs of the Reorganized Debtors will be managed by their respective Boards of Directors or equivalent thereof. Upon the Effective Date, the Board of Directors of each of the Reorganized Debtors shall be composed of at least one (1) director or manager, as applicable. Each Debtor shall specify the director(s) or manager(s) of such Reorganized Debtor upon the Effective Date in the Plan Supplement. The director(s) or manager(s) may be replaced by action of the shareholder or member, as applicable. In addition, as will be specified in the Plan Supplement, certain key members of current management are expected to continue to be employed by the Reorganized Debtors.

## 7.12    CORPORATE ACTION

On the Effective Date, the approval and effectiveness of matters provided under this Plan involving the corporate structure of the Reorganized Debtors or corporate action by the Reorganized Debtors shall be deemed to have occurred and to have been authorized, and shall be in effect from and after the Effective Date without requiring further action under applicable law, regulation, order, or rule, including any action by the stockholders, directors, managers, or members (as applicable) of the Debtors, the Debtors in Possession, or the Reorganized Debtors.

## 7.13    EFFECTUATING DOCUMENTS AND FURTHER TRANSACTIONS

Each of the officers of the Debtors and the Reorganized Debtors is authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate, for and on behalf of the Debtors and the Reorganized Debtors, to effectuate and further evidence the terms and conditions of this Plan, the transactions contemplated by this Plan, and any securities issued pursuant to this Plan.

## 7.14   ALLOCATION OF PLAN DISTRIBUTIONS BETWEEN PRINCIPAL AND INTEREST

To the extent that any Allowed Plan Claim entitled to a Distribution under this Plan consists of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for federal income tax purposes, be allocated first to the principal amount of the Plan Claim and then, to the extent the Distribution exceeds the principal amount of the Plan Claim, to the accrued but unpaid interest.

## 7.15   NO SUCCESSOR LIABILITY

Except for liabilities and obligations expressly assumed under the terms of this Plan, the Confirmation Order, or any of the Plan Documents, neither the Asbestos Protected Parties, the Reorganized Debtors, nor the Asbestos Trust is, or shall be, a successor in liability to any of the Debtors by reason of any theory of law or equity, and they shall have no successor or transferee liability of any kind or character for liabilities or obligations of any of the Debtors; *provided, however*, that, for the avoidance of doubt, as provided in Section 7.10 hereof, New Coltec, as a successor by merger to Coltec, shall succeed to Coltec's obligations under this Plan.

## 7.16   INSURANCE NEUTRALITY

(a)     Nothing in this Plan, any of the Plan Documents, or the Confirmation Order (including any other provision that purports to be preemptory or supervening), shall in any way operate to impair, or have the effect of impairing, the legal, equitable or contractual rights, if any, of any Asbestos Insurance Entity or any policyholder, including the Debtors or their Affiliates, under any Asbestos Insurance Policy or Asbestos Insurance Agreement. The rights of any Asbestos Insurance Company or any such policyholder shall be determined under the applicable Asbestos Insurance Policy or Asbestos Insurance Agreement.

(b)     Nothing in this Plan, any of the Plan Documents, or the Confirmation Order shall preclude any Entity from asserting in any proceeding any and all claims, defenses, rights or causes of action that it has or may have under or in connection with any Asbestos Insurance Policy or Asbestos Insurance Agreement, and no Entity shall be deemed to waive any claims, defenses, rights or causes of action that it has or may have under the provisions, terms, conditions, defenses or exclusions contained in an Asbestos Insurance Policy or Asbestos Insurance Agreement, including any and all such claims, defenses, rights or causes of action that are based upon or arise out of Asbestos Claims that are liquidated, resolved, discharged, channeled, or paid in connection with the Plan.

Notwithstanding the foregoing, any Claim of an Asbestos Insurance Entity that constitutes an Asbestos Claim shall be treated as an Asbestos Claim, classified in Class 5, and treated like any other Asbestos Claim and shall be subject to the Asbestos Channeling Injunction and any other provision applicable to Asbestos Claims. Furthermore, nothing in the foregoing shall limit in any way the protection from Asbestos Claims accorded by the Asbestos Channeling Injunction to Asbestos Insurance Entities that are Asbestos Protected Parties (either originally or upon being added to Exhibit E pursuant to Section 7.3.11 hereof), including protection against any Asbestos Claims brought directly by Asbestos Claimants.

46

## ARTICLE 8
## DISCHARGE, INJUNCTIONS & RELEASES

**8.1    DISCHARGE**

### 8.1.1    Discharge of GST, Garrison, and Coltec and Related Discharge Injunction

Except as otherwise provided herein, on the Effective Date, all Claims (including Plan Claims, Asbestos Claims, and Disallowed Claims) against GST, Garrison, and Coltec, the Reorganized Debtors, or their Estates, assets, properties, or interests in property (the "**Discharged Debtors**") shall be discharged to the fullest extent permitted by law, regardless whether any such Claim is reduced to judgment or not, liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown, that arose from any agreement of the Discharged Debtor entered into or obligation of the Discharged Debtor incurred before the Confirmation Date, or from any conduct of the Discharged Debtor prior to the Effective Date, or that otherwise arose before the Effective Date, whether or not (i) a proof of claim was filed with respect to such Claim, (ii) such Claim is allowed under Section 502 of the Bankruptcy Code, or (iii) the Holder of such Claim has accepted the Plan, and including, without limitation, all interest, if any, on any such Claims, whether such interest accrued before or after the Petition Date.

The Reorganized Debtors shall not be responsible for any obligations of the Debtors or the Debtors in Possession except those expressly assumed by the Reorganized Debtors pursuant to this Plan. All Entities shall be precluded and forever barred from asserting against the Discharged Debtors or their assets, properties, or interests in property any other or further Claims or Plan Claims based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date, except as expressly provided in this Plan.

<u>With respect to any debts and liabilities discharged by operation of law under Sections 524(a) and 1141(d) of the Bankruptcy Code, the discharge of the Discharged Debtors operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the Discharged Debtors, whether or not the discharge of such debt is waived; *provided, however,* that the obligations and duties of the Reorganized Debtors under this Plan or any Plan Document are not so discharged.</u>

### 8.1.2    Non-Dischargeable ERISA Liability

Nothing contained in this Plan, the Confirmation Order, the Bankruptcy Code (including Section 1141 of the Bankruptcy Code), or any other document Filed in the Chapter 11 Cases shall be construed to discharge, release or relieve the Debtors, or any other party, in any capacity, from any liability or responsibility to the Pension Benefit Guaranty Corporation ("**PBGC**") with respect to any pension plans under any law, governmental policy, or regulatory

47

provision. The PBGC shall not be enjoined or precluded from enforcing such liability or responsibility, as a result of any of the provisions of this Plan (including those provisions providing for exculpation, satisfaction, release, and discharge of Claims), the Confirmation Order, the Bankruptcy Code (including Section 1141 of the Bankruptcy Code), or any other document Filed in the Chapter 11 Cases. Notwithstanding the foregoing, neither the PBGC nor any other Entity shall assert any liability or responsibility with respect to any pension plans under any law, governmental policy or regulatory provisions against, and such liability or responsibility shall not attach to, the Asbestos Trust or any of the Asbestos Trust Assets.

## 8.2    THE ASBESTOS CHANNELING INJUNCTION

In order to supplement, where necessary, the injunctive effect of the discharge provided by Sections 1141(d), 524(a), and 105(a) of the Bankruptcy Code and as described in Section 8.1 hereof, and pursuant to the exercise of the equitable jurisdiction and power of the Court under Section 524(g) of the Bankruptcy Code, as supplemented by Section 105(a) of the Bankruptcy Code, the Confirmation Order shall provide for issuance of the Asbestos Channeling Injunction to take effect on the Effective Date.

### 8.2.1    Asbestos Channeling Injunction

On and after the Effective Date, the sole recourse of the Holder of an Asbestos Claim shall be to the Asbestos Trust pursuant to the provisions of the Asbestos Channeling Injunction and the CRP, and such Holder shall have no right whatsoever at any time to assert its Asbestos Claim against the Debtors, Reorganized Debtors, any other Asbestos Protected Party, or any property or interest (including any distributions made pursuant to the Plan) in property of the Debtors, the Reorganized Debtors, or any other Asbestos Protected Party. Without limiting the foregoing and except as provided in Section 8.5 hereof, from and after the Effective Date, the Asbestos Channeling Injunction shall apply to all present and future Holders of Asbestos Claims, and all such Holders shall be permanently and forever stayed, restrained, and enjoined from taking any and all legal or other actions or making any Claim or Demand against any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party (including distributions made pursuant to the Plan), for the purpose of, directly or indirectly, claiming, collecting, recovering, or receiving any payment, recovery, satisfaction, or any other relief whatsoever on, of, or with respect to any Asbestos Claim, other than from the Asbestos Trust in accordance with the Asbestos Channeling Injunction and pursuant to the CRP, including:

a)    commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including a judicial, arbitration, administrative, or other proceeding) in any forum against or affecting any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party, on account of any Asbestos Claim;

b)    enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party, on account of any Asbestos Claim;

48

c)      creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party, on account of any Asbestos Claim;

d)      setting off, seeking reimbursement of, indemnification or contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party, on account of any Asbestos Claim; and

e)      proceeding in any other manner with regard to any matter that is subject to resolution by the Asbestos Trust in accordance with the Plan and related documents, except in conformity and compliance with the CRP.

### 8.2.2   Reservations from Asbestos Channeling Injunction

Notwithstanding anything to the contrary in Section 8.2.1 above, the Asbestos Channeling Injunction issued pursuant to Section 8.2.1 shall not bar, enjoin, or extinguish:

(a)      the rights of Entities to the treatment accorded them under this Plan, including the rights of Entities holding Asbestos Claims to assert such Asbestos Claims against the Asbestos Trust in accordance with the CRP;

(b)      the rights of the Debtors or Reorganized Debtors to assert or prosecute against any Entity, including any Asbestos Insurance Entity, any cause of action, Claim, Demand, debt, obligation, or liability for payment based on or arising from the Asbestos Insurance Rights; and

(c)      the rights of the Debtors or Reorganized Debtors to receive any settlement, award, payment of cash or other property of any kind whatsoever from any Entity including any Asbestos Insurance Entity in satisfaction of any Asbestos Insurance Rights.

## 8.3    TERM OF CERTAIN INJUNCTIONS AND AUTOMATIC STAY

### 8.3.1   Injunctions and/or Automatic Stays in Existence Immediately prior to Confirmation

All of the injunctions and/or automatic stays provided for in or in connection with the Chapter 11 Cases and in existence immediately prior to the Confirmation Date, whether pursuant to Sections 105 and 362 of the Bankruptcy Code, or any other provision under applicable law, shall remain in full force and effect until the injunctions set forth in this Plan become effective, and thereafter if so provided by this Plan, the Confirmation Order, or by their own terms.  In addition, on and after the Confirmation Date, the Plan Proponents, acting unanimously, may seek such further orders as they may deem necessary or appropriate to preserve the status quo during the time between the Confirmation Date and the Effective Date.

### 8.3.2   Injunctions Provided for in this Plan

Each of the injunctions provided for in this Plan shall become effective on the Effective Date and shall continue in effect at all times thereafter.

## 8.4   RELEASES AND INDEMNIFICATION

### 8.4.1   Settlement and Release by Debtors and Reorganized Debtors of Avoidance Actions and Other Estate Claims

Effective on the occurrence of the Effective Date, the Debtors and the Reorganized Debtors settle and fully, finally, and forever release, relinquish and discharge (a) each and every Avoidance Action against an Asbestos Protected Party or its Representatives, (b) each and every Avoidance Action against any Holder of an Asbestos Claim (resolved or pending) or such Holder's Representatives; (c) any and all claims against any Asbestos Protected Party, Holder of an Asbestos Claim (resolved or pending), or any Representative of such Holder that are or would have been property of any Debtor's Estate or which any Debtor is or would have been entitled to prosecute as a Debtor in Possession arising under non-bankruptcy law based on or attributable to any allegedly preferential or fraudulent transfers or based on or attributable to any allegedly unlawful payments or transfers or distributions of property made by or on behalf of any Debtor; (d) any and all claims that are or would have been property of any Debtor's Estate or which any Debtor is or would have been entitled to prosecute as a Debtor in Possession, regardless of the legal theory upon which such claims may be predicated, for which any Asbestos Protected Party is asserted to be or to have been derivatively liable for any Asbestos Claim, including, without limitation, any claims based upon a legal or equitable theory of liability in the nature of veil piercing, alter ego, successor liability, vicarious liability, fraudulent transfer, malpractice, breach of fiduciary duty, waste, fraud, or conspiracy; and (e) any and all claims in (a)-(d) above where, in the absence of the Debtors' Chapter 11 Cases, such claims might, under substantive law of any jurisdiction, have been treated as claims maintainable not only by the Debtors or the Debtors' Estates themselves, but by creditors or Claimants against the Debtors. Such released claims shall in no event be asserted against or paid by the Asbestos Trust. This Plan constitutes a motion to approve the settlement of the foregoing claims and actions pursuant to Bankruptcy Rule 9019(a).

### 8.4.2   Specific Release of Intercompany Asbestos Claims

Effective on the occurrence of the Effective Date, each Debtor, Reorganized Debtor, and Non-Debtor Affiliate shall be deemed to have unconditionally waived, released, and extinguished any and all Asbestos Claims against each other Debtor, Reorganized Debtor, or Non-Debtor Affiliate, including all Asbestos Claims set forth in any and all proofs of claim filed by or on behalf of Coltec in the Chapter 11 Cases, and this Plan constitutes a motion to approve the resolution and release of the foregoing claims pursuant to Bankruptcy Rule 9019(a); *provided, however*, that this release shall not be construed to release, impair, or affect the rights of indemnification contained in Section 8.4.7 of this Plan. Notwithstanding anything in the Plan, the Plan Documents, the Confirmation Order, or the Asbestos Channeling Injunction, the Asbestos Trust shall have no obligation, responsibility, or liability for any of the Asbestos Claims waived, released, and extinguished in accordance with this Section 8.4.2.

### 8.4.3    Settlement and Release by Debtors and Estate Parties

Effective on the occurrence of the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each Debtor, in its individual capacity and as a Debtor in Possession for and on behalf of its Estate and its Affiliates, and each Reorganized Debtor on its own behalf and on behalf of its Estate and its Affiliates, and the respective successors and assigns of each such Debtor, Debtor in Possession, Estate, and Affiliate, is hereby deemed to settle and release, absolutely, unconditionally, irrevocably, and forever each and all of the Debtors' Representatives, their Non-Debtor Affiliates' Representatives, and their respective properties ("**Released Parties**"), from any and all claims, obligations, rights, suits, damages, remedies, liabilities, or causes of action in any manner arising from, based on, or relating to, in whole or in part, the Debtors, the Debtors' property, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan, the restructuring of Claims and Equity Interests prior to or in the Chapter 11 Cases, and the negotiation, formulation, or preparation of the Plan and the Disclosure Statement, or related agreements, instruments, or other documents, involving any act, omission, transaction, agreement, occurrence, or event taking place on or before the Effective Date, other than any act or omission of a Released Party that constitutes willful misconduct or lack of good faith (and this Plan constitutes a motion to approve the settlement of the foregoing claims pursuant to Bankruptcy Rule 9019(a)); *provided, however*, that the obligations and duties of any Released Party under this Plan or any Plan Document are not so settled and released.  Any act or omission taken with the approval of the Bankruptcy Court will be conclusively deemed not to constitute willful misconduct or lack of good faith.

### 8.4.4    Settlement and Release of Certain Claims

On the Effective Date, the Debtors, Reorganized Debtors, their Affiliates, predecessors, successors, and assigns shall be deemed to release, waive, and permanently extinguish their rights to file or assert in the future any GST Recovery Action.

With respect to the pending GST Recovery Actions, this Plan constitutes a motion to approve the settlement of such actions pursuant to Bankruptcy Rule 9019(a), and such actions and any claims, counterclaims, or countersuits the respective parties asserted or could have asserted therein shall be dismissed with prejudice in exchange for mutual general releases and mutual waivers of costs and attorneys' fees. This settlement is contingent upon a Final Order confirming the Plan and will be effective upon delivery of GST Recovery Action Settlement Packages by plaintiffs GST and Garrison and by the respective defendants in the pending GST Recovery Actions.

### 8.4.5    No Actions on Account of Released Claims

Effective on the occurrence of the Effective Date, all Entities that have held, currently hold or may hold any claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action or liabilities that are released pursuant to the Plan (collectively, "**Released Claims**") shall be permanently enjoined from taking any of the following actions

against any Entity released pursuant to the Plan, or any of its property, on account of any Released Claims: (a) commencing or continuing in any manner any action or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any Encumbrance; (d) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to any released Entity; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan; *provided, however*, that nothing in this Section 8.4.5 shall bar, enjoin, or extinguish the rights of Entities to the treatment accorded them under this Plan, including the rights of Entities holding Asbestos Claims to assert such Asbestos Claims against the Asbestos Trust in accordance with the CRP.

### 8.4.6   Indemnification of Representatives of the Debtors and Non-Debtor Affiliates

The Reorganized Debtors shall protect, defend, indemnify, and hold harmless to the fullest extent permitted by applicable law, all Representatives of the Debtors, and all Representatives of the Non-Debtor Affiliates, on and after the Effective Date for all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever that are purported to be released pursuant to Section 8.4.3 herein, other than as provided in this Section 8.4.6. Nothing herein is intended to, nor shall, alter in any way the rights of the present and/or former officers and/or directors of the Debtors and the Non-Debtor Affiliates, under the Debtors' By-Laws and/or Certificate of Incorporation, and the Non-Debtor Affiliates' applicable bylaws and/or certificates of incorporation, whatever those rights may be.

### 8.4.7   Indemnification of Debtors and Other Asbestos Protected Parties by the Asbestos Trust

From and after the Effective Date, the Asbestos Trust shall protect, defend, indemnify and hold harmless, to the fullest extent permitted by applicable law each of the Debtors, Reorganized Debtors, and other Asbestos Protected Parties from and against any and all losses (including, without limitation, attorney's fees and expenses) that occur after the Effective Date and are based on, arise from, or are attributable to any Asbestos Claim; *provided, however*, that the Asbestos Trust will have no duty to defend, indemnify, and hold harmless Debtors, Reorganized Debtors, and other Asbestos Protected Parties from any such losses that are based on, arise from, or are attributable to any Foreign Asbestos Claim, unless the Foreign Asbestos Claim is filed, asserted, or sought to be enforced in or before any court or tribunal within the judicial system of the United States.

In addition, on the Effective Date, the Asbestos Trust shall assume the Debtors' indemnification obligations to the "Indemnified Parties" identified in paragraph 5 of the Bankruptcy Court's Order Granting Debtors' Motion for Appointment of Joseph W. Grier, III as Future Asbestos Claimants' Representative (Docket No. 512), entered September 16, 2010, and upon such assumption the Debtors will be released from such obligations.

If there shall be pending any claim against the Asbestos Trust for indemnification under this Section 8.4.7, the Asbestos Trust shall maintain sufficient assets (as determined in good faith by the Asbestos Trustee) to fund any payments in respect of that claim for indemnification. The

Reorganized Debtors shall provide prompt notice to the Asbestos Trust upon becoming aware of the basis for any claim for indemnification under this Section 8.4.7.

## 8.5   CARVE-OUT FOR CERTAIN FOREIGN ASBESTOS CLAIMS

Notwithstanding anything herein to the contrary, nothing in this Plan shall discharge, bar, enjoin, release, or extinguish any Foreign Asbestos Claim, unless the Foreign Asbestos Claim is filed, asserted, or sought to be enforced in or before any court or tribunal within the judicial system of the United States.

## 8.6   NO EFFECT ON INDEPENDENT LIABILITIES OF NON-DEBTORS

For the avoidance of doubt, notwithstanding any provision to the contrary, nothing contained in this Plan, any Plan Document, the Confirmation Order, the Bankruptcy Code (including Section 1141 of the Bankruptcy Code), or any other document Filed in the Chapter 11 Cases shall be construed to discharge, enjoin, release, or channel to the Asbestos Trust any liability or obligation of a non-Debtor Entity not derived from that of a Debtor, including, without limitation, any independent liability of a non-Debtor Entity that is not an Affiliate of, successor of, successor-in-interest to, merger partner of, or transferor of assets to a Debtor as of the Petition Date.

## ARTICLE 9
## EXECUTORY CONTRACTS, UNEXPIRED LEASES, LETTERS OF CREDIT, SURETY BONDS, COMPENSATION, INDEMNITY AND BENEFIT PROGRAMS

## 9.1   ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 9.1.1   Assumption Generally

Except for (i) executory contracts and unexpired leases that the Debtors reject prior to the Effective Date or designate (on a list set forth in Exhibit G in the Exhibit Book) as being subject to rejection in connection with the Effective Date; and (ii) agreements, to the extent executory, that create an obligation of the Debtors to reimburse or indemnify third parties with respect to Asbestos Claims, all executory contracts and unexpired leases (including all Asbestos Insurance Policies and related settlements or other agreements, to the extent they are executory) not previously assumed by the Debtors pursuant to Section 365 of the Bankruptcy Code shall be deemed to have been assumed by the Reorganized Debtors on the Effective Date, and this Plan shall constitute a motion to assume such executory contracts and unexpired leases as of the Effective Date.

### 9.1.2   Assumption Procedures

Pursuant to the terms of the Non-Asbestos Bar Date Order and Bankruptcy Rule 3002(c)(4), and excepting all agreements that create an obligation of the Debtors to reimburse or indemnify third parties with respect to Asbestos Claims (as discussed in Section 9.1.3) or as otherwise ordered by the Bankruptcy Court, a proof of claim for each Claim arising from the rejection of an executory contract or unexpired lease pursuant to this Plan or otherwise shall be Filed with the Bankruptcy Court within thirty (30) days of the later of: (i) the date of the entry of

an order, prior to the Confirmation Date, approving such rejection, (ii) the Confirmation Date, or (iii) service of notice of rejection if such party is an affected party as described above. Any Claims not Filed within such applicable time period shall be forever barred from assertion. All Allowed Claims for damages arising from the rejection of an executory contract or unexpired lease shall be included in Class 6 or Class 7 (as appropriate) and shall be treated in accordance with Sections 3.1.6 and 3.1.7 herein.

Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute express approval of the assumption of the executory contracts and unexpired leases described in Section 9.1.1 pursuant to Section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interests of the Debtors, their Estates, and all parties in interest in the Chapter 11 Cases.

With respect to each such executory contract or unexpired lease assumed by the Reorganized Debtors, unless otherwise determined by the Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, any defaults of the Debtors with respect to such assumed executory contracts or leases existing as of the Effective Date shall be cured in the ordinary course of the Reorganized Debtors' business promptly after any such default becomes known to the Debtors and, if the cure amount is disputed, such cure amount shall be established pursuant to applicable law, and the assumed executory contracts or leases shall be binding upon and enforceable upon the parties thereto, subject to any rights and defenses existing thereunder. Subject to the occurrence of the Effective Date, upon payment of such cure amount, all defaults of the Debtors existing as of the Confirmation Date with respect to such executory contract or unexpired lease shall be deemed cured.

Executory contracts and unexpired leases previously assumed by the Debtors during the case pursuant to Section 365 of the Bankruptcy Code shall be governed by and subject to the provisions of the order of the Court authorizing the assumption thereof.

### 9.1.3   Rejection of Certain Executory Contracts and Unexpired Leases

On the Effective Date, each executory contract and unexpired lease listed on Exhibit G in the Exhibit Book shall be rejected pursuant to Section 365 of the Bankruptcy Code.  Each contract and lease listed on Exhibit G shall be rejected only to the extent that such contract or lease constitutes an executory contract or unexpired lease.  Listing a contract or lease on Exhibit G shall not constitute an admission by the Debtors or Reorganized Debtors that such contract or lease is an executory contract or unexpired lease or that the Debtors or Reorganized Debtors have any liability thereunder.  Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejection pursuant to Section 365 of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejection is in the best interests of the Debtors, their estates, and all parties in interest in the Chapter 11 Cases.

The Debtors shall have the right until ten (10) days prior to the Effective Date to modify the list of rejected contracts included in Exhibit G in the Exhibit Book to add executory contracts or leases or remove executory contracts or leases, *provided* that the Debtors shall file a notice with the Bankruptcy Court and serve each affected party with such notice.  Notwithstanding the

foregoing, such affected parties shall not be entitled to any Administrative Expense Claim for any executory contracts or leases added to the list of rejected contracts and will only be entitled to a Claim for rejection damages.

To the extent executory, all agreements that create an obligation of the Debtors to reimburse or indemnify third parties with respect to Asbestos Claims shall be deemed rejected by operation of entry of the Confirmation Order, subject to the occurrence of the Effective Date, unless expressly identified and assumed pursuant to the Plan, a Plan Document, or an order of the Bankruptcy Court.

Except with respect to Claims arising from the rejection of an executory contract or unexpired lease that creates an obligation of the Debtors to reimburse or indemnify third parties with respect to Asbestos Claims, all Claims for damages arising from the rejection of an executory contract or unexpired lease shall be included in Class 6 or Class 7 (as appropriate) and shall be treated in accordance with Sections 3.1.6 or 3.1.7 herein.  All Claims for damages arising from the rejection of an agreement that creates an obligation of the Debtors to reimburse or indemnify third parties with respect to Asbestos Claims shall be included in Class 5 and shall be treated in accordance with Section 3.1.5 herein.

## 9.2    LETTERS OF CREDIT AND SURETY BONDS

All letters of credit and surety bonds on account of Non-Asbestos Plan Claims will remain in place and become obligations of the Reorganized Debtors.  Claims arising under letters of credit and surety bonds issued or provided on account of Asbestos Claims will be treated as Asbestos Claims and will be channeled to the Asbestos Trust.

Nothing in Article 9 shall constitute a reinstatement, continuation, or assumption by the Reorganized Debtors of any warranty provision, guaranty, or any other contractual or other obligation, Demand, or Plan Claim to the extent that the Plan Claim, Demand, or obligation constitutes an Asbestos Claim.

## 9.3    COMPENSATION, INDEMNITY AND BENEFIT PROGRAM

### 9.3.1    Employee Benefits

From and after the Effective Date, the Reorganized Debtors intend to continue their existing employee compensation, indemnity agreements, and benefit plans, programs, and policies, and to cure any defaults that may exist under such agreements, plans, programs, and policies, including payment of the Debtors' voluntary supplemental pension payments which were limited during the pendency of these Chapter 11 Cases, subject to any rights to amend, modify, or terminate such benefits under the terms of the applicable compensation and benefit plan, other agreement, or applicable nonbankruptcy law.

### 9.3.2    Retiree Benefits

From and after the Effective Date, the Reorganized Debtors intend to continue to pay retiree benefits (as defined in Section 1114(a) of the Bankruptcy Code) and any similar health, disability, or death benefits in accordance with the terms of the retiree benefit plans or other

agreements governing the payment of such benefits, subject to any rights to amend, modify, or terminate such benefits under the terms of the applicable retiree benefits plan, other agreement, or applicable nonbankruptcy law.

### 9.3.3   Workers' Compensation Benefits

From and after the Effective Date, the Reorganized Debtors may continue to pay valid Workers' Compensation Claims in accordance with applicable nonbankruptcy law, subject to any rights to amend, modify, or terminate such benefits pursuant to applicable nonbankruptcy law.

### ARTICLE 10
### RETENTION OF JURISDICTION

Pursuant to Sections 105(a), 524(a), 1141(d), and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction, except as provided in Section 10.9 hereof, over any proceeding (a) arising under the Bankruptcy Code, (b) arising in or related to the Chapter 11 Cases or this Plan, or (c) involving the following matters in Sections 10.1 through 10.9 herein, provided that the District Court shall retain jurisdiction to hear and determine such matters in the first instance (i) as to which the automatic reference to the Bankruptcy Court has been withdrawn, (ii) to the extent the Bankruptcy Court lacks adjudicatory authority under the United States Constitution to hear and determine such matters in the absence of consent of the parties involved, (iii) to the extent required by law, or (iv) to the extent set forth in Section 10.11 below:

## 10.1   PLAN DOCUMENTS

To interpret, enforce, and administer the terms of the Plan Documents and all annexes and exhibits thereto.

## 10.2   EXECUTORY CONTRACTS AND UNEXPIRED LEASES

To hear and determine any and all motions or applications for the assumption and/or assignment or rejection of (i) executory contracts, (ii) unexpired leases, (iii) letters of credit, (iv) surety bonds, (v) guaranties (which for purposes of this Section include contingent liabilities arising in connection with assigned executory contracts and unexpired leases), or (vi) written indemnity agreements with respect to letters of credit, surety bonds or guaranties existing as of the Effective Date to which the Debtors are parties or with respect to which the Debtors may be liable that are:  (A) pending on the Confirmation Date or (B) within the time period described in Section 9.1 of this Plan, and to review and determine all Claims resulting from the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date.

## 10.3   DISPUTED CLAIMS ALLOWANCE/DISALLOWANCE

To hear and determine any objections to:  (i) the allowance of Plan Claims (other than Asbestos Claims), including any objections to the classification of any Claim; and (ii) the allowance or disallowance of any Disputed Claim in whole or in part.

**10.4  ENFORCEMENT/MODIFICATION OF THIS PLAN AND THE RELEASES, INJUNCTIONS AND DISCHARGE PROVIDED UNDER THE PLAN**

(a)     To enforce the discharge, releases, and injunctions provided under the Plan, including with respect to the assertion by any Entity after the Effective Date of claims or causes of action that are discharged, released, or enjoined pursuant to the Plan and the Confirmation Order;

(b)     To make all determinations or rulings as to whether claims or causes of action asserted after the Effective Date in any forum have been discharged, released, or enjoined pursuant to the Plan and the Confirmation Order;

(c)     To issue such orders in aid of execution of this Plan to the extent authorized or contemplated by Section 1142 of the Bankruptcy Code;

(d)     To consider and approve any modifications of this Plan or Plan Documents, remedy any defect or omission, or reconcile any inconsistency in any order of the Court, including the Confirmation Order;

(e)     To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with this Plan or any other Plan Documents or their interpretation, implementation, enforcement, or consummation;

(f)     To hear and determine all objections to the termination of the Asbestos Trust;

(g)     To determine such other matters as may be set forth in, or may arise in connection with, this Plan, the Confirmation Order, the Asbestos Channeling Injunction, the Asbestos Trust Agreement, the CRP, or any other Plan Documents; *provided, however*, that, notwithstanding any of the foregoing, this Section 10.4(g) shall not in any way (i) authorize or confer jurisdiction on the Bankruptcy Court to hear and determine an objection to any Asbestos Claim under Section 502(b) of the Bankruptcy Code; or (ii) supersede, diminish, modify, or derogate (A) the authority of the Asbestos Trust to resolve and, if eligible, pay Asbestos Claims in accordance with the Asbestos Trust Agreement and CRP; (B) the jurisdiction or authority of any court sited in any of the jurisdictions or states identified in Section 9.6 of the CRP to hear and determine any lawsuit commenced in accordance with that Section 9.6; (C) the ADR procedures and the jurisdiction or authority of an arbitrator under Section 9 of the CRP; or (D) the authority and discretion conferred on the Asbestos Trustee under the Plan, any of the Plan Documents, or applicable non-bankruptcy law;

(h)     To hear and determine any proceeding that involves the validity, application, construction, enforceability, or request to modify the Asbestos Channeling Injunction;

(i)     To enter an order or final decree closing the Chapter 11 Cases;

(j)     To hear and determine any other matters related hereto, including matters related to the implementation and enforcement of all orders entered by the Court in the Chapter 11 Cases;

57

(k)      To enter such orders as are necessary to implement and enforce the injunctions described herein; and

(l)      To enter orders authorizing immaterial modifications to this Plan and to hear and determine any issue involving the Asbestos Trust in order to comply with Section 468B of the IRC.

## 10.5    COMPENSATION AND EXPENSES

To hear and determine all motions or applications for allowance or payment of Fee Claims or any other compensation or expenses that may be awarded under the Bankruptcy Code or this Plan.

## 10.6    SETTLEMENTS

To the extent that Court approval is required, to consider and act on the compromise and settlement of any Plan Claim or cause of action by or against the Debtors' or Reorganized Debtors' estates or the Asbestos Trust.

## 10.7    TAXES

To hear and determine matters concerning state, local, and federal taxes (including the amount of net operating loss carryforwards), fines, penalties, or additions to taxes for which the Debtors or Debtors in Possession may be liable, directly or indirectly, in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code.

## 10.8    SPECIFIC PURPOSES

To hear and determine such other matters and for such other purposes as may be provided in the Confirmation Order.

## 10.9    INSURANCE MATTERS

To hear and determine matters concerning the Asbestos Insurance Rights; *provided, however,* that the Court shall have nonexclusive jurisdiction over such matters.

## 10.10    ORDERS CLOSING CHAPTER 11 CASES

Any order entered pursuant to Section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022 closing the Chapter 11 Cases shall provide that, notwithstanding the closure of the Chapter 11 Cases: (a) the Court expressly retains jurisdiction over the matters described in Article 10, as well as to consider any proper requests to reopen the Chapter 11 Cases under Section 350(b) of the Bankruptcy Code, and (b) the clerk of the Court shall accept for filing on the docket of Case No. 10-BK-31607, without the requirement that any party in interest file a request to reopen the Chapter 11 Cases, the annual reports of the Asbestos Trust and any pleadings, motions, subpoenas, or other papers pursuant to which any party in interest seeks to invoke the jurisdiction that the Bankruptcy Court retains pursuant to Article 10 of this Plan.

## 10.11   EXCLUSIVE JURISDICTION OF DISTRICT COURT

The District Court shall, without regard to the amount in controversy, retain exclusive jurisdiction after the Effective Date to hear and determine any proceeding that involves the validity, application, construction, or modification of the Asbestos Channeling Injunction, or of Section 524(g) of the Bankruptcy Code with respect to the Asbestos Channeling Injunction.

## ARTICLE 11
## MISCELLANEOUS PROVISIONS

## 11.1   AUTHORITY OF THE DEBTORS

On the Confirmation Date, the Debtors shall be directed and authorized to take or cause to be taken, prior to the Effective Date, all actions necessary to enable them to implement effectively the provisions of this Plan, the other Plan Documents, and the creation of the Asbestos Trust, and to cooperate with the Plan Proponents as provided herein and with respect to matters related to the Plan generally.

## 11.2   PAYMENT OF STATUTORY FEES

All fees payable pursuant to Section 1930 of title 28 of the United States Code, as determined by the Court at the hearing on confirmation of this Plan, shall be paid by the Debtors on or before the Effective Date.

## 11.3   RETAINED CAUSES OF ACTION

### 11.3.1  Maintenance of Causes of Action

Nothing in this Section 11.3 of this Plan shall be deemed to be a transfer by the Debtors and the Reorganized Debtors of any claims, causes of action, or defenses relating to assumed executory contracts or otherwise which are required by the Reorganized Debtors to conduct their businesses in the ordinary course subsequent to the Effective Date.  Moreover, except as otherwise expressly released by this Plan or other Plan Documents (including the express releases of claims contained in Section 8.4 hereof), from and after the Effective Date, the Reorganized Debtors shall have and retain any and all rights to commence and pursue any and all claims, causes of action, including the Retained Causes of Action, or defenses against any parties, other Claimants and Holders of Equity Interests, whether such causes of action accrued before or after the Petition Date.

The Reorganized Debtors shall retain and may exclusively enforce any and all such claims, rights, or causes of action, including Retained Causes of Action, and commence, pursue, and settle the causes of action in accordance with this Plan.  The Reorganized Debtors shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such claims, rights, and causes of action, including Retained Causes of Action, without the consent or approval of any third party and without any further order of the Court.

### 11.3.2  Preservation of All Causes of Action Not Expressly Settled or Released

Unless a claim or cause of action against a Claimant or other Entity is expressly waived, relinquished, released, compromised, or settled pursuant to this Plan or any Final Order (including the releases contained in Section 8.4 hereof), the Debtors expressly reserve such claim or Retained Cause of Action (including any unknown causes of action) for later adjudication by the Reorganized Debtors.  Any causes of action of any Debtors among the Asbestos Insurance Rights are expressly retained by the Reorganized Debtors and are among the Retained Causes of Action. Therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such claims or Retained Causes of Action upon or after the Confirmation Date or Effective Date of this Plan based on the Disclosure Statement, this Plan, or the Confirmation Order, except where such claims or Retained Causes of Action have been released in this Plan or other Final Order.  In addition, the Debtors, the Reorganized Debtors, and the successor entities under this Plan expressly reserve the right to pursue or adopt any claim alleged in any lawsuit in which the Debtors are defendants or an interested party, against any Entity, including the plaintiffs or codefendants in such lawsuits; *provided, however*, that the foregoing reservations of rights shall not apply to any GST Recovery Action or to any Retained Cause of Action that is expressly waived, relinquished, released, compromised, or settled by this Plan or by any Final Order.

Any Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume, unless expressly released by this Plan, that such obligation, transfer, or transaction may be reviewed by the Debtors or the Reorganized Debtors, and may, if appropriate, be the subject of an action after the Effective Date, whether or not (i) such Entity has filed a proof of claim against the Debtors in the Chapter 11 Cases; (ii) such Claimant's proof of claim has been objected to; (iii) such Claimant's Claim was included in the Debtors' Schedules; or (iv) such Claimant's scheduled Claim has been objected to by the Debtors or has been identified by the Debtors as a Disputed Claim, a Contingent Claim, or an Unliquidated Claim.

## 11.4  THIRD-PARTY AGREEMENTS

The Distributions to the various Classes of Plan Claims hereunder, other than Distributions to the Asbestos Trust, will not affect the right of any Entity to levy, garnish, attach, or employ any other legal process with respect to such Distributions by reason of any claimed subordination rights or otherwise.  All of such rights and any agreements relating thereto will remain in full force and effect.

## 11.5  PRESERVATION OF POLICE AND REGULATORY POWERS

Nothing in this Plan or in any Plan Document shall preclude or impair a Governmental Unit from enforcing its police or regulatory powers.

## 11.6   DISSOLUTION OF THE UNSECURED CREDITORS COMMITTEE AND THE ASBESTOS CLAIMANTS COMMITTEE

Effective on the Effective Date, except as set forth below, the Asbestos Claimants Committee and the Unsecured Creditors Committee shall be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to or arising from or in connection with the Chapter 11 Cases, and those committees shall be deemed dissolved.

Notwithstanding the foregoing, if the Effective Date occurs prior to the entry of a Final Order with respect to final applications of Professionals for allowance and payment of Fee Claims, the Unsecured Creditors Committee and the Asbestos Claimants Committee may, at their option, continue to serve with respect to those proceedings exclusively until a Final Order is entered with respect to such proceedings. Additionally, effective as of the Effective Date, the CAC shall succeed to, and exclusively hold, the attorney-client privilege and any other privilege held by the Asbestos Claimants Committee and shall enjoy the work product protections that were applicable or available to the Asbestos Claimants Committee before its dissolution.

## 11.7   EXCULPATION

None of the Reorganized Debtors, the Debtors, the Non-Debtor Affiliates, the FCR, the Asbestos Claimants Committee (including each of its members and their respective counsel), the Unsecured Creditors Committee, the Ad Hoc Coltec Future Asbestos Claimants' Representative, the Ad Hoc Coltec Asbestos Claimants Committee (including each of its members and their respective counsel), or any of their respective Representatives (the "**Exculpated Parties**") are to have or incur any liability to any Entity for any act or omission in connection with or arising out of the Chapter 11 Cases, including the administration of the Estates during the entirety of the Chapter 11 Cases, any work in connection with any plan of reorganization or proceedings in the Chapter 11 Cases, conduct during any contested matter in the Chapter 11 Cases, negotiation of this Plan or the settlements contained therein, the pursuit of confirmation of this Plan, the consummation of this Plan or the settlements provided therein, or the administration of this Plan or the property to be distributed under this Plan so long as, in each case such action, or failure to act, did not constitute willful misconduct or lack of good faith; *provided, however*, that nothing herein shall exculpate, bar, or shield the foregoing persons from any Fee Dispute Remedy. In all respects, the Exculpated Parties will be entitled to rely upon the advice of counsel and financial and other experts or professionals employed by them with respect to their duties and responsibilities under this Plan, and such reliance shall conclusively establish good faith. Any act or omission taken with the approval of the Bankruptcy Court will be conclusively deemed not to constitute willful misconduct or lack of good faith. In any suit alleging willful misconduct or lack of good faith, the reasonable attorney's fees and costs of the prevailing party shall be paid by the losing party, and, as a condition of going forward with such action, suit, or proceeding, at the onset thereof, all parties thereto shall be required to provide appropriate proof and assurances of their capacity to make such payments of reasonable attorney's fees and costs in the event they fail to prevail. Pursuant to its authority under Bankruptcy Code Section 105(a), in the Confirmation Order, the Court will enter an injunction permanently enjoining commencement or continuation in any manner, any suit, action, or other proceeding, on account of or respecting any claim, obligation, debt, right, cause of action, remedy, or liability included within this exculpation clause.

**11.8   ENTIRE AGREEMENT**

Except as otherwise indicated, the Plan and the Plan Documents supersede all prior negotiations, promises, covenants, agreements, understandings, and representations on such subjects, including all plans of reorganization previously filed by any party in interest with the Court in these Chapter 11 Cases.

**11.9   NOTICES**

Any notices, statements, requests, and demands required or permitted to be provided under this Plan, in order to be effective, must be:  (i) in writing (including by facsimile transmission), and unless otherwise expressly provided herein, shall be deemed to have been duly given or made (A) if personally delivered or if delivered by facsimile or courier service, when actually received by the Entity to whom notice is sent, (B) if deposited with the United States Postal Service (but only when actually received), at the close of business on the third business day following the day when placed in the mail, postage prepaid, certified or registered with return receipt requested, or (C) one (1) Business Day after being sent to the recipient by reputable overnight courier service (charges prepaid) (but only when actually received) and (ii) addressed to the appropriate Entity or Entities to whom such notice, statement, request or demand is directed (and, if required, its counsel), at the address of such Entity or Entities set forth below (or at such other address as such Entity may designate from time to time by written notice to all other Entities listed below in accordance with this Section 11.9):

| If to the Debtors: | GARLOCK SEALING TECHNOLOGIES LLC<br>c/o Elizabeth Barry, Chief Restructuring Officer<br>349 West Commercial St., Ste 3050<br>East Rochester, NY  14445 |
|---|---|
| With a copy to: | RAYBURN COOPER & DURHAM, P.A.<br>1200 Carillion, 227 West Trade Street<br>Charlotte, NC 28202<br>Telephone: (704) 334-0891<br>Attn: John R. Miller, Jr.<br><br>and<br><br>ROBINSON, BRADSHAW & HINSON, P.A.<br>101 North Tryon Street, Suite 1900<br>Charlotte, NC 28246<br>Telephone: (704) 377-2536<br>Attn: Garland S. Cassada<br><br>and<br><br>PARKER POE ADAMS & BERNSTEIN, LLP<br>Three Wells Fargo Center<br>401 South Tryon Street, Suite 3000 |

|  | Charlotte, NC 28202<br>Telephone: (704) 335-9054<br>Attn: Daniel G. Clodfelter |
|---|---|
| **If to the Asbestos Claimants Committee:** | CAPLIN & DRYSDALE, CHARTERED<br>One Thomas Circle N.W., Suite 1100<br>Washington, DC 20005<br>Telephone: (202) 862-5000<br>Attn: Trevor W. Swett III |
| **If to the Future Claimants' Representative:** | GRIER FURR & CRISP, PA<br>101 North Tryon Street, Suite 1240<br>Charlotte, NC 28246<br>Telephone: (704) 375-3720<br>Attn: Joseph W. Grier, III |
| **With a copy to:** | ORRICK HERRINGTON & SUTCLIFFE, LLP<br>Columbia Center<br>1152 15th Street, N.W.<br>Washington, DC 20005<br>Telephone: (202) 339-8400<br>Attn: Jonathan P. Guy |
| **If to the Unsecured Creditors Committee:** | FSB FISHERBROYLES, LLP<br>6000 Fairview Road, Suite 1200<br>Charlotte, NC 28210<br>Telephone: (704) 464-6954<br>Attn: Deborah L. Fletcher |

## 11.10  HEADINGS

The headings used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the construction of the provisions of this Plan.

## 11.11  GOVERNING LAW

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Delaware, without giving effect to any conflicts of law principles thereof that would result in the application of the laws of any other jurisdiction, shall govern the construction of this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise expressly provided in such instruments, agreements, or documents.

## 11.12   FILING OF ADDITIONAL DOCUMENTS

On or before the Effective Date, the Plan Proponents shall File with the Court such agreements and other documents, including the Plan Supplement, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

## 11.13   COMPLIANCE WITH TAX REQUIREMENTS

In connection with this Plan, the Debtors, the Reorganized Debtors, and the Asbestos Trust will comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all Distributions hereunder or under any Plan Document shall be subject to such withholding and reporting requirements, if any. Notwithstanding any other provision of this Plan, each Entity receiving a Distribution pursuant to this Plan, or any other Plan Document, will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income tax and other obligations, on account of that Distribution.

## 11.14   EXEMPTION FROM TRANSFER TAXES

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under this Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan shall be exempt from all taxes as provided in Section 1146(a) of the Bankruptcy Code.

## 11.15   FURTHER ASSURANCES

The Debtors, the Reorganized Debtors, the Non-Debtor Affiliates, the Asbestos Protected Parties, the Asbestos Insurance Entities, the Asbestos Trust, and all Holders of Plan Claims receiving Distributions under this Plan and all other parties in interest shall, and shall be authorized to, from time to time, prepare, execute, and deliver any agreements or documents and take any other action consistent with the terms of this Plan as may be necessary to effectuate the provisions and intent of this Plan, with each such Entity to bear its own costs incurred after the Effective Date in connection therewith.

## 11.16   FURTHER AUTHORIZATIONS

Prior to the Effective Date, the Plan Proponents may seek such orders, judgments, injunctions, and rulings that they, by unanimous agreement, deem necessary to carry out further the intentions and purposes of, and to give full effect to the provisions of, this Plan or any of the Plan Documents, and any costs incurred in connection therewith shall be borne by the Debtors' Estates. On and after the Effective Date, the Reorganized Debtors and the Asbestos Trust may seek such orders, judgments, injunctions, and rulings that any of them deem necessary to carry out further the intentions and purposes of, and to give full effect to the provisions of, this Plan or any of the Plan Documents, with each such Entity to bear its own costs in connection therewith.

[The remainder of this page has been left blank intentionally]

Respectfully submitted,

**GARLOCK SEALING TECHNOLOGIES LLC**:


By:      s/Elizabeth Barry_____
Name: Elizabeth Barry
Title:   Chief Restructuring Officer


**GARRISON LITIGATION MANAGEMENT
GROUP, LTD.:**


By:      s/Elizabeth Barry_____
Name: Elizabeth Barry
Title:   General Manager, Vice President, Director
         of Finance, Treasurer and Assistant Secretary


**THE ANCHOR PACKING COMPANY:**


By:       /s/Elizabeth Barry_____
Name: Elizabeth Barry
Title:   Vice President and General Manager


**COLTEC INDUSTRIES INC (predecessor in interest to OldCo, LLC):**


By:      /s/Robert S. McLean_____
Name: Robert S. McLean
Title:   Vice Chairman and Secretary

[SIGNATURES CONTINUED ON NEXT PAGE]

66

**FUTURE ASBESTOS CLAIMANTS' REPRESENTATIVE:**

By:      /s/Joseph W. Grier, III
Name: Joseph W. Grier, III


**AD HOC COLTEC FUTURE ASBESTOS CLAIMANTS' REPRESENTATIVE:**

By:      /s/Joseph W. Grier, III
Name: Joseph W. Grier, III


**OFFICIAL COMMITTEE OF ASBESTOS
PERSONAL INJURY CLAIMANTS:**

By:      /s/Trevor W. Swett III
Name: Trevor W. Swett III
Firm:   Caplin & Drysdale, Chartered
Title:   Counsel to the Official Committee of Asbestos Personal Injury Claimants


**AD HOC COLTEC ASBESTOS CLAIMANTS COMMITTEE:**

By:      /s/Trevor W. Swett III
Name: Trevor W. Swett III
Firm:   Caplin & Drysdale, Chartered
Title:   Counsel to the Ad Hoc Coltec Asbestos Claimants Committee


[Signature Page to Modified Joint Plan of Reorganization]

Document comparison by Workshare Compare on Friday, July 29, 2016 11:44:32 AM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://WORKSITE/WSACTIVE/8456860/20 |
| Description | #8456860v20<WSACTIVE> - Consensual Plan of Reorganization |
| Document 2 ID | interwovenSite://WORKSITE/WSACTIVE/8456860/21 |
| Description | #8456860v21<WSACTIVE> - Consensual Plan of Reorganization |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 19 |
| Deletions | 1 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 20 |