# EXHIBIT A

**TRUST AND SETTLEMENT FACILITY AGREEMENT**

*In re Garlock Sealing Technologies, LLC et al.,* Case No. 10-31607
**TRUST AND SETTLEMENT FACILITY AGREEMENT**

## TABLE OF CONTENTS

**Page**

### SECTION I

### AGREEMENT OF TRUST

1.1    Creation and Name ....................................................................................... 3
1.2    Purpose ........................................................................................................ 3
1.3    Transfer of Assets ....................................................................................... 4
1.4    Acceptance of Assets and Assumption of Liabilities .................................... 4

### SECTION II

### POWERS AND SETTLEMENT FACILITY ADMINISTRATION

2.1    Powers ......................................................................................................... 5
2.2    General Administration ................................................................................ 9
2.3    Claims Administration ................................................................................ 14

### SECTION III

### ACCOUNTS, INVESTMENTS, AND PAYMENTS

3.1    Accounts ..................................................................................................... 14
3.2    Investments ................................................................................................ 14
3.3    Source of Payments .................................................................................... 17

### SECTION IV

### TRUSTEE; DELAWARE TRUSTEE

4.1    Number ....................................................................................................... 17
4.2    Term of Service ........................................................................................... 17
4.3    Appointment of Successor Trustee .............................................................. 18
4.4    Liability of Trustee, Members of the CAC and the FCR .............................. 19
4.5    Compensation and Expenses of Trustee ...................................................... 19
4.6    Indemnification ........................................................................................... 20
4.7    Lien ............................................................................................................ 22
4.8    Trustee's Employment of Experts; Delaware Trustee's Employment of Counsel ......... 22
4.9    Trustee's Independence ............................................................................... 22
4.10   Bond ........................................................................................................... 23
4.11   Delaware Trustee ....................................................................................... 23
4.12   Medicare Obligations ................................................................................. 25

# TABLE OF CONTENTS

(continued)

**Page**

## SECTION V

## CLAIMANT ADVISORY COMMITTEE

5.1   Members .................................................................................................. 31
5.2   Duties ..................................................................................................... 31
5.3   Term of Office ....................................................................................... 31
5.4   Appointment of Successor ..................................................................... 32
5.5   CAC's Employment of Professionals ..................................................... 33
5.6   Compensation and Expenses of the CAC .............................................. 35
5.7   Procedures for Consultation with and Obtaining the Consent of the CAC ................... 35

## SECTION VI

## THE FUTURE CLAIMANTS' REPRESENTATIVE

6.1   Duties ..................................................................................................... 37
6.2   Term of Office ....................................................................................... 37
6.3   Appointment of Successor ..................................................................... 38
6.4   Future Claimants' Representative's Employment of Professionals .............. 38
6.5   Compensation and Expenses of the Future Claimants' Representative ............. 40
6.6   Procedures for Consultation with and Obtaining the Consent of the Future
       Claimants' Representative ..................................................................... 40

## SECTION VII

## GENERAL PROVISIONS

7.1   Irrevocability ......................................................................................... 42
7.2   Term; Termination ................................................................................ 42
7.3   Amendments .......................................................................................... 44
7.4   Meetings ................................................................................................ 45
7.5   Severability ........................................................................................... 45
7.6   Notices ................................................................................................... 45
7.7   Successors and Assigns ......................................................................... 46
7.8   Limitation on Claim Interests for Securities Laws Purposes ................... 47
7.9   Entire Agreement; No Waiver ............................................................... 47
7.10  Headings ................................................................................................ 47
7.11  Governing Law ...................................................................................... 48
7.12  Settlors' Representative and Cooperation ............................................. 48
7.13  Dispute Resolution ................................................................................ 48
7.14  Enforcement and Administration .......................................................... 49
7.15  Effectiveness ......................................................................................... 49
7.16  Counterpart Signatures .......................................................................... 49

## TRUST AND SETTLEMENT FACILITY AGREEMENT

This Trust and Settlement Facility Agreement (this "**Settlement Facility Agreement**," identified in the Plan as the "**Asbestos Trust Agreement**"), dated the date set forth on the signature page hereof and effective as of the day immediately preceding the Effective Date, is entered into, pursuant to the Modified Joint Plan of Reorganization of Garlock Sealing Technologies LLC, et al. and OldCo, LLC, Proposed Successor by Merger to Coltec Industries Inc, dated as of May 20, 2016 and modified as of June 21, 2016 (as it may be amended or supplemented, the "**Plan**"),[1] by Garlock Sealing Technologies LLC, Garrison Litigation Management, Ltd., and OldCo, LLC (collectively referred to as the "**Debtors**" or the "**Settlors**"), the debtors and debtors-in-possession whose chapter 11 cases are jointly administered under Case Nos. 10-BK-31607 and 16-BK-_____ in the United States Bankruptcy Court for the Western District of North Carolina[2]; the Legal Representative for Future Asbestos Claimants (the "**Future Claimants' Representative**" or "**FCR**"); the Official Committee of Asbestos Personal Injury Claimants (the "**Asbestos Claimants Committee**"); the Trustee; Wilmington Trust Company (the "**Delaware Trustee**"); and the members of the Claimant Advisory Committee (the "**CAC**") identified on the signature page hereof; and

---

[1] All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the Plan, and such definitions are incorporated herein by reference.  All capitalized terms not defined herein or defined in the Plan, but defined in the Bankruptcy Code or Rules, shall have the meanings ascribed to them by the Bankruptcy Code and Rules, and such definitions are incorporated herein by reference.

[2] The debtors and debtors-in-possession in the jointly-administered cases are Garlock Sealing Technologies LLC (Case No. 10-31607), Garrison Litigation Management Group, Ltd. (Case No. 10-31608), The Anchor Packing Company (Case No. 10-31606), and OldCo, LLC, successor by merger to Coltec Industries Inc (Case No. 16-_____).  This Settlement Facility Agreement, however, does not address or pertain to The Anchor Packing Company.

**WHEREAS**, the Debtors have reorganized under the provisions of chapter 11 of the Bankruptcy Code in cases filed in the United States Bankruptcy Court for the Western District of North Carolina, jointly administered and known as *In re Garlock Sealing Technologies LLC, et al.*, Case No. 10-BK-31607; and

**WHEREAS**, the Confirmation Order has been entered by the Bankruptcy Court and affirmed by the District Court; and

**WHEREAS**, the Plan provides, *inter alia*, for the creation of the GST Settlement Facility (the "**Settlement Facility**"); and

**WHEREAS**, pursuant to the Plan, the Settlement Facility is to use its assets and income to satisfy all GST Asbestos Claims and Coltec Asbestos Claims ("**Claims**"); and

**WHEREAS**, it is the intent of the Debtors, the Trustee, the ACC, the CAC, and the FCR that the Settlement Facility be administered, maintained, and operated at all times through mechanisms that provide reasonable assurance that the Settlement Facility will satisfy all Claims pursuant to the Settlement Facility Claims Resolution Procedures (the "**CRP**") that are attached hereto as Exhibit 1 and in strict compliance with the terms of this Settlement Facility Agreement; and

**WHEREAS**, all rights of the holders of Claims arising under this Settlement Facility Agreement and the CRP shall vest upon the Effective Date; and

**WHEREAS**, pursuant to the Plan, the Settlement Facility is intended to qualify as a "qualified settlement fund" within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the Internal Revenue Code (the "**QSF Regulations**"); and

Modified Joint Plan - Ex. A

**WHEREAS**, the Bankruptcy Court has determined that the Settlement Facility and the Plan satisfy all the prerequisites for an injunction pursuant to section 524(g) of the Bankruptcy Code with respect to any and all Claims, and such injunction has been entered in connection with the Confirmation Order;

**NOW, THEREFORE**, it is hereby agreed as follows:

## SECTION I

## AGREEMENT OF TRUST

1.1    **Creation and Name.**  The Debtors as Settlors hereby create a trust known as the "GST Settlement Facility," which is the Settlement Facility provided for and referred to in the Plan.  The Trustee of the Settlement Facility may transact the business and affairs of the Settlement Facility in the name of the Settlement Facility, and references herein to the Settlement Facility shall include the Trustee acting on behalf of the Settlement Facility.  It is the intention of the parties hereto that the trust created hereby constitute a statutory trust under Chapter 38 of title 12 of the Delaware Code, 12 Del. C. § 3801 et seq. (the "**Act**") and that this document, together with the bylaws described herein, constitute the governing instruments of the Settlement Facility. The Trustee and the Delaware Trustee are hereby authorized and directed to execute and file a Certificate of Trust with the Delaware Secretary of State in the form attached hereto as Exhibit 2.

1.2    **Purpose.**  The purpose of the Settlement Facility is to assume all liabilities and responsibility for all Claims, and, among other things to:  (a) direct the processing, liquidation and payment of all Claims in accordance with the Plan, the CRP, and the Confirmation Order; (b) preserve, hold, manage, and maximize the assets of the Settlement Facility for use in paying and satisfying Claims; and (c) qualify at all times as a qualified settlement fund.  The Settlement Facility is to use its assets and income to pay the holders of all Claims in accordance with this

- 3 -

Settlement Facility Agreement and the CRP in such a way that holders of Claims are treated fairly, equitably, and reasonably in light of the finite assets available to satisfy such claims, and to otherwise comply in all respects with the requirements of a trust set forth in section 524(g)(2)(B) of the Bankruptcy Code.

1.3    **Transfer of Assets.**    Pursuant to, and in accordance with, Section 7.3.2 of the Plan, the Settlement Facility will receive the Asbestos Trust Assets on the day immediately preceding the Effective Date.  The Asbestos Trust Assets and any other assets to be transferred to the Settlement Facility under the Plan will be transferred to the Settlement Facility free and clear of any liens or other claims by the Debtors, Reorganized Debtors, any creditor, interest holder, insurer or other entity except as otherwise provided in the Plan.  The Debtors and the Reorganized Debtors shall also execute and deliver such documents to the Settlement Facility as the Trustee may reasonably request to transfer and assign any Asbestos Trust Assets to the Settlement Facility.

1.4    **Acceptance of Assets and Assumption of Liabilities.**

(a)    In furtherance of the purposes of the Settlement Facility, the Settlement Facility hereby expressly accepts the transfer to the Settlement Facility of the Asbestos Trust Assets and any other transfers contemplated by the Plan in the time and manner as, and subject to the terms, contemplated in the Plan.

(b)    In furtherance of the purposes of the Settlement Facility, the Settlement Facility expressly assumes all liabilities and responsibility for all Claims, and the Reorganized Debtors shall have no further financial or other responsibility or liability therefor.  Except as otherwise expressly provided in this Settlement Facility Agreement and the CRP, the Settlement Facility shall have all defenses, cross-claims, offsets, and recoupments, as well as rights of

- 4 -

indemnification, contribution, subrogation, and similar rights, regarding such claims that the

Debtors or the Reorganized Debtors have or would have had under applicable law. Regardless

of the foregoing, however, a claimant must meet otherwise applicable federal, state and foreign

statutes of limitations and repose, except as otherwise provided in Section 5.3 of the CRP.

(c)     No provision herein or in the CRP shall be construed or implemented in a

manner that would cause the Settlement Facility to fail to qualify as a "qualified settlement fund"

under the QSF Regulations.

(d)     Nothing in this Settlement Facility Agreement shall be construed in any

way to limit (i) the scope, enforceability, or effectiveness of the Asbestos Channeling Injunction

or any other injunction or release issued or granted in favor of any (or all) Asbestos Protected

Parties in connection with the Plan or (ii) subject to the provisions of Section 1.4(b) above, the

Settlement Facility's assumption of all liability for Claims.

(e)     To the extent that anything in this Settlement Facility Agreement conflicts

with the CRP the CRP shall control.

## SECTION II

## POWERS AND SETTLEMENT FACILITY ADMINISTRATION

**2.1     Powers.**

(a)     The Trustee is and shall act as a fiduciary to the Settlement Facility in

accordance with the provisions of this Settlement Facility Agreement and the Plan. The Trustee

shall, at all times, administer the Settlement Facility and the Asbestos Trust Assets in accordance

with the purposes set forth in Section 1.2 above. Subject to the limitations set forth in this

Settlement Facility Agreement and the CRP, the Trustee shall have the power to take any and all

actions that, in the judgment of the Trustee, are necessary or proper to fulfill the purposes of the

- 5 -

Settlement Facility, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto, and any trust power now or hereafter permitted under the laws of the State of Delaware.

(b)    Except as required by applicable law or otherwise specified herein, the Trustee need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(c)    Without limiting the generality of Section 2.1(a) above, and except as limited below, the Trustee shall have the power to:

(i)    receive and hold the Asbestos Trust Assets and exercise all rights with respect thereto, including the right to vote and sell any securities that are included in the Asbestos Trust Assets;

(ii)    invest the monies held from time to time by the Settlement Facility subject to the limitations set forth in Section 3.2 below;

(iii)    sell, transfer, or exchange any or all of the Asbestos Trust Assets at such prices and upon such terms as the Trustee may consider proper, consistent with the other terms of this Settlement Facility Agreement;

(iv)    enter into leasing and financing agreements with third parties to the extent such agreements are reasonably necessary to permit the Settlement Facility to operate;

(v)    pay liabilities and expenses of the Settlement Facility;

(vi)    establish such funds, reserves, and accounts within the Settlement Facility estate, as the Trustee deems useful in carrying out the purposes of the Settlement Facility;

- 6 -

(vii)    sue and be sued and participate, as a party or otherwise, in any judicial, administrative, arbitrative, or other proceeding;

(viii)    establish, supervise, and administer the Settlement Facility in accordance with this Settlement Facility Agreement and the CRP and the terms thereof;

(ix)    appoint such officers and hire such employees and engage such legal, financial, accounting, investment, auditing, and forecasting, and other consultants and agents as the business of the Settlement Facility requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustee permit and as the Trustee, in his or her discretion, deems advisable or necessary in order to carry out the terms of this Settlement Facility;

(x)    pay employees, legal, financial, accounting, investment, auditing**,** and forecasting, and other consultants, advisors, and agents, including those engaged by the Settlement Facility in connection with its alternative dispute resolution activities, reasonable compensation;

(xi)    compensate the Trustee, the Delaware Trustee, and the FCR as provided below, and their employees, legal, financial, accounting, investment, and other advisors, consultants, independent contractors, and agents, and reimburse the Trustee, the Delaware Trustee, the CAC members, and the FCR, and their employees, legal, financial, accounting, investment, and other advisors, consultants, independent contractors, and agents, all reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder;

(xii)    execute and deliver such instruments as the Trustee considers proper in administering the Settlement Facility;

- 7 -

(xiii)   enter into such other arrangements with third parties as are deemed by the Trustee to be useful in carrying out the purposes of the Settlement Facility, provided such arrangements do not conflict with any other provision of this Settlement Facility Agreement;

(xiv)   in accordance with Section 4.6 below, defend, indemnify, and hold harmless (and purchase insurance indemnifying) (A) the Trustee, the Delaware Trustee, the members of the CAC, and the FCR, and (B) the officers and employees of the Settlement Facility, and any agents, advisors, consultants, counsel, and experts of the Settlement Facility, the CAC, or the FCR (the "**Additional Indemnitees**"), to the fullest extent that a statutory trust organized under the laws of the State of Delaware is from time to time entitled to indemnify and/or insure its directors, Trustee, officers, employees, agents, advisors, and representatives;

(xv)   delegate any or all of the authority herein conferred with respect to the investment of all or any portion of the Asbestos Trust Assets to any one or more registered institutional investment advisors or investment managers without liability for any action taken or omission made because of any such delegation, except as provided in Section 4.4 below;

(xvi)   consult with the CAC and the FCR at such times and with respect to such issues relating to the conduct of the Settlement Facility as the Trustee considers desirable and as expressly required herein or by the CRP;

(xvii)   make, pursue (by litigation before any court of competent jurisdiction or otherwise), collect, compromise or settle, in the name of the Settlement Facility, any claim, right, action, or cause of action included in the Asbestos Trust Assets;

(xviii)  defend, indemnify, and hold harmless Debtors and other Asbestos Protected Parties pursuant to the provisions of the Plan; and

- 8 -

(xix)    provide data and information relating to insurance matters under the conditions and in the manner set forth in Section 12.2 of the CRP.

(d)    The Trustee shall not have the power to guarantee any debt of other persons.

(e)    The Trustee agrees to take the actions of the Settlement Facility required hereunder.

(f)    The Trustee shall give the CAC and the FCR prompt notice of any act performed or taken pursuant to Sections 2.1(c)(i), (iii), (vii), or (xv) above, and any act proposed to be performed or taken pursuant to Section 2.2(f) below.

**2.2    <u>General Administration.</u>**

(a)    The Trustee shall act in accordance with the Settlement Facility Agreement.  The Trustee shall adopt and act in accordance with Settlement Facility Bylaws.  To the extent not inconsistent with the terms of this Settlement Facility Agreement, the Settlement Facility Bylaws shall govern the affairs of the Settlement Facility.   In the event of an inconsistency between the Settlement Facility Bylaws and this Settlement Facility Agreement, this Settlement Facility Agreement shall govern.

(b)    The Trustee shall (i) timely file income tax and other returns and statements and shall timely pay all taxes required to be paid by the Settlement Facility, (ii) comply with all applicable reporting and withholding obligations, (iii) satisfy all requirements necessary to qualify and maintain qualification of the Settlement Facility as a qualified settlement fund within the meaning of the QSF Regulations, and (iv) take no action that could cause the Settlement Facility to fail to qualify as a qualified settlement fund within the meaning of the QSF Regulations.

- 9 -

(c)     The Trustee shall timely account to the Bankruptcy Court as follows:

(i)     The Trustee shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event within one hundred and twenty (120) days following the end of each fiscal year, an annual report (the "**Annual Report**") containing financial statements of the Settlement Facility (including, without limitation, a balance sheet of the Settlement Facility as of the end of such fiscal year and a statement of operations for such fiscal year) audited by a firm of independent certified public accountants selected by the Trustee and accompanied by an opinion of such firm as to the fairness of the financial statements' presentation of the cash and investments available for the payment of claims and as to the conformity of the financial statements with generally accepted accounting principles.   The Trustee shall provide a copy of such Annual Report to the CAC and the FCR when such report is filed with the Bankruptcy Court.

(ii)     Simultaneously with the filing of the Annual Report, the Trustee shall cause to be prepared and filed with the Bankruptcy Court a report containing a summary regarding the number and type of claims disposed of during the period covered by the financial statements.   The Trustee shall provide a copy of such report to the CAC and the FCR when such report is filed.

(iii)     All materials required to be filed with the Bankruptcy Court by this Section 2.2(c) shall be available for inspection by the public in accordance with procedures established by the Bankruptcy Court.

(d)     The Trustee shall cause to be prepared as soon as practicable prior to the commencement of each fiscal year a budget and cash flow projections covering such fiscal year and the succeeding four fiscal years.   The budget and cash flow projections shall include a

determination of the Maximum Annual Payment pursuant to Section 2.3 of the CRP, and the

Claims Payment Ratio pursuant to Section 2.4 of the CRP.  The Trustee shall provide a copy of

the budget and cash flow projections to the CAC and the FCR.

(e)    The Trustee shall consult with the CAC and the FCR (i) on the general

implementation and administration of the Settlement Facility; (ii) on the general implementation

and administration of the CRP; and (iii) on such other matters as may be required under this

Settlement Facility Agreement and the CRP.

(f)    The Trustee shall be required to obtain the consent of both the CAC and

the FCR pursuant to the Consent Process set forth in Section 5.7(b) and 6.6(b) below, in addition

to any other instances elsewhere enumerated in the CRP or elsewhere, in order:

(i)    to increase the Maximum Annual Payment or the Maximum

Settlement Values described in Section 2.3 of the CRP;

(ii)    to change the Claims Payment Ratio described in Section 2.4 of the

CRP in the event that the requirements for such a change as set forth in said provision have been

met;

(iii)    to terminate the Settlement Facility pursuant to Section 7.2 below;

(iv)    to amend the filing fees described in Section 8.2 of the CRP;

(v)    to increase the Medical Information Factors set forth in

Appendix I (I.B.1) to the CRP;

(vi)    to establish an Extraordinary Claims Panel pursuant to Appendix II

to the CRP;

(vii)     to change the form of release to be provided pursuant to Appendix III to the CRP (furthermore, the Trustee shall be required to obtain the consent of the Reorganized Debtors to change the form of release);

(viii)    to settle the liability of any insurer under any insurance policy or legal action related thereto;

(ix)     to change the compensation of the FCR, the Delaware Trustee or the Trustee, other than to reflect cost-of-living increases or changes approved by the Bankruptcy Court as otherwise provided herein;

(x)     to take actions to minimize any tax on the Asbestos Trust Assets; provided that no such action prevents the Settlement Facility from qualifying as a qualified settlement fund within the meaning of the QSF Regulations or requires an election for the Settlement Facility to be treated as a grantor trust for tax purposes;

(ix)     to adopt the Settlement Facility Bylaws in accordance with Section 2.2(a) above or thereafter to amend the Settlement Facility Bylaws in accordance with the terms thereof;

(x)     to amend any provision of this Settlement Facility Agreement or the CRP, or any appendices thereto, in accordance with the terms thereof; provided, however that the Trustee is not required to obtain the consent of the CAC and the FCR except where required by the CRP;

(xi)     to vote any equity interest in, or take any action as an equity holder of, a Reorganized Debtor;

(xii)    to acquire an interest in or to merge any claims resolution organization formed by the Settlement Facility with another claims resolution organization that is

- 12 -

not specifically created by this Settlement Facility Agreement or the CRP, or to contract with

another claims resolution organization or other entity that is not specifically created by this

Settlement Facility Agreement or the CRP, or permit any other party to join in any claims

resolution organization that is formed by the Settlement Facility pursuant to the Settlement

Facility Agreement or the CRP; provided that such merger, acquisition, contract or joinder shall

not (a) subject the Reorganized Debtors or any Asbestos Protected Party, or any successors in

interest thereto, to any risk of having any Claim asserted against it or them, or (b) otherwise

jeopardize the validity or enforceability of the Asbestos Channeling Injunction or any other

injunction or release issued or granted in favor of any (or all) of the Asbestos Protected Parties in

connection with the Plans; and provided further that the terms of such merger will require the

surviving organization to make decisions about the allowability and value of claims in

accordance with Section 2.3 of the CRP which requires that such decisions be based on the

provisions of the CRP;

        (xiii)   to settle any Third Party Causes of Action or legal action related

thereto; or

        (xiv)   to nominate his or her successor pursuant to Section 4.3(a) below.

        (f)     The Trustee shall meet either in person or telephonically with the CAC

and the FCR no less often than quarterly.  The Trustee shall meet either in person or

telephonically in the interim with the CAC and the FCR when so requested by either.

        (g)     The Trustee, upon notice from either the CAC or the FCR, if practicable in

view of pending business, shall at his or her next meeting with the CAC or the FCR consider

issues submitted by the CAC or the FCR.

- 13 -

**2.3**    **Claims Administration.**  The Trustee shall promptly proceed to implement the CRP.  The CAC and the FCR shall not cause or advise the Settlement Facility, the Trustee, the Delaware Trustee, or any of their successors to (i) take any action that is contrary to the CRP or the Settlement Facility Agreement, or (ii) refrain from taking any action that is required to comply with the CRP or the Settlement Facility Agreement.

## SECTION III

## ACCOUNTS, INVESTMENTS, AND PAYMENTS

**3.1**    **Accounts.**

(a)    The Trustee may, from time to time, create such accounts and reserves within the Settlement Facility estate as he or she may deem necessary, prudent, or useful in order to provide for the payment of expenses and payment of Claims and may, with respect to any such account or reserve, restrict the use of monies therein.

(b)    The Trustee shall include a reasonably detailed description of the creation of any account or reserve in accordance with this Section 3.1 and, with respect to any such account, the transfers made to such account, the proceeds of or earnings on the assets held in each such account and the payments from each such account in the accounts to be filed with the Bankruptcy Court and provided to the CAC and the FCR pursuant to Section 2.2(c)(i) above.

**3.2**    **Investments.**  Investment of monies held in the Settlement Facility shall be administered in the manner consistent with the standards set forth in the Uniform Prudent Investor Act, subject to the following limitations and provisions:

(a)    The Settlement Facility may invest in equity securities only through diversified equity portfolios whose benchmark is a broad equity market index such as, but not limited to, the S&P 500 Index, Russell 1000 Index, S&P ADR Index or MSCI EAFE Index.  The

- 14 -

Settlement Facility shall not acquire, directly or indirectly, equity in any entity (other than Reorganized GST or Reorganized Garrison or any successor thereto) or business enterprise if, immediately following such acquisition, the Settlement Facility would hold more than 5% of the equity in such entity or business enterprise.  The Settlement Facility shall not hold, directly or indirectly, more than 5% of the equity in any entity or business enterprise, excluding a Reorganized GST or Reorganized Garrison or any successor thereto.

(b)    The Settlement Facility shall not acquire or hold any long-term debt securities unless (i) such securities are Asbestos Trust Assets under the Plan, (ii) such securities are rated "Baa" or higher by Moody's, "BBB" or higher by Standard & Poor's ("**S&P's**"), or have been given an equivalent investment grade rating by another nationally recognized statistical rating agency, or (iii) such securities have been issued or fully guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof. This restriction does not apply to any pooled investment vehicles where pooled assets receive an investment grade rating by a nationally recognized rating agency.

(c)    The Settlement Facility shall not acquire or hold for longer than ninety (90) days any commercial paper unless such commercial paper is rated "Prime-1" or higher by Moody's or "A-1" or higher by S&P's, or has been given an equivalent rating by another nationally recognized statistical rating agency.

(d)    The Settlement Facility shall not acquire any debt securities or other debt instruments issued by any entity if, following such acquisition, the aggregate market value of all such debt securities and/or other debt instruments issued by such entity held by the Settlement Facility would exceed 5% of the then current aggregate value of the Settlement Facility's assets. There is no limitation on holding debt securities or other debt instruments issued or fully

- 15 -

guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof.

(e)     The Settlement Facility shall not acquire or hold any certificates of deposit unless all publicly held, long-term debt securities, if any, of the financial institution issuing the certificate of deposit and the holding company, if any, of which such financial institution is a subsidiary, meet the standards set forth in Section 3.2(b) above.

(f)     The Settlement Facility shall not acquire or hold any repurchase obligations unless, in the opinion of the Trustee, they are adequately collateralized.

(g)     The Settlement Facility may allow its investment managers to acquire or hold derivative instruments prudently, including, without limitation, options, futures and swaps in the normal course of portfolio management.  Specifically, the Settlement Facility may acquire or hold derivatives to help manage or mitigate portfolio risk, including, without limitation, interest rate risk and equity market risk.  Using derivative instruments to leverage a portfolio to enhance returns (at a much greater risk to the portfolio) is prohibited.

(h)     The Settlement Facility may lend securities on a short-term basis, subject to adequate, normal and customary collateral arrangements, and all applicable federal and state regulations governing securities lending practices.

(i)     Notwithstanding (a) above, the Settlement Facility may acquire and hold an equity interest in a claims resolution organization without limitation as to the size of the equity interest acquired and held if prior to such acquisition, the Settlement Facility complies with the provisions of Section 2.2(f)(xiv) hereof with respect to the acquisition.

- 16 -

**3.3**     **Source of Payments.**

(a)     All Settlement Facility expenses and payments and all liabilities with respect to Claims shall be payable solely by the Trustee out of the Asbestos Trust Assets. Neither the Debtors or the Reorganized Debtors, their subsidiaries, any successor in interest, the present or former directors, officers, employees or agents of the Debtors or the Reorganized Debtors, the Asbestos Protected Parties, nor the Trustee, the CAC or the FCR, or any of their officers, agents, advisors, or employees, shall be liable for the payment of any Settlement Facility expense or any other liability of the Settlement Facility, except to the extent provided in the Plan or Plan Documents.

(b)     The Trustee shall include a reasonably detailed description of any payments made in accordance with this Section 3.3 in the Annual Report.

## SECTION IV

## TRUSTEE; DELAWARE TRUSTEE

**4.1**     **Number.**  In addition to the Delaware Trustee appointed pursuant to Section 4.11, there shall be one (1) Trustee who shall initially be the person named on the signature page hereof.

**4.2**     **Term of Service.**

(a)     Subject to the other provisions of this Section IV, the initial Trustee shall serve from the Effective Date until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 4.2(b) below, (iii) his or her removal pursuant to Section 4.2(c) below, or (iv) the termination of the Settlement Facility pursuant to Section 7.2 below.

Modified Joint Plan - Ex. A

(b)      The Trustee may resign at any time by written notice to the CAC and the FCR.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)      Following consultation and discussion between the CAC and the FCR, the Trustee may be removed at the recommendation of the CAC and/or the FCR with the approval of the Bankruptcy Court in the event that he or she becomes unable to discharge his or her duties hereunder due to accident or physical or mental deterioration or for other good cause.  Good cause shall be deemed to include, without limitation, any substantial failure to comply with the general administration provisions of Section 2.2 above, a consistent pattern of neglect and failure to perform or participate in performing the duties of the Trustee hereunder, or repeated non-attendance at scheduled meetings.  Such removal shall require the approval of the Bankruptcy Court and shall take effect at such time as the Bankruptcy Court shall determine.

**4.3**      **Appointment of Successor Trustee.**

(a)      Within six months of taking office, the Trustee shall nominate his or her successor, subject to the consent of both the CAC and the FCR.

(b)      After this initial nomination, the Trustee may change his or her designated successor at any time, subject to the consent of both the CAC and the FCR.

(c)      A vacancy caused by death or resignation of the Trustee shall be filled with the individual nominated prior to the effective date of the resignation or death by the resigning or deceased Trustee provided the CAC and the FCR have consented (or do at that time consent) to such successor's nomination.  A vacancy caused by either (i) the removal of the Trustee or (ii) the resignation or death of the Trustee if the resigning or deceased Trustee did not designate a successor (or if the CAC and FCR did not consent to such successor designee) shall

- 18 -

be filled with an individual selected and agreed to by the CAC and the FCR; provided, however, that if the CAC and the FCR cannot agree on the successor Trustee, the Bankruptcy Court shall make the appointment.

(d)    Immediately upon the appointment of any successor Trustee, all rights, titles, duties, powers and authority of the predecessor Trustee hereunder shall be vested in, and undertaken by, the successor Trustee without any further act.  No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee.

(e)    Each successor Trustee shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 4.2(b) above, (iii) his or her removal pursuant to Section 4.2(c) above, or (iv) the termination of the Settlement Facility pursuant to Section 7.2 below.

**4.4    Liability of Trustee, Members of the CAC and the FCR.**  The Trustee, the members of the CAC and the FCR shall not be liable to the Settlement Facility, to any individual holding an asbestos claim, or to any other person, except for such individual's own breach of trust committed in bad faith or willful misconduct.

**4.5    Compensation and Expenses of Trustee.**

(a)    The Trustee shall receive a retainer from the Settlement Facility for his or her service as a Trustee in the amount of $[TBD] per annum, which amount shall be payable in quarterly installments.  In addition, for all time expended attending Settlement Facility meetings, preparing for such meetings, and working on authorized special projects, the Trustee shall receive the sum of $[TBD] per hour, and the sum of $[TBD] per hour for non-working travel time, in both cases computed on a quarter-hour basis.  The Trustee shall record all hourly time to be charged to the Settlement Facility on a daily basis.  The compensation payable to the Trustee

- 19 -

hereunder shall be reviewed every year by the Trustee and, after consultation with the members

of the CAC and the FCR, appropriately adjusted for yearly inflation based on the *Consumer*

*Price Index for Urban Wage Earners and Clerical Workers* published by the United States

Department of Labor, Bureau of Labor Statistics. Any other changes in compensation of the

Trustees shall be made subject to the approval of the Bankruptcy Court.  The Delaware Trustee

shall be paid such compensation as is agreed to pursuant to a separate fee agreement.

(b)     The Settlement Facility will promptly reimburse the Trustee and the

Delaware Trustee for all reasonable out-of-pocket costs and expenses incurred by the Trustee or

the Delaware Trustee in connection with the performance of their duties hereunder.

**(c)**     The Settlement Facility shall include a description of the amounts paid

under this Section 4.5 in the Annual Report.

**4.6     Indemnification.**

(a)     The Settlement Facility shall indemnify and defend the Trustee, the

members of the CAC, the FCR and the FCR's counsel in the performance of their duties

hereunder to the fullest extent that a statutory trust organized under the laws of the State of

Delaware is entitled to indemnify and defend such persons against any and all liabilities,

expenses, claims, damages or losses incurred by them in the performance of their duties

hereunder or in connection with activities undertaken by them prior to the Effective Date in

connection with the formation, establishment or funding of the Settlement Facility.   The

Settlement Facility may indemnify any of the other Additional Indemnitees in the performance

of their duties hereunder to the fullest extent that a statutory trust organized under the laws of the

State of Delaware is from time to time entitled to indemnify and defend such persons against any

and all liabilities, expenses, claims, damages, or losses incurred by them in the performance of

their duties hereunder or in connection with activities undertaken by them prior to the Effective

Date in connection with the formation, establishment or funding of the Settlement Facility.

Notwithstanding the foregoing, but subject to Subsections (b) and (c) of this Section 4.6, no

individual shall be indemnified or defended in any way for any liability, expense, claim, damage,

or loss for which he or she is ultimately liable under Section 4.4 above.

(b)   Reasonable expenses, costs and fees (including attorneys' fees and costs)

incurred by or on behalf of the Trustee, a member of the CAC, the FCR or an Additional

Indemnitee in connection with any action, suit, or proceeding, whether civil, administrative or

arbitrative, from which they are indemnified by the Settlement Facility pursuant to Section 4.6(a)

above, shall be paid by the Settlement Facility in advance of the final disposition thereof upon

receipt of an undertaking, by or on behalf of the Trustee, the members of the CAC, the FCR or

Additional Indemnitee, to repay such amount in the event that it shall be determined ultimately

by final order that such Trustee, member of the CAC, FCR or Additional Indemnitee is not

entitled to be indemnified by the Settlement Facility.

(c)   The Trustee may purchase and maintain reasonable amounts and types of

insurance on behalf of an individual who is or was the Trustee, member of the CAC, the FCR or

Additional Indemnitee, including against liability asserted against or incurred by such individual

in that capacity or arising from his or her status as the Trustee, member of the CAC, the FCR, an

officer or an employee of the Settlement Facility, or an advisor, consultant or agent of the

Settlement Facility, the CAC or the FCR.

(d)   On the Effective Date, the Settlement Facility shall assume the Debtors'

indemnification obligations to the Indemnified Parties identified in paragraph 5 of the

Bankruptcy Court's Order Granting Debtors' Motion for Appointment of Joseph W. Grier, III as

Future Asbestos Claimants' Representative (Docket No. 512), entered September 16, 2010, and upon such assumption the Debtors will be released of such obligations.

4.7    **Lien.**    The Trustee, members of the CAC, the FCR and Additional Indemnitees shall have a first priority lien upon the Asbestos Trust Assets to secure the payment of any amounts payable to them pursuant to Section 4.6 above.

4.8    **Trustee's Employment of Experts; Delaware Trustee's Employment of Counsel.**

(a)    The Trustee may, but shall not be required to, retain and/or consult with counsel, accountants, appraisers, auditors, forecasters, experts, financial and investment advisors and such other parties deemed by the Trustee to be qualified as experts on the matters submitted to the Trustee (the "**Settlement Facility Professionals**"), and in the absence of gross negligence, the written opinion of or information provided by any such party deemed by the Trustee to be an expert on the particular matter submitted to such party shall be full and complete authorization and protection in respect of any action taken or not taken by the Trustee hereunder in good faith and in accordance with the written opinion of or information provided by any such party.

(b)    The Delaware Trustee shall be permitted to retain counsel only in such circumstances as are required in the exercise of its duties hereunder, and its compliance with the advice of such counsel shall be full and complete authorization and protection for actions taken or not taken by the Delaware Trustee in good faith in compliance with such advice.

4.9    **Trustee's Independence.**    The Trustee shall not, during the term of his or her service, hold a financial interest in, act as attorney or agent for, or serve as any other professional for a Reorganized Debtor.  Notwithstanding the foregoing, with the consent of the CAC and the FCR, the Trustee may serve, without any additional compensation other than the per diem

- 22 -

compensation to be paid by the Settlement Facility pursuant to Section 4.5(a) above, as a director or manager of a Reorganized Debtor and/or its subsidiaries.  The Trustee shall not act as an attorney for any person who holds an asbestos claim.  For the avoidance of doubt, this Section shall not be applicable to the Delaware Trustee.

       **4.10**   **Bond.**   The Trustee and the Delaware Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

       **4.11**   **Delaware Trustee.**

       (a)   There shall at all times be a Delaware Trustee.  The Delaware Trustee shall either be (i) a natural person who is at least 21 years of age and a resident of the State of Delaware or (ii) a legal entity that has its principal place of business in the State of Delaware, which otherwise meets the requirements of applicable Delaware law and shall act through one or more persons authorized to bind such entity.  If at any time the Delaware Trustee shall cease to be eligible in accordance with the provisions of this Section 4.11, it shall resign immediately in the manner and with the effect hereinafter specified in Section 4.11(c) below.  For the avoidance of doubt, the Delaware Trustee will only have such rights and obligations as are expressly provided by reference to the Delaware Trustee hereunder.

       (b)   The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities, of the Trustee set forth herein.  The Delaware Trustee shall be one of the trustees of the Settlement Facility for the sole and limited purpose of fulfilling the requirements of Section 3807 of the Act and for taking such actions as are required to be taken by a Delaware Trustee under the Act.  The duties (including fiduciary duties), liabilities and obligations of the Delaware Trustee shall be limited to (i) accepting legal process served on the Settlement Facility in the State of Delaware and (ii)

- 23 -

executing of any certificates required to be filed with the Secretary of State of the State of Delaware that the Delaware Trustee is required to execute under Section 3811 of the Act. There shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee.

(c)    The Delaware Trustee shall serve until such time as the Trustee removes the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is appointed by the Trustee in accordance with the terms of Section 4.11(d) below. The Delaware Trustee may resign at any time upon the giving of at least sixty (60) days advance written notice to the Trustee; provided, that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Trustee in accordance with Section 4.11(d) below. If the Trustee does not act within such 60-day period, the Delaware Trustee may apply to the Court of Chancery of the State of Delaware for the appointment of a successor Delaware Trustee.

(d)    Upon the resignation or removal of the Delaware Trustee, the Trustee shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee. Any successor Delaware Trustee must satisfy the requirements of Section 3807 of the Act. Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Trustee and any fees and expenses due to the outgoing Delaware Trustee are paid. Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties and obligations of the outgoing Delaware Trustee under this Settlement Facility Agreement, with like effect as if originally named as Delaware

- 24 -

Trustee, and the outgoing Delaware Trustee shall be discharged of its duties and obligations under this Settlement Facility Agreement.

**4.12** **Medicare Obligations.**

(a)     It is the position of the parties to this Settlement Facility Agreement that the Asbestos Protected Parties will have no reporting obligations in respect of their contributions to the Settlement Facility, or in respect of any payments, settlements, resolutions, awards, or other claim liquidations by the Settlement Facility, under the reporting provisions of 42 U.S.C. §1395y *et seq.* or any other similar statute or regulation, and any related rules, regulations, or guidance issued in connection therewith or relating thereto ("**MSPA**"), including Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (P. L. 110-173), or any other similar statute or regulation, and any related rules, regulations, or guidance issued in connection therewith or relating thereto ("**MMSEA**").   Unless and until there is definitive regulatory, legislative, or judicial authority (as embodied in a final non-appealable decision from the United States Court of Appeals for the Fourth Circuit or the United States Supreme Court), or a letter from the Secretary of Health and Human Services confirming that the Asbestos Protected Parties have no reporting obligations under MMSEA with respect to any settlements, payments, or other awards made by the Settlement Facility or with respect to contributions the Asbestos Protected Parties have made or will make to the Settlement Facility, the Settlement Facility shall, at its sole expense, in connection with the implementation of the Plan, act as a reporting agent for the Asbestos Protected Parties, and shall timely submit all reports that would be required to be made by any of the Asbestos Protected Parties under MMSEA on account of any claims settled, resolved, paid, or otherwise liquidated by the Settlement Facility or with respect to contributions to the Settlement Facility, including, but not limited to, reports that would be required if the

Asbestos Protected Parties were otherwise found to have MMSEA reporting requirements.  The

Settlement Facility, in its role as reporting agent for the Asbestos Protected Parties, shall follow

all applicable guidance published by the Centers for Medicare & Medicaid Services of the

United States Department of Health and Human Services and/or any other agent or successor

entity charged with responsibility for monitoring, assessing, or receiving reports made under

MMSEA (collectively, "**CMS**") to determine whether or not, and, if so, how, to report to CMS

pursuant to MMSEA.

(b)	As long as the Settlement Facility is required to act as a reporting agent for

any Asbestos Protected Party pursuant to the provisions of Section 4.12(a) above, the Settlement

Facility shall within ten (10) business days following the end of each calendar quarter, provide a

written certification to the party designated in writing by each Asbestos Protected Party for

which the Settlement Facility is required to act as reporting agent, confirming that all reports to

CMS required by Section 4.12(a) above have been submitted in a timely fashion, and identifying

(i) any reports that were rejected or otherwise identified as noncompliant by CMS, along with the

basis for such rejection or noncompliance, and (ii) any payments to Medicare benefits recipients

or Medicare-eligible beneficiaries that the Settlement Facility did not report to CMS.

(c)	With respect to any reports rejected or otherwise identified as

noncompliant by CMS, the Settlement Facility shall, upon request by an Asbestos Protected

Party for which the Settlement Facility is required to act as reporting agent, promptly provide

copies of the original reports submitted to CMS, as well as any response received from CMS

with respect to such reports; *provided, however*, that the Settlement Facility may redact from

such copies the names, Social Security numbers other than the last four digits, health insurance

claim numbers, taxpayer identification numbers, employer identification numbers, mailing

addresses, telephone numbers, and dates of birth of the injured parties, claimants, guardians, conservators and/or other personal representatives, as applicable.  With respect to any such reports, the Settlement Facility shall reasonably undertake to remedy any issues of noncompliance identified by CMS and resubmit such reports to CMS, and, upon request by an Asbestos Protected Party, provide such Asbestos Protected Party with copies of such resubmissions; *provided, however*, that the Settlement Facility may redact from such copies the names, Social Security numbers other than the last four digits, health insurance claim numbers, taxpayer identification numbers, employer identification numbers, mailing addresses, telephone numbers, and dates of birth of the injured parties, claimants, guardians, conservators and/or other personal representatives, as applicable.  In the event the Settlement Facility is unable to remedy any issues of noncompliance, the provisions of Section 4.12(g) below shall apply.

(d)    As long as the Settlement Facility is required to act as a reporting agent for an Asbestos Protected Party pursuant to Section 4.12(a) above, with respect to each claim of a Medicare benefits recipient or Medicare-eligible beneficiary that was paid by the Settlement Facility and not reported to CMS, the Settlement Facility shall, upon request by such Asbestos Protected Party, promptly provide the claimant's name, last four digits of the claimant's Social Security number, the year of the claimant's birth, the claimants' asbestos-related disease, and any other information that may be necessary in the reasonable judgment of such Asbestos Protected Party to satisfy its obligations, if any, under MMSEA, as well as the basis for the Settlement Facility's failure to report the payment.  In the event the Asbestos Protected Party informs the Settlement Facility that it disagrees with the Settlement Facility's decision not to report a claim paid by the Settlement Facility, the Settlement Facility shall promptly report the payment to CMS.  All documentation relied upon by the Settlement Facility in making a determination that a

payment did not have to be reported to CMS shall be maintained for a minimum of six years following such determination. The Asbestos Protected Parties shall keep any information and documents received from the Settlement Facility pursuant to this Section 4.12(d) confidential and shall not use such information for any purpose other than meeting obligations under MSPA and/or MMSEA.

(e)    As long as the Settlement Facility is required to act as a reporting agent for any Asbestos Protected Party pursuant to Section 4.12(a) above, the Settlement Facility shall make the reports and provide the certifications required by Section 4.12(a) and (b) above until such time as the Asbestos Protected Party shall determine, in its reasonable judgment, that it has no further legal obligation under MMSEA or otherwise to report any settlements, resolutions, payments, or liquidation determinations made by the Settlement Facility or contributions to the Settlement Facility. Furthermore, following any permitted cessation of reporting, or if reporting has not previously commenced due to the satisfaction of one or more of the conditions set forth in Section 4.12(a) above, and if the Asbestos Protected Party reasonably determines, based on subsequent legislative, administrative, regulatory, or judicial developments, that reporting is required, then the Settlement Facility shall promptly perform its obligations under Section 4.12(a) and (b) above.

(f)    Section 4.12(a) above is intended to be purely prophylactic in nature, and does not imply, and shall not constitute an admission, that any Asbestos Protected Party is, in fact, an "applicable plan" within the meaning of MMSEA, or that any Asbestos Protected Party has a legal obligation to report any actions undertaken by the Settlement Facility or contributions to the Settlement Facility under MMSEA or any other statute or regulation.

- 28 -

(g)      In the event that CMS concludes that reporting done by the Settlement Facility in accordance with Section 4.12(a) above is or may be deficient in any way, and has not been corrected to the satisfaction of CMS in a timely manner, or if CMS communicates to the Settlement Facility or any of the Asbestos Protected Parties a concern with respect to the sufficiency or timeliness of such reporting, or there appears to an Asbestos Protected Party a reasonable basis for a concern with respect to the sufficiency or timeliness of such reporting or non-reporting based upon the information received pursuant to Section 4.12(b), (c) or (d) above, or other credible information, then each Asbestos Protected Party shall have the right to submit its own reports to CMS under MMSEA, and the Settlement Facility shall provide in a timely manner to any Asbestos Protected Party that elects to file its own reports such information as the electing Asbestos Protected Party may require in order to comply with MMSEA, including, without limitation, the full reports filed by the Settlement Facility pursuant to Section 4.12(a) above without any redactions.  Such Asbestos Protected Party shall keep any information it receives from the Settlement Facility pursuant to this Section 4.12(g) confidential and shall not use such information for any purpose other than meeting obligations under MSPA and/or MMSEA.

(h)      Notwithstanding any other provision hereof, if the Settlement Facility is required to act as a reporting agent for any of the Asbestos Protected Parties pursuant to the provisions contained herein, then such Asbestos Protected Parties shall take all steps necessary and appropriate as required by CMS to permit any reports contemplated by this Section 4.12 to be filed.  Furthermore, until an Asbestos Protected Party provides the Settlement Facility with any necessary information regarding that Asbestos Protected Party's identifying information that may be required by CMS's Coordination of Benefits Contractor to effectuate reporting, the

- 29 -

Settlement Facility shall have no obligation to report under Section 4.12(a) above with respect to any such entity that has not provided such information and the Settlement Facility shall have no indemnification obligation under Subsection (j) of this Section 4.12 to such Asbestos Protected Party for any penalty, interest, or sanction that may arise solely on account of the Asbestos Protected Party's failure to timely provide such information to the Settlement Facility in response to a timely request by the Settlement Facility for such information.

(i)      The Trustee shall obtain prior to remittance of funds to claimants' counsel or to the claimant, if pro se, in respect of any Claim a certification from the claimant to be paid that said claimant has or will provide for the payment and/or resolution of any obligations owing or potentially owing under MSPA in connection with, or relating to, such Claim which certification shall acknowledge that the Asbestos Protected Parties also are beneficiaries of such certification.  The Settlement Facility shall provide a quarterly certification of its compliance with the terms of the immediately preceding sentence to the party designated in writing by each Asbestos Protected Party for which the Settlement Facility is required to act as reporting agent, and shall permit reasonable audits by such Asbestos Protected Parties, no more often than quarterly, to confirm the Settlement Facility's compliance with this Section 4.12(i) during which Asbestos Protected Party may request copies of claimant certifications.  For the avoidance of doubt, the Settlement Facility shall be obligated to comply with the requirements of this Section 4.12(i) regardless of whether an Asbestos Protected Party elects to file its own reports under MMSEA pursuant to Section 4.12(g) above.  The Asbestos Protected Parties shall keep any information and documents received from the Settlement Facility pursuant to this Section 4.12(i) confidential and shall not use such information for any purpose other than meeting obligations under MSPA and/or MMSEA.

(j)    Except as expressly provided elsewhere in this Settlement Facility Agreement, the Settlement Facility shall defend, indemnify, and hold harmless an Asbestos Protected Party with respect to any Claim against such Asbestos Protected Party in respect of Medicare claims reporting and payment obligations in connection with Claims, including any obligations owing or potentially owing under MMSEA or MSPA in connection therewith, or relating thereto and any penalty, interest, or sanction.  The foregoing indemnification obligation of the Settlement Facility is a direct obligation of the Settlement Facility and is not subject to application of any payment percentage or other reduction.

## SECTION V

## CLAIMANT ADVISORY COMMITTEE

**5.1**    **Members.**  The CAC shall consist of nine (9) members, who shall initially be the persons named on the signature page hereof.

**5.2**    **Duties.**  The members of the CAC shall serve in a fiduciary capacity representing all holders of present Claims.  The Trustee must consult with the CAC on matters identified in Section 2.2(e) above and in other provisions herein, and must obtain the consent of the CAC on matters identified in Section 2.2(f) above.  Where provided in the CRP, certain other actions by the Trustee are also subject to the consent of the CAC.

**5.3**    **Term of Office.**

(a)    The initial members of the CAC appointed in accordance with Section 5.1 above shall serve staggered terms of three (3), four (4), or five (5) years shown on the signature pages hereof.  Thereafter, each term of office shall be five (5) years.  Each member of the CAC shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 5.3(b) below, (iii) his or her removal pursuant to Section 5.3(c) below, (iv) the end of his or her

- 31 -

term as provided above, or (v) the termination of the Settlement Facility pursuant to Section 7.2 below.

(b)     A member of the CAC may resign at any time by written notice to the other members of the CAC, the Trustee and the FCR.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)     A member of the CAC may be removed only by the Bankruptcy Court and only in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or engages in a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member hereunder, such as repeated non-attendance at scheduled meetings, or for other good cause. Such removal shall be made at the recommendation of the remaining members of the CAC with the approval of the Bankruptcy Court.

### 5.4    **Appointment of Successor.**

(a)     If, prior to the termination of service of a member of the CAC other than as a result of removal, he or she has designated in writing an individual to succeed him or her as a member of the CAC, such individual shall be his or her successor.  Prior to the expiration of a term, a member of the CAC may reappoint himself or herself as a successor. If such member of the CAC did not reappoint himself or herself or designate an individual to succeed him or her prior to the termination of his or her service as contemplated above, such member's law firm may designate his or her successor.  If (i) a member of the CAC did not reappoint himself or herself or designate an individual to succeed him or her prior to the termination of his or her service and such member's law firm does not designate his or her successor as contemplated

above or (ii) he or she is removed pursuant to Section 5.3(c) above, his or her successor shall be appointed by a majority of the remaining members of the CAC or, if such members cannot agree on a successor, the Bankruptcy Court.    Nothing in this Agreement shall prevent the reappointment of an individual serving as a member of the CAC for an additional term or terms, and there shall be no limit on the number of terms that a CAC member may serve.

(b)    Each successor CAC member shall serve until the earlier of (i) the end of the full term of five (5) years for which he or she was appointed if his or her immediate predecessor member of the CAC completed his or her term, (ii) the end of the term of the member of the CAC whom he or she replaced if his or her predecessor member did not complete such term, (iii) his or her death, (iv) his or her resignation pursuant to Section 5.3(b) above, (v) his or her removal pursuant to Section 5.3(c) above, or (vi) the termination of the Settlement Facility pursuant to Section 7.2 below.

**5.5**    **CAC's Employment of Professionals.**

(a)    The CAC may but is not required to retain and/or consult counsel, accountants, appraisers, auditors, forecasters, experts, and financial and investment advisors, and such other parties deemed by the CAC to be qualified as experts on matters submitted to the CAC (the "**CAC Professionals**").  The CAC and the CAC Professionals shall at all times have complete access to the Settlement Facility's officers, employees and agents, as well as to the Settlement Facility Professionals, and shall also have complete access to all non-privileged information generated by them or otherwise available to the Settlement Facility or the Trustee provided that the provision of any information by the Settlement Facility Professionals to the CAC or the CAC Professionals shall not constitute a waiver of any applicable privilege, and that the information provided to the CAC members shall not provide them an unfair advantage in

- 33 -

filing Claims compared to other claimants' counsel. In the absence of gross negligence, the written opinion of or information provided by any CAC Professional or Settlement Facility Professional deemed by the CAC to be qualified as an expert on the particular matter submitted to the CAC shall be full and complete authorization and protection in support of any action taken or not taken by the CAC in good faith and in accordance with the written opinion of or information provided by the CAC Professional or Settlement Facility Professional.

(b)     The Settlement Facility shall promptly reimburse the CAC for, or pay directly if so instructed, all reasonable fees and costs associated with the CAC's employment of legal counsel and, if the CAC deems necessary, a claims forecasting expert, pursuant to Section 5(a) hereof in connection with the CAC's performance of its duties hereunder.

(c)     The Settlement Facility shall promptly reimburse the CAC for, or pay directly if so instructed, all reasonable fees and costs associated with the CAC's employment of any other CAC Professional pursuant to Section 5(a) hereof in connection with the CAC's performance of its duties hereunder; *provided, however*, that (i) the CAC has first submitted to the Settlement Facility a written request for such reimbursement setting forth the reasons (A) why the CAC desires to employ such CAC Professional, and (B) why the CAC cannot rely on Settlement Facility Professionals to meet the need of the CAC for such expertise or advice, and (ii) the Settlement Facility has approved the CAC's request for reimbursement in writing.  If the Settlement Facility agrees to pay for the CAC Professional, such reimbursement shall be treated as a Settlement Facility expense.  If the Settlement Facility declines to pay for the CAC Professional, it must set forth its reasons for so doing in writing.  If the CAC still desires to employ the CAC Professional at the Settlement Facility's expense, the CAC and/or the Trustee shall resolve their dispute pursuant to Section 7.13 below.

**5.6**    **Compensation and Expenses of the CAC.**

The members of the CAC shall receive no compensation from the Settlement Facility for their services as CAC members. The Settlement Facility shall promptly reimburse the members of the CAC for, or pay directly if so instructed, all reasonable out-of-pocket costs and expenses incurred in connection with the performance of their duties hereunder. Such reimbursement or direct payment shall be deemed a Settlement Facility expense. The Settlement Facility shall include a description of the amounts paid under this Section 5.6 in the Annual Report to be filed with the Bankruptcy Court and provided to the FCR and the CAC pursuant to Section 2.2(c)(i).

**5.7**    **Procedures for Consultation with and Obtaining the Consent of the CAC.**

(a)    **Consultation Process.**

(i)    In the event the Trustee is required to consult with the CAC pursuant to Section 2.2(e) above or on other matters as provided herein, the Trustee shall provide the CAC with written advance notice of the matter under consideration, and with all relevant information concerning the matter as is reasonably practicable under the circumstances. The Trustee shall also provide the CAC with such reasonable access to the Settlement Facility Professionals and other experts retained by the Settlement Facility and its staff (if any) as the CAC may reasonably request during the time when the Trustee is considering such matter, and shall also provide the CAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Trustee.

(ii)    In determining when to take definitive action on any matter subject to the consultation procedures set forth in this Section 5.7(a), the Trustee shall take into consideration the time required for the CAC, if its members so wish, to engage and consult with its own independent advisor(s) as to such matter. In any event, the Trustee shall not take

- 35 -

definitive action on any such matter until at least thirty (30) days after providing the CAC with the initial written notice that such matter is under consideration by the Trustee, unless such time period is waived by the CAC.

(b)     **Consent Process.**

(i)     In the event the Trustee is required to obtain the consent of the CAC pursuant to Section 2.2(f) above, the Trustee shall provide the CAC with a written notice stating that its consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Trustee proposes to take, and explaining in detail the reasons why the Trustee desires to take such action.  The Trustee shall provide the CAC as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances.  The Trustee shall also provide the CAC with such access to the Settlement Facility Professionals and other experts retained by the Settlement Facility and its staff (if any) as the CAC may reasonably request during the time when the Trustee is considering such action, and shall also provide the CAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustee.

(ii)    The CAC must consider in good faith and in a timely fashion any request for its consent by the Trustee, and must in any event advise the Trustee in writing of its consent or its objection to the proposed action within thirty (30) days of receiving the original request for consent from the Trustee.  The CAC may not withhold its consent unreasonably.  If the CAC decides to withhold its consent, it must explain in detail its objections to the proposed action.  If the CAC does not advise the Trustee in writing of its consent or its objections to the action within thirty (30) days of receiving notice regarding such request, the CAC's consent to the proposed actions shall be deemed to have been affirmatively granted.

- 36 -

(iii)    If, after following the procedures specified in this Section 5.7(b), the CAC continues to object to the proposed action and to withhold its consent to the proposed action, the Trustee and the CAC shall resolve their dispute pursuant to Section 7.13.  However, the burden of proof with respect to the reasonableness of the CAC's objection and withholding of its consent shall be on the CAC.

(iv)    The procedures specified in this Section 5.7(b) shall apply to disputes regarding changes in the Maximum Annual Payment and the Maximum Settlement Values for which the consent of the CAC is required pursuant to Section 2.3 of the CRP.

## SECTION VI

## THE FUTURE CLAIMANTS' REPRESENTATIVE

**6.1    Duties.**  The initial FCR shall be the individual identified on the signature pages hereto.  He shall serve in a fiduciary capacity, representing the interests of the holders of future Claims for the purpose of protecting the rights of such persons.  The Trustee must consult with the FCR on matters identified in Section 2.2(e) above and on certain other matters provided herein, and must obtain the consent of the FCR on matters identified in Section 2.2(f) above. Where provided in the CRP, certain other actions by the Trustee are also subject to the consent of the FCR.

**6.2    Term of Office.**

(a)    The FCR shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 6.2(b) below, (iii) his or her removal pursuant to Section 6.2(c) below, or (iv) the termination of the Settlement Facility pursuant to Section 7.2 below.

(b)      The FCR may resign at any time by written notice to the Trustee.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)      The FCR may only be removed by the Bankruptcy Court, and only in the event he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or engages in a consistent pattern of neglect and failure to perform or to participate in performing the duties hereunder, such as repeated non-attendance at scheduled meetings, or for other good cause.

**6.3**      **Appointment of Successor.**   A vacancy caused by death or resignation shall be filled with an individual nominated by the resigning or deceased FCR prior to the effective date of the resignation or the death, and a vacancy caused by removal of the FCR shall be filled with an individual nominated by the Trustee in consultation with the CAC, subject, in each case, to the approval of the Bankruptcy Court.  With respect to a vacancy caused by death or resignation, if the resigning or deceased FCR did not nominate an individual to fill the vacancy prior to the effective date of the resignation or the date of death, the vacancy shall be filled with an individual nominated by the Trustee in consultation with the CAC, subject to the approval of the Bankruptcy Court.

**6.4**      **Future Claimants' Representative's Employment of Professionals.**

(a)      The FCR may, but is not required to, retain and/or consult counsel, accountants, appraisers, auditors, forecasters, experts, and financial and investment advisors, and such other parties deemed by the FCR to be qualified as experts on matters submitted to the FCR (the "**FCR Professionals**").  The FCR and the FCR Professionals shall at all times have complete access to the Settlement Facility's officers, employees and agents, as well as to the Settlement

Facility Professionals, and shall also have complete access to all non-privileged information generated by them or otherwise available to the Settlement Facility or the Trustee provided that any information provided by the Settlement Facility Professionals shall not constitute a waiver of any applicable privilege.  In the absence of gross negligence, the written opinion of or information provided by any FCR Professional or Settlement Facility Professional deemed by the FCR to be qualified as an expert on the particular matter submitted to the FCR shall be full and complete authorization and protection in support of any action taken, or not taken, by the FCR in good faith and in accordance with the written opinion of or information provided by the FCR Professional or Settlement Facility Professional.

(a)    The Settlement Facility shall promptly reimburse the FCR for, or pay directly if so instructed, all reasonable fees and costs associated with the FCR's employment of legal counsel and, if the FCR deems necessary, a claims forecasting expert, pursuant to Section 6(a) hereof in connection with the FCR's performance of his or her duties hereunder.

(b)    The Settlement Facility shall also promptly reimburse the FCR for, or pay directly if so instructed, all reasonable fees and costs associated with the FCR's employment of any other FCR Professionals pursuant to Section 6(a) hereof in connection with the FCR's performance of his or her duties hereunder; *provided, however*, that (i) the FCR has first submitted to the Settlement Facility a written request for such reimbursement setting forth the reasons (A) why the FCR desires to employ the FCR Professional, and (B) why the FCR cannot rely on Settlement Facility Professionals to meet the need of the FCR for such expertise or advice, and (ii) the Settlement Facility has approved the FCR's request for reimbursement in writing.  If the Settlement Facility agrees to pay for the FCR Professional, such reimbursement shall be treated as a Settlement Facility expense.  If the Settlement Facility declines to pay for the

- 39 -

FCR Professional, it must set forth its reasons in writing.  If the FCR still desires to employ the FCR Professional at the Settlement Facility's expense, the FCR and the Trustee shall resolve their dispute pursuant to Section 7.13 below.

   **6.5**  <u>**Compensation and Expenses of the Future Claimants' Representative.**</u> The FCR shall receive compensation from the Settlement Facility in the form of payment at the FCR's normal hourly rate for services performed.  The Settlement Facility shall promptly reimburse the FCR for  all reasonable out-of-pocket costs and expenses incurred by the FCR in connection with the performance of his or her duties hereunder.  Such reimbursement or direct payment shall be deemed a Settlement Facility expense.  The Settlement Facility shall include a description of the amounts paid under this Section 6.5 in the Annual Report to be filed with the Bankruptcy Court and provided to the FCR and the CAC pursuant to Section 2.2(c)(i).

   **6.6**  <u>**Procedures for Consultation with and Obtaining the Consent of the Future Claimants' Representative.**</u>

    (a)  <u>**Consultation Process.**</u>

      (i)  In the event the Trustee is required to consult with the FCR pursuant to Section 2.2(e) above or on any other matters specified herein, the Trustee shall provide the FCR with written advance notice of the matter under consideration, and with all relevant information concerning the matter as is reasonably practicable under the circumstances. The Trustee shall also provide the FCR with such access to the Settlement Facility Professionals and other experts retained by the Settlement Facility and its staff (if any) as the FCR may reasonably request during the time when the Trustee is considering such matter, and shall also provide the FCR the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Trustee.

- 40 -

(ii)     In determining when to take definitive action on any matter subject to the consultation process set forth in this Section 6.6(a), the Trustee shall take into consideration the time required for the FCR, if he or she so wishes, to engage and consult with his or her own independent advisor(s) as to such matter.  In any event, the Trustee shall not take definitive action on any such matter until at least thirty (30) days after providing the FCR with the initial written notice that such matter is under consideration by the Trustee, unless such period is waived by the FCR.

(b)     **Consent Process.**

(i)  In the event the Trustee is required to obtain the consent of the FCR pursuant to Section 2.2(f) above, the Trustee shall provide the FCR with a written notice stating that his or her consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Trustee proposes to take, and explaining in detail the reasons why the Trustee desires to take such action.  The Trustee shall provide the FCR as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances.  The Trustee shall also provide the FCR with such access to the Settlement Facility Professionals and other experts retained by the Settlement Facility and its staff (if any) as the FCR may reasonably request during the time when the Trustee is considering such action, and shall also provide the FCR the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustee.

(i)     The FCR must consider in good faith and in a timely fashion any request for his or her consent by the Trustee, and must in any event advise the Trustee in writing of his or her consent or objection to the proposed action within thirty (30) days of receiving the original request for consent from the Trustee.  The FCR may not withhold his or her consent

- 41 -

unreasonably.  If the FCR decides to withhold consent, he or she must explain in detail his or her objections to the proposed action.  If the FCR does not advise the Trustee in writing of his or her consent or objections to the proposed action within thirty (30) days of receiving the notice from the Trustee regarding such consent, the FCR's consent shall be deemed to have been affirmatively granted.

(c)     If, after following the procedures specified in this Section 6.6(b), the FCR continues to object to the proposed action and to withhold his or her consent to the proposed action, the Trustee and the FCR shall resolve their dispute pursuant to Section 7.13.  However, the burden of proof with respect to the reasonableness of the FCR's objection and withholding of his or her consent shall be on the FCR.

(d)     The procedures specified in this Section 6.6(b) shall apply to disputes regarding changes in the Maximum Annual Payment and the Maximum Settlement Values for which the consent of the FCR is required pursuant to Section 2.3 of the CRP.

## SECTION VII

## GENERAL PROVISIONS

**7.1     Irrevocability.**  To the fullest extent permitted by applicable law, the Settlement Facility is irrevocable.

**7.2     Term; Termination.**

(a)     The term for which the Settlement Facility is to exist shall commence on the date of the filing of the Certificate of Trust and shall terminate pursuant to the provisions of Section 7.2 below.

(b)     The Settlement Facility shall automatically dissolve on the date (the "**Dissolution Date**") ninety (90) days after the first to occur of the following events:

- 42 -

(i)      the date on which the Trustee decides to dissolve the Settlement

Facility because (A) he or she deems it unlikely that new asbestos claims will be filed against the

Settlement Facility, (B) all Claims duly filed with the Settlement Facility have been liquidated

and paid to the extent provided in this Settlement Facility Agreement and the CRP or have been

disallowed by a final non-appealable order, to the extent possible based upon the funds available

through the Plan, and (C) twelve (12) consecutive months have elapsed during which no new

asbestos claim has been filed with the Settlement Facility; or

(ii)      if the Trustee has procured and has in place irrevocable insurance

policies and has established claims handling agreements and other necessary arrangements with

suitable third parties adequate to discharge all expected remaining obligations and expenses of

the Settlement Facility in a manner consistent with this Settlement Facility Agreement and the

CRP, the date on which the Bankruptcy Court enters an order approving such insurance and

other arrangements and such order becomes a final order; or

(iii)      to the extent that any rule against perpetuities shall be deemed

applicable to the Settlement Facility, the date on which twenty-one (21) years less ninety-one

(91) days pass after the death of the last survivor of all of the descendants of the late Joseph P.

Kennedy, Sr., father of the late President John F. Kennedy, living on the date hereof.

(c)      On the Dissolution Date or as soon as reasonably practicable, after the

wind-up of the Settlement Facility's affairs by the Trustee and payment of all of the Settlement

Facility's liabilities have been provided for as required by applicable law, including Section 3808

of the Act, all monies remaining in the Settlement Facility estate shall be given to one or more

organization(s) exempt from federal income tax under section 501(c)(3) of the Internal Revenue

Code, which tax-exempt organization(s) shall be selected by the Trustee using his or her

- 43 -

reasonable discretion; *provided, however*, that (i) if practicable, the activities of the selected tax-exempt organization(s) shall be related to the treatment of, research on, or the relief of individuals suffering from asbestos-related lung disease or disorders, and (ii) the tax-exempt organization(s) shall not bear any relationship to the Reorganized Debtors within the meaning of section 468B(d)(3) of the Internal Revenue Code.  Notwithstanding any contrary provision of the Plan and related documents, this Section 7.2(c) cannot be modified or amended.

(d)     Following the dissolution and distribution of the assets of the Settlement Facility, the Settlement Facility shall terminate and the Trustee shall execute and cause a Certificate of Cancellation of the Certificate of Trust of the Settlement Facility to be filed in accordance with the Act.  Notwithstanding anything to the contrary contained in this Settlement Facility Agreement, the existence of the Settlement Facility as a separate legal entity shall continue until the filing of such Certificate of Cancellation.

7.3     **Amendments.**  The Trustee, after consultation with the CAC and the FCR, and subject to the consent of both the CAC and the FCR, may modify or amend this Settlement Facility Agreement and the Settlement Facility Bylaws, so long as the modifications or amendments do not conflict with the CRP.  Section 12.6 of the CRP shall govern amendments to the CRP and its appendices.  Any modification or amendment made pursuant to this Article or Section 12.6 of the CRP must be done in writing.  Notwithstanding anything contained in this Settlement Facility Agreement or the CRP to the contrary, neither this Settlement Facility Agreement, the Settlement Facility Bylaws, the CRP, nor any document annexed to the foregoing shall be modified or amended in any way that could jeopardize, impair, or modify (i) the applicability of section 524(g) of the Bankruptcy Code to the Plan and the Confirmation Order, (ii) the efficacy or enforceability of the Asbestos Channeling Injunction or any other

- 44 -

injunction or release issued or granted in favor of any (or all) of Asbestos Protected Parties in connection with the Plan, or (iii) the Settlement Facility's qualified settlement fund status under the QSF Regulations.

   7.4 **Meetings.** The Delaware Trustee shall not be required nor permitted to attend meetings relating to the Settlement Facility.

   7.5 **Severability.** Should any provision in this Settlement Facility Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Settlement Facility Agreement.

   7.6 **Notices.** Notices to persons asserting Claims shall be given by first class mail, postage prepaid, at the address of such person, or, where applicable, such person's legal representative, in each case as provided on such person's claim form submitted to the Settlement Facility with respect to his or her Claim.

   (a) Any notices or other communications required or permitted hereunder to the following parties shall be in writing and delivered at the addresses designated below, or sent by e-mail or facsimile pursuant to the instructions listed below, or mailed by registered or certified mail, return receipt requested, postage prepaid, addressed as follows, or to such other address or addresses as may hereafter be furnished in writing to each of the other parties listed below in compliance with the terms hereof.

To the Settlement Facility through the Trustee:

   [_____]


To the Delaware Trustee:

   Wilmington Trust Company
   1100 N. Market Street

Modified Joint Plan - Ex. A

Wilmington, DE 19890-1625
Attention:  Corporate Custody]

To the CAC:

[_____]

To the FCR:

Joseph W. Grier, III
Grier Furr & Crisp, PA
101 North Tryon Street, Suite 1240
Charlotte, NC   28246

To the Reorganized Debtors:

Garlock Sealing Technologies, LLC

[_____]

Garrison Litigation Management Group, Ltd.

[_____]

OldCo, LLC:

[_____]

      (b)     All such notices and communications if mailed shall be effective when physically delivered at the designated addresses or, if electronically transmitted, when the communication is received at the designated addresses and confirmed by the recipient by return transmission.

      **7.7**    **Successors and Assigns.**  The provisions of this Settlement Facility Agreement shall be binding upon and inure to the benefit of the Debtors, the Settlement Facility, the Trustee, and the Reorganized Debtors, and their respective successors and assigns, except that neither the

Modified Joint Plan - Ex. A

Debtors, the Settlement Facility, the Trustee, nor the Reorganized Debtors may assign or otherwise transfer any of its, or their, rights or obligations, if any, under this Settlement Facility Agreement except, in the case of the Settlement Facility and the Trustee, as contemplated by Section 2.1 above.

      **7.8**    **<u>Limitation on Claim Interests for Securities Laws Purposes</u>.** Claims, and any interests therein (a) shall not be assigned, conveyed, hypothecated, pledged, or otherwise transferred, voluntarily or involuntarily, directly or indirectly, except by will or under the laws of descent and distribution; (b) shall not be evidenced by a certificate or other instrument; (c) shall not possess any voting rights; and (d) shall not be entitled to receive any dividends or interest; provided, however, that clause (a) of this Section 7.8 shall not apply to the holder of a claim that is subrogated to a Claim as a result of its satisfaction of such Claim.

      **7.9**    **<u>Entire Agreement; No Waiver</u>.** The entire agreement of the parties relating to the subject matter of this Settlement Facility Agreement is contained herein and in the documents referred to herein, and this Settlement Facility Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power or privilege. The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

      **7.10**    **<u>Headings</u>.** The headings used in this Settlement Facility Agreement are inserted for convenience only and do not constitute a portion of this Settlement Facility Agreement, nor in any manner affect the construction of the provisions of this Settlement Facility Agreement.

**7.11**   **Governing Law.**  This Settlement Facility Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware, without regard to Delaware conflict of law principles.

**7.12**   **Settlors' Representative and Cooperation.**  The Debtors are hereby irrevocably designated as the Settlors, and they are hereby authorized to take any action required of the Settlors by the Trustee in connection with the Settlement Facility Agreement.  The Reorganized Debtors agree to cooperate in implementing the goals and objectives of this Settlement Facility Agreement.

**7.13**   **Dispute Resolution.**  Any disputes arising out of or relating to this Settlement Facility Agreement or under the CRP among the parties hereto, including disputes about changes in the Maximum Annual Payment or the Maximum Settlement Values not otherwise subject to the consent provisions set forth in Section 5.7(b) (in the case of the CAC) or Section 6.6(b) (in the case of the FCR), shall be resolved by submission of the matter to an alternative dispute resolution ("**ADR**") process mutually agreeable to the parties involved.  Should any party to the ADR process be dissatisfied with the decision of the arbitrator(s) that party may apply to the Bankruptcy Court or the District Court for a judicial determination of the matter.  Any review conducted by the Bankruptcy Court or the District Court shall be *de novo*.  In any case, if the dispute arose pursuant to the consent provision set forth in Section 5.7(b) (in the case of the CAC) or Section 6.6(b) (in the case of the FCR), the burden of proof shall be on the party or parties who withheld consent to show that the objection was reasonable.  Should the dispute not be resolved by the ADR process within thirty (30) days after submission, the parties are relieved of the requirement to pursue ADR prior to application to the Bankruptcy Court or the District Court.  If the Trustee determines that the matter in dispute is exigent and cannot await the

- 48 -

completion of the ADR process, the Trustee shall have the discretion to opt out of the ADR process altogether at any stage of the process and seek resolution of the dispute in the Bankruptcy Court or the District Court.

**7.14    Enforcement and Administration.**    The provisions of this Settlement Facility Agreement and the CRP attached hereto shall be enforced by the Bankruptcy Court and the District Court pursuant to the Plan.    The parties hereby further acknowledge and agree that the Bankruptcy Court and the District Court shall have exclusive jurisdiction over the settlement of the accounts of the Trustee and over any disputes hereunder not resolved by ADR in accordance with Section 7.13 above.

**7.15    Effectiveness.**    This Settlement Facility Agreement shall not become effective until it has been executed and delivered by all the parties hereto.

**7.16    Counterpart Signatures.**    This Settlement Facility Agreement may be executed in any number of counterparts, each of which shall constitute an original, but such counterparts shall together constitute but one and the same instrument.

IN WITNESS WHEREOF, the parties have executed this Settlement Facility Agreement

this _____ day of _____, 2016.

**GARLOCK SEALING TECHNOLOGIES, LLC**


By:_____


Title:   _____


**GARRISON LITIGATION MANAGEMENT GROUP, LTD.**


By:_____


Title:_____


**OLDCO, LLC**


By:_____


Title:_____

[Signature Pages to Settlement Facility Agreement]

**TRUSTEE**                                    **ASBESTOS CLAIMANTS COMMITTEE**


_____              By:_____
Name:

                                               **DELAWARE TRUSTEE**


                                               By:_____


[Signature Pages to Settlement Facility Agreement]

Modified Joint Plan - Ex. A

**CLAIMANT ADVISORY COMMITTEE**

_____
Name:  Joseph W. Belluck
Expiration Date of Initial Term:  _____ Anniversary
of the date of this Settlement Facility Agreement

_____
Name:  Perry J. Browder
Expiration Date of Initial Term:  _____ Anniversary of
the date of this Settlement Facility Agreement

_____
Name:  John D. Cooney
Expiration Date of Initial Term:  _____ Anniversary
of the date of this Settlement Facility Agreement

_____
Name:  Steven Kazan
Expiration Date of Initial Term:  _____ Anniversary of
the date of this Settlement Facility Agreement

_____
Name:  Alan Kellman
Expiration Date of Initial Term:  _____ Anniversary
of the date of this Settlement Facility Agreement

_____
Name:  Maura Kolb
Expiration Date of Initial Term:  _____ Anniversary of
the date of this Settlement Facility Agreement

_____
Name:  Robert E. Paul
Expiration Date of Initial Term:  _____ Anniversary
of the date of this Settlement Facility Agreement

_____
Name:  Joseph F. Rice
Expiration Date of Initial Term:  _____ Anniversary of
the date of this Settlement Facility Agreement

_____
Name:  Perry Weitz
Expiration Date of Initial Term:  _____ Anniversary
of the date of this Settlement Facility Agreement

**FUTURE CLAIMANTS' REPRESENTATIVE**

_____
Joseph W. Grier, III

[Signature Pages to Settlement Facility Agreement]