# EXHIBIT J

# EXHIBIT J

## PARENT GUARANTY

**THIS PARENT GUARANTY** (this "**Agreement**"), dated as of the Effective Date (as defined in the Plan referred to below), is made by **ENPRO INDUSTRIES, INC.,** a North Carolina corporation (the "**Guarantor**"), in favor of the **GST SETTLEMENT FACILITY**, a Delaware statutory trust (the "**Asbestos Trust**").

## RECITALS

A.      Section 7.3.2 of the Joint Plan of Reorganization of Garlock Sealing Technologies LLC, et al. and OldCo, LLC, successor by merger to Coltec Industries Inc ("**OldCo**"), as initially filed in the United States Bankruptcy Court for the Western District of North Carolina on May 20, 2016 (as amended, supplemented, or otherwise modified from time to time, and together with the exhibits and schedules to the foregoing, as the same may be in effect from time to time, the "**Plan**"), provides that the Asbestos Trust is to be funded with, among other things, the Deferred Contribution, which shall be paid in full and in Cash to the Asbestos Trust on or before the first anniversary of the Effective Date of the Plan.

B.      Section 7.3.2 of the Plan further provides, among other things, that payment of the Deferred Contribution shall be guaranteed by the Guarantor pursuant to the terms of this Agreement, with such guaranty to become effective on the Effective Date immediately after the merger of OldCo into New Coltec, as provided in Section 7.10 of the Plan (the "**Merger**").

C.      The Guarantor owns all of the issued and outstanding Equity Interests in New Coltec and will obtain benefits as a result of the consummation of the Plan, which benefits are hereby acknowledged, and accordingly desires to execute and deliver this Agreement.

## STATEMENT OF AGREEMENT

**NOW THEREFORE**, in consideration of the premises and mutual covenants herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      **Definitions**.  All capitalized terms used herein (including, without limitation, in the preamble and recitals hereof) without definition shall have the meanings ascribed to those terms in the Plan.  In addition, as used in this Agreement, the following terms shall have the following meanings:

(a)      "**Governing Documents**" means, as to any Entity, its articles or certificates of incorporation and bylaws, its partnership agreement, its certificate of formation and operating agreement, or the organizational or governing documents of such Entity.

(b)      "**Laws**" means, at any time and with reference to any Entity or property, all then existing laws, statutes, codes, treaties, judgments, decrees, injunctions, writs, and orders of any Governmental Unit, and rules, regulations, ordinances, directives, orders,

licenses, and permits of any Governmental Unit applicable to such Entity or its property or in respect of its operations or to any referenced circumstances or events.

(c)     "**Proceeding**" means, with respect to any Entity, any voluntary or involuntary insolvency, bankruptcy, receivership, custodianship, liquidation, reorganization, assignment for the benefit of creditors, appointment of a custodian, receiver, trustee or other officer with similar powers, or any other proceeding for the liquidation or other winding up of such Entity or all or substantially all of the properties of such Entity.

2.     **Rules of Interpretation**.

(a)     All terms defined in this Agreement in the singular form shall have comparable meanings when used in the plural form, and vice versa.

(b)     Whenever the context may require, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the other genders.

(c)     The word "will" shall be construed to have the same meaning and effect as the word "shall."

(d)     Any definition of or reference to any agreement, instrument, or other document herein shall be construed as referring to such agreement, instrument, or other document as from time to time amended, supplemented, or otherwise modified.

(e)     All references herein to Sections shall be deemed references to Sections of this Agreement unless the context shall otherwise require.

(f)     The headings of the various sections and subsections of this Agreement have been inserted for convenience only and shall not in any way affect the meaning or construction of any of the provisions hereof.

(g)     Unless otherwise provided herein, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply.

3.     **Guarantee**.  Effective as of the Effective Date and immediately following the Merger, the Guarantor hereby guarantees, as a primary obligor and not merely as a surety, the full and prompt payment when due of the Deferred Contribution to the Asbestos Trust in accordance with Section 7.3.2 of the Plan.

4.     **Waivers**.  With respect to the Deferred Contribution, the Guarantor hereby waives, to the fullest extent permitted by applicable Law, (a) acceptance, promptness, diligence, presentment, demand of payment, filing of claims with a court in the event of receivership or bankruptcy of New Coltec, protest or notice, all setoffs and counterclaims and all presentments, demands for performance, notices of nonperformance, protests, notices of payment, notices of dishonor and notices of acceptance of this Agreement or any of the other Plan Documents (and shall not require that the same be made on or given to OldCo or New Coltec as a condition to the

Guarantor's obligations hereunder); (b) any defense arising by reason of any disability or other defense of OldCo or New Coltec, or the cessation for any reason whatsoever (including any act or omission of the Asbestos Trust or any other Entity) of the liability of OldCo or New Coltec; (c) any right to proceed against OldCo or New Coltec, proceed against or exhaust any security for the Deferred Contribution, or pursue any other remedy in the power of the Asbestos Trust whatsoever; (d) any benefit of and any right to participate in any security now or hereafter securing the Deferred Contribution; (e) the benefits of all statutes of limitation; and (f) all other demands and defenses whatsoever, other than payment in full of the Deferred Contribution.  To the fullest extent permitted by applicable Law, the obligations of the Guarantor hereunder shall not be affected by (i) the failure of the Asbestos Trust to assert any claim or demand or to enforce or exercise any right or remedy under the provisions of the Asbestos Trust Agreement, the Plan, any other Plan Document, or otherwise; (ii) any waiver, amendment, or modification of any of the terms or provisions of the Asbestos Trust Agreement, the Plan, or any other Plan Document; or (iii) the failure to perfect any security interest in, the release of, or any other action with respect to, any of the security for the Deferred Contribution held by or on behalf of the Asbestos Trust.

5.    **Absolute Guarantee of Payment and Performance**.  The Guarantor agrees that this Agreement is an absolute and unconditional guarantee of payment and performance and is not merely a surety or guarantee of collection, and the Guarantor waives any right to require that any resort be had by the Asbestos Trust to any of the security held for payment of the Deferred Contribution.  The Guarantor further agrees that the Guarantor and New Coltec are jointly and severally liable for the Deferred Contribution, which liability is a continuing, absolute, and unconditional obligation of payment or performance, as the case may be, regardless of the solvency or insolvency of New Coltec or the Guarantor at any time.

6.    **Payments**.

(a)    In furtherance of the foregoing and not in limitation of any other right that the Asbestos Trust has at law or in equity against the Guarantor by virtue hereof, upon the failure of New Coltec to pay the Deferred Contribution in full and in Cash when and as the same shall become due in accordance with Section 7.3.2 of the Plan, the Guarantor hereby promises to and will forthwith pay, or cause to be paid, to the Asbestos Trust, in Cash the amount of the unpaid Deferred Contribution within five (5) Business Days after New Coltec's failure to pay.

(b)    All payments made by the Guarantor pursuant to this Agreement shall be made in lawful currency of the United States of America by wire transfer of immediately available funds to the Asbestos Trust in accordance with wire transfer instructions as are provided by the Asbestos Trust to the Guarantor in writing from time to time.

(c)    Upon payment by the Guarantor of any sums to the Asbestos Trust, all rights of the Guarantor against New Coltec arising as a result thereof by way of right of subrogation, contribution, reimbursement, indemnity, or otherwise shall in all respects be subordinate and junior in right of payment to the prior payment in full and in Cash of the Deferred Contribution.

7.     **Representations and Warranties**.  The Guarantor represents and warrants that the each of the following is true and correct as of the Effective Date, and the Guarantor acknowledges that the Asbestos Trust is relying on each of the following representations and warranties as being true and correct and that the Asbestos Trust's reliance thereon is reasonable:

(a)     The Guarantor is duly organized, validly existing, and in good standing under the Laws of the State of North Carolina; *provided, however*, with respect to good standing, only to the extent the concept of good standing exists in such jurisdiction of incorporation.

(b)     The Guarantor has the corporate power and authority to execute and deliver this Agreement and each other Plan Document to which it is a party.  This Agreement and each other Plan Document to which it is a party has been duly authorized by all necessary corporate action of the Guarantor and has been duly executed and delivered by the Guarantor.

(c)     This Agreement and each other Plan Document to which the Guarantor is a party is a legal, valid, and binding obligation of the Guarantor, enforceable against the Guarantor in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium, or similar Laws affecting the enforcement of creditors' rights generally, by the discretion of the court in which enforcement is sought, or by general equitable principles (whether enforcement is sought by proceedings at law or in equity).

(d)     The execution, delivery, and performance by the Guarantor of this Agreement and each other Plan Document to which the Guarantor or New Coltec is a party does not (1) conflict with, result in a breach of any of the provisions of, or constitute a default or event of default under (A) the Governing Documents of the Guarantor or New Coltec, or (B) any note, bond, mortgage, indenture, deed of trust, license, lease, agreement or other instrument or obligation to which the Guarantor or New Coltec is a party or by which the Guarantor or New Coltec may be bound, or to which the Guarantor or New Coltec or any of the properties or assets of the Guarantor or New Coltec may be subject; or (2) violate any statute, rule or regulation, or any judgment, ruling, order, writ, injunction, or decree applicable to the Guarantor or New Coltec or to any of their respective properties or assets.

8.     **Enforceability of Obligations**.  The Guarantor hereby agrees that its obligations under this Agreement, including the guarantee made hereunder, shall be enforceable against the Guarantor irrespective of:

(a)     the legality, validity, enforceability, avoidance, or subordination of any of the Deferred Contribution or any of the Plan Documents;

(b)     any Law, regulation, or order of any jurisdiction, or any other event, affecting the Deferred Contribution or any of the Plan Documents;

4

(c)    the absence of any attempt by, or on behalf of, the Asbestos Trust to collect, or to take action to enforce, all or any part of the Deferred Contribution, whether from or against New Coltec or any other Entity;

(d)    the election of any remedy available under any of the Plan Documents or applicable Law or in equity by, or on behalf of, the Asbestos Trust with respect to all or any part of the Deferred Contribution;

(e)    any change in the corporate existence, structure, or ownership of New Coltec or the Guarantor;

(f)    any impairment of the capital of New Coltec or the Guarantor, or any insolvency, bankruptcy, reorganization, or other similar proceeding affecting New Coltec, the Guarantor, or their respective assets, or any resulting release or discharge of the Deferred Contribution;

(g)    any amendment, waiver, consent, extension, forbearance, or granting of any indulgence by, or on behalf of, the Asbestos Trust with respect to any provision under any Plan Document, or any other act or thing or omission or delay to do any other act or thing which may or might in any manner or to any extent vary the risk of New Coltec or the Guarantor, including any renewal or extension of the time or change of the manner or place of payment or performance, as the case may be, of the Deferred Contribution;

(h)    the disallowance, under Section 502 of the Bankruptcy Code, of all or any portion of the claims against New Coltec held by the Asbestos Trust for payment or performance, as the case may be, of all or part of the Deferred Contribution;

(i)    the existence of any right, claim, counterclaim, or right of setoff, whether arising from or relating to the Deferred Contribution, New Coltec, or otherwise, that the Guarantor may have at any time against New Coltec, the Asbestos Trust, or any other Entity, whether in connection herewith or any unrelated transactions, *provided*, *however*, that nothing herein shall prevent the Guarantor from asserting its right against New Coltec in a separate suit or compulsory counterclaim against New Coltec (but not as a defense, cross-claim, counterclaim, or setoff against the Asbestos Trust);

(j)    the cessation for any reason of the liability of New Coltec under the Plan Documents or any other circumstance that might otherwise constitute a legal or equitable discharge of New Coltec or the Guarantor; or

(k)    any other act or circumstance that might or could be deemed a discharge or modification hereunder other than payment in full and in Cash of the Deferred Contribution.

9.    **Financial Information**.  The Guarantor hereby acknowledges that it has adequate means of, and assumes responsibility for, keeping itself informed of the financial condition of New Coltec, including any circumstances bearing upon the risk of nonpayment or nonperformance of the Deferred Contribution, or any part thereof, and the Guarantor hereby

5

agrees that the Asbestos Trust shall have no duty to advise the Guarantor of information known to it regarding any such circumstances. In the event the Asbestos Trust in its reasonable discretion undertakes at any time or from time to time to provide any such information to the Guarantor, the Asbestos Trust shall be under no obligation (a) to undertake any investigation not a part of its regular routine or (b) to disclose any information that the Asbestos Trust, pursuant to its accepted and reasonable practices, wishes to maintain confidential.

10.    **Default and Remedies**.

(a)    The Asbestos Trust shall have the right, power, and authority to do all things deemed necessary or advisable to enforce the provisions of this Agreement and protect its rights under the Plan Documents and, upon the occurrence and during the continuance of a default or breach of the terms hereunder, the Asbestos Trust may institute or appear in such appropriate proceedings permitted or not prohibited under this Agreement as the Asbestos Trust shall deem most effectual to protect and enforce its rights hereunder, whether for specific enforcement of any term or provision in this Agreement, or in aid of the exercise of any power granted herein or in any Plan Document, or to enforce any other proper remedy.

(b)    Each and every default or breach by the Guarantor under or in respect of this Agreement shall give rise to a separate cause of action hereunder, and separate actions may be brought hereunder as each cause of action arises. For so long as such a default or such a breach is continuing, the Asbestos Trust shall have the right to proceed first and directly against the Guarantor under this Agreement without proceeding against any other Entity (including New Coltec), without exhausting any other remedies that the Asbestos Trust may have, and without resorting to any other security held by the Asbestos Trust to secure the Deferred Contribution.

11.    **Reinstatement**. Notwithstanding any provision herein to the contrary, the Guarantor agrees that, to the extent that any Entity makes a payment or payments to the Asbestos Trust on account of the Deferred Contribution, which payments or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside, or required or agreed to be repaid or returned by the Asbestos Trust under any Law or in respect of any Proceeding or other litigation to which the Guarantor or the Asbestos Trust is subject, then, to the extent of the amount of such payments, the portion of the Deferred Contribution that has been paid, reduced, or satisfied by such amount shall be reinstated and continued in full force and effect as of the time immediately preceding such initial payment, reduction, or satisfaction.

12.    **Termination**. Except as provided in <u>Section 11</u> hereof, the guarantee made hereunder shall terminate, automatically and without the necessity of action on the part of any Entity, when the Deferred Contribution has been paid in full and in Cash to the Asbestos Trust. In connection with the foregoing, the Asbestos Trustee shall execute and deliver to the Guarantor or its designee any documents or instruments which the Guarantor shall reasonably request from time to time to evidence such termination and release.

13.    **Binding Effect; Assignments**. This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns, *provided*

that neither party shall have the right to assign its rights or obligations hereunder or any interest herein without the prior written consent of the other.

14.     **No Waiver**.  No failure or delay of the Asbestos Trust of any kind in exercising any power or right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such a right or power, preclude any other or further exercise thereof or the exercise of any other right or power.  No waiver by the Asbestos Trust of any default, event of default, or breach of this Agreement shall operate as a waiver of any other default, event of default, or breach of this Agreement or of the same default, event of default, or breach of this Agreement on a future occasion, and no action by the Asbestos Trust permitted hereunder shall in any way affect or impair the Asbestos Trust's rights and remedies or the obligations of the Guarantor under this Agreement.  The rights and remedies of the Asbestos Trust hereunder are cumulative and are not exclusive of any rights or remedies that it would otherwise have.  No notice or demand on the Guarantor in any case shall entitle the Guarantor to any other or further notice in similar or other circumstances.

15.     **Governing Law**.  This Agreement shall be governed by, and construed and enforced in accordance with, the Laws of the State of North Carolina, without giving effect to any choice or conflict of law provision or rule (whether of the State of North Carolina or any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of North Carolina.

16.     **Amendment**.  Neither this Agreement nor any provision hereof may be waived, amended, or modified, except pursuant to a written agreement executed and delivered by the parties hereto.

17.     **WAIVER OF JURY TRIAL**.  EACH PARTY HEREBY WAIVES, FOR ITSELF, AND ITS SUCCESSORS AND ASSIGNS, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER, OR IN CONNECTION WITH, THIS AGREEMENT.

18.     **Notices**.  All communications and notices hereunder shall be in writing and given as provided in Section 11.9 of the Plan.  All communications and notices hereunder to the Guarantor shall be given to it at its address set forth on Schedule I attached hereto.

19.     **Severability**.  Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable Law, but to the extent any provision of this Agreement is held to be invalid, void, voidable, prohibited, illegal, or unenforceable in any respect under any applicable Law of any jurisdiction, such provision shall be ineffective only to the extent of such prohibition or invalidity and only in such jurisdiction, without prohibiting or invalidating such provision in any other jurisdiction or the remaining provisions of this Agreement in any jurisdiction.  The parties hereto further agree to use commercially reasonable efforts to replace such invalid, void, voidable, illegal, unenforceable, or rejected provision of this Agreement with an effective, valid, and enforceable provision that will

7

achieve, to the fullest extent possible, the economic, business, and other purposes of the invalid, void, voidable, prohibited, illegal, unenforceable, or rejected provision.

20. **Counterparts**.  This Agreement may be executed in any number of counterparts and by different parties hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all of which shall together, when delivered, constitute one and the same instrument.  Delivery of an executed counterpart of a signature page of this Agreement by facsimile or in electronic format (*e.g.*, "pdf" or "tif" file format) shall be effective as delivery of a manually executed counterpart of this Agreement.

21. **Effectiveness**.  This Agreement (i) is hereby executed and delivered as of the Effective Date and immediately prior to the Merger, and (ii) shall be effective as of the Effective Date and immediately following the Merger.

*(Signatures on following pages)*

Modified Joint Plan - Ex. J

IN WITNESS WHEREOF, the parties hereto have executed this Agreement by and through their duly authorized representatives as of the day and year first above written.

Guarantor:

**ENPRO INDUSTRIES, INC.**

By:_____

Name:_____

Title:_____

Acknowledged and Accepted:

**GST SETTLEMENT FACILITY**

_____
Lewis R. Sifford, as Trustee

<u>SCHEDULE I</u>

| <u>**Guarantor**</u> | <u>**Address**</u> |
|---|---|
| EnPro Industries, Inc. | 5605 Carnegie Blvd., Suite 500<br>Charlotte, NC 28209-4674<br>Attention: General Counsel |