# EXHIBIT 2

## Term Sheet for Permanent Resolution of All Present and Future
## GST Asbestos Claims and Coltec Asbestos Claims

This Term Sheet sets forth the fundamental terms of a settlement between EnPro Industries, Inc., ("**EnPro**"); Garlock Sealing Technologies LLC ("**GST**"); Garrison Litigation Management Group, Ltd. ("**GLM**"); Coltec Industries Inc ("**Coltec**"); The Anchor Packing Company ("**Anchor**"); the Official Committee of Asbestos Personal Injury Claimants (the "**Garlock Committee**"); Joseph W. Grier, III as Future Asbestos Claimants' Representative (the "**Garlock Future Claimants' Representative**"); the *ad hoc* committee of persons holding asbestos personal injury claims against Coltec (the "**Ad Hoc Coltec Committee**"); and Joseph W. Grier, III as *ad hoc* future asbestos claimants' representative for Coltec asbestos claimants (the "**Ad Hoc Coltec Future Claimants' Representative**") (individually referred to herein as a "**Party**" and collectively as the "**Parties**").

GST, GLM, Anchor, and Coltec are referred to collectively as "**Debtors**." Unless defined in this Term Sheet or **Attachment A** to this Term Sheet, capitalized terms shall have the meanings given in title 11 of the United States Code (the "**Bankruptcy Code**").

To implement the settlement, Coltec will file a chapter 11 case in the United States Bankruptcy Court for the Western District of North Carolina (the "**Bankruptcy Court**") that will be jointly administered with the GST, GLM, and Anchor cases. Prior to filing, Coltec will undergo a corporate restructuring substantially to the effect as described in **Attachment B** (the "**Coltec Restructuring**"). The Parties have reviewed the rationale for the Coltec Restructuring and its relationship to the goals of this settlement and agree that the Coltec Restructuring is an appropriate and necessary step to facilitate the implementation of the agreements contained herein and is not being undertaken in order to delay or hinder the resolution of claims against the Debtors.

The settlement will be incorporated into a plan of reorganization or plans of reorganization (in either case, "**Plan**"), which will be subject to approval of the Bankruptcy Court and the United States District Court for the Western District of North Carolina (the "**District Court**"). The Plan will be jointly proposed by the Debtors, the Garlock Committee, the Garlock Future Claimants' Representative, the Ad Hoc Coltec Committee, and a court-appointed representative for persons who may, subsequent to confirmation of the plans of reorganization, hold asbestos claims against Coltec. Debtors, the Garlock Committee, the Garlock Future Claimants' Representative, the Ad Hoc Coltec Committee, and the Ad Hoc Coltec Future Claimants' Representative will support appointment by the Bankruptcy Court of Mr. Grier as the future claimants' representative for all future Garlock and Coltec asbestos claimants (referred to thereafter as "**Garlock Future Claimants' Representative**"). All Parties will also support addition of members of the Ad Hoc Coltec Committee to the Garlock Committee, and such joint committee shall serve as the Official Committee of Asbestos Personal Injury Claimants in the jointly administered cases.

The Plan, once confirmed by the Bankruptcy Court and approved or affirmed by the District Court, will result in a permanent resolution of all Coltec Asbestos Claims and GST Asbestos Claims in accordance with the terms and provisions of such Plan. The Plan shall also provide for the settlement, release, waiver, and permanent extinguishment of certain causes of action, claims, demands, and suits that are pending or might otherwise be brought in the future by the Debtors, the Reorganized Debtors, or any of their respective Affiliates, predecessors, successors, or assigns, as more fully set forth below.

The Plan will provide that Allowed Claims that are not Coltec Asbestos Claims or GST Asbestos Claims will be paid in full or will be left unimpaired within the meaning of 11 U.S.C. §§ 1124(1) and/or (2). At Coltec's election, the Parties may solicit acceptance of the Plan from Coltec Asbestos Claimants prior to filing a chapter 11 petition in a pre-packaged plan of reorganization or promptly after filing a chapter 11 petition in a pre-arranged plan of reorganization.

The Parties will recommend that asbestos claimants accept and vote in favor of the Plan, and Debtors, EnPro, the Garlock Committee, the Garlock Future Claimants' Representative, the Ad Hoc Coltec Committee, and the Ad Hoc Coltec Future Claimants' Representative will each use their best efforts to (a) prepare the Plan and all related documents that incorporate the terms set forth herein and use the aggregate Funding described below in a way that satisfies the requirements of the Bankruptcy Code, including the requirements of §§ 524(g) and 105(a), and (b) obtain the entry of orders by the Bankruptcy Court and the District Court confirming such plans and issuing the injunctions described below.

## Funding

A trust will be established that satisfies the requirements of the Bankruptcy Code, including section 524(g) (the "**Trust**," also referred to in attachments as the "**Settlement Facility**"), to assume sole responsibility for, process, resolve, and pay all present and future Coltec Asbestos Claims and GST Asbestos Claims, in accordance with the terms of the Plan and the Plan-related documents.[1]

Debtors will make qualified settlement fund contributions to the Trust in the aggregate amount of U.S.$480 million: $370 million by GST and GLM (or EnPro or one or more of its Affiliates) and $110 million by Coltec (or EnPro or one or more of its Affiliates). The contributions shall be made as follows:

   (1) on the Effective Date, the Debtors (or EnPro or one or more of its Affiliates) shall contribute $400 million in cash;

   (2) on the Effective Date, the Debtors (or EnPro or one or more of its Affiliates) will deliver an option entitling the Trust to purchase for one dollar, on or after the first anniversary of the Effective Date, EnPro common stock with a trading value equal to $20 million as of the date that such stock is delivered to the Trust or its Representative ("**Option**"), and such Option will give Debtors the right to call the Option for $20 million in cash on any date prior to the first anniversary of the Effective Date and will give the Trust the right to put the Option for $20 million in cash on the day prior to the first anniversary of the Effective Date; and

---

[1]   The Parties may agree either to create separate trusts, a single trust, or a single trust with sub-funds to resolve Coltec Asbestos Claims and GST Asbestos Claims, respectively. For ease of reference, the term "**Trust**" refers to both a one-trust or two-trust structure.

(3) no later than the first anniversary of the Effective Date, the Debtors (or EnPro or one or more of its Affiliates) will pay in full $60 million in cash to the Trust ("**Deferred Contribution**").

The Deferred Contribution will be guaranteed by EnPro, and secured by a lien on or security interest in 50.1% of the voting equity security interests in each of GST and GLM ("**Lien**"). The Lien shall be first priority and perfected in a manner such that it will not be rendered subordinate to, or *pari passu* with, any other lien, security interest, pledge, or other encumbrance or interest prior to the release of the Lien, as provided below. The Debtors will be entitled to prepay all or part of the Deferred Contribution at any time without penalty. Once the Deferred Contribution has been paid in cash and in full to the Trust, or otherwise satisfied by agreement of the Reorganized Debtors and the Trust, the Lien will be released.

The EnPro common stock delivered to the Trust pursuant to the Option shall be the subject of an effective registration statement under the Securities Act of 1933, as amended, registering the resale thereof, and shall not be subject to any lien, encumbrance, or restriction that would prevent such stock from being sold or traded in a public securities market. No "poison pill," shareholder or stockholder rights plan, or other anti-takeover or takeover defense plan, contract, agreement, instrument, or provision adopted or implemented by EnPro shall apply to or be triggered by the issuance of the Option or upon exercise of the Option by the Trust.

Nothing in the Plan or any Plan-related document will bar or preclude the Reorganized Debtors and the Trust from negotiating or entering into an agreement that would permit the Deferred Contribution to be paid before the first anniversary of the Effective Date, subject to an agreed discount rate.

## Discharge/Injunctions

The contributions to be made pursuant to the Plan as set forth above shall fully satisfy all Coltec Asbestos Claims and GST Asbestos Claims, and all such Claims shall be enjoined and channeled to the Trust for remedies under the Plan and Plan Documents. In addition, all Coltec Asbestos Claims and GST Asbestos Claims shall be discharged in accordance with 11 U.S.C. § 524(a) to the fullest extent permitted by law. Debtors will remain wholly owned subsidiaries of EnPro and their results of operations will be reconsolidated with those of EnPro for financial reporting purposes. Pursuant to the Plan, Anchor will be dissolved under the provisions of applicable non-bankruptcy law, and the Parties will not object to such dissolution.

In addition, injunctions will be issued by the Bankruptcy Court under §§ 105(a), 524, and 1141(d) and issued or affirmed by the District Court under § 524(g), including the Asbestos Channeling Injunction, channeling all Coltec Asbestos Claims and GST Asbestos Claims, present and future, to the Trust for their remedies under the Plan and permanently protecting, to the fullest extent permitted by law, Debtors and other Asbestos Protected Persons from any Coltec Asbestos Claims and/or GST Asbestos Claims, present or future.

For the avoidance of doubt, notwithstanding anything to the contrary in this Term Sheet or any of its attachments, the Plan will not treat, and the injunctions provided for under the Plan, including the Asbestos Channeling Injunction described below, will not enjoin and channel to the

Disclosure Statement - Ex. 2

Trust, any liability or obligation not derived from that of a Debtor, including for example any independent liability or obligation of a non-Debtor Entity that did not become an Affiliate of, successor of, merger partner of, or transferor of assets to, a Debtor before such Debtor's Petition Date.

The Plan will also provide for the resolution and extinguishment of all claims arising under or that could be asserted under any of the avoidance powers in chapter 5 of the Bankruptcy Code, including without limitation claims assertable under 11 U.S.C. § 544.

On and after the Effective Date, the Trust will defend, indemnify, and hold harmless Debtors and other Asbestos Protected Persons from any and all losses, including, without limitation, attorney's fees and expenses, that are based on, arise from, or are attributable to any Coltec Asbestos Claim or GST Asbestos Claim; *provided, however,* that the Trust will have no duty to defend, indemnify, and hold harmless Debtors and other Asbestos Protected Persons from any such losses that are based on, arise from, or are attributable to any Foreign Asbestos Claim, unless the Foreign Asbestos Claim is filed, asserted, or sought to be enforced in or before any court or tribunal within the judicial system of the United States.

## Asbestos Channeling Injunction

In order to supplement, where necessary, the injunctive effect of the discharge provided by Bankruptcy Code §§ 1141, 524(a), and 105, pursuant to the exercise of the equitable jurisdiction and power of the Court under Bankruptcy Code § 524(g), the confirmation order shall provide for issuance of the Asbestos Channeling Injunction to take effect on the Effective Date.

On and after the Effective Date, the sole recourse of the holder of a Coltec Asbestos Claim or GST Asbestos Claim shall be to the Trust pursuant to the provisions of the Asbestos Channeling Injunction and the claims resolution procedures, and such holder shall have no right whatsoever at any time to assert its Coltec Asbestos Claim or GST Asbestos Claim against the Debtors, Reorganized Debtors, any other Asbestos Protected Person, or any property or interest (including any distributions made pursuant to the Plan) in property of the Debtors, the Reorganized Debtors, or any other Asbestos Protected Person. Without limiting the foregoing, from and after the Effective Date, the Asbestos Channeling Injunction shall apply to all present and future holders of Coltec Asbestos Claims and GST Asbestos Claims, and all such holders shall be permanently and forever stayed, restrained, and enjoined from taking any and all legal or other actions or making any Claim or Demand against any Asbestos Protected Person, or any property or interest in property of any Asbestos Protected Person (including distributions made pursuant to the Plan), for the purpose of, directly or indirectly, claiming, collecting, recovering, or receiving any payment, recovery, satisfaction, or any other relief whatsoever on, of, or with respect to any Coltec Asbestos Claim or GST Asbestos Claim, other than from the Trust in accordance with the Asbestos Channeling Injunction and pursuant to the claims resolution procedures, including:

a) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including a judicial, arbitration, administrative, or other proceeding) in any forum against or affecting any Asbestos Protected Person, or any property or interest in property of any Asbestos Protected Person, on account of any Coltec Asbestos Claim or GST Asbestos Claim;

- 4 -

b)     enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Asbestos Protected Person, or any property or interest in property of any Asbestos Protected Person, on account of any Coltec Asbestos Claim or GST Asbestos Claim;

c)     creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance against any Asbestos Protected Person, or any property or interest in property of any Asbestos Protected Person, on account of any Coltec Asbestos Claim or GST Asbestos Claim;

d)     setting off, seeking reimbursement of, indemnification or contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Asbestos Protected Person, or any property or interest in property of any Asbestos Protected Person, on account of any Coltec Asbestos Claim or GST Asbestos Claim; and

e)     proceeding in any other manner with regard to any matter that is subject to resolution by the Trust in accordance with the Plan and related documents, except in conformity and compliance with the claims resolution procedures.

Notwithstanding anything to the contrary above or in this Term Sheet or its attachments, the Asbestos Channeling Injunction shall not bar, enjoin, or extinguish (a) the rights of Entities to the treatment accorded them under the Plan, including the rights of Entities holding Coltec Asbestos Claims and GST Asbestos Claims to assert such Coltec Asbestos Claims and GST Asbestos Claims in accordance with the claims resolution procedures and (b) any Foreign Asbestos Claim, unless the Foreign Asbestos Claim is filed, asserted, or sought to be enforced in or before any court or tribunal within the judicial system of the United States.

**<u>Insurance</u>**

Debtors shall retain ownership of all of their rights respecting their insurance policies, including rights to seek reimbursement for their contributions to the Trust under the Plan. Debtors shall have the sole right to sue for and compromise claims against insurers and collect for their own account settlements and judgments related to insurance policies.  Debtors shall have the authority to extend to any or all of the insurers, in Debtors' sole discretion, protection from asbestos claims under sections 105(a) and 524(g) and the Garlock Committee, Ad Hoc Coltec Committee, Garlock Future Claimants' Representative, and Ad Hoc Coltec Future Claimants' Representative shall agree that identifying the insurers in the Plan injunctions is appropriate and fair and equitable to present and future asbestos claimants in light of the benefits provided to the Trust by the Debtors.

There is approximately $80 million in remaining shared insurance available to Coltec, GST and GLM as of January 19, 2016 (defined in the Second Amended Plan as the "Remaining Shared Insurance").  In addition to this coverage, there is some pre-July 1975 Coltec comprehensive

general liability insurance coverage or pre-July 1975 Coltec commercial general liability insurance coverage (the "**Additional Coltec Insurance**," issued by one or more "**Additional Coltec Insurers**") not available to GST. Coltec intends to seek recovery of insurance proceeds and/or contribution payments from the Additional Coltec Insurers and/or successors.

Coltec's recoveries from any Additional Coltec Insurer and/or from any successor on account of the Additional Coltec Insurance will be allocated between the Trust and Coltec as follows: Coltec shall retain all recoveries up to the first $25 million and fifty percent (50%) of recoveries in excess of the first $25 million and shall contribute to the Trust (or have contributed directly to the Trust) fifty percent (50%) of recoveries in excess of the first $25 million.

In order to facilitate the collection of insurance and to satisfy obligations under insurance funding and settlement agreements, the confirmed Plan and the Trust agreement shall contain provisions requiring the Trust to provide Debtors or any asbestos insurer promptly upon request with access to data and other information reasonably relating to claims submitted to and accepted and paid by the Trust; *provided, however*, that data and information so provided shall be protected by a stipulation, so ordered by the Bankruptcy Court, protecting confidentiality of such data and information and restricting the uses thereof to the express purposes recited in this paragraph. Nothing herein or in the Plan described herein shall excuse the Debtors and EnPro from timely paying the Deferred Contribution to the Trust based on, arising from, or attributable to (a) any insurer's refusal to indemnify, reimburse, or pay Debtors or Coltec on account of any claim submitted to and accepted and paid by the Trust or (b) the Trust's alleged failure to produce, or provide access to, the data and other information described in this paragraph.

## Exculpation

The Plan and confirmation order(s) will exculpate the Debtors, Reorganized Debtors, Debtors' Affiliates, the Garlock Committee, the Garlock Future Claimants' Representative, the Ad Hoc Coltec Committee, the Ad Hoc Coltec Future Claimants' Representative, the Unsecured Creditors' Committee, and all of their respective Representatives (the "**Exculpated Parties**") from liability to any entity for any act or omission in connection with the administration and conduct of the chapter 11 cases, except for willful misconduct or lack of good faith; *provided, however*, that nothing herein or in the Plan shall exculpate, bar, or shield the foregoing persons from any Fee Dispute Remedy. In any suit alleging willful misconduct or lack of good faith, the reasonable attorney's fees and costs of the prevailing party shall be paid by the losing party. The Plan will request entry of an injunction permanently enjoining commencement or continuation in any manner, any suit, action, or other proceeding, on account of or respecting any claim, obligation, debt, right, cause of action, remedy or liability included within this exculpation clause.

## Indemnification of Garlock Future Claimants' Representative

On the Effective Date, the Trust shall assume the Debtors' indemnification obligations to the Indemnified Parties identified in paragraph 5 of the Bankruptcy Court's Order Granting Debtors' Motion for Appointment of Joseph W. Grier, III as Future Asbestos Claimants' Representative

- 6 -

(Docket No. 512), entered September 16, 2010, and upon such assumption the Debtors will be released of such obligations.

## Settlement and Release of Certain Claims

The Plan shall release, waive, and permanently extinguish the rights, if any, of the Debtors, Reorganized Debtors, their Affiliates, predecessors, successors, and assigns to file or assert in the future any GST Recovery Action. With respect to the pending GST Recovery Actions, the Plan will incorporate a motion to approve the settlement of such actions pursuant to which such actions and any claims, counterclaims, or countersuits the respective parties asserted or could have asserted therein shall be dismissed with prejudice in exchange for mutual general releases and mutual waivers of costs and attorneys' fees, contingent upon final order(s) confirming the Plan and effective upon delivery of GST Recovery Action Settlement Packages by plaintiffs GST and GLM and by the respective defendants therein. Upon execution of this Term Sheet, the parties to the pending GST Recovery Actions shall promptly advise the District Court and Bankruptcy Court (as applicable) that all claims in such actions are subject to settlement under the Plan, and jointly move the District Court and Bankruptcy Court (as applicable) to stay all proceedings in such actions pending entry of final order(s) confirming the Plan and dismissal of the GST Recovery Actions. Pending entry of final confirmation order(s) and dismissal of the GST Recovery Actions, Debtors agree to seek to enforce the stay once it is in place, and to oppose any new intervention motions or lift-stay requests by third persons. In the event a condition to confirmation fails to occur and is not waived, the Bankruptcy Court declines to confirm the Plan, or confirmation is overturned on appeal, the stay will terminate and proceedings shall re-commence in the GST Recovery Actions, and the parties thereto shall be restored to the status quo as it existed before the stay took effect.

Debtors, the Garlock Committee, the Ad Hoc Coltec Committee, and EnPro acknowledge that (1) the defendants in the pending GST Recovery Actions have been represented by their respective independent counsel in connection with the proposed resolution of the pending GST Recovery Actions; (2) the Plan funding negotiated by the Parties has not been, and shall not be, reduced in respect of those proposed resolutions; and (3) the settlement of the GST Recovery Actions as part of the comprehensive settlement set forth in this Term Sheet is necessary in order for the Plan to be confirmed and succeed and therefore is in the best interests of the Debtors, their bankruptcy estates, and present and future asbestos claimants.

## Claims Resolution Procedures

The claims resolution procedures ("**CRP**") agreed to by and among the Parties are attached hereto and incorporated herein as **Attachment C**.

## Cooperation Agreement

On the Effective Date, the Debtors and the trustee of the Trust ("**Trustee**") shall execute the cooperation agreement substantially in the form of, and incorporated herein as, **Attachment D**. Prior to the Effective Date, the person designated as the Trustee will have an opportunity to

review the cooperation agreement and to propose any amendments thereto, which will be considered by the Parties.

## Settlement Facility Agreement

On the Effective Date, the Debtors, the Trustee, the Delaware Trustee, the Claimant Advisory Committee, and the Garlock Future Claimants' Representative shall execute the trust and settlement facility agreement substantially in the form of, and incorporated herein as, **Attachment E.** Prior to the Effective Date, the person designated as the Trustee will have an opportunity to review the settlement facility agreement and to propose any amendments thereto, which will be considered by the Parties.

## Trustee

The Trustee will be Lewis R. Sifford. Promptly after the Plan receives the necessary affirmative vote for confirmation, the Parties shall seek authority from the Bankruptcy Court for (a) the Trustee to engage in pre-Effective Date administrative activities to prepare for the formation and operation of the Trust and (b) the Debtors to compensate the Trustee for such pre-Effective Date activities.

## Maximum Settlement Values and Medical Information Factors

The Maximum Settlement Values and Medical Information Factors have not been finalized, either for disclosure statement purposes or otherwise and therefore appear in brackets in the attached CRP. The Parties, however, will agree on preliminary Maximum Settlement Values and Medical Information Factors for disclosure statement purposes, giving consideration to the requirements of Section 2.3 of the CRP. In determining preliminary Maximum Settlement Values and Medical Information Factors, the Parties, to the fullest extent provided by any Orders entered by the Bankruptcy Court, shall have access to and may rely upon, among other things, the Debtors' various claims databases, including information provided in response to each Asbestos Claims Bar Date, the Settled Claims Bar Date, and the Debtors' questionnaires, and the forecasting models and estimates of the Debtors, the Garlock Committee, and the Garlock Future Claimants' Representative. Upon establishment of the Settlement Facility, the Trustee shall independently determine the Maximum Settlement Values and Medical Information Factors as provided by Section 2.3 of the CRP. The rights of all parties to seek modifications to the Order Granting in Part and Denying in Part Debtors' Motion for Leave to Serve Subpoena on Manville Trust (Docket No. 4721), or to oppose such modifications, are fully preserved.

## Claimant Advisory Committee

On or before the date the Disclosure Statement is finalized, the Garlock Committee and the Ad Hoc Coltec Committee, in their sole discretion, shall jointly designate the members of the Claimant Advisory Committee to the Trust.

## Solicitation and Voting

The procedures for solicitation and voting on the Plan and the form and substance of the ballots to be used in such solicitation and voting shall be subject to the approval of each of the Parties, which approval shall not be unreasonably withheld. The Parties are Plan proponents and have consented to this Term Sheet. As such, the Garlock Future Claimants' Representative and the Ad Hoc Coltec Future Claimants' Representative do not assert a need for them to cast a ballot or vote on the Plan. The question of whether a future claimants' representative has the legal capacity or authority to vote on a plan has been disputed by cross-motions for summary judgment in prior proceedings relating to a previous plan. Those motions, as well as cross-motions for summary judgment on questions of impairment and confirmation of a non-524(g) plan shall be withdrawn subject to the mutual right to refile them if the Plan is not confirmed or does not go effective following entry of a final non-appealable order confirming the Plan. The Parties' agreement to proceed in this fashion with respect to the Plan contemplated by this Term Sheet is not intended as an admission or concession by any Party, nor as precedent binding in any other context.

## **Conditions**

Confirmation of the Plan and the occurrence of the Effective Date will be subject to the following conditions:

- This Term Sheet will have been implemented by a complete set of plan documents, including the Plan, approved by each of the Parties, which approval shall not be unreasonably withheld.

- The Bankruptcy Court will have entered, and the District Court will have issued or affirmed, findings of facts and conclusions of law and orders confirming the Plan and granting the injunctions described in this Term Sheet, including the Asbestos Channeling Injunction; *provided, however*, that the Plan will not be confirmed unless the Bankruptcy Court and District Court are satisfied that (1) the Garlock Future Claimants' Representative and Ad Hoc Coltec Future Claimants' Representative have adequately represented the collective interests of holders of future GST Asbestos Claims and future Coltec Asbestos Claims, and (2) the Garlock Future Claimants' Representative, the Ad Hoc Coltec Future Claimants' Representative, the Garlock Committee and its members, and the Ad Hoc Coltec Committee and its members (before and after merger with the Garlock Committee) have each fulfilled their responsibilities and fiduciary duties to their respective constituencies in connection with the Plan. Notwithstanding the foregoing, the findings, conclusions, and orders shall be in form and substance reasonably satisfactory to the Parties, and, unless waived by the Parties, such orders will have become final and unappealable.

Unless waived in writing by Debtors and EnPro, confirmation of the Plan and the occurrence of the Effective Date will also be subject to the following conditions:

- EnPro and Debtors will have obtained such amendments, consents and waivers as may be necessary under any agreements binding on them or any subsidiary to permit the transactions and actions contemplated by the Term Sheet.

- (1) Debtors, EnPro, and Garlock of Canada Ltd shall have entered into a written agreement with the Canadian provincial workers' compensation boards (the "Provincial Boards") resolving all remedies the Provincial Boards may possess under Canadian law or in the United States under U.S. law against Garlock of Canada Ltd, Debtors, or any Affiliate of Debtors and providing that the Provincial Boards shall deliver releases for all pending asbestos-related claims and a covenant not to bring suit or otherwise seek recovery in the future from Garlock of Canada Ltd, GST, Coltec, EnPro, the Trust, or any of Debtors' or EnPro's other Affiliates for any present or future asbestos-related claim; (2) Debtors shall have moved for entry of an order that approves such agreement and shall have given parties in interest, including the Garlock Future Claimants' Representative, notice and an opportunity to object to such motion, and notwithstanding anything to the contrary in this Term Sheet, all rights of all persons with respect to such motion are preserved, (3) the Bankruptcy Court shall have entered an order that either approves such agreement or concludes that bankruptcy court approval is not necessary and such order shall have become a final order; and (4) the parties to such agreement shall consummate such agreement on the Effective Date.

- EnPro shall have received a private letter ruling from the IRS recognizing the Trust(s) as "designated settlement funds" or "qualified settlement funds" under section 468B of the Internal Revenue Code, and any related regulations (or, if such a ruling is not available, a legal opinion satisfactory in form and substance to EnPro that the IRS will so recognize the Trust).

The Parties reserve the right to add, by written agreement signed by all the Parties, other and further conditions to confirmation or to the occurrence of the Effective Date.

## Amendments

The provisions hereof and the attachments hereto may be modified with the written consent of all Parties.

## Confidentiality

The Parties and their respective members, lawyers, professionals, agents and Representatives shall keep this Term Sheet and the settlement agreement embodied herein confidential until after EnPro issues a written public announcement of the settlement described in this Term Sheet.

## Counterparts

This Term Sheet may be executed in any number of counterparts and by different Parties on separate counterparts (including by facsimile or portable document format (pdf)), and each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute one and the same instrument.

## Preservation of Parties' Rights

Disclosure Statement - Ex. 2

If the Bankruptcy Court declines to confirm the Plan, or if the Effective Date fails to occur for any other reason, the rights and arguments of all Parties, creditors, and interest holders are fully preserved.

[*Signatures of the Parties appear on the following pages*]

Disclosure Statement - Ex. 2

AGREED TO AND ACCEPTED BY:

**ENPRO INDUSTRIES, INC.:**

By: _____
Name: JOHN MILTON CHILDRESS
Title: SENIOR VICE PRESIDENT ; CHIEF FINANCIAL OFFICER
Date: 3/17/2016

**COLTEC INDUSTRIES INC:**

By: _____
Name: Robert S. McLean
Title: Vice Chairman and Secretary
Date: 3/17/2016

**GARLOCK SEALING TECHNOLOGIES LLC:**

By: _____
Name: Eric A. Vaillancourt
Title: President
Date: _____

**GARRISON LITIGATION MANAGEMENT GROUP, LTD.:**

By: _____
Name: Elizabeth Barry
Title:   General Manager, Vice President, Director
        of Finance, Treasurer and Assistant Secretary
Date: _____

**[SIGNATURES CONTINUED ON NEXT PAGE]**

Disclosure Statement - Ex. 2

AGREED TO AND ACCEPTED BY:

**ENPRO INDUSTRIES, INC.:**

By:_____
Name:_____
Title: _____
Date:_____

**COLTEC INDUSTRIES INC:**

By:_____
Name: Robert S. McLean
Title: Vice Chairman and Secretary
Date:_____

**GARLOCK SEALING TECHNOLOGIES LLC:**

By: _____
Name: Eric A. Vaillancourt
Title: President
Date:____3/17/2016_____

**GARRISON LITIGATION MANAGEMENT
GROUP, LTD.:**

By:_____
Name: Elizabeth Barry
Title:   General Manager, Vice President, Director
         of Finance, Treasurer and Assistant Secretary
Date:_____

**[SIGNATURES CONTINUED ON NEXT PAGE]**

- 12 -

AGREED TO AND ACCEPTED BY:

**ENPRO INDUSTRIES, INC.:**

By:_____
Name: _JOHN MILTON CHILDRESS_
Title: _SENIOR VICE PRESIDENT ; CHIEF FINANCIAL OFFICER_
Date:_____


**COLTEC INDUSTRIES INC:**

By:_____
Name: Robert S. McLean
Title: Vice Chairman and Secretary
Date:_____


**GARLOCK SEALING TECHNOLOGIES LLC:**

By:_____
Name: Eric A. Vaillancourt
Title: President
Date:_____


**GARRISON LITIGATION MANAGEMENT GROUP, LTD.:**

By: _Elizabeth Barry_
Name: Elizbeth Barry
Title:   General Manager, Vice President, Director
        of Finance, Treasurer and Assistant Secretary
Date:___3/17/2016___


**[SIGNATURES CONTINUED ON NEXT PAGE]**

**THE ANCHOR PACKING COMPANY:**

By: _____

Name: Christopher D. Drake

Title: Vice President, Secretary and Assistant Treasurer

Date: _____3/17/2016_____

**[SIGNATURES CONTINUED ON NEXT PAGE]**

Disclosure Statement - Ex. 2

**GARLOCK FUTURE CLAIMANTS' REPRESENTATIVE**

Joseph W. Grier, III
Date: _____3/17/16_____


**AD HOC COLTEC FUTURE CLAIMANTS' REPRESENTATIVE**

Joseph W. Grier, III
Date: _____3/17/16_____


**[SIGNATURES CONTINUED ON NEXT PAGE]**

Disclosure Statement - Ex. 2

**OFFICIAL COMMITTEE OF ASBESTOS
PERSONAL INJURY CLAIMANTS
(GARLOCK):**

By: Trevor W. Swett III
Caplin & Drysdale, Chartered
Counsel to the Official Committee of Asbestos Personal Injury Claimants
Date: 3/17/16

**AD HOC COMMITTEE OF ASBESTOS PERSONAL
INJURY CLAIMANTS (COLTEC):**

By: Trevor W. Swett III
Caplin & Drysdale, Chartered
Counsel to the Ad Hoc Committee of Asbestos Personal Injury Claimants (Coltec)
Date: 3/17/16

Disclosure Statement - Ex. 2

Definitions

The following definitions apply to the foregoing Term Sheet:

1.  **"Affiliate"** means as to any specified Entity: (i) any other Entity that, directly or indirectly through one or more intermediaries or otherwise, controls, is controlled by, or is under common control with, the specified Entity, and (ii) any Entity that is an "affiliate" (within the meaning of Bankruptcy Code § 101(2)) of the specified Entity. As used in clause (i) of this definition, "control" shall include the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of an Entity (whether through ownership of stock of that Entity, by contract, or otherwise).

2.  **"Asbestos Channeling Injunction"** means the order(s) issued or affirmed by the District Court, in accordance with and pursuant to Bankruptcy Code §§ 524(g) and 105(a), permanently and forever staying, restraining, and enjoining any Entity from taking any action against any Asbestos Protected Person for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Coltec Asbestos Claims or GST Asbestos Claims, all of which shall be channeled to the Trust for resolution as set forth in the claims resolution procedures (other than actions brought to enforce any right or obligation under the Plan or any agreement or instrument between the Debtors or reorganized Debtors, on the one hand, and the Trust, on the other hand, entered into pursuant to the Plan). The Asbestos Channeling Injunction is further described in the Term Sheet.

3.  **"Asbestos Protected Person"** means any of the following:

    (a)    the Debtors;

    (b)    the Reorganized Debtors;

    (c)    any current or former Affiliate of each of the Debtors or Reorganized Debtors;

    (d)    any Entity that, pursuant to the Plan or otherwise on or after the Effective Date, becomes a direct or indirect transferee of, or successor to, any of the Debtors, the Reorganized Debtors, the Affiliates, or any of their respective assets, to the extent that any liability is asserted to exist as a result of its becoming such a transferee or successor;

    (e)    any Entity that is alleged to be directly or indirectly liable for a GST Asbestos Claim or a Coltec Asbestos Claim by reason of such Entity's (i) ownership of a financial interest in a Debtor, a past or present Affiliate of a Debtor, or a predecessor in interest of a Debtor, (ii) involvement in the management of a Debtor or a predecessor in interest of a Debtor, or service as an officer, director or employee of a Debtor or a related party within the meaning of section 524(g), or (iii) involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition, of a Debtor or a related party within the meaning of section 524(g), including but not limited to involvement in the Coltec Restructuring;

(f)    any Entity that makes a loan to any of the Reorganized Debtors, their Affiliates, the Trust, or to a successor to, or transferee of any of the respective assets of, the Debtors, the Reorganized Debtors, their Affiliates, or the Trust, to the extent that any liability is asserted to exist as a result of its becoming such a lender or to the extent that any encumbrance of assets made in connection with such a loan is sought to be invalidated, upset, or impaired, in whole or in part, as a result of its being such a lender;

(g)    each future Affiliate of each of the Debtors, the Reorganized Debtors and the Affiliates of the Debtors or the Reorganized Debtors (but, in any case, only to the extent that any liability is asserted to exist as a result of its being or becoming such an Affiliate);

(h)    any Entity that is alleged to be directly or indirectly liable for a GST Asbestos Claim or Coltec Asbestos Claim by reason of such Entity's provision of insurance to a Debtor, predecessor of a Debtor or predecessor of an Affiliate of a Debtor, or Affiliate of a Debtor to the extent the Debtors identify such Entity as an Asbestos Protected Person in the Asbestos Channeling Injunction on or before entry of the Asbestos Channeling Injunction;

(i)    each of the Representatives of each of the Debtors, the Reorganized Debtors, and the Affiliates, but only to the extent that any liability is asserted to exist as a result of the Representative being, or acting in the capacity as, a Representative; or

(j)    Coltec's Fairbanks Morse Engine division and former Fairbanks Morse Pump and Quincy Compressor divisions and their successor Entities (but, in any case, only in their respective capacities as successors) and any other Entity protectable under § 524(g) who must be protected to afford complete protection from all GST Asbestos Claims and Coltec Asbestos Claims to Debtors and their Affiliates. **[Note: As diligence continues, Debtors reserve right to add and name as Asbestos Protected Persons in the Channeling Injunction other current or former EnPro Affiliates that qualify for protection under sect. 524(g) and to reference for disclosure purposes any present or former divisions of such qualifying Affiliates.]**

4.    **"Claim"** means a claim (as defined in Bankruptcy Code § 101(5)) against any Entity including any right to: (a) payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

5.    **"Coltec Asbestos Claim"** means a Claim or Demand against Coltec or any Asbestos Protected Person, whether or not such Claim or Demand is reduced to judgment, liquidated, unliquidated, fixed, settled, contingent, matured, unmatured, disputed,

undisputed, legal, equitable, secured, or unsecured, whether or not the facts of or legal bases therefor are known or unknown, whether the disease or condition upon which the claim is based had manifested, become evident, or been diagnosed before or after the Confirmation Date, and whether in the nature of or sounding in tort, or under contract (including settlement agreements alleged to be enforceable under applicable law), warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity, or any other statute or theory of law, equity, admiralty, or otherwise (including piercing the corporate veil, alter ego, and similar theories), including (i) all related claims, debts, rights, remedies, liabilities, or obligations for compensatory (including general, special, proximate, or consequential damages, loss of consortium, lost wages or other opportunities, wrongful death, medical monitoring, or survivorship), punitive or exemplary damages, or costs or expenses, and (ii) all cross-claims, contribution claims, subrogation claims, reimbursement claims, or indemnity claims, in each case for, based on, arising out of, resulting from, attributable to, or under the laws of any jurisdiction, by reason of, in whole or in part, directly or indirectly:

(a) death, wrongful death, personal or bodily injury (whether physical, emotional, or otherwise), sickness, illness, ailment, disease, medical monitoring for increased risk, fear of or increased risk of any of the foregoing, loss of consortium, lost wages or other opportunities, survivorship, or other personal injuries (whether physical, emotional, or otherwise) or other damages (including medical, legal, and other expenses or punitive damages), caused or allegedly caused by, based on or allegedly based on or arising or allegedly arising from or attributable to, directly or indirectly, in whole or in part, acts, omissions, or conduct of Coltec or any other Entity for whose products or operations Coltec allegedly has liability or is otherwise liable, including any past or present Affiliate, predecessor, successor, or assign of Coltec; and

(b) the presence of, exposure to, or contact with, at any time, asbestos or any products or materials containing asbestos that were mined, processed, consumed, used, stored, manufactured, fabricated, constructed, designed, engineered, sold, assembled, supplied, produced, specified, selected, distributed, released, maintained, repaired, purchased, owned, occupied, serviced, removed, replaced, disposed of, installed by, or in any way marketed by, or on behalf of, (i) Coltec, or (ii) any other Entity (including any past or present Affiliate, predecessor, successor, or assign of Coltec) for whose products or operations Coltec allegedly has liability or is otherwise liable.

Notwithstanding the foregoing, the term "Coltec Asbestos Claim" does not include any Coltec Workers' Compensation Claim.

6. **"Coltec Workers' Compensation Claim"** means any Claim (a) for benefits under a state-mandated workers' compensation system, which a past, present, or future employee of Coltec or its predecessors is receiving, or may in the future have a right to receive and/or (b) for reimbursement brought by any insurance company or state agency as a result of payments made by such insurance company or state agency for any statutory benefit owed (but not paid) by Coltec to such employees under such a system and fees

- 3 -

and expenses that are incurred and reimbursable under any insurance policies or laws or regulations covering such statutory employee benefit claims. For the avoidance of doubt, Coltec Workers' Compensation Claims shall not include any right of such employee or any other Entity that exists outside of such state workers' compensation system.

7.    **"Confirmation Date"** means the date on which the Plan is confirmed.

8.    **"Demand"** means a "demand" as defined in section 524(g)(5) of the Bankruptcy Code against any Entity, including any present or future demand for payment that (a) was not a Claim in the chapter 11 cases prior to the Effective Date; (b) arises out of the same or similar conduct or events that gave rise to the Claims addressed by the Asbestos Channeling Injunction; and (c) pursuant to the Plan, shall be dealt with by the Trust.

9.    **"Effective Date"** means the first Business Day after the date on which all of the conditions precedent to the effectiveness of the Plan shall have been satisfied, or waived by written agreement of the Parties, or, if a stay of the confirmation order(s) is in effect on such date, the first Business Day after the expiration, dissolution, or lifting of such stay.

10.   **"Entity"** means any person, individual, corporation, company, limited liability company, firm, partnership, association, joint stock company, joint venture, estate, trust, business trust, unincorporated organization, any other entity, or any governmental unit or political subdivision thereof.

11.   **"Fee Dispute Remedy"** means (a) any objection to allowance or payment of compensation or expenses sought or requested by any professional employed in the Debtors' chapter 11 cases, including objections to final fee applications; or (b) any claim, motion, or request for reimbursement, penalties, cost-shifting, or sanctions in connection with any professional compensation or expenses that are disputed, or for which disgorgement is sought, in the Debtors' chapter 11 cases.

12.   **"Foreign Asbestos Claim"** means a GST Asbestos Claim or a Coltec Asbestos Claim held or asserted by an Entity that both is not a citizen or permanent resident of the United States and whose GST Asbestos Claim or Coltec Asbestos Claim is not based on alleged exposure to asbestos in the United States.

13.   **"GST Asbestos Claim"** means a Claim or Demand against GST or any Asbestos Protected Person, whether or not such Claim or Demand is reduced to judgment, liquidated, unliquidated, fixed, settled, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether or not the facts of or legal bases therefor are known or unknown, whether the disease or condition upon which the Claim or Demand is based had manifested, become evident, or been diagnosed before or after the Confirmation Date, and whether in the nature of or sounding in tort, or under contract (including settlement agreements alleged to be enforceable under applicable law), warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity, or any other statute or theory of law, equity, admiralty, or otherwise (including piercing the corporate veil, alter ego, and similar theories), including

- 4 -

(i) all related claims, debts, rights, remedies, liabilities, or obligations for compensatory (including general, special, proximate, or consequential damages, loss of consortium, lost wages or other opportunities, wrongful death, medical monitoring, or survivorship), punitive or exemplary damages, or costs or expenses, and (ii) all cross-claims, contribution claims, subrogation claims, reimbursement claims, or indemnity claims, in each case for, based on, arising out of, resulting from, attributable to, or under the laws of any jurisdiction, by reason of, in whole or in part, directly or indirectly:

(a) death, wrongful death, personal or bodily injury (whether physical, emotional, or otherwise), sickness, illness, ailment, disease, medical monitoring for increased risk, fear of or increased risk of any of the foregoing, loss of consortium, lost wages or other opportunities, survivorship, or other personal injuries (whether physical, emotional, or otherwise) or other damages (including medical, legal, and other expenses or punitive damages), caused or allegedly caused by, based on or allegedly based on or arising or allegedly arising from or attributable to, directly or indirectly, in whole or in part, acts, omissions, or conduct of GST or GLM or any other Entity for whose products or operations GST or GLM allegedly has liability or is otherwise liable, including any past or present Affiliate, predecessor, successor, or assign of GST or GLM; and

(b) the presence of, exposure to, or contact with, at any time, asbestos or any products or materials containing asbestos that were mined, processed, consumed, used, stored, manufactured, fabricated, constructed, designed, engineered, sold, assembled, supplied, produced, specified, selected, distributed, released, maintained, repaired, purchased, owned, occupied, serviced, removed, replaced, disposed of, installed by, or in any way marketed by, or on behalf of, (i) GST, (ii) GLM, or (iii) any other Entity (including any past or present Affiliate, predecessor, successor, or assign of GST or GLM) for whose products or operations GST or GLM allegedly has liability or is otherwise liable.

Notwithstanding the foregoing, the term "GST Asbestos Claim" does not include any GST Workers' Compensation Claim.

14. **"GST Recovery Action"** means any cause of action, claim, demand, or suit by Coltec, GST, GLM, or any of their respective Affiliates, predecessors, successors, or assigns against (a) attorneys or law firms representing, or who have represented, holders of asbestos-related claims, or (b) such holders of asbestos-related claims, which cause of action, claim, demand, or suit is based on, arises from, results from, or is attributable to any acts, omissions, or conduct by such attorneys, law firms, or holders, in connection with an action or suit to recover compensatory damages or other remedies for alleged asbestos-related injury or wrongful death before the Confirmation Date.

15. **"GST Recovery Action Settlement Package"** means the documents necessary to implement settlement of the pending GST Recovery Actions, which shall be reasonably agreeable to the plaintiffs and defendants in form and substance, and shall include without limitation (a) broad mutual releases extinguishing all the parties' respective claims, counterclaims, and countersuits against each other, asserted or unasserted

(including any claims by or against the parties' respective affiliates, predecessors, successors, or assigns), and including without limitation releases of each party's respective officers, directors, employees, lawyers (including corporate and outside counsel, past and present, specifically including David Glaspy and John Turlik), experts, witnesses, representatives, agents, successors and assigns and all other Asbestos Protected Persons; (b) stipulations of dismissals with prejudice by all parties; and (c) mutual non-disparagement agreements that will prohibit disparagement of each party and each party's respective officers, directors, employees, lawyers (including corporate and outside counsel, past and present, and specifically including David Glaspy and John Turlik), experts, witnesses, agents, and representatives.

16. **"GST Workers' Compensation Claim"** means any Claim (a) for benefits under a state-mandated workers' compensation system, which a past, present, or future employee of GST or GLM or their predecessors is receiving, or may in the future have a right to receive and/or (b) for reimbursement brought by any insurance company or state agency as a result of payments made by such insurance company or state agency for the statutory benefit owed (but not paid) by GST or GLM to such employees under such a system and fees and expenses that are incurred and reimbursable under any insurance policies or laws or regulations covering such statutory employee benefit claims.  For the avoidance of doubt, "GST Workers' Compensation Claim" shall not include any right of such employee or any other Entity that exists outside of such state workers' compensation system.

17. **"Petition Date"** means (a) as to GST and GLM, June 5, 2010, and (b) as to Coltec, the date on which it files its plan of reorganization contemplated by the Term Sheet.

18. **"Reorganized Debtor"** means any of GST, GLM, or Coltec from and after the Effective Date.

19. **"Representatives"** means with respect to any Entity, the past, present or future managers, directors, members, trustees, officers, employees, accountants (including independent registered public accountants), advisors, attorneys, consultants, or other agents of that Entity, or any other representatives or professionals of that Entity or of any of those directors, members, trustees, officers, employees, accountants (including independent registered public accountants), advisors, attorneys, consultants, or other agents.

20. **"United States"** means the United States of America and its political subdivisions, including states, territories, commonwealths, possessions, and now-existing compacts of free association (namely, those with the Federated States of Micronesia, the Marshall Islands, and Palau), as well as all ships and vessels of the United States Navy, the United States Coast Guard, or any other branch of the armed services of the United States of America.