# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**Charlotte Division**

| | |
|---|---|
| IN RE: <br><br> OLDCO, LLC, SUCCESSOR BY MERGER TO COLTEC INDUSTRIES INC, <br><br> Debtor. | Case No. 17-BK-30140 <br><br> Chapter 11 <br><br> [Joint Administration Pending][1] |

**DECLARATION OF GARLAND S. CASSADA IN SUPPORT OF DEBTOR'S APPLICATION FOR ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF ROBINSON, BRADSHAW & HINSON, P.A. AS SPECIAL CORPORATE AND LITIGATION COUNSEL**

I, Garland S. Cassada, hereby declare that the following is true and correct:

1. I am a shareholder of the firm Robinson, Bradshaw & Hinson, P.A., a professional corporation ("RBH"). RBH maintains offices for the practice of law at 101 North Tryon Street, Suite 1900, Charlotte, North Carolina 28246; 1450 Raleigh Rd, Suite 215 Chapel Hill, North Carolina 27517; and at 140 East Main Street, Suite 420, Rock Hill, South Carolina 29731.

2. I submit this Declaration in support of the application of the above-captioned debtor and debtor-in-possession ("Coltec")[2] for an Order authorizing the employment and retention of RBH as Special Corporate and Litigation Counsel to Coltec (the "Application") in the Coltec Bankruptcy Case.

---

[1] OldCo, LLC has moved to have its chapter 11 case jointly administered with the chapter 11 cases of *In re Garlock Sealing Technologies LLC* (10-BK-31607), *In re Garrison Litigation Management Group, Ltd.* (10-BK-31608) and *In re The Anchor Packing Company* (10-BK-31606), with *In re Garlock Sealing Technologies LLC* serving as the lead case.

[2] For convenience, the term "Coltec" in this Declaration refers to OldCo, LLC's predecessor, Coltec Industries Inc, when referring to events prior to the Coltec Restructuring and refers to OldCo, LLC when referring to events subsequent to the Coltec Restructuring.

9391369

3.  To ascertain RBH's "connections," as that term is used in Rule 2014 of the Federal Rules of Bankruptcy Procedure, with Coltec and other parties in interest, RBH staff personnel, under my direction and control, performed a search of a computerized database containing the names and matter descriptions of all current and previous representations handled by RBH. The search request applied the list of potentially interested parties received from Coltec, which included significant creditors of Coltec, attorneys, accountants, and financial advisors known by me to have any association with Coltec, and other parties in interest in the Coltec Bankruptcy Case.

4.  Based upon the results of the review described above, as well as all knowledge I have apart from those results, RBH, to the best of my knowledge and belief, after what I consider to be an appropriate inquiry, does not hold or represent any interest adverse to Coltec's estate with respect to any matter on which RBH is proposed to be retained.

5.  Disclosure with respect to any "connections" RBH has or has had with (v) Coltec, (w) its creditors, (x) any other parties in interest, (y) any of their respective attorneys and accountants known to me, and (z) the Bankruptcy Administrator, insofar as I know or have been able to ascertain after reasonable inquiry, is set forth below:

    (a)  RBH has represented Coltec and its ultimate parent company, EnPro Industries, Inc. ("EnPro"), on a variety of corporate, tax, securities, and litigation matters for approximately 15 years. In addition, RBH has represented Garlock Sealing Technologies LLC, Garrison Litigation Management Group, Ltd., and The Anchor Packing Company (collectively, the "Garlock Debtors"), three affiliates of Coltec, as well as other subsidiaries of EnPro in a variety of similar matters since approximately 2002. Further details of RBH's connections to EnPro, Coltec, and the Garlock Debtors are

2

9391369

included in the separate Declaration of Stephen M. Lynch filed contemporaneously herewith.

(b)     Since 2002, RBH has advised Coltec with respect to the defense and evaluation of asbestos-related product liability claims and in developing and implementing strategies to manage the defense and resolution of asbestos-related products liability claims against Coltec and its affiliates. RBH's principal asbestos litigation-related engagements by Coltec over this period concerned providing on-going counsel concerning the evaluation of asbestos-related products liability claims, the assertion of defenses to such claims, and strategies available for obtaining a global, permanent settlement of present and future asbestos-related products liability claims. More recently, RBH has engaged and worked with professionals to evaluate and estimate the probable and reasonably estimable future expenditures of Coltec for asbestos-related product liability claims.

(c)     RBH has additionally represented and advised Coltec, as well as its former affiliates, in matters of corporate taxation and borrowing, including the establishment of, amendment to, and modification of credit facilities to Coltec, EnPro and their affiliates.

(d)     I, Garland S. Cassada, the other shareholders of RBH, attorneys who are "of counsel" to RBH, and associates of RBH:

(i)     have represented in the past and/or now represent and may in the future represent—in each case in matters wholly unrelated to Coltec and its chapter 11 case—creditors or known equity security holders (or their affiliates known to me) of Coltec or other parties in interest, including the entities listed on Exhibit 1 attached to this Declaration; and

(ii) may have appeared in other cases or matters unrelated to Coltec where Coltec's creditors, known equity security holders or other parties in interest (or their affiliates known to me) were involved, although any such matter was wholly unrelated to Coltec.

(e) RBH has represented and counseled, and continues to represent and counsel, other defendants of asbestos-related claims from time to time concerning the evaluation of asbestos-related products liability claims, asserting defenses to such claims, and developing business and legal strategies to address such claims. RBH expects to provide such representation and counsel to additional new clients in the future that are defendants in asbestos cases. None of such past, present, or future representations presents a circumstance which causes RBH to hold or represent an interest adverse to Coltec's estate with respect to the matters upon which RBH is proposed to be retained. Moreover, to the best of my knowledge, none of such defendants has ever made a claim against Coltec nor has Coltec made a claim against any such defendants that falls within the scope of the matters upon which RBH is proposed to be retained.

(f) RBH has represented and continues to represent SPX Corporation and its successor SPX Flow, Inc. (collectively, "SPX") in various corporate and litigation legal matters. SPX has sometimes been named among numerous other companies as a co-defendant with Coltec in asbestos personal injury cases. RBH has never represented Coltec or SPX in a dispute against the other with respect to any common asbestos claims and, to the best of my knowledge, neither has made a claim against the other related to asbestos claims.

9391369

(g)  SPX has a wholly-owned subsidiary, Fairbanks Morse Pump Corporation ("FMPC") that in 1985 purchased the assets of the former Fairbanks Morse Pump business division of Coltec. Under the purchase agreement, FMPC assumed liability for any asbestos product liability claims related to Fairbanks Morse Pump's products and received an assignment of Coltec's rights to insurance coverage for any such claims under policies issued to Coltec. After the asset sale, Coltec and the Garlock Debtors continued to have claims against the same Coltec policies to cover non-Fairbanks Morse Pump asbestos claims.  In 1994, FMPC sold the assets of the Fairbanks Morse Pump business to Pentair, Inc., and FMPC retained the liabilities associated with asbestos products previously manufactured by the pump business.

Prior to Garlock's June 5, 2010 chapter 11 petition date, FMPC, Coltec and Pentair were sued in the tort system by Fairbanks Morse Pump asbestos claimants. Garrison defended those lawsuits in order to secure Garlock's continued access to the shared insurance coverage. Garrison regularly obtained the dismissal of such claims when it settled GST Asbestos Claims, and Garrison made claims for reimbursement of all or a portion of the costs of resolving such claims against the shared insurance. Upon consummation of the Joint Plan, however, Garlock and Coltec will be discharged of any further liability for Asbestos Claims and permanently protected from such claims by the Asbestos Channeling Injunction. Unless the Joint Plan is amended, FMPC will not be discharged or protected under the Asbestos Channeling Injunction but FMPC should have claims to the unexhausted Coltec policies that cover Fairbanks Morse Pump asbestos claims. Coltec may have an indemnity claim against FMPC for the portion of Coltec's aggregate contribution of $110 million to the Asbestos Trust that is attributable to

5

Fairbanks Morse Pump claims. In addition, Coltec has rights to coverage for its contributions to the Trust under some of the same remaining Coltec insurance policies in which FMPC has an interest. RBH has never represented FMPC in any matter.

RBH's previous and continuing representation of SPX disclosed herein does not reflect any matter in which RBH represents or holds any interest adverse to Coltec or its estate with respect to the matters upon which RBH is proposed to be employed by Coltec.

(h)    Shareholders, attorneys who are "of counsel" and associates of RBH own equity or debt securities in significant creditors and/or known equity security holders (or their affiliates known to me) of Coltec, including the following:

EnPro Industries, Inc.

Bank of America Corporation

However, I have been advised that no individual owns sufficient equity or debt securities of any such creditor or equity security holder or party in interest to influence their respective affairs in any way, and that the value or the ability to dispose of such securities would not be affected in any discernible way by any event in the Coltec Bankruptcy Case.

(i)    As of April 26, 2010, Robert S. McLean, a former shareholder of RBH, became employed by Coltec's ultimate parent, EnPro, as Vice President, Legal.  Mr. McLean is now General Counsel, Chief Administrative Officer and Secretary of EnPro.

(j)    Since 2010, RBH has represented the Garlock Debtors as Special Corporate and Litigation Counsel in their chapter 11 cases.

(k)    As mentioned above, RBH has counseled EnPro and Coltec regarding Coltec's strategic alternatives to address and resolve outstanding and future asbestos

6

claims. In this regard, RBH provided services to EnPro and Coltec in the negotiation and documentation of the comprehensive settlement (the "Comprehensive Settlement") under which the Garlock Debtors, Coltec, and EnPro reached an agreement with representatives of holders of asbestos claimants for a permanent resolution of all present and future GST Asbestos Claims and Coltec Asbestos Claims (as each is defined in the Joint Plan).[3]

(l)     RBH also provided services necessary to implement the Comprehensive Settlement, including services related to the corporate restructuring (the "Coltec Restructuring") by Coltec substantially to the effect described in the Disclosure Statement for the Joint Plan which representatives of holders of asbestos claims agreed was an appropriate and necessary step to facilitate the implementation of the agreements contained in the Comprehensive Settlement.

(m)    To facilitate the Comprehensive Settlement, RBH also provided services related to (i) preparation of many of the documents necessary for Coltec to file its chapter 11 case in this Court and (ii) preparation of provisions and plan documents addressing Coltec Asbestos Claims as part of the Joint Plan.

(n)     RBH also has advised and counseled Coltec with respect to strategies for obtaining insurance recoveries related to its contributions under the Joint Plan.

(o)     RBH further provided services related to obtaining amendments, consents and waivers necessary under agreements binding on EnPro, Coltec and their subsidiaries to permit the transactions and actions contemplated by the Comprehensive Settlement, including an amendment of the Amended and Restated Credit Agreement, dated as of August 28, 2014, among EnPro, Coltec, the guarantors party thereto, the lenders party

---

[3] Any capitalized terms not defined herein shall have the meaning attributed to them in the Application.

9391369

thereto and Bank of America, N.A., as Administrative Agent, to permit the "Coltec Restructuring" and consummation of the Joint Plan.

(p)    In 2016, RBH represented EnPro, Coltec, and certain affiliates in the consummation of the Coltec Restructuring that resulted in the formation of EnPro Holdings, Inc. and OldCo, LLC, Coltec Industries Inc's merger into OldCo, LLC, and the reorganization of Coltec Industries Inc's business divisions.

6.    To the best of my knowledge, information and belief, there are no other instances in which RBH has, has had or might be deemed to have or have had "connections" with Coltec, its creditors, its known equity security holders or other parties in interest.  None of the connections disclosed above, in my view, results in RBH representing or holding any interest adverse to Coltec or its bankruptcy estate with respect to the matters on which RBH is to be employed.

7.    It is possible, despite reasonable efforts to discover "connections" as described above, that RBH has other connections with creditors, equity security holders or parties in interest not listed on Exhibit 1 or otherwise disclosed in this Declaration.  I am not aware, however, of any connections not disclosed, and I am confident that if there are any such other connections, they are unrelated to the Coltec Bankruptcy Case, and would have no effect on RBH's representation of Coltec during the pendency of its chapter 11 case.  If I become aware of additional connections, I will promptly supplement this Declaration.

8.    Subject to this Court's approval, RBH will charge Coltec for its legal services on an hourly basis in accordance with ordinary and customary rates for bankruptcy court-authorized engagements in effect on the date services are rendered, and submits that such rates are reasonable.  In the normal course of business, RBH revises its hourly rates from time to time.

9391369

Set forth below are the ranges of standard hourly rates that RBH presently charges for the legal services of its professionals:

| | |
|---|---|
| Shareholders | $320.00 to $690.00 |
| Of Counsel | $345.00 to $650.00 |
| Associates | $215.00 to $425.00 |
| Legal Assistants | $110.00 to $240.00 |

Because the fees (a) are based on hourly rates and will correspond to the degree of effort expended on Coltec's behalf, and (b) are RBH's usual and customary rates for legal services of the kinds that have been provided to Coltec, I believe that these rates, and the terms and conditions of RBH's employment, are reasonable.

9. The RBH attorneys and legal assistants who are likely to perform services for Coltec during the pendency of its chapter 11 case, and their standard hourly rates, effective as of the date of this Declaration, are:

| Attorney | Rate |
|---|---|
| Garland S. Cassada | $565.00 |
| Herman Spence | $530.00 |
| David M. Schilli | $495.00 |
| Jonathan C. Krisko | $425.00 |
| Andrew W.J. Tarr | $425.00 |
| Richard C. Worf | $400.00 |
| Ty E. Shaffer | $330.00 |
| Stuart L. Pratt | $290.00 |
| Kevin R. Crandall | $215.00 |
| Satyra L. Riggins | $175.00 |

10. As the Coltec Bankruptcy Case proceeds, RBH's representation of Coltec may require the active participation of RBH attorneys and legal assistants in addition to the ones listed above. To the fullest extent possible, attorneys having the requisite expertise who already

9

9391369

have knowledge with respect to the matters involved will be assigned to represent Coltec so that duplication of effort is avoided. Consistent with the ranges of hourly rates described above, the hourly rates of the other RBH shareholders, "of counsel," associates and legal assistants who hereafter may represent Coltec may be higher or lower than those of the persons listed above.

11. In addition to the hourly rates set forth above, RBH customarily charges its clients for all ancillary services provided and expenses incurred, including photocopying, long distance telephone calls, facsimile transmissions, messengers, courier mail, computer and data bank time, secretarial overtime, overtime meals, travel, lodging, meal charges for business meetings, postage, printing, transcripts, filing fees, document retrieval, and similar items. Subject to this Court's order(s) with respect to the reimbursement of expenses, RBH will be seeking reimbursement of all such ancillary services provided and expenses incurred on behalf of Coltec; provided, however, that RBH has agreed to charge one-half (½) time for travel time incurred in providing services to Coltec.

12. During the twelve (12) months before the Coltec Petition Date, RBH received from Coltec a total of $427,207.02 in payment for services rendered to and expenses incurred for Coltec. Coltec paid $138,168.18 of that total amount more than ninety (90) days before the Coltec Petition Date and before providing RBH a retainer of $200,000.00 on November 8, 2016. After receiving the retainer, RBH was paid for services rendered to and expenses incurred for Coltec by drawing down the retainer, which it did on December 7, 2016, in the amount of $25,505.94, and then again on December 13, 2016, in the amount of $63,909.20. Coltec replenished the retainer with a payment of $89,415.14 on January 12, 2017. On January 27, 2017, RBH drew down the retainer in the amount of $199,618.70 to pay for services rendered to and expenses incurred for Coltec before the Coltec Petition Date. The balance of the retainer as

of the Coltec Petition Date is $381.30. RBH will credit any remaining amounts of the advance payment against amounts awarded to RBH by this Court with respect to applications for compensation and reimbursement of expenses submitted by RBH to and approved by this Court. RBH incurred fees and expenses during the period January 27 through January 29, 2017 in the amount of $25,907.00, incident to and necessary in connection with preparation for the filing of the Coltec Bankruptcy Case, which fees and expenses will be included in its first application for fees and expenses as a necessary preparation for filing the Coltec Bankruptcy Case.

13. The following table contains the amounts and dates on which RBH was paid by Coltec for services rendered and for reimbursement of expenses during the 12-month period before the Coltec Petition Date:

| *Date Received* | *Type of Payment* | *Payment Amount* |
|---|---|---|
| 10/27/2016 | Coltec Payment | $138,168.18 |
| 12/07/2016 | Draw on Retainer | $25,505.94 |
| 12/13/2016 | Draw on Retainer | $63,909.20 |
| 01/27/2017 | Draw on Retainer | $199,618.70 |

14. No promises have been received by RBH, nor any shareholder, any attorney who is "of counsel" to RBH, or any associate of RBH, as to compensation in connection with the Coltec Bankruptcy Case other than in accordance with the provisions of the Bankruptcy Code.

15. Neither RBH, nor any shareholder, attorney who is "of counsel" to RBH, or any associate of RBH, has any agreement with any other entity to share with such entity any compensation received by RBH in connection with the Coltec Bankruptcy Case or in connection with RBH's representation of Coltec before the Coltec Petition Date.

16. By reason of the foregoing, I believe that RBH is eligible for employment and retention by Coltec pursuant to section 327(e) of the Bankruptcy Code and the applicable Bankruptcy Rules.

9391369

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

This the 31st day of January, 2017.

_____
Garland S. Cassada

# EXHIBIT 1

**List of Creditors, Equity Security Holders, or Other Parties in Interest RBH Has Represented or May Represent in Matters Wholly Unrelated to the Coltec Chapter 11 Case and Unrelated to the Employment of RBH Pursuant to 11 U.S.C. § 327(e)**

United Technologies Corporation

Duke Energy

Charlotte-Mecklenburg Hospital Authority

Travelers Insurance Company

Pacific Life Insurance Company

Aetna Life Insurance Company

The Prudential Insurance Co. of America

SPX Corporation

SPX Flow, Inc.

9391369