```
 1                    UNITED STATES BANKRUPTCY COURT
                  WESTERN DISTRICT OF NORTH CAROLINA
 2                         CHARLOTTE DIVISION

 3   IN RE:                      :     Case No. 10-31607

 4   GARLOCK SEALING TECHNOLOGIES :     Chapter 11
     LLC, ET AL.,
 5                               :     Charlotte, North Carolina
          Debtors,                     Wednesday, February 1, 2017
 6                               :     9:30 a.m.

 7   : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

 8   OLDCO, LLC, SUCCESSOR BY    :     Case No. 17-30140
     MERGER TO COLTEC INDUSTRIES,
 9   INC.,                       :     Chapter 11

10        Debtor.                :

11   : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

12
                        TRANSCRIPT OF PROCEEDINGS
13             BEFORE THE HONORABLE J. CRAIG WHITLEY,
                   UNITED STATES BANKRUPTCY JUDGE
14
     APPEARANCES:
15
     For Debtor, OldCo, LLC       Robinson, Bradshaw & Hinson, P.A.
16   (Coltec Industries):         BY:  DAVID M. SCHILLI, ESQ.
                                       ANDREW W.J. TARR, ESQ.
17                                     JONATHAN C. KRISKO, ESQ.
                                  101 N. Tryon Street, Suite 1900
18                                Charlotte, NC  28246

19                                Parker Poe
                                  BY:  DANIEL G. CLODFELTER, ESQ.
20                                401 South Tryon St., Suite 3000
                                  Charlotte, NC  28202
21
     For the Bankruptcy           ALEXANDRIA P. KENNY, ESQ.
22   Administrator:               402 West Trade Street, Suite 200
                                  Charlotte, NC  28202
23
     For Motley Rice Canadian     Motley Rice LLC
24   Clients in Garlock Case:     BY:  NATHAN D. FINCH, ESQ.
                                  3333 K St. NW, Suite 450
25                                Washington, DC  20007
```

```
 1   APPEARANCES (continued):

 2   For Debtor, Garlock Sealing      Rayburn Cooper & Durham, P.A.
     Technologies, LLC, et al.:       BY:  JOHN R. MILLER, JR., ESQ.
 3                                    227 West Trade St., Suite 1200
                                      Charlotte, NC  28202
 4
                                      Robinson, Bradshaw & Hinson, P.A.
 5                                    BY:  JONATHAN C. KRISKO, ESQ.
                                      101 N. Tryon Street, Suite 1900
 6                                    Charlotte, NC  28246

 7   For Future Asbestos             Orrick Herrington
     Claimants in Garlock and        BY:  JONATHAN P. GUY, ESQ.
 8   OldCo Cases:                          GREGORY BEAMAN, ESQ.
                                      1152 15th Street, N.W.
 9                                    Washington, DC  20005

10                                    Grier, Furr & Crisp, P.A.
                                      BY:  JOSEPH W. GRIER, III, ESQ.
11                                    101 N. Tryon Street, Suite 1240
                                      Charlotte, NC  28246
12
     For Official Committee          Caplin & Drysdale, Chartered
13   of Asbestos Personal            BY:  TREVOR W. SWETT, ESQ.
     Injury Claimants in Garlock          JEFFREY A. LIESEMER, ESQ.
14   and OldCo Cases:                One Thomas Circle, NW, Suite 1100
                                      Washington, DC  20005
15
                                      Moon Wright & Houston, PLLC
16                                    BY:  TRAVIS W. MOON, ESQ.
                                      227 West Trade Street, Suite 1800
17                                    Charlotte, NC  28202

18


19
     Audio Operator:                 COURT PERSONNEL
20

21   Transcript prepared by:         JANICE RUSSELL TRANSCRIPTS
                                      1418 Red Fox Circle
22                                    Severance, CO  80550
                                      (757) 422-9089
23                                    trussell31@tdsmail.com


24
     Proceedings recorded by electronic sound recording; transcript
25   produced by transcription service.
```

3

1                        P R O C E E D I N G S

2              THE COURT:  Start with an administrative question.

3         We have what are at the moment two separate cases on

4    the docket today with some joint motions, some separate

5    motions.  The clerk had the question of how to have a decent

6    recording for you this morning.  As you know, we electronically

7    record and offer playback function on, on our hearings and we'd

8    rather a person wanting to hear some of this not have to listen

9    to three or four hours of talk.

10             So the question I have before we announce appearances

11   is a batting order question.  What would y'all like to do first

12   or which case?

13             Mr. Clodfelter?

14             MR. CLODFELTER:  Your Honor, I'm Dan Clodfelter,

15   Parker Poe Adams & Bernstein, appearing in an unexpected role

16   as counsel for the pre-petition debtor, OldCo, LLC, and

17   proposed bankruptcy counsel for that debtor entity.

18             We would propose -- we've discussed this with, with

19   Mr. Miller and with other interested parties -- propose this

20   morning to do the OldCo case agenda first.  These are all

21   first-day motions.

22             THE COURT:  Uh-huh (indicating an affirmative

23   response).

24             MR. CLODFELTER:  Some of them are joint motions,

25   jointly filed in the Garlock case.  I think we can expedite

1    matters in the Garlock case if we do the OldCo first-day

2    motions first and then move to the Garlock case second where

3    there are some contested matters.

4            THE COURT:  Okay.  And the matters that are joint, the

5    joint administration motions, the joint motions, we, we

6    basically take them second before the Garlock, the pure Garlock

7    motions?

8            MR. CLODFELTER:  Your Honor, our proposal is, we think

9    a logical sequence, actually, would be to deal with them in the

10   sequence they're on the agenda that we submitted to the Court

11   in the OldCo case and although it may complicate the recording,

12   Mr. Miller and I have discussed the fact that we may, it may be

13   most efficient in terms of court time, if not recording time,

14   for us to make the presentation on the joint motion that's also

15   in the Garlock case and then have Mr. Miller address --

16           THE COURT:  Okay.

17           MR. CLODFELTER:  -- any supplemental comments he may

18   wish to make with respect to Garlock.

19           THE COURT:  Any preference from the parties as to how

20   we announce for this?  Do you just want to have one large

21   announcement and I suppose if any of you are appearing only in

22   one case you could say so and otherwise, we'll presume you're

23   in both?  Has anyone got other thoughts or beliefs of how we

24   should approach this?

25       (No response)

1           THE COURT:  Okay.

2           All right.  Well, let's just start.  For present

3   purposes, I'm going to call both cases, the OldCo, LLC case and

4   also the Garlock Sealing Technologies cases and for at least

5   the moment for purposes of announcing appearances we will, we

6   will be in both cases and then we will talk about the OldCo

7   matters first and then go back to the contested Garlock

8   matters.

9           So if you will, now's the time to announce and if

10  you're only in one of the cases, please say so.  Otherwise, I'm

11  going to assume you're in both, all right?

12          Mr. Clodfelter.

13          MR. CLODFELTER:  Your Honor, I am, to repeat, Dan

14  Clodfelter of Parker Poe Adams & Bernstein.  I am pre-petition

15  counsel to OldCo, LLC, which is the successor by merger to

16  Coltec Industries, Inc., and proposed bankruptcy counsel

17  subject to retention application submitted for OldCo as debtor

18  and debtor in possession.  I'm appearing in an unexpected way

19  this morning, but I'll be calling on Mr. Grier and Mr. Moon, to

20  the extent I need assistance.

21          THE COURT:  Okay.

22          MR. SCHILLI:  Good morning, Your Honor.  David Schilli

23  with Robinson, Bradshaw & Hinson and with me is Andy Tarr.  We

24  are -- we have appeared only at this point in the OldCo case,

25  but we are the proposed special counsel for OldCo, LLC as

1    successor by merger to Coltec Industries, Inc.  And we have

2    filed this morning a retention application.

3              Thank you.

4              MR. KRISKO:  Thank you, Your Honor.  Jonathan Krisko

5    from Robinson, Bradshaw & Hinson appearing on behalf of

6    proposed, as proposed special counsel to OldCo as well.  Also,

7    I'm appearing on behalf of Garlock.

8              THE COURT:  Okay.

9              MR. MILLER:  Morning, Your Honor.  Jack Miller,

10   Rayburn Cooper & Durham, appearing only for Garlock Sealing

11   Technologies and their, Garrison and Anchor in the Garlock

12   cases.

13             MS. KENNY:  Morning, Your Honor.  Alex Kenny for the

14   Bankruptcy Administrator's Office.

15             THE COURT:  Okay.  You're in both, Ms. Kenny, right?

16             MS. KENNY:  Yes, Your Honor.

17             THE COURT:  Okay.

18             Mr. Guy.

19             MR. GUY:  Good morning, Your Honor.  Jonathan Guy for

20   Joseph Grier, the Future Claimants' Representative in the

21   Garlock case and proposed Future Claimants' Representative in

22   the new Coltec case.  I'm here with my colleague, Mr. Beaman.

23             MR. SWETT:  Good morning, Your Honor.  Trevor Swett

24   and Jeffrey Liesemer, along with Tom Moon, for the Garlock ACC

25   and we are proposed counsel for what is supposed to be a

1   unified ACC for both cases.

2           THE COURT:  All right.

3           Anyone else announcing?

4           Yes?

5           MR. FINCH:  Yes.  Nate Finch from Motley Rice, Your

6   Honor, for Motley Rice Canadian clients only for the Garlock

7   case.

8           THE COURT:  All right.

9           Anyone else announcing in the courtroom?

10      (No response)

11          THE COURT:  Are there any telephonic appearances?

12      (No response)

13          THE COURT:  Okay.

14          All right.  Ready to go.  Since there were no

15   objections to proceeding in the order as proposed by

16   Mr. Clodfelter, let's go back there.

17          Lead off.

18          MR. CLODFELTER:  Thank you, Your Honor.

19          This morning, we are here to take the next step in the

20   resolution of a procedure that began in June of 2010 with the

21   filing of the Garlock, Garrison, and Anchor chapter 11 cases

22   and today we're here on first day or, more strictly speaking,

23   second-day motions in the bankruptcy case filed by OldCo, LLC.

24   I'm going to -- we're going to try this and we'll see what

25   works.  I'm going to refer to the debtor in this case as

1   Coltec.  It is the successor by merger to Coltec Industries,

2   Inc.  Your Honor's familiar with Coltec.

3          THE COURT:  Uh-huh (indicating an affirmative

4   response).

5          MR. CLODFELTER:  It is the former parent of Garlock

6   Sealing Technologies.  It is still the parent of Garrison

7   Litigation Management, Ltd. and, indirectly, it is the ultimate

8   parent entity for Garrison's subsidiary, the Anchor Packing

9   Company.  I think it may be simplest for us to refer to the

10  debtor as Coltec even though it's now known by a different name

11  and to the extent we need to refer to OldCo's current parent

12  entity, a newly formed corporation from recent vintage, we'll,

13  we'll call that New Coltec or EnPro Holdings.  With that,

14  we'll, we'll move forward.

15         But we're here, again, to take the next step in that

16  6-1/2 year saga, which we hope will conclude in 2017 with the

17  confirmation of a plan of reorganization jointly for the

18  Garlock debtors, I'll call them, and for Coltec whereby all of

19  those companies resolve their liabilities arising from or

20  related to the manufacture and sale of asbestos-containing

21  products.  It's been a long saga.  The Court is familiar with a

22  great deal of it and I'm not going to spend a lot of time this

23  morning on history.  Let me start with a couple of procedural

24  matters and then I'm going to give an overview that we think

25  will be, some points we want to capture that will undergird,

1   essentially, all of the first-day motions that we have to make.

2          First off, I hope the Court has access to the notice

3   of proposed agenda.

4          THE COURT:  I do.

5          MR. CLODFELTER:  We propose to follow the motions in

6   the sequence of that agenda with one exception.  We're going to

7   probably take Matter No. 10 before Matter No. 9.  Mr. Schilli,

8   who will be handling both of those motions, will speak to the

9   reason for that.  It's a more logical sequence, really, to do

10  it.  But otherwise, we will follow the, the sequence on the

11  agenda.  I'll be presenting the first six matters and then

12  Mr. Schilli and Mr. Krisko will take us home on the remaining

13  matters on the agenda.

14         Your Honor, pursuant to a motion which the Court

15  granted on an ex parte basis notice of these motions today was

16  provided to the Ad Hoc Asbestos Claimants' Committee.  That's

17  the Coltec Ad Hoc Asbestos Claimants' Committee.  We'll say

18  more about that group later.  It was provided to the Garlock

19  Asbestos Claimants' Committee.  It was provided to Mr. Grier as

20  FCR in the Garlock cases and proposed FCR in the Coltec case.

21  Notice was provided to the Bankruptcy Administrator, to parties

22  on the master service list in the Garlock cases, and any

23  parties requesting notice under Rule 2002.  We filed with the

24  court a Certificate of Service on notice matters and I believe

25  notice was duly and properly given as, as instructed by the

1   Court.

2          Let me also say that, in addition to that, we have

3   circulated among the parties in advance, as, as we were able to

4   do so as we prepared them, drafts of these motions and the

5   proposed orders and have received comments, which we have tried

6   diligently to incorporate in the motions as they are filed and

7   before the Court this morning.  I'll let parties speak up if

8   they think we've gotten anything wrong or missed or omitted

9   anything, but we think we've faithfully adhered to the

10  comments.

11         In addition to that, last week we met with Ms. Simpson

12  and Ms. Kenny to explain to the Bankruptcy Administrator the

13  motions we propose to bring forward this morning and to answer

14  any questions that they might have about the first-day motions

15  and try to address any concerns that they might have.  As well,

16  we have tendered to the Bankruptcy Administrator a proposed

17  standard operating order for the case which conforms to the

18  relief we're requesting this morning from Your Honor, if the

19  motions are, in fact, granted as requested, and we've worked

20  out the form of a standard operating order with the Bankruptcy

21  Administrator's Office.  Ms. Kenny is here and I know we'll,

22  we'll speak to any matters that are lingering or of concern to,

23  to the Bankruptcy Administrator.

24         Your Honor, I think that takes care of the question of

25  notice of the motions today.  Let me talk briefly about the

1   record and then move into an overview on the motions.

2          We are relying for our record on the declaration of

3   Mr. Joseph Wheatley, which has been filed in the case.

4   Mr. Wheatley is a, one of the managers of Coltec and is the

5   president and treasurer of Coltec.  We don't propose to put him

6   on the stand for testimony, but we would rely upon his filed

7   declaration.

8          And in addition to that, Your Honor, in order to try

9   to speed things up this morning we're going to ask that the

10  Court take judicial notice of all the proceedings that the

11  Court has presided over in the Garlock Sealing Technologies

12  case and the Garrison and Anchor cases.  We're going to presume

13  the Court will take notice of those and, and avoid having to

14  reintroduce those matters into the record of this case this

15  morning.

16         THE COURT:  Objection by anyone on the evidentiary

17  side of this in terms of relying on the Wheatley declaration

18  as, as the movant's evidence and judicial notice in the Garlock

19  case?

20         MR. GUY:  No objection from the FCR, Your Honor.

21         MR. SWETT:  No, sir.

22         THE COURT:  All right.  We're all good.

23         Go ahead, Mr. Clodfelter.

24         MR. CLODFELTER:  Very good.  Thank you, Your Honor.

25         Let me -- I want to start with a couple of broad

1   propositions that undergird the motions that we have today,

2   especially, they're especially important to those motions that,

3   in which the debtor is asking to vary or modify what would

4   otherwise be standard operating rules --

5           THE COURT:  Uh-huh (indicating an affirmative

6   response).

7           MR. CLODFELTER:  -- or operating practices and

8   procedures in this, for purposes of this chapter 11 case.  And

9   I think, as the Court hears the various motions, these will be

10  important to keep in mind because, again, they are the factual

11  predicate or the substantive predicate for the relief that's

12  being requested by several of the later motions we'll hear this

13  morning.

14          The first of those items is just a reminder about the

15  pre-petition claims history of Coltec.  The Court knows from

16  prior proceedings in the case that the claims history of Coltec

17  as a potential or actual defendant in asbestos litigation has

18  been completely and intimately intertwined with that of the

19  Garlock debtors.  In fact, they're almost inseparable.  As the

20  Court will recall from prior presentations, although Coltec has

21  been exposed to thousands, tens of thousands of claims over the

22  course of, of the years, it has paid modest defense costs for

23  those claims and has never paid an indemnity on account of

24  those claims, all such claims having been resolved as part and

25  parcel of the resolution of claims made against one or more of

1    the Garlock debtors.  The intertwined history, claims history

2    of this debtor and the existing Garlock debtors, we think, is

3    an important factual predicate for this morning's motions.

4         The second predicate is that the operations of this

5    debtor are very simple compared to many debtors who appear

6    before Your Honor in chapter 11 cases.  OldCo as a result of

7    the Coltec reorganization, which has now been consummated -- it

8    was consummated finally on December 31, 2016 -- OldCo now

9    consists of a company whose primary operation is EnPro, what

10   used to be called EnPro Learning Systems.  It was a subsidiary

11   of Coltec.  It has now been merged into Coltec and operates as

12   an operating division of that company.

13        In addition to that, Coltec owns still the equity

14   interest in the Garrison Litigation Management debtor and also

15   is the beneficiary of several agreements with its new corporate

16   parent, EnPro Holdings, Inc., which provide a source of funding

17   to support the debtor's operations.

18        So we have a very streamlined debtor here which, for

19   many purposes, we think, will support a lot of the relief that

20   we're requesting in later motions.

21        This debtor, as the Court knows, is also a co-

22   proponent of the modified joint plan of reorganization that was

23   filed in the Garlock cases and has been co-proponent in the

24   original negotiation and formulation of the, of that plan and

25   in the filing of that plan last summer.

1          As the Court also knows from prior proceedings, the

2    Garlock case that was a pre-packaged plan as to Coltec, we've

3    now completed the solicitation of acceptances and I think, as

4    appears in the motion papers, the balloting that concluded in

5    December of last year resulted in over 95 percent by both

6    number and an amount of acceptance by claimants against Coltec

7    and also by claimants against the Garlock debtors of that

8    proposed joint plan of reorganization.  Under that plan, under

9    that plan, the claims against this debtor, Coltec, and the

10   claims against the Garlock debtors will be channeled to a

11   single combined trust for all debtors and will be reviewed and

12   paid in accordance with a single set of substantive and

13   procedural criteria that will apply to all claimants alike,

14   whether their claims arise out of exposure to products of the

15   Garlock debtors or out of alleged exposure to products that

16   were manufactured or sold by former subsidiaries or affiliates

17   or divisions of the Coltec debtor.

18          So there is a unity, again, and continuing that pre-

19   petition practice, there was an unity of interest and a unity

20   of treatment in the case.

21          And the last overview point I'll provide to the Court

22   is this:  Under the joint plan of reorganization of which this

23   debtor is a co-proponent -- and I should, I should say

24   procedurally we have filed a joint plan in this case.  It was

25   filed along with the first, the petition and first-day motions.

1   So that plan is now filed in the case -- under that plan, under

2   that plan, all claims against this debtor, Coltec, will pass

3   through the bankruptcy except for asbestos claims, which will

4   be channeled.  All other claims will pass through the

5   bankruptcy unimpaired, unaffected, and will be assumed by the

6   reorganized debtor.  And we think that's an important context

7   point to keep in, in mind when the Court considers some of the

8   variations that we're asking for standard operating procedures

9   and standard practices.

10         With that overview, Your Honor, I'm going to not go

11  back and rehearse the history of the Coltec restructuring.  We

12  were last before you on December the 16th in the Garlock cases

13  and at that time Mr. Cassada, I think, walked the Court through

14  the --

15         THE COURT:  Sure.

16         MR. CLODFELTER:  -- Garlock restructuring.

17         I do have available, if the Court needs it or wants to

18  refer to it, the slide deck that Mr. Cassada used on December

19  16th.  I don't propose to repeat any of that unless the Court

20  has a particular need for it.

21         THE COURT:  No.  I still have it as well.

22         So thank you.

23         MR. CLODFELTER:  Thank you.  Thank you, Your Honor.

24         With that, then, I'll move into the first of the

25  motions that we have on this morning and that is a motion that

1    is jointly filed in this case and in the Garlock cases for

2    joint administration of this case with the Garlock cases under

3    Rule 1015(b).  And again, I -- I -- I hesitate to say too much

4    about these motions because I think the predicate I've set

5    already in the opening overview gives a sufficient basis for

6    it, for the motion itself.  It would be terribly confusing,

7    frankly, if at this point, at this stage of the game, at this

8    late day, we began to maintain separate dockets, separate

9    notices, separate hearings, and separate filings.  It'd be

10   tremendously complex for the Court and for the parties, for the

11   clerk's office.

12        And so, Your Honor, we would tender the motion to the

13   Court on the papers as filed and see if the Court has any

14   question about the motion for joint administration.  I should

15   say we would use the Garlock case, as we have used for the

16   Garrison and Anchor cases, we would use the Garlock case as the

17   lead case for the Coltec debtor as well.

18        THE COURT:  Any parties wish to speak to the motion?

19     (No response)

20        THE COURT:  All right.  It's approved.

21        MR. CLODFELTER:  Your Honor, I don't know if

22   Mr. Miller wants to say anything about the, whether that motion

23   should be approved in the Garlock case.

24        MR. MILLER:  No comments, Your Honor.  We're joint

25   proponents and so we would move as well.

1        MR. CLODFELTER:  Okay.

2        THE COURT:  All right.  If -- you only need to speak

3  up if you want to speak in opposition to the motion or, or

4  correct or augment what has been said.  Me toos aren't

5  necessary.  I'm assuming that at this point.

6        All right.

7        MR. CLODFELTER:  Thank you, Your Honor.

8        With that, we'll move to the second item is, again, a

9  motion filed jointly in the Coltec case and in the Garlock

10 debtors cases.  It's a motion to constitute and to appoint a

11 committee to represent asbestos claimants in the Coltec case.

12 The joint motion is to also have that reconstituted committee

13 function as, continue to function as the committee representing

14 asbestos claimants in, in the Garlock cases.  This is not only

15 filed jointly in the two cases, but it's also jointly filed by

16 the debtor in this case and by two other groups, the Ad Hoc

17 Committee of --

18        THE COURT:  Uh-huh (indicating an affirmative

19 response).

20        MR. CLODFELTER:  -- representing Coltec claimants and

21 the Official Committee representing the Garlock asbestos

22 claimants.

23        Your Honor, when we began negotiations approximately a

24 year ago now leading to the formulation of the joint plan there

25 was a need, of course, to constitute a group of parties who

1   would represent the interests of, of the Coltec asbestos

2   claimants to the extent they were not coterminous with the

3   interests of Garlock claimants.  And so under the leadership of

4   the Asbestos Claimants' Committee in the Garlock cases an ad

5   hoc committee was constituted consisting of six law firms who

6   represented clients, all of whom had filed or had asserted

7   claims against Coltec alleging exposure to the products of

8   Coltec divisions or subsidiaries and had done so before the

9   filing of the Garlock bankruptcy.  They had filed those claims

10  or asserted those claims before that point at which point, the

11  Court will recall, Judge Hodges entered a stay staying

12  litigation against the affiliates, including against Coltec, in

13  order to preserve the benefit of insurance for the Garlock

14  debtors.

15         So that committee of six attorney, six firms

16  functioned as an ad hoc committee to negotiate on behalf of and

17  to represent the interests of the Coltec asbestos claimants.  I

18  should add that all but one of those law firms also represented

19  members of the Official Committee of Asbestos Claimants in, in

20  the Garlock cases.  And so there was, again, a substantial

21  overlap because they were also representing Garlock claimants

22  and constituted the Official Committee.

23         We're asking today -- the six firms -- just -- I'm,

24  I'm not going to go through all of the details -- they're

25  identified in Paragraph 17 of the motion --

1          THE COURT:  Uh-huh (indicating an affirmative

2   response).

3          MR. CLODFELTER:  -- papers for the Court's benefit and

4   as I say, all but one of those firms also represented claimants

5   against the Garlock debtors.  What we are proposing by the

6   motion before the Court today is to take that committee, or to

7   take the Official Garlock Asbestos Claimants' Committee --

8          THE COURT:  Right.

9          MR. CLODFELTER:  -- to add three additional members to

10  that committee who are individuals who hold claims against the

11  Coltec debtor and then to take that restructured committee and

12  appoint it as the officially constituted committee representing

13  asbestos claimants in the Coltec case.

14         In summary, that's the relief requested.  The three

15  individuals that we're proposing to add to the committee are

16  identified in Paragraph 25 of the motion papers.  And again,

17  they're represented by law firms that also represent Garlock

18  claimants.

19         Your Honor, Mr. Swett, who has been instrumental along

20  the way in helping us organize the Ad Hoc Committee and then

21  put together the proposed joint committee, may, may wish to

22  address the motion at this point.

23         I'm, I'm done and will respond to questions.

24         THE COURT:  Mr. Swett.

25         MR. SWETT:  Your Honor, I don't think I need to

1    elaborate on Mr. Clodfelter's comments except to say that all

2    of this was forecasted in the disclosure statement.  We've

3    adhered closely to the approach laid out there.

4         The three claimants that we would propose to add to

5    the Committee for purposes of expanding its charter to include

6    the Coltec case are each represented by an able law firm

7    experienced in the prosecution of claims against Coltec.  They

8    include one claimant who's not represented by counsel who

9    represents a member of the Garlock Committee.  That claimant is

10   represented by the Lanier firm, a very distinguished trial firm

11   that will add a lot of knowledge and experience when it comes

12   to the Coltec side of the activity.

13        So the efficiency of putting all of this on a single

14   track with an integrated committee bringing to bear the

15   accumulated knowledge both of this case and the Coltec claims

16   history seem obviously compelled.

17        Thank you.

18        THE COURT:  Any other party wish to address this

19   motion?

20      (No response)

21        THE COURT:  We're good?  Any -- I'm --

22        MR. CLODFELTER:  Again, Your Honor, the motion is to

23   constitute this committee as the official committee in this

24   case and to, in the Garlock cases, to approve an expansion of

25   the existing committee in the Garlock cases.

1        All right, Your Honor.  With that said, I'll move to

2   the third motion, which is the motion, debtor's motion to

3   appoint Joseph W. Grier, III as the representative of future

4   claimants and demand holders in the Coltec case.

5        Your Honor, the title of the motion says it all.

6        THE COURT:  Uh-huh (indicating an affirmative

7   response).

8        MR. CLODFELTER:  And again, we'd ask for the Court to

9   take judicial notice of Mr. Grier's six-year history as a very

10  diligent and vigorous future claimants' representative in the

11  Garlock cases.  We can represent to the Court that Mr. Grier

12  acted with the same degree of vigor and diligence all

13  throughout the negotiations prepetition of the proposed joint

14  plan which is now proposed by, by Coltec.  We think he will

15  continue to do so throughout the course of administration of

16  the case and would ask that he be appointed the future

17  claimants' representative.  We've received no conflict in his

18  acting in this capacity in both sets of cases.  Again, because

19  of the structure I described earlier of the joint plan we do

20  not perceive any conflict to Mr. Grier acting in both roles.

21       And with that, Your Honor, we'll stop and see if

22  others wish to comment.

23       THE COURT:  Other parties?

24     (No response)

25       THE COURT:  All right.

1          MR. CLODFELTER:  I should add Mr. Grier has agreed to

2   serve in this capacity.

3          THE COURT:  Mr. Grier, it seems like you've all of a

4   sudden acquired a lot more experience as a future claims rep as

5   you had a few months ago.

6          So approved.

7          MR. SWETT:  Your Honor, was there a ruling of record

8   on the committee motion?  I didn't hear.

9          THE COURT:  Yes, sir, I did.

10          MR. SWETT:  Thank you.

11          THE COURT:  I approved that.

12          MR. CLODFELTER:  My apologies, Your Honor.  I may be

13   moving a little too quickly on that.

14          THE COURT:  Oh, no.  I didn't speak as loudly.

15          The Grier motion is approved.

16          MR. CLODFELTER:  With that, Your Honor, we'll move

17   next to the fourth motion, which is a motion to appoint the

18   Rust Omni firm as noticing, claims, and balloting agent in the

19   Coltec case.  This motion is supported by the declaration of

20   Paul Deutch which is attached to the motion papers.

21   Essentially, what we propose for Rust and Omni to do in this

22   case is to provide the same services as they have provided in

23   the Garlock cases.  Rust has agreed to operate in this case

24   under the same services agreement dated June of 2014 that

25   exists in the Garlock cases, same terms and conditions.  In

1  fact, Your Honor, we're getting a little bit of, of the benefit

2  already from Rust Omni because, as the Court knows, the

3  prepetition, the pre-packaged solicitation's already been

4  conducted by Rust.  They've already received, processed, and

5  reviewed the ballots of the case.

6          So essentially, what we have for them here is some

7  clean-up work from that task, those tasks, but to serve as

8  noticing agent in this case.

9          Your Honor, with that, we'll, we'll stop and see if

10 any others wish to comment.

11         THE COURT:  Any other parties wish to be heard on the

12 Rust motion?

13     (No response)

14         THE COURT:  Do not.  Okay.  It's approved.

15         MR. CLODFELTER:  Thank you, Your Honor.

16         That takes us to the fifth motion, which is motion to

17 retain the firm of Bates White as asbestos claims consultant in

18 this case, the Coltec case.  The Court is well familiar with

19 the firm and its services in the Garlock cases.  The Bates

20 White firm has provided consultation to those debtors and to

21 Coltec as well in the formulation of the joint plan and in

22 terms of analysis of the claims history, in terms of analysis

23 of the expected performance of the proposed 524(g) trust under

24 the joint plan and we would ask that Mr. Bates be retained, his

25 firm be retained in this case.

1          This motion is supported by the accompanying

2    declaration of Charles Bates.  Again, the Bates White firm

3    would essentially provide the same services on the same terms

4    and conditions in this case as they're currently providing in

5    the Garlock case.

6          Your Honor, unless --

7          THE COURT:  All right.

8          MR. CLODFELTER:  -- the Court has questions, I will --

9          THE COURT:  Any other party wish to speak on that

10   motion?

11      (No response)

12         THE COURT:  It is approved.

13         MR. CLODFELTER:  Thank you, Your Honor.  That takes us

14   to the sixth motion.  This motion has several components and

15   I'm, I'm going to speak about them in a little slightly

16   different organization than they're laid out in the motion

17   papers.

18         But the motion here is to approve the maintenance of

19   Coltec's existing bank account and banking arrangements with

20   Bank of America, to establish procedures for the investment of

21   excess cash, and for a limited waiver of the deposit guidelines

22   with respect to the management of Coltec's cash.  That's the

23   first group of items I'm going to address.  The motion also

24   then asks for the continued use of Coltec's existing contracts,

25   business forms, purchasing orders, invoices, and so forth.  And

1    finally, we're asking for the Court to approve a pre-petition

2    inter-company services agreement entered into between Coltec

3    and its ultimate parent entity, EnPro Industries, Inc., and to

4    acknowledge that the services provided postpetition under that

5    inter-company services agreement will be afforded

6    administrative expense priority status as necessary expenses of

7    the operation of the estate.  Let me take the banking matters

8    first, Your Honor.

9          THE COURT:  Uh-huh (indicating an affirmative

10   response).

11         MR. CLODFELTER:  OldCo has, essentially, two sources

12   of funds or Coltec, I should say.  Excuse me.

13         THE COURT:  Uh-huh (indicating an affirmative

14   response).

15         MR. CLODFELTER:  First, it has operating revenue from

16   its EnPro Learning Systems seminars and, and educational

17   programs that it conducts.  The second source of funds is the

18   Keepwell Agreement with its corporate parent, EnPro Holdings,

19   Inc., under which EnPro Holdings, Inc. has agreed to advance

20   funds as needed by Coltec for purposes of the administration of

21   this chapter 11 case and for the payment of necessary expenses

22   in the case.  Those are, really, the only two sources of funds

23   that the debtor currently has.

24         The debtor maintains one bank account.  The debtor was

25   organized, of course, at the end of last year and we filed the

1  petition on January 30th, which is the close of the fiscal

2  year.  Actually, it's the beginning of a new fiscal year for

3  the EnPro System and the EnPro group of companies.  So we've

4  only been operating that account for a fairly limited part of

5  time on behalf of Coltec.  That account is with Bank of America

6  and is a very simple account.  Coltec doesn't use checks out of

7  that account.  It makes disbursements by ACH or by a wire

8  transfer.

9       So there are no problems of handling items presented

10 against the account or collected through the, through the

11 checking or the depository system.

12      In addition to that, Coltec does not have any

13 employees of its own.  It, it purchases contractual personnel

14 services to put on its seminars and educational programs.  So

15 it doesn't maintain a payroll account and doesn't have to

16 manage a payroll account.

17      In addition to that, it has only the very most minimal

18 liabilities for taxes.  There are no taxes for which it's

19 required to establish tax deposit accounts or escrow accounts.

20      So this is a very, very simple, simple debtor in that

21 regard.

22      Again, Your Honor, the, the motion before the Court

23 asks that we be allowed to continue the pre-petition bank

24 account with Bank of America and allow the bank to administer

25 that account in the normal course as it would do if this

1 | debtor, if this petition had not been filed.  That includes the

2 | various charges and fees that the bank would impose under the

3 | depository agreement on the account, the collection of items in

4 | the account, the chargeback of items in the account.  We will

5 | be able through the accounting system, of course, to determine

6 | which of those are prepetition and which are postpetition.

7 |         THE COURT:  Uh-huh (indicating an affirmative

8 | response).

9 |         MR. CLODFELTER:  So we don't think there'll be any

10 | prejudice from continuing the account but more importantly, as

11 | I said to the Court in the opening remarks, the Court will

12 | remember that all claims, all claims against the Coltec debtor,

13 | other than asbestos claims, will pass through this bankruptcy.

14 | In effect, it will be assumed.

15 |         So there's really no prejudice from continuing the

16 | operation of that account across the petition date.

17 |         The second thing we asked, Your Honor, is for a

18 | modification of the deposit guidelines and for approval of the

19 | invest, program for the investment of, of Coltec's excess cash.

20 | Your Honor, the, pursuant to the Keepwell Agreement and in, in

21 | accord with the understanding of the parties, on the, prior to

22 | the petition date Coltec's parent advanced to Coltec the sum of

23 | $5 million which was placed on deposit in the bank, a bank

24 | account at Bank of America, again to fund the necessary

25 | operating expenses of this estate, possibly even to overfund,

1    probably even to overfund the necessary operating expenses of

2    the estate.  And, of course, that's well in excess of the FDI-

3    insured limit for a normal depository account at Bank of

4    America.

5          Through some work with Bank of America Securities, an

6    affiliate of Bank of America, what Coltec proposes to do with

7    funds that exceed the FDI-insured limit is to move those funds

8    into an investment account managed with Bank of America

9    Securities, which account would contain only instruments and

10   obligations backed by the full faith and credit of the United

11   States and we would structure that in such a way as to provide

12   the necessary liquidity so that as Coltec is required to, to

13   make disbursements from its operating account at Bank of

14   America it could liquidate the investments in the investment

15   account, transfer the funds, and then make the disbursements.

16         Your Honor, we've been working on this program to try

17   to identify a way to maximize the return to the estate, which,

18   of course, is what 345 suggests we ought to be doing, but to do

19   so in a way that balances the maximum return with the necessary

20   liquidity and also with the security of the proposed

21   investments.

22         Your Honor, that's the second banking component and we

23   would ask that the Court approve that mechanism.  We have not

24   yet put it in place with Bank of America pending the Court's

25   consideration of the motion, but we would propose to move

1    forward.

2              We discussed this with the Bankruptcy Administrator

3    and I will let Ms. Kenny speak if they have any remaining

4    concerns about the manner in which we would propose to manage

5    those excess funds beyond the FDI-insured limit.

6              I should disclose, of course, that there may be some

7    mismatch for some very short period of time between the

8    liquidation of, of an instrument in the investment account --

9              THE COURT:  Sure.

10             MR. CLODFELTER:  -- the funding of the disbursement

11   account, and then the payout of the funds, but we think that

12   will be a very, very short period of time, no more than

13   overnight.  Again, since this debtor does not use checks, there

14   won't be any real float on the account.

15             THE COURT:  Ms. Kenny, do you want to --

16             MS. KENNY:  Your Honor --

17             THE COURT:  -- speak to this?

18             MS. KENNY:  -- we don't have an objection to the

19   motion per se except we do have a bit of concern -- and I know

20   it may be a very brief period of time -- but we do have a bit

21   of concern that if there are funds in the account that exceed

22   the FDIC-insured amount, that there be a bond posted for those

23   amounts that exceed that.  Granted, it sounds like it will be a

24   very short period of time, but there -- it could be expanded

25   and we just don't know.

1        So we would ask that any amounts beyond that, that

2    there be a bond.

3            THE COURT:  Of how much?

4            MR. CLODFELTER:  Your Honor --

5            MS. KENNY:  I think it would depend on --

6            MR. CLODFELTER:  -- it may be difficult to size the

7    bond because we --

8            THE COURT:  Right.

9            MR. CLODFELTER:  -- don't know the amount of any

10   excess at any, any given time.  We're -- we're -- we intend to,

11   to make the investments in, in the Treasuries, essentially, so

12   that we can draw it down in slugs that will as nearly as

13   possible --

14           THE COURT:  Right.

15           MR. CLODFELTER:  -- keep within the FDIC limit.  We

16   would, we would hope that we're not in a position where we'll

17   ever really have to worry about a bond on a bank account.

18           THE COURT:  Okay.  I'm not even sure -- you were

19   anticipating.  My second question is, can you even get a bond

20   for that particular purpose?  That, that sounds like a very

21   fine point on it.

22           I'm not inclined to do that right now, Ms. Kenny.  I,

23   I believe, given the nature of these debtors, the fact that

24   they have an operating business and, and the short periods of

25   time that the money is going to be in that account, I, I think

1   we're all right.  Again, not our typical debtor's set of

2   problems that we have in these two cases, so.

3           MR. CLODFELTER:  Your Honor, I might say for, for

4   Ms. Kenny's comfort that the primary disbursements in the

5   course of administration of the case would like, that that

6   would likely be professional expenses and I think Ms. Kenny

7   knows where to find the lawyers in case anything should go

8   wrong.

9           THE COURT:  That's a cheerful prospect.

10          Any other parties want to address this motion?

11      (No response)

12          THE COURT:  Okay.

13          MR. CLODFELTER:  Your Honor, there are two other

14  components to the motion.  I, I wanted to give Ms. Kenny a

15  chance, though, to speak to --

16          THE COURT:  Okay.

17          MR. CLODFELTER:  -- the bank account.

18          THE COURT:  Go ahead.  I thought you were done.

19          MR. CLODFELTER:  No, no.

20          The second is relatively straightforward.  Again, we

21  have letterhead.  We have contract forms and so forth.  We'd

22  prefer to maintain those as, as we've had them in the very,

23  very short period prior to the filing of the petition on

24  January 30th.

25          THE COURT:  All right.  Anyone else?

1      (No response)

2              THE COURT:  In that case, the motion is approved as

3   filed.

4              MR. CLODFELTER:  Finally, Your Honor, the final

5   component is most of the corporate services that one would

6   think of as being an essential administrative service is legal,

7   accounting, human, human relations, tax advice and tax

8   management, and so forth within the EnPro group of companies

9   are provided at the, at the parent level.  And then the costs

10  of those functions are charged back on a proportional

11  allocation basis to the various subsidiaries.

12             Prior to the petition Coltec entered into a written

13  inter-company services agreement with the parent entity to

14  memorialize the agreement with respect to the provision of

15  those services and the allocation of the charges for those

16  services.  That had been going on, frankly, under an

17  undocumented form for a long time.  We believe that the, the

18  debtor probably has ordinary course authority to enter into

19  such an agreement.

20             But again, for purposes of transparency so that

21  everyone could see what's going on among the affiliates and how

22  the transactions would be managed we thought it appropriate to

23  bring the agreement before the Court this morning and seek the

24  Court's approval for the agreement.  Frankly, under the

25  structure of the agreement we're not even sure it will operate

1    very actively during the course of administration.  If we're

2    successful in --

3            THE COURT:  Uh-huh (indicating an affirmative

4    response).

5            MR. CLODFELTER:  -- confirming and consummating a plan

6    in the year 2017, we may never actually see the agreement again

7    because the first settling up or true-up date under the

8    agreement would be in January of 2018 under the structure of

9    the agreements and annual reconciliation of charges.  In the

10   event, though, anything goes off the rails, we thought it

11   appropriate for the Court to see the agreement, be comfortable

12   with the agreement, and for the parties and the Court to

13   understand that it would be the intent that any charges

14   incurred and assessed against Coltec under that agreement to

15   the extent necessary would be paid as costs and expenses of

16   administration of the chapter 11 case.

17           Your Honor, I need to modify one thing that's in the

18   motion papers we've had some discussion about and we've also

19   talked with the other interested parties this morning about.

20           There is a component of the inter-company services

21   agreement that references a tax-sharing agreement.

22   Essentially, what, what would happen there is the allocable

23   portion of taxes paid at the parent level on a combined basis

24   that are generated as a result of the income generated by

25   Coltec would be assessed back against, as charges back against

1   Coltec.  There is a June 1, 2010 agreement on tax sharing.

2   Unfortunately, that agreement was never fully executed among

3   all the various parties in the EnPro enterprise.  And so in

4   order to avoid any questions or issues about whether that

5   agreement is or is not in place, is or is not effective, we

6   would simply propose to modify the relief requested this

7   morning to exclude from the inter-company services agreement

8   the tax-sharing arrangement and would say to the parties that

9   in the event that becomes an issue we would bring that matter

10  back before the Court on notice and hearing for the Court's

11  separate consideration.

12          We would, modify, therefore, the order that we've

13  attached as an exhibit to this motion to exclude the tax-

14  sharing component and provide that any further consideration of

15  that element would be done only after notice and hearing,

16  further consideration by the Court.

17          THE COURT:  Does anyone want to speak with regard to

18  the banking arrangements, the inter-company accounts, and the,

19  the tax sharing?

20      (No response)

21          THE COURT:  Let me ask a conceptual question.  If, if

22  the true-up is not until next year and you're planning to

23  confirm in May, how do we deal with administrative expenses, if

24  any, that are owed?  Do they, do they just follow

25  implementation of the plan or --

1        MR. CLODFELTER:  They would, Your Honor, and again, as

2   I said, all obligations of this debtor other than the asbestos

3   obligations that are being channeled to the trust are going to

4   be assumed by the reorganized debtor and paid in the ordinary

5   course, just like Coltec or any other subsidiary of EnPro.

6        THE COURT:  I was trying to remember whether the plan

7   had a payment of admin expenses as 30 days, or whatever, after

8   the effective date, or something to that effect.  I assume you

9   have a savings clause in the plan that says "or as otherwise

10  agreed"?

11       MR. CLODFELTER:  Your Honor taxes my memory this

12  morning about the details of the joint plan.  We'll, we'll look

13  at that and if we find any --

14       THE COURT:  That's why I was asking.  I couldn't

15  remember, either, so.

16       MR. CLODFELTER:  But, but again, we would propose to

17  pay those in the ordinary course --

18       THE COURT:  All right.

19       MR. CLODFELTER:  -- as, as I say, as with other

20  subsidiaries --

21       THE COURT:  Basically meaning next --

22       MR. CLODFELTER:  -- non-bankruptcy subsidiaries,

23  right.

24       THE COURT:  In 2018?

25       Anyone else wish to speak with regard to the motion,

1   which I've tried to approve before you finished,

2   Mr. Clodfelter, twice?

3       (No response)

4           MR. CLODFELTER:  I should be so lucky on all my --

5           THE COURT:  Right.

6           MR. CLODFELTER:  -- my motions, Your Honor.

7           THE COURT:  Well, my job gets a lot easier when you

8   are all agreeing.

9           Anyone?

10      (No response)

11          THE COURT:  Okay.  That is approved.

12          MR. CLODFELTER:  Okay, Your Honor.

13          And with that, as I say, I'll turn to rest of the

14  agenda over to Mr. Schilli and Mr. Krisko.

15          THE COURT:  Mr. Schilli?

16          MR. SCHILLI:  Good morning, Your Honor.  David Schilli

17  on behalf of the debtor, Coltec.

18          THE COURT:  Okay.

19          MR. SCHILLI:  With your, with your permission, Your

20  Honor, I'm going to address the motions that are on the agenda

21  Nos. 7 through 10 and then, with your permission, turn the

22  microphone over to Mr. Krisko to address No. 11 and No. 12 on

23  the agenda.  And Mr. Clodfelter mentioned or forecasted that

24  maybe the batting order might change when we get down to No.

25  10.  I'll address that when we get there unless you have any

1   questions at this stage.

2          THE COURT:  All right.

3          MR. SCHILLI:  Your Honor, the first matter is Item No.

4   7 on the agenda.  It's No. 10 in the docket.

5          THE COURT:  Uh-huh (indicating an affirmative

6   response).

7          MR. SCHILLI:  This is just in the OldCo or the Coltec

8   bankruptcy case.  In this motion, Your Honor, we're asking that

9   the Court waive the obligations for the debtor to file

10  schedules other than Schedule G and to waive the obligations to

11  file a Statement of Financial Affairs.  We also ask that we not

12  be required to file the 20 largest creditor list and as a

13  result of that, the Bankruptcy Administrator not be required to

14  solicit interest for a creditors' committee in this case.  We'd

15  also ask that the Court waive the obligation for a 341 meeting.

16         Under the unique circumstances of this case, I realize

17  that this, this relief could be viewed as a little bit

18  extraordinary, but under the unique circumstances of this case

19  I think it's in order.  As Your Honor knows from

20  Mr. Clodfelter's presentation, this case was filed really to

21  enable Coltec to implement this comprehensive settlement and to

22  permanently resolve all of the Coltec asbestos claims in the

23  case alongside all of the Garlock asbestos claims.  The

24  claimants have all overwhelmingly accepted the plan that has

25  been solicited prior to the bankruptcy of Coltec.  There is an

1   unsecured creditors' committee in the Garlock case and if these

2   cases are jointly administered, we believe that the interest of

3   any general unsecured creditors in this case will be adequately

4   represented by that committee as well.

5        And I would also remind the Court that the non-

6   asbestos creditors are not and will not be impaired by this

7   plan, by the joint plan, or by the comprehensive settlement and

8   they're just, as Mr. Clodfelter referred to, they're going to

9   pass through this bankruptcy case and will ultimately be

10  assumed by the reorganized debtor and paid.

11       I would note that the relief we ask here is

12  specifically provided for in the Southern District of New York

13  Local Rules as it relates to pre-packaged bankruptcy cases.  I

14  recognize that we are not in the Southern District of New York,

15  but it is routinely, it is relief that is routinely granted

16  there and I wanted the Court to be aware of that so you didn't

17  feel like you were going out on, too far out on a limb if you

18  were to grant the relief we've asked for here.

19       I would note that prior to the hearing today we have

20  circulated the motion and the order to the other parties in

21  interest and, and the order has been approved by the Garlock

22  Committee and the Ad Hoc Committee and there, there is a

23  provision in the order that says if the joint plan is either

24  withdrawn or not confirmed, then any party can come back before

25  the Court and ask that we revisit these issues.

1      I think prior to the hearing Ms. Kenny indicated that

2 she might want to bring something to the Court's attention with

3 respect to that.   I'm happy to answer any questions that you

4 have or respond to anything that Ms. Kenny might have to say

5 about it.

6      But for all those reasons, Your Honor, in the unique

7 circumstances of this case we don't believe that any real

8 purpose will be served by filing the schedules or the SOFAs.

9      MS. KENNY:   Your Honor, this is a unique case and

10 after having met with Mr. Schilli and a few others last week

11 they explained how this all, this is dovetailing into the

12 Garlock case and that the only claimants or the only claims

13 that will pass through are the asbestos claims.

14      We just do find that it's extraordinary relief and if

15 there's, if we don't know who the creditors are, I think it

16 makes it a bit difficult.   But if this is -- we just have a

17 little bit of pause with regard to that, but I think that

18 Mr. Schilli and Mr. Clodfelter have done a good job of

19 explaining why this is an extraordinary case and unique

20 circumstances exist.

21      THE COURT:   Anyone else?

22   (No response)

23      THE COURT:   I agree it's extraordinary, but, and I

24 wouldn't want to make a practice of it, but it -- effectively,

25 this was all contemplated that these two cases would, would run

1   towards reorganization in, on parallel tracks.

2          So I think it's warranted under the circumstances and

3   will approve the motion.

4          All right.

5          MR. SCHILLI:   Thank you, Your Honor.

6          I, I'm going to take the, the comments that you just

7   made as a nice segue into the remainder of the motions on the

8   calendar this morning because I think all of the remaining

9   motions are geared towards dovetailing the OldCo or Coltec

10  bankruptcy case with the notice procedures and the calendar,

11  essentially, or the scheduling of the Garlock case.

12         So with that, I'd like to move to No. 8 on the agenda,

13  which is Docket Entry 16, and I would say that this is a motion

14  that has been filed in both the Garlock case and in the Coltec

15  case.

16         THE COURT:   Uh-huh (indicating an affirmative

17  response).

18         MR. SCHILLI:   And this is a motion for an order

19  establishing case management and notice procedures in this case

20  -- "this case" being the Coltec case -- and the use of a single

21  master service list in both cases.

22         Essentially, what we're asking for, if the Court were

23  to approve it, is to require or permit all filings in this case

24  and all filings in any adversary proceedings that may be

25  initiated in the case to be subject to what we would, we have

1   called the Garlock notice procedures and essentially apply

2   those same notice procedures to matters in this case and

3   particularly, if this case is going to be jointly or now that

4   it has been jointly administered, it seems to make sense to us

5   to allow everything to, to run along the same track to simplify

6   it for all of the parties in interest.

7         We would ask that the notice be limited, any notices

8   of filings in, in this case be limited to any parties and

9   entities listed on the master service list --

10         THE COURT:  Uh-huh (indicating an affirmative

11   response).

12         MR. SCHILLI:  -- as may be required under Bankruptcy

13   Rules.  In the motion we've listed several Rules that we think

14   might apply, for instance, if we're going to use, sell, or

15   lease property of the estate and things like that or whether

16   there's stay relief.  And so we would follow the Rules as it

17   relates to those particular matters.  And then if there's

18   anybody who has a particularized interest in the subject of a

19   filing, then they, of course, would be required to get the

20   filing and notice of, of the filing.  And then, of course, if

21   anybody files after today a 2002 notice, they would be added to

22   the master service list that's in place.

23         So we would ask that the Court approve the notice

24   procedures that are already in place in Garlock, but approve

25   them in the Coltec case and also approve the use of a single

1  master service list in, in this case.

2           THE COURT:  Mr. Miller, did you have a chip-in on this

3  one, or --

4           MR. MILLER:  Your Honor, the only, I guess, maybe

5  clarification is that we've got two proposed orders that are

6  attached to the motion, one, one here in the OldCo case that

7  provides the relief that Mr. Schilli just described, then one

8  that would be entered in the Garlock case that only deals with

9  the, with the use of a single master service list.

10          So it'll be two different orders coming, coming to the

11 Court.

12          THE COURT:  Okay.

13          Other parties wish to weigh in on this motion?

14     (No response)

15          THE COURT:  All right.  If not, approved.

16          MR. SCHILLI:  Thank you, Your Honor.

17          And, and from a housekeeping perspective, the order

18 that we have attached to our motion, on the motion we just

19 argued, we have gotten a comment from the, the Garlock

20 Committee and we're going to incorporate that comment --

21 there's no objection from the debtor on that -- and we'll

22 tender a new order, but we'll, of course, circulate it to the

23 Committee before tendering it to the Court.

24          THE COURT:  For the rest of us, do you want to just

25 tell me briefly what it, what it does?

1           MR. SCHILLI:  I'll be happy to do that, Your Honor.

2           THE COURT:  You sure?

3           MR. SCHILLI:  In the order that was submitted with our

4    motion there was a reference to the Ad Hoc Committee members

5    being part of the Garlock Committee.  And there's a --

6    substantively, I believe it remains the same -- but the comment

7    that we received was that instead of the motion, instead of the

8    order saying, "If members of the Ad Hoc Committee are permitted

9    to join the Garlock Committee," the Committee would ask that

10   the order say, "If Coltec asbestos claimants are appointed as

11   new members of the Garlock Committee," and so we're happy to

12   make that change.

13          THE COURT:  Does that cause the BA any problems?  WE

14   good there?

15          MS. KENNY:  No, Your Honor.

16          THE COURT:  Okay.  Fair enough.

17          MR. SCHILLI:  Thank you.

18          Your Honor, now we're down to the last two matters

19   that I was going to argue to the Court and now we're going to,

20   I think --

21          THE COURT:  Uh-huh (indicating an affirmative

22   response).

23          MR. SCHILLI:  -- with, with your permission, take

24   things out of order.  And I'd like to turn to No. 10 on the

25   agenda, which is Docket Entry 17.  The, the reason I'd like to

1   take them out of order is because as, as I was preparing for

2   today I realized that the motion that's listed at No. 9 makes

3   reference to this motion at No. 10 and I think Motion No. 9 may

4   make a little more sense and we can get through that a little

5   more quickly if we address the motion on the agenda at No. 10

6   first.

7            So with that, Your Honor, I'd like to address Docket

8   Entry No. 17, which is the debtor's motion to approve the

9   notice procedures for asbestos claimants.  Again, these are the

10  same procedures that have been in the, in place in the Garlock

11  case now for over six years and they've worked pretty well and

12  I would ask that the Court allow those procedures to be adopted

13  here.  And those asbestos claimant notice procedures are as

14  follows:

15           That the parties would send notices and other

16  communications to the Coltec asbestos claimants solely to their

17  counsel of record instead of sending the notices and

18  communications to the claimants, themselves.  If we are aware

19  of a Coltec asbestos claimant not represented by counsel, then

20  we would, of course, send notices to the claimant.  And, and

21  typically, we would learn of that, the identity and the

22  address, by either a proof of claim filed in the case or one of

23  the ballots that may have been submitted.

24           And then the other notice to the Coltec asbestos

25  claimants would be to the Future Claims Representative as well

1   as his counsel.

2          So we would ask that you approve those notice

3   procedures and also relieve us of obligations to deliver

4   notices or communications to the claimants, themselves.  The,

5   the motion that we've circulated prior to the case filing and

6   the order were both reviewed and approved by the Garlock

7   Committee and the Ad Hoc Committee counsel and we've not

8   received any comments from the FCR, his counsel, with respect

9   to that order.

10          THE COURT:  Any other party wish to speak with regard

11  to the motion?

12     (No response)

13          THE COURT:  There being none, we'll assume that it's

14  all suitable to everyone else and it is approved.

15          MR. SCHILLI:  Thank you, Your Honor.

16          And now I'd like to go back on the agenda to No. 9,

17  which is Docket Entry 19.  This is a matter that's just in the

18  OldCo case and it's our, it's Coltec's motion for approval of

19  the form of the commencement notice here, the mailing and

20  publication of that notice, and -- there are really four points

21  that we would like the Court to be aware of.  First, we have

22  attached to the motion the form of the commencement notice.  It

23  differs from the official bankruptcy form in a couple of ways.

24  First, it does not identify a first meeting of creditors date

25  and time and secondly, it also directs parties in interest to

1 | the Court's website as well as the Rust website in case anybody

2 | wants information about the case.

3 | We would ask that you approve the manner of the

4 | mailing of that commencement notice.  Rust is going to handle

5 | the service of that and we're going to serve that on the list,

6 | or the mailing matrix that we've attached to the petition,

7 | which is nearly 1400 pages long.

8 | THE COURT:  All right.

9 | MR. SCHILLI:  And the folks it's going to go to,

10 | essentially, will be all of the asbestos claimants, any of the

11 | creditors of, of the EnPro Learning Systems business, that is,

12 | creditors, existing creditors of the debtor, and then there are

13 | some what I would call legacy Coltec claimants, either folks

14 | who are receiving retiree benefits, life or death-related

15 | benefits, pension and severance-related benefits, and we're

16 | going to send that to all, all of those folks.

17 | Now the reality is EnPro Holdings, which was recently

18 | formed, is taking on all of those obligations, but we feel like

19 | we ought to give notice to all of those creditors in the case,

20 | although I guess they have potentially contingent claims, but

21 | they're being assumed by EnPro and they should be paid in the

22 | ordinary course.

23 | THE COURT:  Uh-huh (indicating an affirmative

24 | response).

25 | MR. SCHILLI:  We also ask that the Court approve the

1 | form of the publication notice that is, was attached to the

2 | motion.

3 |        THE COURT:  Uh-huh (indicating an affirmative

4 | response).

5 |        MR. SCHILLI:  It's very detailed and it's a combined

6 | publication, it's a combined notice.  It's combined in the

7 | sense that it not only is a commencement notice, but there's a

8 | bar date notice in that for the asbestos claimants.  There are

9 | also references to the March 24th deadline to file proofs of

10 | claim as well as objections to the disclosure statement that's

11 | on file as well as the objections to confirmation in the Coltec

12 | case.  And then there's also language in that publication

13 | notice as it relates to the May 15th confirmation hearing.

14 |        And we would ask that the Court approve a form of that

15 | notice.  It's been reviewed and there was a fairly substantial

16 | back and forth between us and the Committee in the case, the Ad

17 | Hoc Committee and the Garlock Committee, because it's

18 | ultimately going to those, their constituents and they have

19 | approved the form of the notice.

20 |        And then with respect to the manner of publishing,

21 | we'd like to do what we did in the Garlock case and that is

22 | publish in the USA Today on one day, in the national edition of

23 | the USA Today on the one day of the week, which is Mondays,

24 | where they publish legal notices.  And we would ask that we get

25 | authority to do that and depending on when the order gets

1   entered and whether we can meet deadlines, we would either get

2   it published next Monday or the following Monday.

3          So it'd be promptly after the case has been filed.

4          THE COURT:  Okay.

5          MR. SCHILLI:  So --

6          THE COURT:  Anyone else on this motion?

7          MS. KENNY:  Your Honor, I don't have an objection to

8   the motion, but in looking at the exhibits, Exhibit A, which is

9   the commencement notice, for the proof of claim deadline it

10  says "Not yet set," but the publication and then there's the

11  motion to set bar date is March 24th.

12         So I'm not certain why -- it seems to me that date

13  ought to be March 24th there, but there may be an explanation

14  as to why that's not there.

15         MR. SCHILLI:  That's a fair point, Ms. Kenny.  Let me

16  address that to the Court, Your Honor.

17         We, we've gone back and forth a little bit about

18  whether to include in the actual notice the, the March 24th

19  proof of claim deadline, but because that deadline applies only

20  to the Coltec asbestos claimants --

21         THE COURT:  Right.

22         MR. SCHILLI:  -- and this notice is going to a lot of

23  other folks in addition to that -- we thought, in addition to

24  that group, we thought it would be better if we didn't list it

25  there.  And then the motion that Mr. Krisko is going to address

1   in just a moment is going to, he's going to describe the bar

2   date notice that's going to go separately to the asbestos

3   claimants in the case.

4        And so they, in fact, will get a notice that, actual

5   notice.  And when I say "they," it will be ultimately going to

6   the lawyers representing him, if, if they are so represented.

7        And so I think Kenny's concern is that the asbestos

8   claimants who are entitled to vote will, in fact, get a

9   separate notice, but the, the, if you will, the mass of other

10  creditors will not because there is no bar date that we've

11  requested and no bar date has been set with respect to that

12  other group of creditors.

13       THE COURT:  So you're saying that the March 24th date

14  shouldn't be in the notice?

15       MR. SCHILLI:  Your Honor, we don't believe it should

16  be in, in the actual notice of the commencement of the case --

17       THE COURT:  Right.

18       MR. SCHILLI:  -- because it might then require a lot

19  more explanation as to who that March 24th date applies to.

20       THE COURT:  Well, the one I'm looking at does have the

21  March 24th date.  It says, "Deadlines for proof of claim for

22  certain Coltec creditors' asbestos claims is March 24th," and

23  then it doesn't really say anything about other creditors, but

24  --is that Exhibit A or Exhibit B?  I -- let me see if Exhibit A

25  -- yeah, it's the same.

1          MR. SCHILLI:  Beg your pardon.  Just a moment, Your

2     Honor.

3          THE COURT:  Maybe I'm confused.

4        (Pause)

5          MS. KENNY:  Your Honor, I believe that's Exhibit B.

6          MR. SCHILLI:  That is --

7          THE COURT:  I'm looking at "B."

8          MR. SCHILLI:  Yes.

9          THE COURT:  Okay.  Well, that, that was the question I

10    had when I was looking at "A," though.  It says, "The Court has

11    not set a time and date for a creditors' meeting," and then

12    doesn't say anything, does it, about the deadline -- okay, here

13    we go.  Here's the proof of claim date, "Not yet set."

14          All I was wondering about, both the first meeting

15    notice that it had not yet been set and the proof of claims

16    deadline, whether we ought to tell them what we're doing, that

17    we're not going to set a first meeting date.  Refer them to the

18    order in this.  I wouldn't want anyone thinking that there was

19    going to be a first meeting date and we're just hanging fire

20    to, to wait to see what that is.

21          I'll leave it to your discretion as the parties in the

22    case of whether you feel the need to have that, but it would be

23    a little tighter if you, if you told them we just weren't going

24    to have a first meeting date and we weren't going to set a

25    deadline for proofs of claim for non-asbestos creditors.

1       MR. SCHILLI:  I, I'll be happy to add that, Your

2  Honor, and I'll circulate it to the rest of the, the other

3  parties for comment.

4       THE COURT:  I'm raising it as a question, not a

5  ruling.

6       Do the parties feel any need for more certainty on

7  that point, or are we just basically talking about semantics on

8  something that really won't have a real world effect?

9       MR. LIESEMER:  Your Honor, Jeffrey Liesemer on behalf

10  of the Committee.

11       I am concerned by the standard notice indicating that

12  there is no deadline for proofs of claims.

13       THE COURT:  Uh-huh (indicating an affirmative

14  response).

15       MR. LIESEMER:  I, I'm concerned that it's going to

16  create confusion.  I would suggest that it say, "March 24th for

17  certain Coltec asbestos claims.  No bar date for any other

18  claims."

19       THE COURT:  How's that?

20       MR. SCHILLI:  I think that will work.

21       THE COURT:  Okay, good.  It might save some of your

22  associates some time having to field calls from creditors who

23  are confused and their counsel, so.

24       MR. SCHILLI:  I'm sure they appreciate that, Your

25  Honor.

1        THE COURT:  Well, in any event, let's make those

2   changes and otherwise, I think I'm fine with this, all right?

3        MR. SCHILLI:  Thank you, Your Honor.

4        THE COURT:  Good enough.

5        MR. LIESEMER:  Thank you, Your Honor.

6        MR. SCHILLI:  And with that, I'm -- that wraps up the

7   portion of the agenda that I was going to address.  I'd like

8   to --

9        THE COURT:  All right.

10        MR. SCHILLI:  -- turn it over to Mr. Krisko.

11        Mr. Krisko.

12        MR. KRISKO:  Thank you, Your Honor.

13        THE COURT:  The lawyers are wearing out quickly this

14   morning, aren't they?

15        MR. KRISKO:  It has become a relay race, Your Honor.

16        The -- I'm going to address two motions, the Coltec

17   asbestos bar date motion and then the motion to essentially

18   approve the solicitation and voting procedures that were

19   approved by this Court as applied to Garlock and extend those

20   over to this case.

21        THE COURT:  Okay.

22        MR. KRISKO:  First, let me address the bar date

23   motion.  This is Docket Entry 20.  This motion seeks to

24   establish an asbestos claims bar date, just like there was an

25   asbestos claims bar date in, in the, in the Garlock case.  The

1    notion of an asbestos claims bar date for Coltec creditors is

2    part of the comprehensive settlement.

3              THE COURT:  Uh-huh (indicating an affirmative

4    response).

5              MR. KRISKO:  It's part of the CRP.  It's part of the

6    plan.  The, the notice process in soliciting approval of the

7    plan and descriptions in the disclosure statement have all

8    talked about the intention of the parties to now seek this

9    relief and have the Court establish March 24th as a bar date

10   for Coltec asbestos claims at this time.

11             So that's been a fundamental part of what we've been

12   doing in order to implement the comprehensive settlement.

13             The bar date itself is structured exactly as the

14   Garlock bar date is structured and that is it applies to -- it

15   doesn't apply to all claims.  It applies to claims where a

16   claimant has been diagnosed with an asbestos injury before --

17             THE COURT:  Uh-huh (indicating an affirmative

18   response).

19             MR. KRISKO:  -- August 1st of 2014 and has either

20   filed a claim in a, in a case or filed a bankruptcy trust

21   claim.

22             So it draws the same line with Coltec claimants as it

23   does with Garlock claimants in the Garlock case.

24             So in any event, the relief that we ask is, is to

25   enter a bar date as of March 24th.

1          Now there's some exceptions to that, Your Honor, that

2     will take burdens off of Coltec claimants that now have to file

3     proofs of claims.  And those exceptions are significant and

4     that is, essentially, any individual that cast a ballot when

5     Garlock solicited what we call the second amended plan, the,

6     the contested plan, during 2015, if, if an individual cast a

7     ballot in that process or filed a proof of claim in that

8     process, he would be exempted from having to file a proof of

9     claim as a Coltec claimant now.  Likewise, Your Honor, the

10    group that we solicited for this plan that had to file their

11    ballots by December 9th of 2016, if those individuals cast a

12    ballot, they would be exempted from having to file a bar date,

13    having to file a proof of claim at this point as well.

14         So, you know, keeping in mind that when Garlock

15    solicited the what we call the second amended plan and the, and

16    the Garlock bar date was put in place --

17         THE COURT:  Uh-huh (indicating an affirmative

18    response).

19         MR. KRISKO:  -- we, you know, I think the total

20    numbers were over 170,000 claimants that filed.  Those, all

21    those individuals, should they seek to have a Coltec claim,

22    would have their claims preserved.  This last, this next

23    solicitation, we had over 130,000 --

24         THE COURT:  Uh-huh (indicating an affirmative

25    response).

1              MR. KRISKO:  -- claimants, 70,000 specifically

2    specifying that they were, they are Coltec claimants.  None of

3    those people either would have to file a proof of claim in

4    response to this bar date.

5              Substantial notice, Your Honor, has been given of this

6    process.  I mentioned it briefly, but recall that part of this

7    whole solicitation notice process was the comprehensive, multi-

8    media plan that the Court approved in the Garlock case back in

9    July that included the national advertising and TV, newspapers

10   across the country.  It was significant.  The -- now that said,

11   you know, we're going, we are going to give -- we're going to

12   now give notice again to Coltec --

13             THE COURT:  Uh-huh (indicating an affirmative

14   response).

15             MR. KRISKO:  -- claimants through the processes that,

16   that Mr. Schilli described.  We're going to give actual notice

17   to Coltec asbestos claimants.  We're also going to run in

18   connection with the national publication notice the notice of

19   the bar date.

20             And with that, Your Honor, we'd like the Court to

21   enter the bar date as it applies to Coltec claimants.  The

22   motion and the notices and the order have been reviewed with

23   the Committee and the FCR and, prior to their filing, and I

24   believe we have the support of those constituencies on this

25   motion, Your Honor.

1          THE COURT:  Okay.

2          Parties wishing to be heard?

3     (No response)

4          THE COURT:  None?  Okay.  Approved.

5          MR. KRISKO:  Okay.

6          Your Honor, the next motion that the, well, for the

7   solicitation motion, again, looks at the work, work did in July

8   of last year as it pertains to setting the confirmation

9   schedule, the solicitation process, the notice program, the

10  Kinsella Media notice program, as well as the specifics of the

11  balloting and the voting, the voting procedures that the Court

12  approved.

13         So this -- what this motion asks for, Your Honor, is

14  to essentially apply the approvals the Court gave in the

15  Garlock case to this case, both in terms of the notice program,

16  the voting procedures, and the solicitation packages that, that

17  we sent out soliciting the Coltec claimants prior to the filing

18  of the petition.

19         In addition, though, Your Honor, we're asking to, in

20  this approval, for the Court to approve what we're calling

21  supplemental solicitations, really supplemental notice of

22  what's going on.

23         So what we're going to do, again, is, is send directly

24  to asbestos claimants and other parties in interest another

25  package.  It would have the disclosure statement, the plan.  It

1   would have the order that the Court would enter, if it grants

2   this motion, all within it so that we, we can be sure that all,

3   you know, the parties in interest have notice of what's going

4   on in the case, the case has been filed.  They have

5   opportunities to, to make objections and consider the

6   disclosure statement.  In many, if not most cases, they would

7   have already received these materials when we did the

8   solicitation prior to the filing of the petition, but we feel

9   we should -- we feel it's necessary to do that again here in

10  this context now that the case has been filed.

11          With that, Your Honor, let me emphasize that, again,

12  this motion like the others were approved by the ACC and the

13  FCR.  I would ask the Court to enter the order as presented.

14          THE COURT:  Any comments?

15      (No response)

16          THE COURT:  Okay.  Also approved.

17          All right.  Is that the bottom of your, yours?

18          MR. CLODFELTER:  Your Honor, that concludes the agenda

19  for the Coltec case this morning unless the Court has other

20  matters you wish to explore.

21          THE COURT:  Let me ask a question and just thinking

22  ahead and you've probably already worked through these.

23          The first question is we're going to jointly

24  administer cases that are very similar in scope and, and

25  nature.  What are we going to do about compensation of

1    professionals?  Are we going to bill separately or are we going

2    to bill in one form and format and reserve the right to break

3    them apart, or how do y'all propose to treat that or is that

4    one of the future coming events in the case?

5           MR. CLODFELTER:  It's likely a coming event, but it's

6    a topic already under discussion, Your Honor, among the Garlock

7    debtors and the --

8           THE COURT:  Uh-huh (indicating an affirmative

9    response).

10          MR. CLODFELTER:  -- and the Coltec debtor.  We've, we

11   need to bring the Committee and the FCR into those discussions,

12   now they've been appointed.  But we're essentially proposing an

13   allocation process wherever the task or assignment may be

14   common to both cases.  There will be matters, of course, that

15   would be Garlock or Garrison unique or Coltec unique --

16          THE COURT:  Uh-huh (indicating an affirmative

17   response).

18          MR. CLODFELTER:  -- and those, of course, would be

19   charged to that particular case.  But for most tasks associated

20   with the plan, the joint plan, for example, those would be

21   common to all the cases.  There will be some exceptions even

22   there in that category.  We are discussing internally a form of

23   allocation.  We haven't yet had an opportunity to share that --

24          THE COURT:  Uh-huh (indicating an affirmative

25   response).

1        MR. CLODFELTER:  -- with the now-appointed committees

2   in the Coltec case.  We'd want an opportunity to generalize

3   that discussion and bring it back to the Court.

4        THE COURT:  Okay.

5        MR. CLODFELTER:  I think we'll have that before the

6   Court before anybody is submitting any applications for

7   compensation.

8        THE COURT:  Okay.  And give some thought to the fee

9   examiner as well in, in that mix.

10       MR. CLODFELTER:  We will, Your Honor.

11       THE COURT:  As much as I like all of you, I really

12  don't enjoy reviewing your fee applications *ad nauseam.*  But

13  that's something to put on the table as well, so.

14       MR. CLODFELTER:  Your Honor has put it on the table.

15  It has occurred to me, but I have so far suppressed discussing

16  it with anyone else.  But now it's out in the open.

17       THE COURT: All right.  It's out in the open.

18       In all seriousness, the, the amount of review that's

19  required when the Court reviews those fee applications is, is

20  pretty large and, frankly, gets me more immersed in the details

21  of what you're doing day-to-day than what I prefer to be,

22  particularly since we have a couple of other cases that have

23  come in of late that would have similar demands.

24       So Judge Hodges and I are probably the only people

25  really advocating for fee examiners in cases and give fair

1  consideration to that.  I realize by May things may have

2  changed and if this joint plan gets confirmed, then we may not

3  have the same circumstance.

4          But work that into your discussions as well.

5          MR. CLODFELTER:  We will do so, Your Honor.

6          THE COURT:  All right.  Anything else to do in the

7  OldCo/Coltec case?

8      (No response)

9          THE COURT:  Okay.  So am I correct that the only thing

10  we have left in Garlock are the two matters, the Clephas relief

11  from the automatic stay, that's been subsumed by the settlement

12  that was entered, I think, yesterday, the consent order there,

13  and then we have the joint motion to approve the settlement, if

14  you will, with the Canadian provinces.

15          Anything else that we're dealing with today?

16      (No response)

17          THE COURT:  Do you need a few minutes to get your

18  papers organized to move on?

19          All right.  Let's take five and let --

20          MS. KENNY:  Your Honor, can I be excused for, for the

21  rest of the hearing?

22          THE COURT:  Yes.  And any --

23      (Recess at 10:42 a.m.)

24

25

1                            <u>CERTIFICATE</u>

2           I, court approved transcriber, certify that the

3    foregoing is a correct transcript from the official electronic

4    sound recording of the proceedings in the above-entitled

5    matter.

6    /s/ *Janice Russell*                    February 9, 2017

7    Janice Russell, Transcriber                  Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25